IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | ) Case No. 19-36313 (DRJ) |
| Debtors.[1] | ) (Joint Administration Requested) |

### DECLARATION OF GARY RAHLFS IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF A LIMITED INTERIM ORDER AUTHORIZING DEBTORS TO MAINTAIN FUEL CARD PROGRAM IN THE ORDINARY COURSE OF BUSINESS

**GARY RAHLFS** declares and says:

1. I have been Chief Financial Officer of each of the above-captioned debtors (collectively, the "**Debtors**" or "**Dean Foods**") since September 24, 2019, at first in an interim capacity and permanently as of October 23, 2019. I have also served as Senior Vice President, Finance & Strategy since May 2019, a position I still hold. From March 2018 to May 2019, I served as the Chief Financial Officer/Vice Chancellor for Finance at the University of North Texas. From 1994 until April 2017, I was employed at PepsiCo, Inc., where I held several

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

positions, including Vice President Finance, Global Groups for PepsiCo, Chief Financial Officer – PepsiCo Foods Canada, and Vice President Sales Finance – Frito-Lay US-South Division.  I hold BBA and MBA degrees from West Texas A&M University and The University of Texas at Austin, respectively.  I am familiar with Dean Foods' day-to-day operations, businesses and financial affairs.

2. Except as otherwise indicated, the facts set forth in this declaration (the "**Declaration**") are based upon my personal knowledge, my review of the relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge, and information concerning the operations of the Debtors and of the dairy industry as a whole.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.  Unless otherwise indicated, the financial information contained herein is unaudited and provided on a consolidated basis.

3. In particular, I submit this Declaration in support of my view that the relief requested in the *Emergency Motion of Debtors for Entry of Limited Interim Order Authorizing Debtors To Maintain Fuel Card Program in the Ordinary Course of Business* ("**Motion**") is reasonable and necessary and in the best interest of the Debtors' and the Debtors' estates.

### THE FUEL CARD PROGRAM

4. The Debtors are a leading public food and beverage company and the largest processor and direct-to-store distributor of fresh fluid milk and other dairy and dairy case products in the United States.  The Debtors manufacture, market, and distribute a wide variety of branded and private label dairy and dairy case products, including fluid milk, ice cream, cultured dairy products, creamers, ice cream mix, and other dairy products to retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States.

5. Seamless transportation of raw materials, goods, and products to and from the Debtors' approximately 60 plants, retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States is essential to the Debtors' operations. In connection with such transportation, the Debtors maintain approximately 4,000 commercial trucks.

6. I am familiar with the Debtors' cash management system and the fuel card program (the "**Fuel Card Program**") with Wex, Inc. (together with its subsidiaries, "**Wex Bank**"), pursuant to which the Debtors pay fuel expenses charged to approximately 6,100 credit and purchase cards (collectively, the "**Fuel Cards**"). Drivers of the Debtors' truck fleet are expected and required to use the Fuel Cards for fueling their transport and delivery trucks in the ordinary course of business. The Fuel Cards and Fuel Card Program are integrated with the Debtors' cash management system.[2] The Debtors also track fuel expenses through the Fuel Card Program. Absent the use of the Fuel Cards, the Debtors do not have a readily accessible means to pay for or track in-transit fuel costs, including with respect to the transportation of perishable goods. As a result, the Debtors' operations would suffer severe disruptions if the Fuel Cards could not be used immediately.

7. The Fuel Cards have a $1,170,000 credit limit in the aggregate. Payments made on account of Fuel Card balances are funded through the concentration account located at Wells Fargo Bank, N.A. On average, the Debtors have historically spent with Wex Bank approximately $2,130,000 per month on account of the Fuel Cards. The Debtors pay the Fuel Card balance on a weekly basis. As of the Petition Date, the Debtors estimate that they owe

---

[2] A more fulsome description of the Debtors' Cash Management System is set forth in the Debtors' *Emergency Motion of Debtors for Entry of Interim and Final Orders Authorizing (I) Debtors to Continue to Maintain Existing Cash Management System, Bank Accounts, and Business Forms and (II) Financial Institutions to Honor and Process Related Checks and Transfer* (the "**Cash Management Motion**") filed contemporaneously with this Declaration.

approximately $825,000 on account of the Fuel Cards; however, prior to the Petition Date, the Debtors provided a deposit to be held by Wex Bank in the amount of $1,170,000.

8. Accordingly, absent use of the Fuel Cards, the Debtors do not have a readily accessible means to pay for or track in-transit fuel costs, including with respect to the transportation of perishable goods, and the Debtors' operations may suffer severe disruptions.

9. My understanding is that there is a significant risk that Wex Bank will immediately suspend the Fuel Cards upon the Debtors commencing their chapter 11 cases, pending entry of an Order from the Court authorizing the Debtors to maintain the Fuel Card Program, consistent with prepetition practices, in the ordinary course of business. Even a disruption of less than 24 hours would significantly disrupt the Debtors' operations and cause irreparable harm.

10. Continuing the Fuel Card Program without interruption is vital to the Debtors' survival. The Fuel Card Program is the mechanism whereby the Debtors are able to maintain seamless operations of both their transportation and financial systems. If the Debtors are not permitted to maintain their Fuel Card Program as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of the Debtors, as the Debtors' fleet of transportation and delivery trucks require fuel, (b) delay in the administration of the Debtors' estates, and (c) compromise of the Debtors' internal controls and accounting system, as the Debtors need the Fuel Card Program to efficiently pay for and track in-transit fuel costs.

11. I believe that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and constitutes a critical element

- 5 -

in achieving a successful and smooth transition to chapter 11.  Accordingly, on behalf of the Debtors, I respectfully submit that the relief requested in the Motion should be granted.

I, the undersigned Senior Vice President and Chief Financial Officer of Dean Foods Company, declare under penalty of perjury that the foregoing is true and correct.

Dated: November 12, 2019

*/s/ Gary Rahlfs*
Gary Rahlfs
Senior Vice President and Chief Financial Officer