# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | ) | Case No. 19-36313 (DRJ) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, AND DISCONTINUING SERVICE, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 13, 2019 AT 2:30 PM IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 13, 2019.**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

Southern Foods Group, LLC, Dean Foods Company, and certain of their affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Emergency Motion of Debtors for Entry of an Order (i) Prohibiting Utilities From Altering, Refusing or Discontinuing Service, (ii) Deeming Utilities Adequately Assured of Future Performance, and (iii) Establishing Procedures for Determining Requests for Additional Adequate Assurance* (this "**Motion**"). This Motion is supported by the *Declaration of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Rahlfs Declaration**") filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

## Relief Requested

1.      By this Motion, and pursuant to sections 105 and 366 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order (the "**Proposed Order**" and, if entered, the "**Order**") (a) prohibiting the Utilities (as defined below) from altering, refusing, or discontinuing any Utility Services (as defined below) on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance, (b) determining that the Debtors' proposed offer of deposits, as set forth herein, provides the Utilities with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, and (c) approving procedures for resolving requests by Utilities for additional or different assurances beyond those set forth in this Motion.

## Jurisdiction, Venue, and Authority

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Order of*

*Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In addition, the Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.      On the date hereof, (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting the joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6.      Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the Rahlfs Declaration, which is incorporated herein by reference.

-3-

## The Utilities and Services Provided

7.     The Debtors are a leading public food and beverage company and the largest processor and direct-to-store distributor of fresh fluid milk and other dairy and dairy case products in the United States.  The Debtors manufacture, market, and distribute a wide variety of branded and private label dairy and dairy case products, including fluid milk, ice cream, cultured dairy products, creamers, ice cream mix, and other dairy products to retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States.

8.     In connection with the operation of their businesses and management of their properties, the Debtors obtain utility services, as that term is used in section 366 of the Bankruptcy Code, including electricity, natural gas, telephone, sewage, telecommunications, waste removal, water, and other similar services (collectively, "**Utility Services**") from hundreds of utility companies (collectively, the "**Utilities**").  Annexed hereto as <u>Exhibit A</u> (as may be supplemented from time to time, the "**Utilities List**") is a list of Utilities that provide Utility Services to the Debtors as of the Petition Date.  The relief requested herein is for all Utilities providing Utility Services to the Debtors and is not limited to those listed on the Utilities List.[2] The Debtors have made an extensive and good faith effort to identify all of the Utilities that provide them Utility Services and to include them on the Utilities List.  Nonetheless, the Debtors reserve the right to supplement the Utilities List by filing a notice (a "**Supplemental Notice**") at a later date with the Court if necessary.

9.     During the past 12 months, the Debtors paid an average of approximately $10,336,961 per month on account of Utility Services. The Debtors pay Utility Services through

---

[2] The inclusion of any entity on, as well as any omission of any entity from, the Utilities List is not an admission by the Debtors that such entity is, or is not, a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

various means, including (a) Capturis UBP, LLC ("**Capturis**"), (b) at the individual plant level via Purchasing Cards, and (c) through their accounts payable system. The Debtors are party to a contract with Capturis for the management of the Debtors' payments owed to various electric, natural gas, sewer, and water Utility Companies. In addition, the Debtors pay various telecommunication vendors by using Purchasing Cards and generally pay trash providers though their vendor accounts payable system. The Debtors have also provided certain of the Utility Companies with cash deposits, surety bonds, or letters of credit (as set forth on the Utilities List). To the best of the Debtors' knowledge, there are few, if any, material defaults or arrearages with respect to the Debtors' undisputed Utility Services invoices, other than payment interruptions that may be caused by the commencement of the Chapter 11 Cases.

### The Proposed Adequate Assurance Deposit

10.     Contemporaneously herewith, the Debtors have filed a motion seeking authority to obtain $425,000,000 in a post-petition credit facility (the "**DIP Facility**"), and, as of the Petition Date, the Debtors have approximately $48,800,000 in cash, cash equivalents, and short-term investments. Accordingly, the Debtors expect to have ample liquidity to timely pay all post-petition obligations owed to the Utilities.

