## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | Case No. 19-36313 |
| Debtors.[1] | (Jointly Administered) |

## EMERGENCY MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS' ESTATES

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 13, 2019 AT 2:30 PM IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 13, 2019.**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows:  Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

Southern Foods Group, LLC, Dean Foods Company, and certain of their affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Emergency Motion of Debtors for Entry of Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates* (this "**Motion**"). This Motion is supported by the *Declaration of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**Rahlfs Declaration**") filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1.      By this Motion, and pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") the Debtors seek entry of interim and final orders (the "**Proposed Orders**" and, if entered, the "**Orders**") to enforce the automatic stay by implementing court-ordered procedures (the "**Procedures**") intended to protect the Debtors' estates against the possible loss of valuable tax assets that could flow from inadvertent stay violations. The Proposed Orders authorize the Debtors to (a) establish and implement restrictions and notification requirements regarding the Tax Ownership and certain transfers of Stock, (b) establish "sell-down" procedures with respect to Covered Claims that could be implemented if the Debtors elect to reorganize, and (c) notify holders of Stock and Covered Claims of the Procedures.[2] The Debtors also seek approval of the form of notice attached hereto as <u>Exhibit 1</u>, which will notify holders of Stock and Covered Claims whose actions could

---

[2] Some definitions are set forth in Paragraph 15(l) below.

adversely affect the Debtors' tax assets that the Procedures have been established by order of this Court.

## Jurisdiction, Venue, and Authority

2.        The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3.        This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In addition, the Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.        On the date hereof, (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting the joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6.      Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the Rahlfs Declaration, which is incorporated herein by reference.

### The Debtors' Net Operating Loss and Deferred Interest Expense Carryforwards

7.      The Debtors file a consolidated U.S. federal income tax return.  The Debtors estimate that, as of September 30, 2019, they had a consolidated net operating loss ("**NOL**") for U.S. federal income tax purposes of approximately $264,477,639 and $93,416,066 of interest expense deductions that have been deferred under section 163(j) of the Internal Revenue Code ("**Deferred Interest Expense**" and, collectively with the NOLs, the "**Tax Attributes**").  The Debtors further expect that, in the fourth quarter of the 2019 tax year, they may generate additional NOLs and Deferred Interest Expense.  Because the Internal Revenue Code permits corporations to carry forward NOLs and Deferred Interest Expense to offset future income, the Debtors' consolidated NOL carryforwards and other Tax Attributes are valuable assets of their estates.  *See* Internal Revenue Code of 1986 (as amended, the "**I.R.C.**") §§ 163(j), 172.  The availability of these tax assets during the pendency of the Chapter 11 Cases may prove crucial to preserving the value of the Debtors' estates.

8.      For the reasons discussed below, and consistent with the automatic stay, the Debtors need the ability to enforce the stay to preclude certain transfers and to monitor and possibly object to other changes in the ownership of Stock.  In addition, if the Debtors elect to reorganize, the Debtors may need the ability to require creditors who have increased their positions after the Petition Date to "sell down" to reestablish the status quo among creditors.

-4-

Specifically, trading of Stock and Covered Claims could adversely affect the Debtors' future ability to utilize their Tax Attributes and other tax items if:

(A)  too many 5% or greater blocks of Stock are created through purchases, sales, or issuances, or too many shares are added to or sold from such blocks, such that, together with the previous trading by 5-percent shareholders during the preceding three-year period, an Ownership Change is triggered prior to the consummation of a sale under section 363 of the Bankruptcy Code or a confirmed chapter 11 plan (as discussed further below) or

(B)  the Tax Ownership of claims against the Debtors that are currently held by "qualified creditors" is transferred, prior to consummation of the plan, such that (a) those claims (either alone or when accumulated with other claims currently held by a transferee) would be converted under a plan of reorganization into a 5% or greater block of the stock of the reorganized Debtors and (b) the sum of all such 5% or greater blocks and the blocks of stock of the reorganized Debtors held by all nonqualified creditors would represent 50% or more of such stock.

9.  The use of Tax Attribute carryforwards is subject to certain statutory limitations. In particular, section 382 of the I.R.C. ("**section 382**") limits the ability of a corporation that experiences an Ownership Change to use its Tax Attributes and certain other tax items to offset future income.  For purposes of section 382, an "Ownership Change" occurs when the percentage of a company's equity held by one or more "5-percent shareholders" (as defined in section 382 and the Treasury regulations promulgated thereunder) increases by more than 50 percentage points over the lowest percentage of stock owned by those shareholders at any time

during a three-year rolling period.[3]  For example, if a 10% shareholder purchased additional stock and became a 61% shareholder, the percentage of stock owned by five-percent shareholders would have increased by 51 percentage points, thereby causing an Ownership Change.

10.     If a corporation experiences an Ownership Change, section 382 generally limits the amount of Tax Attributes and certain other tax items that can be utilized in each subsequent tax period to offset income.  Subject to a number of potentially applicable adjustments, this annual limitation is generally equal to the product of the equity value of the corporation immediately before the Ownership Change multiplied by a long-term tax-exempt rate prescribed by the U.S. Treasury (1.68% for an Ownership Change occurring during the month of November 2019[4]).  If the Debtors were to undergo an Ownership Change at a time prior to consummation of a sale under section 363 of the Bankruptcy Code or a chapter 11 plan, the resulting annual limitation would significantly reduce the ability of the Debtors to shelter current income and could result in the Debtors' inability to utilize a substantial portion of their Tax Attributes.

11.     By contrast, the rules relating to the calculation of the limitations on the use of tax attributes are more generous, in the context of an Ownership Change that occurs pursuant to a confirmed chapter 11 plan, particularly where the plan involves the retention or receipt of at least 50% of the stock of the reorganized debtor by shareholders or "qualified creditors."  *See* I.R.C. § 382(*l*)(5), (6).  Paragraph 12 below discusses the special rule under section 382(*l*)(5) of the I.R.C. ("**section 382(*l*)(5)**") that would apply if shareholders and "qualified creditors" of the

---

[3] For purposes of section 382, a sale of shares owned by a 5-percent shareholder is treated as increasing the ownership percentage of other 5-percent shareholders, even if none of the buyers of the shares individually acquires a 5% block of shares.  *See* Treas. Reg. § 1.382-3(j)(13).

[4] Rev. Rul. 2019-25, Table 3, 2019-45 IRB 1.

Debtors receive stock pursuant to the chapter 11 plan of reorganization constituting at least 50% of the total value and voting power of the Debtors' stock immediately after the ownership change. Paragraph 13 below discusses the special rule under section 382(*l*)(6) of the I.R.C. ("**section 382(*l*)(6)**") that would apply if the Debtors do not satisfy the eligibility requirements of section 382(*l*)(5) or elect out of that provision.

