ENTERED
11/13/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | ) | Case No. 19-36313 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**FINAL ORDER AUTHORIZING (I) DEBTORS TO PAY PREPETITION CRITICAL VENDOR CLAIMS AND 503(B)(9) CLAIMS IN THE ORDINARY COURSE OF BUSINESS, (II) DEBTORS TO RETURN GOODS, AND (III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**
[Relates to Dkt. No. 28]

Upon the motion (the "**Motion**")[2] of Southern Foods Group, LLC, Dean Foods Company, and certain of their affiliates (collectively, the "**Debtors**") for entry of interim and final orders, pursuant to sections 105(a), 363(b)(1), and 363(c)(1) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) establishing procedures pursuant to which the Debtors may engage in discussions with counterparties that may qualify as Critical Vendors regarding the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

validity and amount of their respective claims and to determine whether any such counterparties are Critical Vendors, (b) authorizing, but not directing, the Debtors to pay, in their sole discretion, prepetition obligations related to Critical Vendors and valid claims of vendors under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business, (c) authorizing the Debtors, in their sole discretion, under section 546(h) of the Bankruptcy Code, to return Goods purchased from Vendors by the Debtors prior to the Petition Date for credit against such Vendors' prepetition claims, and (d) authorizing the Debtors' financial institutions to receive, process, honor, and pay checks or wire transfers used by the Debtors to pay the foregoing; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper, and adequate notice of the Motion under Bankruptcy Rule 6004(a) and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Rahlfs Declaration, and the Matson Declaration; and the Court having held interim and final hearings on the Motion; and the Court having granted interim relief on the Motion on [·], 2019 (D.I. [·]); and the Court having determined that the legal and factual bases set forth in the Motion, the Rahlfs Declaration, the Matson Declaration, and at the hearings establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their

estates, and all other parties in interest; and upon all of the proceedings had before the Court; and all objections to the Motion, if any, having been withdrawn, resolved, or amended; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Debtors are authorized, but not directed, to pay all or part of, in their sole discretion, the Critical Vendor Claims in the ordinary course of business.

2. The Debtors are authorized, but not directed, to pay all or part of, in their sole discretion, the 503(b)(9) Claims in the ordinary course of business.

3. The Debtors, in their sole discretion, may condition payment of any Critical Vendor Claims or 503(b)(9) Claims upon agreement by the Critical Vendor to continue to supply goods or services to the Debtors on such Critical Vendor's Customary Trade Terms for a period following the date of such agreement or on such other terms and conditions as are acceptable to the Debtors.

4. As a further condition of receiving payment on a Critical Vendor Claim or a 503(b)(9) Claim, the Debtors are authorized, in their sole discretion, to require that such Critical Vendor or such holder of a 503(b)(9) Claim agree to take whatever action is necessary to remove any existing trade liens at such Critical Vendor's or such holder of the 503(b)(9) Claim's sole cost and expense and waive any right to assert a trade lien on account of the paid Critical Vendor Claim or 503(b)(9) Claim.

5. The Debtors may, in their sole discretion, cause Critical Vendors or holders of 503(b)(9) Claims to enter into an agreement, including provisions substantially in the form attached to the Motion (the "**Vendor Agreement**"), as a condition to paying a Critical Vendor Claim or a 503(b)(9) Claim.

6. Any party that accepts payment from the Debtors on account of a Critical Vendor Claim or 503(b)(9) Claim shall be deemed to have agreed to the terms and provision of this Order.

7. The Debtors are authorized, but not directed, to enter into Vendor Agreements when the Debtors determine, in their sole discretion, that it is appropriate to do so in connection with making payments to Critical Vendor or holder of a 503(b)(9) Claim; *provided*, *however*, that the Debtors' inability to enter into a Vendor Agreement shall not preclude them from paying a Critical Vendor Claim or a 503(b)(9) Claim when, in their sole discretion, such payment is necessary to the Debtors' operations.