11.     However, to provide adequate assurance to the Utilities as required under section 366(c) of the Bankruptcy Code, the Debtors propose to deposit[3] into a segregated account for the benefit of the Utilities (the "**Utility Deposit Account**") an amount equal to two weeks of Utility Service, calculated as a historical average over the past 12 months (the "**Adequate Assurance Deposit**"). The aggregate amount of the proposed Adequate

---

[3] Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean, among other things, a cash deposit.

Assurance Deposits is approximately $3,909,872.  The Adequate Assurance Deposit will be held by the Debtors in the Utility Deposit Account for the benefit of the Utilities on the Utilities List during the pendency of the Chapter 11 Cases.

12.     The Debtors will deposit the Adequate Assurance Deposit in the Utility Deposit Account within 20 calendar days of entry of the proposed order.  The amount allocated for, and payable to, each Utility shall be equal to the amount set forth on the Utilities List as to each Utility or as otherwise agreed.

13.     The portion of the Adequate Assurance Deposit attributable to each Utility shall be returned to the Debtors upon the effective date of a chapter 11 plan for the Debtors or the closing of a sale of all or substantially all of the Debtors' assets. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility, the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect the termination of such Utility Services.

14.     As a condition of accepting an Adequate Assurance Deposit, the Debtors propose that such Utility shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of payment to such Utility within the meaning of section 366 of the Bankruptcy Code, and shall be prohibited from challenging or opting out of the Adequate Assurance Procedures (as defined below), filing a Request (as defined below), or requesting any additional adequate assurance of payment of any kind at any time, notwithstanding any attempt by such Utility to reserve a right to seek any such relief.

15.     Given their current cash reserves and the amount that will become available under the DIP Facility, the Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business,

-6-

constitutes sufficient adequate assurance to each of the Utilities (collectively, the "**Proposed Adequate Assurance**").

## Proposed Adequate Assurance Procedures

16.     Notwithstanding the Proposed Adequate Assurance, if any Utility believes that additional assurance is required, it may request such additional assurance solely pursuant to the following procedures (the "**Adequate Assurance Procedures**"):

(a)     The Debtors or their advisors will provide a copy of this Motion (including the order) to each of the Utilities listed on the Utilities List within two business days after entry of the order by the Court.

(b)     If a Utility is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "**Request**") upon (i) the Debtors, c/o 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204, Attn: Kristy Waterman and (ii) proposed counsel to the Debtors, (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York, 10017, Attn: Brian M. Resnick, Esq., Steven Z. Szanzer, Esq., and Nate Sokol, Esq., and (B) Norton Rose Fulbright US LLP, 1301 McKinney Street, Suite 5100, Houston, Texas, 77010-3095, Attn: William R. Greendyke, Esq., Jason L. Boland, Esq., Robert B. Bruner, Esq., and Julie Goodrich Harrison, Esq.; and the Request must set forth (i) the location(s) for which Utility Services are provided, (ii) the account number(s) for such location(s), (iii) the outstanding balance for each account, and (iv) an explanation of why the Utility believes that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(c)     If the Debtors determine, in their sole discretion, that a Request or any consensual agreement reached in connection therewith is reasonable, the Debtors, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility serving such Request and, in connection with such agreements, provide the Utility with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, with notice to the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and any counsel to any official committee appointed in the Chapter 11 Cases within 15 days.

(d)     If the Debtors determine that a Request is unreasonable, then they shall, within 20 calendar days after receipt of such Request, or such longer period as may be agreed to between the Debtors and the Utility, file a motion (a "**Determination Motion**") pursuant to section 366(c)(3) of the Bankruptcy Code seeking a determination from the Court that the Proposed Adequate Assurance, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment.  Pending notice and a hearing

on the Determination Motion, the Utility that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors.