12.     Under section 382(*l*)(5), the limitations imposed by section 382 do not apply to a debtor that undergoes an ownership change as a result of the consummation of a chapter 11 plan if the plan provides that the Person who owned the debtor's stock immediately before the relevant ownership change and/or "qualified creditors" emerge from the reorganization owning (as a result of their prior ownership of stock or claims that are "qualified indebtedness") at least 50% of the total value and voting power of the debtor's stock immediately after the ownership change.  *See* I.R.C. § 382(*l*)(5)(A).  Qualified creditors are, in general, creditors who (a) held their claims continuously for at least 18 months at the time the bankruptcy petition is filed or (b) hold claims incurred in the ordinary course of the debtor's business and held those claims continuously since they were incurred.  Claims described in the preceding sentence are "qualified indebtedness."  *See* I.R.C. § 382(*l*)(5)(E); Treas. Reg. § 1.382-9(d)(2).  Importantly, a "*de minimis*" rule generally provides that a creditor that does not meet either of the foregoing requirements for the sole reason that its claim was not held continuously for a sufficient period may still be considered a qualified creditor if that creditor will directly or indirectly own less than 5% of the reorganized debtor's equity immediately after the ownership change.[5]  *See* Treas. Reg. § 1.382-9(d)(3).

---

[5] This *de minimis* rule does not apply to claims beneficially owned by a person whose participation in formulating a chapter 11 plan makes evident to the debtor (whether or not the debtor had previous knowledge) that the person has not owned the claim for the requisite 18-month period.  In that event, in order for the person to be

13.     The Debtors seek to avoid an Ownership Change for purposes of section 382 before a sale of the Debtors' assets under section 363 of the Bankruptcy Code can be consummated.  If the Debtors elect to reorganize, the Debtors expect to undergo an ownership change upon emergence from chapter 11.  In that case, the Debtors may seek to avail themselves of the special relief afforded by section 382(*l*)(5) for changes in ownership under a confirmed chapter 11 plan.  However, if the relief requested herein is not granted, there is a significant risk that, as a result of trading in interests in the Debtors, the Debtors could undergo an ownership change before a sale of the Debtors' assets under section 363 of the Bankruptcy Code can be completed, and that pre-consummation trading and accumulations of claims against the Debtors could preclude availability of the special relief of section 382(l)(5) to the Debtors and the use of the Debtors' tax assets could be permanently impaired.  Even if the Debtors are ultimately unable to satisfy the requirements of section 382(*l*)(5), or if they were to determine that it is more advantageous to elect not to accept its benefits, it would still be in the best interest of the Debtors and their estates to restrict Stock trading that could result in a change of ownership of the Debtors before the consummation of a sale under section 363 of the Bankruptcy Code or confirmation of a chapter 11 plan.[6]  Furthermore, if the Debtors elect to reorganize, the Debtors will qualify for the favorable valuation rule of section 382(*l*)(6) only if that Ownership Change occurs pursuant to the consummation of a chapter 11 plan.  Under section 382(*l*)(6), if the Debtors experience an Ownership Change pursuant to a confirmed chapter 11 plan and section

---

treated as a qualified creditor, the debtor must establish that the claim was incurred in the ordinary course of the debtor's business and the creditor has held the claim continuously since it was incurred.

    [6] As discussed above, if an Ownership Change occurred *before* the consummation of a chapter 11 plan, the limitation under section 382 would be determined based on the equity value of the Debtors immediately before the Ownership Change.  Consequently, the Debtors' ability to use their Tax Attribute carryforwards could be severely limited.  Accordingly, this Motion proposes restrictions on Stock trading in order to guard against an Ownership Change and, thereby, to protect a valuable asset of the Debtors' estates.

382(*l*)(5) does not apply (either because the Debtors elect out of that provision or because certain requirements are not met), the value of the reorganized Debtors' equity for the purposes of calculating the limitation under section 382 would reflect the increase in value of the reorganized Debtors' equity resulting from the restructuring of creditor claims under the plan. Thus, to the extent that the value of the reorganized Debtors' equity is greater as a result of a chapter 11 plan (compared to the value of the Debtors' equity prior to the chapter 11 plan), section 382(*l*)(6) would provide for a higher annual limitation than would otherwise be obtained under section 382 for an Ownership Change occurring during the time the Debtors are operating under chapter 11.

14.     With respect to creditor claims, the following proposed procedures and restrictions implement a so-called "sell-down" approach to protecting these valuable tax assets. The core idea of the sell-down approach is that claims may be freely accumulated, subject to applicable law, unless and until the debtor files a disclosure statement for a plan structured to protect the ability to utilize the section 382(*l*)(5) regime. At that point, creditors that have acquired claims in excess of a specified threshold amount subsequent to the petition date and that would otherwise be entitled to receive more than a specified amount (*e.g.*, 4.75%)[7] of the stock of the reorganized debtor generally may be required to "sell down" their holdings to the extent necessary to preserve the debtor's ability to utilize section 382(*l*)(5).[8]

---

[7] The 4.75% number is designed to take advantage of the "*de minimis*" rule described in Paragraph 12 herein. The Interim Trading Order uses the term "Applicable Percentage" to refer to this number. The reason for the use of a defined term is that determination of the appropriate number of shares is more complex if the plan of reorganization contemplates the issuance of more than one class of stock.

[8] Certain technical mechanics necessary to implement a Sell-Down Order are found in the definitions set out in Section (k) of Paragraph 1 of the Interim Trading Order (and also in Section (l) of Paragraph 15 herein). In the event that the issuance of Sell-Down Notices is determined to be necessary, a creditor generally cannot be forced to reduce its holdings of Covered Claims below either the Threshold Amount or that creditor's Protected Amount. The Threshold Amount is a conservative estimate, based on known unsecured claims, that is calculated with a view to allowing a holder of Covered Claims subject to the "*de minimis*" rule described in Paragraph 12 herein to trade such Covered Claims without potentially becoming subject to a Sell-Down Order. A creditor's Protected Amount is generally the amount of Covered Claims it held as of the Effective Time, with certain modifications. One potential

## Proposed Procedures and Restrictions

15.     In light of the above, the Debtors seek to implement the following procedures and

restrictions:

(a)     Notice.

(i)     Within five business days after the Court's entry of the Interim Trading Order, the

Debtors propose to provide a notice describing the authorized trading restrictions and notification

requirements, substantially in the form attached as Exhibit 1 to the Motion, to (A) the Office of

the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), (B) each of the

Debtors' 30 largest unsecured creditors on a consolidated basis, (C) the United States Securities

and Exchange Commission, (D) the Internal Revenue Service, (E) any identified Substantial

Equityholders and Substantial Claimholders, (F) counsel to the administrative agent under the

Debtors' proposed post-petition financing facility, and (G) counsel for the Creditors' Committee.

Upon receipt of such notice, counsel for the Creditors' Committee shall send such notice to their

respective committee members.   Upon receipt of such notice and at least once every three

months during the pendency of the Chapter 11 Cases, all indenture trustees and transfer agents

shall send the notice to all holders of Covered Claims of more than $5,000,000 or at least

4,364,505 shares of Stock, as applicable, registered with the indenture trustee or transfer agent.