8. If the Debtors determine that, in their sole discretion, a Critical Vendor or a holder of a 503(b)(9) Claim has not complied with the terms and provisions of a Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the Vendor Agreement, or on such terms as were individually agreed to between the Debtors and such creditor, the Debtors may terminate such a Vendor Agreement, together with the other benefits to the creditor as contained in this Order; *provided*, *however*, that the Vendor Agreement may be reinstated if (a) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the creditor, (b) the underlying default under the Vendor Agreement is fully cured by the creditor not later than five business days after the date the initial default occurred, or (c) the Debtors, in their sole discretion, reach a subsequent agreement with the creditor.

9. If a Critical Vendor or a holder of a 503(b)(9) Claim that has received payment of a Critical Vendor Claim or a 503(b)(9) Claim, respectively, later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this

Order, then the Debtors may, in their sole discretion, and without further order of the Court (a) declare that the payment of such Critical Vendor Claim or such 503(b)(9) Claim is a voidable post-petition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Critical Vendor or holder of such 503(b)(9) Claim in cash or in goods (including by setoff against post-petition obligations), (b) demand that the creditor immediately return such payments in respect of its Critical Vendor Claim or its 503(b)(9) Claim to the extent that the aggregate amount of such payments exceeds the post-petition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Debtors, such creditor's Critical Vendor Claim or 503(b)(9) Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Critical Vendor or holder of the applicable 503(b)(9) Claim to their original positions, as if the agreement had never been entered into and the payment of the creditor's Critical Vendor Claim or 503(b)(9) Claim had not been made.

10. The Debtors shall maintain a matrix/schedule of payments made pursuant to this Order, including the following information: (a) the names of the payees; (b) the nature of the payment; (c) the amount of the payment; (d) the Debtor or Debtors that made the payment; (e) the payment date; and (f) the purpose of such payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, the administrative agent under the Debtors' proposed post-petition financing facility, and any official committee appointed in the Chapter 11 Cases monthly on the day on which they file their Monthly Operating Report.

11. All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors and holders of 503(b)(9) Claims as contained in this Order,

upon entry of an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

13. Payments of Critical Vendor Claims and 503(b)(9) Claims may include a communication of the following statement:

12. The Debtors are authorized, in their sole discretion and solely in the ordinary course of business and in accordance with past practices, under section 546(h) of the Bankruptcy Code, subject to the limitations imposed by any orders of this Court and the prior rights of holders of security interests in such Goods or the proceeds of such Goods, to the extent of such interests, to return to Goods that were delivered before the Petition Date for an offset of the purchase price of such Goods against such vendors' prepetition claims.

13. Payments of Critical Vendor Claims and 503(b)(9) Claims may include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the United States Bankruptcy Court for the Southern District of Texas, dated _____, 2019 in the jointly administered chapter 11 cases of Southern Foods Group, LLC, et al. (Case No. 19-36313), entitled "*Final Order Authorizing (i) Debtors To Pay Prepetition Critical Vendor Claims and 503(b)(9) Claims in the Ordinary Course of Business, (ii) Debtors to Return Goods, and (iii) Financial Institutions To Honor and Process Related Checks and Transfers*" and submits to the jurisdiction of that Court for enforcement thereof.

14. All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on, or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

15. The Debtors are authorized, but not required to issue, in their sole discretion, new post-petition checks, or effect new fund transfers, for the Critical Vendor Claims and 503(b)(9)

Claims to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the Critical Vendor or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

16. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

17. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

18. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims or defenses of the Debtors' rights to dispute any claim on any grounds, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

19. Notwithstanding anything to the contrary in this Order, in the event of any inconsistency between the terms of this Order and the terms of (a) any order of this Court approving the debtor-in-possession financing facility and use of cash collateral (the "**DIP Order**"), including, without limitation, any budget in connection therewith, or (b) any order approving the Debtors' continued performance under their securitization facility (the

"**Securitization Order**"), the terms of the DIP Order or the Securitization Order, as applicable, shall govern.

20. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

21. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

22. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

23. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  November 13, 2019.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**