(e)     Absent compliance with the procedures set forth in the Motion and this Order, the Debtors' Utilities are prohibited from altering, refusing, or discontinuing service on account of any unpaid prepetition charges and are deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

## Proposed Procedures to Supplement the Utility List

17.     Although the Debtors have made a good faith effort to identify all of the Utilities that currently provide Utility Services to the Debtors, it is possible that some Utilities may not be listed on the Utilities List.  For any additional Utilities that the Debtors identify, the Debtors will file a Supplemental Notice and will (a) serve the Supplemental Notice by first-class mail on all Utilities listed in such Supplemental Notice and (b) post the Supplemental Notice on the Debtors' case information website located at https://dm.epiq11.com/SouthernFoods.

## Basis for Relief

18.     Uninterrupted Utility Services are essential to the Debtors' ongoing operations and, therefore, the preservation of the value of the Debtors' estates.  The Debtors' businesses are supported by, among other things, a total of approximately 685 facilities made up of corporate offices, manufacturing plants, distribution warehouses, cross docks and parking facilities, all of which depend on reliable delivery of power and other Utility Services. Should any Utility alter, refuse, or discontinue service, even for a brief period, the Debtors' operations could be severely disrupted.  The impact of this disruption on the Debtors' business operations and revenue would be extremely harmful and could jeopardize the value of the Debtors' estates.

19.     The relief requested herein will ensure that the Debtors' operations will not be disrupted.  Furthermore, the relief requested provides the Utilities with a fair and orderly procedure for addressing requests for additional or different adequate assurance.  Without the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by

the Utilities in a disorganized manner at a critical period in the Chapter 11 Cases and during a time when the Debtors' efforts could be more productively focused on the continuation of the Debtors' operations for the benefit of all parties in interest.

20.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination of utility services after commencing its chapter 11 case.  Under that section, a utility company may not, during the first 20 days of a chapter 11 case, alter, refuse, or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a prepetition debt.  11 U.S.C. § 366.[4]  A utility company may, however, alter, refuse, or discontinue service following such 20-day period, if the debtor has not furnished "adequate assurance of payment" for post-petition utility service obligations within the 20-day period.  *Id.*   Additionally, following a 30-day period after the commencement of a bankruptcy case, utilities may alter, refuse, or discontinue service if the debtor does not provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility company, subject to the Court's review and approval.  *Id.*

21.     Section 366(c)(3)(B) of the Bankruptcy Code restricts the factors a court can consider when determining whether an assurance of payment is adequate.  Specifically, courts may not consider (a) the absence of a security deposit before a debtor's petition date, (b) a

---

[4] Section 366 of the Bankruptcy Code applies to entities that are traditionally viewed as utilities, such as those that provide electricity, telephone service, or water, and to any entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitutes a monopoly with respect to the services that it provides to the debtor.  *See, e.g., One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc. (In re One Stop Realtour Place, Inc.)*, 268 B.R. 430, 436-37 (Bankr. E.D. Pa. 2001) (provider of telephone service is a utility regardless of whether telephone service may be available from another provider); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986) (internal quotation marks omitted) (landlord of the Brooklyn Navy Yard "occupies a special position with respect to the debtor in its role as [the debtor's] utility supplier").  Despite the wide latitude afforded in determining those entities that constitute utilities under section 366 of the Bankruptcy Code, some of the companies listed on the Utilities List may also provide goods or services to the Debtors in a capacity other than that of a utility.  With respect to any such goods or services, such companies are not entitled to adequate assurance under section 366 of the Bankruptcy Code.  Moreover, the Debtors are not foreclosed from taking the position that any of the entities listed on the Utilities List are not utilities within the meaning of section 366 of the Bankruptcy Code.

debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit.

22.     While the Bankruptcy Code provides guidance as to the required nature of adequate assurance, the Court retains the discretion to determine the amount of adequate assurance necessary or to change the fundamental requirement that assurance of payment must simply be adequate. *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), *with* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2) [which is governed by an adequacy standard].");  *see also In re Cont'l Common, Inc.*, No. 3:10-CV-2591-O, 2011 WL 13238210, at *6 (N.D. Tex. Feb. 14, 2011) (holding that determinations of adequate assurance are within the Court's discretion).