---

exception arises in the case of a creditor that violates the Participation Restriction set out in Section (c) of Paragraph 1 of the Interim Trading Order (and also in Section 1(c) of Paragraph 15 herein).  The Participation Restriction prohibits a creditor that participates in the formulation of a plan of reorganization from doing so in a manner that makes evident to the Debtors that the creditor holds claims that are neither "old and cold" nor "ordinary course."  Under applicable Treasury regulations, this conduct precludes such claims from qualifying for the "de minimis" exception while held by such creditor.  Thus, a violation of the Participation Restriction undermines the Debtors' ability to implement a 382(*l*)(5) Plan.  A creditor found by the Court to have violated the Participation Exemption will be required to dispose of its claims to the extent necessary to protect the Debtors' ability to effect the successful implementation of a 382(*l*)(5) Plan.  Prior to seeking to enforce such a remedy, the Debtors must consult with counsel for any official committee appointed in the Chapter 11 Cases (if and when appointed, the "**Creditors' Committee**") and counsel to the administrative agent under the Debtors' proposed post-petition financing facility.

Any registered holder shall, in turn, provide the notice to any holder for whose account the registered holder holds Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as applicable.  Any such holder shall, in turn, provide the notice to any Person for whom the holder holds Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as applicable.  Any Person, or Agent acting on such Person's behalf, that sells Covered Claims in the aggregate amount of $5,000,000 or sells an aggregate amount of at least 4,364,505 shares of Stock (or an option with respect thereto) to another Person (other than pursuant to a transaction consummated on the New York Stock Exchange) shall provide a copy of the notice to such purchaser or to any Agent acting on such purchaser's behalf.

(ii)     Within five business days of the Effective Time, and at least once every three months during the pendency of the Chapter 11 Cases, all indenture trustees and transfer agents shall also send such notice to all holders of Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as applicable.  The Debtors shall also send such notice to all holders of Stock registered directly with any transfer agent.

(iii)     Within five business days after receipt of such notice, any holder registered directly with any transfer agent who is a broker, bank, dealer, or other agent or nominee (each a "**Nominee**") shall, in turn, provide the notice to any holder for whose account the registered holder holds Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock. Any such holder shall, in turn, provide the notice to any Person for whom the holder holds more than $5,000,000 or at least 4,364,505 shares of Stock, and, in the holder's discretion, may provide the notice to additional Persons for whom the holder holds any Stock.  Any Person, or Agent acting on such Person's behalf, that sells Covered Claims in the aggregate amount of $5,000,000 or sells an aggregate amount of at least 4,364,505 shares of Stock (or an option with

respect thereto) to another Person (other than pursuant to a transaction consummated on the New York Stock Exchange) shall provide a copy of the notice to such purchaser or to any Agent acting on such purchaser's behalf.

(b)     <u>Notice of Substantial Equityholder Status.</u>  Any Person who is or becomes a Tax Owner of at least 4,364,505 shares, which represent approximately 4.75% of the issued and outstanding Stock as of the Petition Date (a "**Substantial Equityholder**"), must, on or before the later of  (i) 15 days after service of a notice substantially in the form attached to the Motion as Exhibit 1 or (ii) ten days after that Person becomes a Substantial Equityholder, serve on the Debtors, the Debtors' counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, a notice (the "**Substantial Equityholder Notice**") containing the Tax Ownership information substantially in the form of Exhibit 2 attached to the Motion.

(c)     <u>Restrictions and Procedures for Trading in Stock.</u>  Any Person that, after the Effective Time,

(i)     is not a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of Stock that would cause the Person to become a Substantial Equityholder,

(ii)     is a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Stock, or

(iii)     is a Substantial Equityholder and wishes to sell or otherwise dispose of Tax Ownership of any Stock,

must, prior to the consummation of any such transaction, file with the Court (at the Person's election, in a redacted form that does not include the aggregate principal amount of Stock that

such Person beneficially owns), and serve on the Debtors, the Debtors' counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, an unredacted notice in the form attached to the Motion as <u>Exhibit 3</u>, in the case of a proposed acquisition of Stock, or <u>Exhibit 4</u>, in the case of a proposed disposition of Stock (either such notice, a "**Proposed Stock Transaction Notice**").   The Debtors shall consult with counsel to the administrative agent under the Debtors' proposed post-petition financing facility and counsel for the Creditors' Committee prior to responding to any Proposed Stock Transaction Notice.  If written approval of the proposed transaction is filed with the Court by the Debtors within 15 calendar days following the receipt of a Proposed Stock Transaction Notice, the transaction may proceed.  If written approval of the proposed transaction is not filed by the Debtors with the Court within such period, the transaction may not be consummated unless approved by a final and nonappealable order of the Court.  Further transactions within the scope of this Section (c) must be the subject of additional notices as set forth herein with additional waiting periods.

(d)    <u>Restrictions and Procedures for Trading in Covered Claims.</u>

(i)    Any Person that, after the Effective Time,

(A)    is not a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of an amount of Covered Claims that causes the Person to become a Substantial Claimholder or

(B)    is a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of any additional Covered Claims,

will have an obligation, in the event that the Debtor elects to reorganize under a 382(l)(5) Plan and the Court issues a Sell-Down Order at the request of the Debtors pursuant to Section (e) of

this Paragraph 15, to sell or otherwise transfer Tax Ownership of an aggregate amount of Covered Claims sufficient to prevent such Person from having Tax Ownership of an amount of the reorganized Debtors' stock as a result of the implementation of a 382(*l*)(5) Plan that exceeds the greater of (1) the Applicable Percentage or (2) the percentage specified in the Sell-Down Notice applicable to such Person pursuant to Section (e) of this Paragraph 15; *provided*, *however*, that such Person shall not be required to make any sale or other transfer of Tax Ownership of Covered Claims that would result in such Person having Tax Ownership of an aggregate amount of Covered Claims that is less than either (Y) the Threshold Amount, as revised from time to time or (Z) such Person's Protected Amount.

(ii)      Any Person that participates in formulating any chapter 11 plan of reorganization of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisers with regard to such a plan) shall not do so in a manner that makes evident to the Debtors that any Covered Claims of which such Person has Tax Ownership are Newly Traded Covered Claims (the "**Participation Restriction**").  For this purpose, the Debtors acknowledge and agree that the following activities alone shall not constitute a violation of the Participation Restriction:  filing an objection to a proposed disclosure statement or to confirmation of a proposed plan of reorganization; voting to accept or reject a proposed plan of reorganization; reviewing or commenting on a proposed business plan; membership on a Creditors' Committee or an *ad hoc* Committee; and taking any action required by the Interim Trading Order or the Final Trading Order, as applicable.  Any Person found by the Court to have violated the Participation Restriction shall be required to dispose of Newly Traded Covered Claims of which such Person has Tax Ownership (subject to the Equity Forfeiture Provision described in Section (f) of this Paragraph 15) to the extent necessary to protect the

Debtors' ability to effect successful implementation of a 382(*l*)(5) Plan.  For the avoidance of doubt, (A) such Person shall not be permitted to retain Tax Ownership of any Newly Traded Covered Claims if a Sell-Down Order has been or is subsequently issued pursuant to Section (e)(ii) of this Paragraph 15 and (B) if a Claims Trading Notice Order has been issued pursuant to Section (e)(v) below of this Paragraph 15, such Person shall only be permitted to retain Tax Ownership of Newly Traded Covered Claims to the extent that such retention would not impair the reasonable "cushions" referred to in Section (e)(ii) of this Paragraph 15.  Prior to taking any action to enforce the foregoing two sentences, the Debtors shall consult with counsel to the administrative agent under the Debtors' proposed post-petition financing facility and counsel for the Creditors' Committee.