23.     Courts construing section 366(b) of the Bankruptcy Code have long recognized that, in determining adequate assurance, the Court is not required to give the Utilities the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for post-petition services.  *See In re Cont'l Common, Inc.*, 2011 WL 13238210 at *5 (explaining that "Section 366 requires a determination that a utility is not subject to unreasonable risk of nonpayment, but does not require a guarantee of payment"); *see also In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982) (*quoting In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980)) ("[A]dequate assurance of payment does not mean guaranty of payment; but the Court must find that the utility is not subject to an unreasonable risk of future loss."); s*ee also In re Circuit City*, Case No. 08-35653 (KRH), 2009

-10-

Bankr. LEXIS 237, at *13 ("A debtor need not provide utility companies an absolute guarantee of payment."); *accord Long Island Lighting Co. v. The Great Atl. & Pac. Tea Co. (In re The Great Atl. & Pac. Tea Co.)*, Case No. 11-CV-1338 (CS), 2011 U.S. Dist. LEXIS 131621, at *18 (S.D.N.Y. Nov. 14, 2011); *S. Cal. Edison Co. v. Crystal Cathedral Ministries (In re Crystal Cathedral Ministries)*, 454 B.R. 124, 131 (Bankr. C.D. Cal. 2011); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008); *Steinebach v. Tucson Elec. Power Corp. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002).  Historically, whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case.  *See In re Cont'l Common, Inc.*, 2011 WL 13238210 at *5 ("The type of arrangement that constitutes adequate assurance of future payment is a fact-intensive inquiry, determined under the individual circumstances of the case."); *see also In re Santa Clara Circuits W.*, 27 B.R. at 685; *In re Adelphia Bus. Sols., Inc.*, 280 B.R. at 80; *accord Long Island Lighting Co.*, Case No. 2011 U.S. Dist. LEXIS 131621, at *18; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. D. Mass. 1981).  While section 366(c) of the Bankruptcy Code limits the factors a court may consider, determinations of adequate assurance remain within the Court's discretion.  *Cf. Long Island Lighting Co.*, Case No. 2011 U.S. Dist. LEXIS 131621, at *20; *In re Steinebach*, 303 B.R. at 642; *In re Adelphia Bus. Sols., Inc.*, 280 B.R. at 80; *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983).  The Debtors believe that the Proposed Adequate Assurance is sufficient and reasonable and constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code.

24.     Here, the Debtors believe that the Utilities have "adequate assurance of payment" even without the proposed Adequate Assurance Deposit.  Contemporaneously herewith, the

Debtors are seeking authorization to use cash collateral and enter into the DIP Facility, which will enable them to pay their operating costs, including any utility costs, as they come due. The Debtors, thus, anticipate having sufficient resources to pay, and intend to pay, any and all valid post-petition obligations for Utility Services in a timely manner. In addition, the Debtors' reliance on Utility Services for the operation of their businesses provides them with a powerful incentive to stay current on their utility obligations. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payments are required in the Chapter 11 Cases. Indeed, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utilities of future payment.

25.     Notwithstanding the foregoing, the Debtors believe that the Proposed Adequate Assurance and the Adequate Assurance Procedures are reasonable, satisfy the requirements of section 366 of the Bankruptcy Code, and are necessary for the Debtors to carry out their reorganization efforts. If they are not approved, the Debtors could be forced to address payment requests by any Utility in a disorganized manner, which would distract management from focusing on the Debtors' reorganization. Moreover, on the 30th day following the Petition Date, the Debtors could be surprised by a Utility unilaterally (a) deciding that it is not adequately protected, (b) discontinuing service, or (c) making an exorbitant demand for payment to continue service. Such discontinuation of Utility Service could put the Debtors' reorganization efforts in jeopardy.

26.     In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The proposed Adequate Assurance Procedures are necessary for the Debtors to

carry out their restructuring efforts.  If the Court does not approve the proposed Adequate Assurance Procedures, the Debtors could be forced to address requests from the Utilities in a manner that would be detrimental to the value of their estates.