(e)        Sell-Down Procedures.

(i)        *Reporting of Substantial Claimholder Status.*  In order to assess the feasibility of implementing a 382(*l*)(5) Plan and the need for petitioning the Court for a Sell-Down Order, the Debtors, after consultation with counsel to the administrative agent under the Debtors' proposed post-petition financing facility and counsel for the Creditors' Committee, may file with the Court and further publish and serve in the manner specified in Section (i) of this Paragraph 15 a notice (the "**Reporting Notice**") requiring each Substantial Claimholder, within 30 calendar days of the Debtors' filing of the Reporting Notice with the Court, to serve on the Debtors, their counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, a notice in the form attached to the Motion as Exhibit 5 (a "**Substantial Claimholder Notice**").  A Person that is uncertain whether it is a Substantial Claimholder may serve a Substantial Claimholder Notice in the manner described above in order to preserve its rights under the Interim Trading Order or the Final Trading Order, as applicable.

A Person serving a Substantial Claimholder Notice in the manner described above shall not be required to file the Substantial Claimholder Notice with the Court.  For the avoidance of doubt, the Debtors will not be precluded from filing more than one Reporting Notice pursuant to this subsection (e)(i).

(ii)    *Petition for Sell-Down Order and Notification Procedures*.  If the Debtor elects to reorganize, then after filing a 382(*l*)(5) Plan and Disclosure Statement with respect thereto with the Court, but no later than the expiration of the 75-day period beginning with the date on which the Debtors file a Reporting Notice with the Court, the Debtors may, in consultation with counsel to the administrative agent under the Debtors' proposed post-petition financing facility and counsel for the Creditors' Committee, file a motion with the Court for the issuance of an order (the "**Sell-Down Order**") that (A) authorizes the Debtors to issue Sell-Down Notices to each Person that has timely filed a Substantial Claimholder Notice showing Tax Ownership of Covered Claims that, pursuant to the terms of the 382(*l*)(5) Plan (and prior to giving effect to the Sell-Down Order), would entitle such Person to acquire Tax Ownership of more than the Applicable Percentage of the equity of the reorganized Debtors (a "**Potentially Substantial New Equityholder**") and (B) provides that any Person other than a Potentially Substantial New Equityholder shall not be entitled to acquire Tax Ownership of more than the Applicable Percentage of the equity of the reorganized Debtors (or consideration in lieu thereof) if the 382(*l*)(5) Plan is consummated.  The motion for a Sell-Down Order shall be published and served in the manner described in Section (e) of this Paragraph 15.  Each Potentially Substantial New Equityholder shall be served with a copy of the motion and the Sell-Down Notice applicable to such Person.  Counsel for the Creditors' Committee and counsel to the administrative agent under the Debtors' proposed post-petition financing facility shall be

served with a copy of the motion and all Sell-Down Notices.  For the avoidance of doubt, the Debtors will not be precluded from filing more than one motion for the issuance of a Sell-Down Order pursuant to this subsection (e)(ii).

Each Sell-Down Notice shall indicate (A) the Debtors' calculation of the percentage of the equity of the reorganized Debtors of which the Potentially Substantial New Equityholder would otherwise acquire Tax Ownership under the terms of the 382($l$)(5) Plan, based on the Substantial Claimholder Notice filed by such person (such person's "**Preliminary Percentage**"), and (B) the percentage of equity of the reorganized Debtors of which such person will be permitted to acquire Tax Ownership under the 382($l$)(5) Plan, based on a proportionate reduction to the Preliminary Percentage of each Potentially Substantial New Equityholder (except to the extent that the Debtors determine that such a reduction would result in the requirement that a Potentially Substantial New Equityholder sell or otherwise transfer Covered Claims that are not Newly Traded Covered Claims).  For instance, if Potentially Substantial New Equityholders are required to reduce their Preliminary Percentage by 20%, a Potentially Substantial New Equityholder whose Preliminary Percentage was 15% generally would be required to sell Covered Claims such that it would be entitled to receive no more than 12% of the equity of the reorganized Debtors under the 382($l$)(5) Plan.  If a Potentially Substantial New Equityholder holds more than one category of Covered Claims, the category or categories of Covered Claims to be sold in order to comply with the Sell-Down Notice will be left to the discretion of the Potentially Substantial New Equityholder.

(iii)    *Procedures for Objection to a Sell-Down Notice.*  A Potentially Substantial New Equityholder in receipt of a Sell-Down Notice will be permitted to object on any one or more of the following grounds:  (A) the Sell-Down Notice applicable to it contains a mathematical error

and (B) compliance with the Sell-Down Notice applicable to it would require the Potentially Substantial New Equityholder to (1) reduce its Tax Ownership of Covered Claims below the Threshold Amount (so long as it has complied and continues to comply with the Participation Restriction) or below its Protected Amount or (2) transfer Tax Ownership of Covered Claims that are not Newly Traded Covered Claims.  If an objection is filed, the Debtors will be permitted to serve new Sell-Down Notices in their discretion.

Unless the Court determines otherwise for good cause shown, a Sell-Down Order and the related Sell-Down Notices will remain effective notwithstanding amendments to the 382(*l*)(5) Plan; *provided*, *however*, that if the Debtors withdraw the 382(*l*)(5) Plan, the Sell-Down Notices will have no further effect.

(iv)     *Procedures for Implementing a Sell-Down Order.*   Each transfer of Covered Claims required by a final Sell-Down Notice shall occur prior to the later of (A) the date that is ten calendar days after the date of confirmation of the 382(*l*)(5) Plan, (B) the date that is 30 calendar days after receipt of the Sell-Down Notice and (C) the date specified in all of the Sell-Down Notices.

Once a Potentially Substantial New Equityholder has transferred its Covered Claims in accordance with the preceding paragraph, such Person (A) shall, no later than one business day following the latest date for completing such transfer in accordance with the preceding paragraph, serve on the Debtors, their counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, a notice in the form attached to the Motion as Exhibit 6 (a "**Notice of Completed Sell Down**") and (B) under no circumstances, shall acquire additional Covered Claims in a manner that would increase the amount of the reorganized Debtors' equity to which such Person would be entitled

pursuant to the implementation of the 382(*l*)(5) Plan above the percentage specified in the Sell-Down Notice applicable to such Person.

(v)     *Procedure If No Sell-Down Notices Are Required.*   If the Debtors determine, based on the Substantial Claimholder Notices filed in response to the Reporting Notice, that no Sell-Down Notices appear necessary in order to implement the 382(*l*)(5) Plan, the Debtors may move the Court for an order requiring advance notice of certain acquisitions of Covered Claims (the "**Claims Trading Notice Order**").   Under the Claims Trading Notice Order,

(A)     any Potentially Substantial New Equityholder proposing to acquire Covered Claims in a transaction following which such Person would have Tax Ownership of Covered Claims that, pursuant to the terms of the 382(*l*)(5) Plan, would entitle such Person to receive equity of the reorganized Debtors in excess of the amount of equity to which such Person would have been entitled based on the holdings reported on such Person's Substantial Claimholder Notice, and

(B)     any Person that would become a Potentially Substantial New Equityholder by virtue of a proposed acquisition of Covered Claims,

will be required, prior to the consummation of any such transaction, to serve on the Debtors, their counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, a notice in the form attached hereto as Exhibit 7 (a "**Proposed Covered Claim Transaction Notice**").   The same procedures applicable to a Proposed Stock Transaction Notice (described in Section (b) of this Paragraph 15) will apply with respect to a Proposed Covered Claim Transaction Notice.   If the Debtors do not give written consent to the proposed transaction, and the Person that has delivered the Proposed

Covered Claim Transaction Notice requests a hearing, the procedures described in Section 15(e)(iii) of this Paragraph 15 will apply.