27.     Preserving Utility Services on an uninterrupted basis is essential to the Debtors' ongoing operations and maximizing the value of the Debtors' estates.  Indeed, any interruption in Utility Services, even for a brief period of time, would immediately and irreparably harm the Debtors' businesses.  It is imperative that the Utilities continue to provide their Utility Services without interruption.  Finally, the relief requested in this Motion, including the Adequate Assurance Procedures proposed herein, is similar to the relief granted in this district in recent chapter 11 cases.  *See, e.g.*, *In re Sanchez Energy*, No. 19-34508 (MI) (Bankr. S.D. Tex. Aug. 13, 2019); *In re Bristow Group Inc.*, No. 19-32713 (DRJ) (Bankr. S.D. Tex. May 14, 2019); *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Dec. 13, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. Mar. 15, 2018); *In re EXCO Resources, Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Jan. 18, 2018); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. June 15, 2017).

28.     Based on the foregoing, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, is in the best interests of the Debtors' estates and creditors, is in keeping with the spirit and intent of section 366 of the Bankruptcy Code, and is not prejudicial to the rights of any Utility.

## Debtors' Reservation of Rights

29.     Nothing contained herein is intended or should be construed as, or deemed to constitute, an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an assumption or rejection of any agreement, contract, or lease under section 365 of the

Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to Utility Services under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Emergency Consideration

30.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003(b).  Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  Fed. R. Bankr. P. 6003.  As set forth in this Motion and the Rahlfs Declaration, the Debtors believe that an orderly transition into chapter 11 is critical to the viability of the Debtors' businesses, operations, and estates and that any delay in granting the emergency relief requested herein could cause immediate and irreparable harm.  The Debtors believe that they may need to make upcoming payments and provide Adequate Assurance Deposits to the Utilities.  If the Debtors are not permitted to continue their ordinary business operations by continuing to pay for Utilities Services as they become due and to provide Adequate Assurance Deposits to the Utilities to reassure the Utilities, the Debtors could suffer immediate and irreparable harm.  Accordingly, the emergency relief requested herein is consistent with Bankruptcy Rule 6003.

## Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

31.     To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the

circumstances.  The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

32.     Notice of the Hearing and the relief requested in the Motion has been provided by telecopy, email, overnight courier, and/or hand delivery to (a) the United States Trustee for the Southern District of Texas, (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis), (c) White & Case LLP, as counsel to Coöperatieve Rabobank U.A., New York Branch, the administrative agent under the Debtors' prepetition receivables purchase agreement, the administrative agent under the Debtors' prepetition secured revolving credit facility, and the administrative agent under the Debtors' proposed post-petition financing facility, (d) indenture trustee under the Debtors' prepetition unsecured bond indenture, (e) Mayer Brown LLP, as counsel to PNC Bank, National Association, the co-agent under Debtors' prepetition receivables purchase agreement, (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to an ad hoc group of prepetition unsecured noteholders, (g) the Securities and Exchange Commission, (h) the Internal Revenue Service, (i) the United States Attorney's Office for the Southern District of Texas, (j) the state

attorneys general for states in which the Debtors conduct business, (k) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, (l) the Utilities set forth in <u>Exhibit A</u> hereto, and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").   A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SouthernFoods.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c) and 9014, the Local Rules, and the Complex Case Rules.

## <u>No Prior Request</u>

33.    The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   November 12, 2019
         Houston, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ William R. Greendyke*
William R. Greendyke (SBT 08390450)
Jason L. Boland (SBT 24040542)
Robert B. Bruner (SBT 24062637)
Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Tel.:  (713) 651-5151
Fax:  (713) 651-5246
william.greendyke@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com
bob.bruner@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

*-and-*

**DAVIS POLK & WARDWELL LLP**

Brian M. Resnick (*pro hac vice* pending)
Steven Z. Szanzer (*pro hac vice* pending)
Nate Sokol (*pro hac vice* pending)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
brian.resnick@davispolk.com
steven.szanzer@davispolk.com
nathaniel.sokol@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ William R. Greendyke*
William R. Greendyke