In addition, the Claims Trading Notice Order will require any Person that has acquired Tax Ownership of Covered Claims for which it did not file a Substantial Claimholder Notice and as to which a motion would have been required under the preceding paragraph, but for the fact that such acquisition occurred prior to the entry of the Claims Trading Notice Order, to serve notice of such fact on the Debtors, their counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee, within 15 calendar days of the entry of the Claims Trading Notice Order.  If the Debtors determine that the retention by such Person of such Covered Claims could jeopardize the implementation of the 382(*l*)(5) Plan, they will serve a Sell-Down Notice on such Person, in which case the procedures described in this Section (e) will apply.

(f)     Confidentiality.  The Debtors, the Debtors' counsel, counsel to the administrative agent under the Debtors' proposed post-petition financing facility, and counsel for the Creditors' Committee shall keep all information provided in all notices delivered pursuant to the Interim Trading Order or Final Trading Order, as applicable, strictly confidential and shall not disclose the contents thereof to any person (including any lender or any member of any Creditors' Committee), except (i) to the extent necessary to respond to a petition or objection filed with the Court, (ii) to the extent otherwise required by law, or (iii) to the extent that the information contained therein is already public; *provided*, *however*, that the Debtors may disclose the contents thereof to their professional financial advisers, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order.  To the extent that confidential information is necessary to respond to a petition or

objection filed with the Court, such confidential information shall be filed under seal or in redacted form.  For the avoidance of doubt, the foregoing provisions shall not preclude the Debtors from including in their unredacted, unsealed filings with the Court summary information regarding the amount of equity of the reorganized Debtors that Potentially Substantial New Equityholders (not identified by name or otherwise) would be expected to receive under the terms of the 382(*l*)(5) Plan before and after the implementation of the Sell-Down Order.

(g)      Sanctions for Noncompliance.

(i)      *Sanctions for Noncompliance Relating to Stock*.  Acquisitions and dispositions of Tax Ownership of Stock in violation of the Procedures set forth in Section (c) of this Paragraph 15 shall be void *ab initio*, and the sanction for violating Section (c) of this Paragraph 15 shall be reversal of the noncompliant transaction or such other (or additional) measures as the Court may consider appropriate.  Until the Court enters a final order, any acquisition or disposition of Tax Ownership of Stock after the Petition Date in violation of the Procedures set forth above shall be null and void *ab initio* as an act in violation of the automatic stay prescribed by section 362 of the Bankruptcy Code and pursuant to the Court's equitable power prescribed in section 105(a) of the Bankruptcy Code.

(ii)      *Noncompliance Relating to a Sell-Down Notice or a Claims Trading Notice Order*.  In the event that any Person fails to comply with a final Sell-Down Notice applicable to it, such Person shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in connection with the implementation of the 382(*l*)(5) Plan in excess of the greater of (A) the Applicable Percentage (which, only with respect to such Person, shall be deemed to be zero unless such Person has complied and continues to comply with the Participation Restriction) or (B) the percent specified on such Sell-Down Notice.  Any

Person that did not file a Substantial Claimholder Notice shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in excess of the Applicable Percentage in connection with the implementation of the 382(*l*)(5) Plan.  Any Person that acquires Covered Claims in violation of a Sell-Down Order or a Claims Trading Notice Order shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu thereof) in connection with the implementation of the 382(*l*)(5) Plan in excess of the percentage of equity to which such Person would have been entitled had it not acquired such Covered Claims.   The foregoing sanctions (the "**Equity Forfeiture Provisions**") shall be effective without any further order of the Court.  Any purported acquisition of Tax Ownership of stock of the reorganized Debtors pursuant to the implementation of the 382(*l*)(5) Plan that is precluded by the Equity Forfeiture Provisions (such stock, the "**Forfeited Equity**") shall be void *ab initio*.  Any Person that receives Forfeited Equity shall, immediately upon becoming aware of such fact, return such Forfeited Equity to the Debtors or, if all of the shares properly issued to such Person and all or any portion of such Forfeited Equity have been sold prior to the time such Person becomes aware of such fact, such Person shall return to the Debtors (Y) any Forfeited Equity still held by such Person and (Z) the proceeds attributable to the sale of Forfeited Equity, calculated by treating the most recently sold shares as Forfeited Equity.  Any Person that receives Forfeited Equity and deliberately fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine.   In no event, however, shall an acquisition or disposition of Tax Ownership of Covered Claims be rendered void or unenforceable by reason of the Interim Trading Order or the Final Trading Order, as applicable.

(h)     <u>Discretionary Waiver by Debtors.</u>   The Debtors may, in their sole discretion, waive, in writing, any sanctions, remedies, or notification procedures imposed by the Interim Trading Order or the Final Trading Order, as applicable.

(i)     <u>Notice Procedures.</u>   If the Debtors file a Reporting Notice, a motion for a Sell-Down Order or a change to the definition of the term "Threshold Amount" with the Court, within five business days of such filing, the Debtors shall (i) submit a notice of the filing for publication on the Bloomberg newswire service and the Depository Trust Company Legal Notice System (also known as LENS), (ii) post such notice together with a copy of the filing on the case information website (https://dm.epiq11.com/SouthernFoods) and (iii) serve such notice of the filing on (a) the U.S. Trustee, (b) each of the Debtors' 30 largest unsecured creditors on a consolidated basis, (c) all indenture trustees or transfer agents for the Covered Claims or Stock, as applicable, (d) counsel to the administrative agent under the Debtors' proposed post-petition financing facility, (e) counsel for the Creditors' Committee, (f) any identified Substantial Equityholders and Substantial Claimholders, (g) the Internal Revenue Service, (h) the Securities and Exchange Commission, (i) the United States Environmental Protection Agency, and (j) the United States Attorney's Office for the Southern District of Texas.  Upon receipt of such notice, counsel for the Creditors' Committee shall send such notice to their respective members of the Creditors' Committee.  Upon receipt of such notice, and at least once every three months during the pendency of the Chapter 11 Cases, all indenture trustees and transfer agents shall send the notice to all holders of Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as applicable, registered with the indenture trustee or transfer agent.  Any registered holder shall, in turn, provide the notice to any holder for whose account the registered holder holds Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as

applicable.  Any such holder shall, in turn, provide the notice to any Person for whom the holder holds Covered Claims of more than $5,000,000 or at least 4,364,505 shares of Stock, as applicable.  Any Person, or broker or agent acting on such Person's behalf, that sells Covered Claims in the aggregate amount of $5,000,000 or sells an aggregate amount of at least 4,364,505 shares of Stock (or an option with respect thereto) to another Person (other than pursuant to a transaction consummated on the New York Stock Exchange) shall provide a copy of the notice to such purchaser or to any broker or agent acting on such purchaser's behalf.

(j)      <u>Continued Compliance with Other Applicable Laws and Rules.</u>  The requirements set forth in the Interim Trading Order or Final Trading Order, as applicable, are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

(k)      <u>Special Rules.</u>  A Person acquiring or disposing of Tax Ownership of Stock or Covered Claims in the capacity of Agent of another Person shall not be treated as a Substantial Equityholder or Substantial Claimholder solely to the extent acting in the capacity of Agent, and shall not have an affirmative duty to inquire whether the account, customer, investment fund, principal, trust, or beneficiary is subject to any restrictions or requirements under the Interim Trading Order or the Final Trading Order, as applicable; *provided*, *however*, that the account, customer, investment fund, principal, trust, or beneficiary shall not be excluded from the Interim Trading Order or the Final Trading Order, as applicable, by reason of this Section (k). Specifically and for the avoidance of doubt, the trustee of any trust, any indenture trustee, owner trustee, pass-through trustee, subordination agent, registrar, paying agent, or transfer agent, in each case for any ownership interests, bonds, debentures, or other debt securities (collectively, "**Debt Securities**"), (i) issued by any of the Debtors, (ii) issued by any governmental or quasi-

governmental authority for the benefit of any of the Debtors, (iii) secured by assets of any of the Debtors or agreements with respect to such assets, or (iv) secured by assets leased to any of the Debtors (any such person, an "**Indenture Trustee**"), shall not be treated as a Substantial Claimholder solely to the extent acting in the capacity described above; *provided*, *however*, that neither any transferee of Covered Claims nor any Person for whom an Indenture Trustee acts shall be excluded solely by reason of this provision.

(l)     Definitions.

For purposes of this Motion:

"**382(*l*)(5) Plan**" means a plan of reorganization for the Debtors under chapter 11 of the Bankruptcy Code (i) pursuant to which there is a reasonable possibility that section 382(*l*)(5) will be utilized and (ii) which provides that transfers of Tax Ownership of the reorganized Debtors' equity will be subject to reasonable restrictions for not less than two years after the reorganization.

"**Agent**" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse, or trustee (but not including a trustee qualified under section 401(a) of the I.R.C.).

"**Applicable Percentage**" means, if only one class of common equity of the reorganized Debtors is to be issued pursuant to the terms of a 382(*l*)(5) Plan, 4.75% of the number of such shares that the Debtors reasonably estimate will be issued at the effective time of such 382(*l*)(5) Plan.  If more than one class of equity of the reorganized Debtors is to be distributed pursuant to the terms of a 382(*l*)(5) Plan, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the Disclosure Statement, and shall be expressed in a manner that makes clear how many shares of common equity would constitute the Applicable Percentage.

"**Bankruptcy Code**" has the meaning given in Paragraph 1 of the Motion.

"**Bankruptcy Rules**" has the meaning given in Paragraph 1 of the Motion.

"**Chapter 11 Cases**" has the meaning given in the preamble to the Motion.

"**Claims Trading Notice Order**" has the meaning given in Section (e)(v) of this Paragraph 15.

"**Covered Claims**" means any claims within the meaning of section 101(5) of the Bankruptcy Code against one or more Debtors that are not first priority claims; *provided* that

(i)     if a holder of a claim is uncertain as to the extent to which such claim is a first priority claim, such holder may serve upon the Debtors and Debtors' counsel, written notice of the requesting holder's uncertainty along with a description of the underlying claim and, within ten calendar days after actual receipt of such notice, the Debtors shall, in consultation with the requesting holder, reasonably determine, solely for purposes of the Interim Trading Order or the Final Trading Order, as applicable, the portion of the applicable claim at such time that is a first priority claim, and

(ii)    if a holder of claims is uncertain as to the extent to which the Interim Trading Order or the Final Trading Order, as applicable, applies to it, it can consult with counsel to the administrative agent under the Debtors' proposed post-petition financing facility or counsel for the Creditors' Committee.

For purposes of clause (i), the Debtors' determination is not binding on the holders and shall not preclude a holder from seeking a determination from the Court.

"**Creditors' Committee**" means the official committee of unsecured creditors if and when appointed in the Chapter 11 Cases.

"**Debtors**" has the meaning given in the preamble to the Motion.

"**Debt Securities**" has the meaning given in Section (k) of this Paragraph 15.

"**Deferred Interest Expense**" has the meaning given in Paragraph 7 of the Motion.

"**Disclosure Statement**" means a disclosure statement filed with the Court relating to a proposed plan of reorganization for the Debtors under chapter 11.

"**Effective Time**" means the time of effectiveness of the Interim Trading Order or the Final Trading Order, as applicable.

"**Equity Forfeiture Provisions**" has the meaning given in Section (g)(ii) of this Paragraph 15.

"**Final Trading Order**" means the *Final Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates* in the form attached hereto.

"**Forfeited Equity**" has the meaning given in Section (g)(ii) of this Paragraph 15.

"**Indenture Trustee**" has the meaning given in Section (k) of this Paragraph 15.

"**Interim Trading Order**" means the *Interim Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates* in the form attached to the Motion.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Local Rules**" has the meaning given in Paragraph **Error! Reference source not found.** of the Motion.

"**Motion**" has the meaning given in the preamble hereof.

"**Newly Traded Covered Claims**" means Covered Claims (i) of which a Person acquired Tax Ownership after the date that was 18 months before the Petition Date and (ii) that are not "ordinary course" claims, within the meaning of section 1.382-9(d)(2)(iv) of the Treasury regulations, of which the same Person has always had Tax Ownership.  For the avoidance of doubt, a transferee will be deemed to have owned such Covered Claims for the period that such Covered Claims were owned by the transferor if such Covered Claims were transferred in a "qualified transfer" within the meaning of section 1.382-9(d)(5) of the Treasury regulations.

"**NOL**" has the meaning given in Paragraph 7 of the Motion.

"**Nominee**" has the meaning given in Paragraph 3 of the Motion.

"**Notice of Completed Sell Down**" has the meaning given in Section (e)(iv) of this Paragraph 15.

"**Ownership Change**" has the meaning given in Paragraph 9 of the Motion.

"**Participation Restriction**" has the meaning given in Section (d)(ii) of this Paragraph 15.

"**Person**" means a person or Entity (as such term is defined in section 1.382-3(a) of the Treasury regulations).

"**Petition Date**" has the meaning given in Paragraph 4 of the Motion.

"**Potentially Substantial New Equityholder**" has the meaning given in Section (e)(ii) of this Paragraph 15.

"**Preliminary Percentage**" has the meaning given in Section (e)(ii) of this Paragraph 15.

"**Procedures**" has the meaning given in Paragraph 1 of the Motion.

"**Proposed Covered Claim Transaction Notice**" has the meaning given in Section(e)(v) of this Paragraph 15.

"**Proposed Stock Transaction Notice**" has the meaning given in Section 15(c) of this Paragraph 15.

"**Proposed Orders**" has the meaning given in Paragraph 1 of the Motion.

"**Protected Amount**" means the amount of Covered Claims of which a Person has Tax Ownership at the Effective Time,

(i)     *increased by* (A) the amount of Covered Claims of which such Person acquires Tax Ownership pursuant to contracts entered into before the Effective Time and (B) the amount of Covered Claims of which such Person acquires Tax Ownership after the Effective Time pursuant to the exercise of rights under a secured debt instrument (including a voluntary foreclosure) of which such Person has Tax Ownership before the Effective Time, *minus* the amount of Covered Claims of which such Person disposes pursuant to contracts entered into before the Effective Time,

(ii)    *increased by* the amount of Covered Claims of which such Person acquires Tax Ownership from another Person that are Newly Traded Covered Claims in the hands of the transferor, if either

(A) both the transferor and the transferee are Substantial Claimholders immediately before the transfer or

(B) the transferor is a Substantial Claimholder immediately before the transfer and the transferee becomes a Substantial Claimholder as a result of the transfer, but the transferor ceases to be a Substantial Claimholder as a result of the transfer, and the transferor has complied and continues to comply with the Participation Restriction; *provided* that the transferee's Protected Amount shall only be increased to the extent that the aggregate amount of Newly Traded Covered Claims of which the transferor has Tax Ownership immediately before the transfer exceeds the aggregate amount of Newly Traded Covered Claims of which the transferee has Tax Ownership immediately before the transfer, and the transferor has complied and continues to comply with the Participation Restriction;

*provided* that, in the case of (A) and (B), the transferee's Protected Amount shall only be increased to the extent that (1) the amount transferred to the transferee does not exceed the transferor's Protected Amount immediately before the transfer and (2) the transferee can demonstrate that the transferor is bound by a written agreement to reduce its Protected Amount by a corresponding amount, and

(iii)   *decreased by* the amount of Covered Claims held by such Person as of the Effective Time that are not Newly Traded Covered Claims in the hands of such Person and that are subsequently disposed of by such Person.

"**Rahlfs Declaration**" has the meaning given in the preamble to the Motion.

"**Reporting Notice**" has the meaning given in Section 15(e)(i) of this Paragraph 15.

"**section 382**" has the meaning given in Paragraph 9 of the Motion.

"**section 382(*l*)(5)**" has the meaning given in Paragraph 11 of the Motion.

"**section 382(*l*)(6)**" has the meaning given in Paragraph 11 of the Motion.

"**Sell-Down Notice**" means a notice to a Potentially Substantial New Equityholder requiring the Potentially Substantial New Equityholder to transfer Covered Claims in accordance with Sections (d) and (e) of this Paragraph 15.

"**Sell-Down Order**" has the meaning given in Section 15(e)(ii) of this Paragraph 15.

"**Stock**" means the common stock of Dean Foods Company.

"**Substantial Claimholder**" means a Person that has Tax Ownership of an aggregate amount of Covered Claims, measured where applicable by principal and accrued interest as of the Petition Date, that equals or exceeds the Threshold Amount (as determined from time to time).

"**Substantial Claimholder Notice**" has the meaning given in Section 15(e)(i) of this Paragraph 15.

"**Substantial Equityholder**" has the meaning given in Section 15(a) of this Paragraph 15.

"**Substantial Equityholder Notice**" has the meaning given in Section 15(a) of this Paragraph 15.

"**Tax Attribute(s)**" has the meaning given in Paragraph 7 of the Motion.

"**Tax Ownership**" means beneficial ownership of a Covered Claim or of Stock as determined in accordance with the applicable rules under section 382 and, to the extent provided in those rules, shall include, but not be limited to, direct and indirect ownership (*e.g.*, a holding company would be considered to have Tax Ownership of all shares owned or acquired by its 100% owned subsidiaries), ownership by members of a person's family and Persons acting in concert and, in certain cases, the creation or issuance of an option (in any form), but only to the extent such option is treated as exercised under Treasury Regulation section 1.382-4(d). Any variation of the term Tax Ownership shall have the same meaning. An "option" to acquire stock or claims shall include any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. Tax Ownership of Covered Claims shall be determined as if such Covered Claims were Stock of the Debtors. "**Tax Ownership**" and "**Tax Owner**" shall have correlative meanings.

"**Threshold Amount**" means, as an initial matter, $5,000,000.  The Debtors will periodically review the definition of the Threshold Amount, in consultation with the Creditors' Committee and counsel to the administrative agent under the Debtors' proposed post-petition financing facility, with a view to ensuring the reasonableness thereof, but in no event shall the Threshold Amount be decreased with retroactive effect.  Any changes to the definition of the term Threshold Amount will be filed with the Court and served and published in the manner described in Section (i) of this Paragraph 15.

"**U.S. Trustee**" has the meaning given in Section (a) of this Paragraph 15.

### Ample Support Exists for the Proposed
### Restrictions and Notification Requirements

16.     It is well-established that a debtor's NOL is property of its estate and is protected by section 362 of the Bankruptcy Code.  The Court of Appeals for the Second Circuit, in its seminal decision *Prudential Lines, Inc. v. PSS Steamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991), affirmed the application of the automatic stay and upheld a permanent injunction against a parent corporation that sought to take a worthless stock deduction with regard to the stock of its subsidiary, which was the debtor in that case.  Observing that the worthless stock deduction (which in this context would result in a section 382 limitation of zero) would have adversely affected the subsidiary's ability to use its NOL carryforwards post-bankruptcy, the Second Circuit held that the subsidiary's NOL carryforwards were property of the estate under the broad language of section 541 of the Bankruptcy Code:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate."  Moreover, "[a] paramount and important goal of chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue."  Including the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* at 573 (citations omitted); *see also White Metal Rolling & Stamping Corp. v. Drew Industries, Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr.

S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.").  The Second Circuit then held that the parent corporation's attempt to claim a worthless stock deduction for the stock of its debtor subsidiary would effectively eliminate the value of the debtor's NOL carryforwards and, thus, would be an act to exercise control over estate property in violation of the automatic stay under section 362 of the Bankruptcy Code.  *Prudential Lines*, 928 F.2d at 573–74.  Shortly before this decision was issued, the Eighth Circuit adopted the reasoning of the lower court in *Prudential Lines* and also held that NOL carryforwards are property of the estate.  *Russell v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (citing *Prudential Lines*, 107 B.R. 832, 836 (Bankr. S.D.N.Y. 1989), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991)).  The Eighth Circuit found that NOL carryforwards were property of a debtor's estate for the purpose of determining whether an irrevocable election to carryforward NOLs was an unauthorized post-petition transfer.  *See id.*; *Walterman Implement, Inc. v. Walterman (In re Walterman Implement Inc.)*, 97 A.F.T.R.2d 2006-2626 (Bankr. N.D. Iowa 2006) (holding that "Debtor's subchapter S status is property of the estate" and that revoking the subchapter S election was a violation of the automatic stay).

17.    Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Accordingly, "where a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."  *Prudential Lines*, 928 F.2d at 574 (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)).  The

Second Circuit held that, "despite the fact that the [parent corporation's] action [of filing for a worthless stock deduction] is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate." *See id.*

18.     The Second Circuit also held that the permanent injunction was supported by the court's equitable powers pursuant to section 105(a) of the Bankruptcy Code, and refused to disturb the bankruptcy court's finding that elimination of the debtor's ability to apply its NOL to offset income on future tax returns would impede its reorganization. *Id.*

19.     Similarly, in *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), *aff'd*, 101 F.3d 689 (3rd Cir. 1996), chapter 11 debtors moved to prohibit any transfer of the debtors' stock that could have triggered the section 382 limitation.  The court held that the NOL was property of the estate and it issued an injunctive order to protect the asset and enforce the automatic stay. *Id.* at 927.  Significantly, the court granted the requested relief notwithstanding that the stockholders had not stated an intent to sell their stock and the debtors had not shown the existence of a pending sale that would trigger an Ownership Change. *See id.*  The court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist [d]ebtors in their reorganization process.  This asset is entitled to protection while [d]ebtors move forward toward reorganization." *Id.* (emphasis added).  The court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for a grant of preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits.  The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (citing *Golden Distribs, Ltd. v. Reiss (In re Golden Distribs., Ltd.)*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

20.     Courts in this and other jurisdictions have routinely restricted transfers of equity interests or claims (or have instituted notice procedures regarding such proposed transfers) to protect a debtor against the possible loss of its NOL carryovers and certain other tax attributes. *See, e.g.*, *In re Sanchez Energy Corporation*, 19-34508 (MI) (Bankr. S.D. Tex. September 19, 2019); *In re Vanguard Natural Resources, Inc.*, No. 19-31786 (DRJ) (Bankr. S.D. Tex. Apr. 1, 2019); *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 03, 2019); *In re Gastar Exploration Inc.*, No. 18-36057 (MI) (Bankr. S.D. Tex. Oct. 31, 2018); *In re iHeartMedia, Inc*., No. 18-31274 (MI) (Bankr. S.D. Tex. Apr. 12, 2018); *In re EXCO Res., Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 13, 2018); *In re Cobalt Int'l Energy, Inc*., No. 17-36709 (MI) (Bankr. S.D. Tex. Jan. 11, 2018).

21.     In short, it is well-settled by courts in this and other circuits that section 362(a)(3) of the Bankruptcy Code stays actions that could adversely affect a debtor's NOL carryforwards.

### The Proposed Notice and Approval Procedures Are Necessary and in the Best Interests of the Debtors, Their Estates and Creditors

22.     The proposed procedures and restrictions are necessary to protect the Debtors' Tax Attribute carryforwards, which are valuable assets of the Debtors' estates, while providing appropriate latitude for trading in Stock below specified levels and for trading in Covered Claims. The Debtors' ability to meet the requirements of the tax laws to protect their Tax Attribute carryforwards may be jeopardized unless procedures are established to ensure that certain trading in Stock is either precluded or closely monitored and made subject to Court approval and that the Debtors have the ability to reestablish the status quo with respect to Covered Claims.  However, the Debtors recognize that the trading in Stock below specified levels (with contemporaneous notice of the transfers) and free trading of Covered Claims does not pose a serious risk to the Tax Attribute carryforwards.

23.     The relief requested herein is tailored as narrowly as is reasonable to permit certain Stock and Covered Claims trading to continue, subject only to Bankruptcy Rule 3001(e) and applicable securities, corporate and other laws.  The proposed restrictions on trading are crucial because once a claim or interest is transferred, the transaction arguably might not be reversible for tax purposes, though it should be null and void under section 362 of the Bankruptcy Code.  The relief requested is, therefore, critical to prevent what may be an irrevocable loss of the Debtors' Tax Attribute carryforwards.

### Debtors' Reservation of Rights

24.     Nothing contained herein is intended or should be construed as, or deemed to constitute, an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an assumption or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to the Insurance Obligations under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Emergency Consideration

25.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003(b).  Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."

Fed. R. Bankr. P. 6003.  As set forth in this Motion and the Rahlfs Declaration, the Debtors

believe that an orderly transition into chapter 11 is critical to the viability of the Debtors'

businesses, operations, and estates and that any delay in granting the emergency relief requested

herein could cause immediate and irreparable harm.  Failure to implement the Procedures

immediately could allow for trading activity that could imperil the Debtors' valuable Tax

Attributes, causing irreparable harm.  Accordingly, the emergency relief requested herein is

consistent with Bankruptcy Rule 6003.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

26.     To implement successfully the relief sought herein, the Debtors request that the

Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the

circumstances.  The Debtors also request that, to the extent applicable to the relief requested in

this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until

the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R.

Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is

necessary for the Debtors to operate their businesses without interruption and to preserve value

for their estates.  Accordingly, the Debtors respectfully submit that ample cause exists to justify

the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied

and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of

the relief sought herein justifies immediate relief.

### Notice

27.     Notice of the Interim Hearing and the relief requested in the Motion has been

provided by telecopy, email, overnight courier, and/or hand delivery, to (a) the United States

Trustee for the Southern District of Texas, (b) those creditors holding the 30 largest unsecured

claims against the Debtors' estates (on a consolidated basis), (c) White & Case LLP, as counsel to Coöperatieve Rabobank U.A., New York Branch, the administrative agent under the Debtors' prepetition receivables purchase agreement, the administrative agent under the Debtors' prepetition secured revolving credit facility, and the administrative agent under the Debtors' proposed post-petition financing facility, (d) indenture trustee under the Debtors' prepetition unsecured bond indenture, (e) Mayer Brown LLP, as counsel to PNC Bank, National Association, the co-agent under Debtors' prepetition receivables purchase agreement, (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to an ad hoc group of prepetition unsecured noteholders, (g) the Securities and Exchange Commission, (h) the Internal Revenue Service, (i) the United States Attorney's Office for the Southern District of Texas, (j) the state attorneys general for states in which the Debtors conduct business, (k) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, (l) any identified Substantial Equityholders and Substantial Claimholders, and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  A copy of this Motion and any order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SouthernFoods.   Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c) and 9014, the Local Rules, and the Complex Case Rules.

### No Prior Request

28.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders, substantially in the forms attached hereto, respectively, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   November 12, 2019
        Houston, Texas

        Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ William R. Greendyke*
   William R. Greendyke (SBT 08390450)
   Jason L. Boland (SBT 24040542)
   Robert B. Bruner (SBT 24062637)
   Julie Goodrich Harrison (SBT 24092434)
   1301 McKinney Street, Suite 5100
   Houston, Texas 77010-3095
   Tel.:  (713) 651-5151
   Fax:  (713) 651-5246
   william.greendyke@nortonrosefulbright.com
   jason.boland@nortonrosefulbright.com
   bob.bruner@nortonrosefulbright.com
   julie.harrison@nortonrosefulbright.com

*-and-*

**DAVIS POLK & WARDWELL LLP**

Brian M. Resnick (*pro hac vice* pending)
Steven Z. Szanzer (*pro hac vice* pending)
Nate Sokol (*pro hac vice* pending)
Dan Meyer (*pro hac vice* pending)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
brian.resnick@davispolk.com
steven.szanzer@davispolk.com
nathaniel.sokol@davispolk.com
daniel.meyer@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ William R. Greendyke*
William R. Greendyke