**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SOUTHERN FOODS GROUPS, LLC, *et al.*, | ) | Case No. 19-36313 (DRJ) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503,
506, 507, AND 552 AND RULES 2002, 4001, 6003, 6004, AND 9014 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING THE
DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION
FINANCING, AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) PROVIDING
ADEQUATE PROTECTION TO  PREPETITION SECURED PARTIES,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated November 12, 2019 (the "Motion"),[2] of Dean Foods Company

("Dean Foods" or "DIP Borrower") and certain of its affiliates, the debtors and debtors-in-

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"),

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows:  Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

seeking the entry of this interim order (the "Interim Order") and a Final Order (as defined below) pursuant to Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "Complex Case Rules") promulgated by the United States Bankruptcy Court for the Southern District of Texas (I) authorizing the Debtors to (A) obtain senior secured superpriority post-petition financing, and (B) use cash collateral, (II) granting liens and superpriority administrative expense claims, (III) providing adequate protection to the Prepetition Secured Parties (as defined below), (IV) scheduling a final hearing, and (V) granting related relief, the Debtors sought, among other things, the following relief:

(i)     the Court's authorization for the DIP Borrower to obtain, and for each subsidiary of the DIP Borrower that is a Debtor in these Cases (collectively, the "DIP Guarantors" and, together with the DIP Borrower, the "DIP Loan Parties") to guarantee (unconditionally and on a joint and several basis) senior, secured, superpriority, priming, debtor-in-possession financing in an aggregate principal amount of $425,000,000 (the "DIP Facility"), participation in which has been offered to each of the Prepetition Revolving Lenders (as defined below) on a *pro rata* basis, consisting of: (A) a new money revolving credit facility in the aggregate principal amount of up to $236,200,000 (the "DIP Revolving Facility"), which shall be available for the incurrence of new money revolving loans (the "DIP Revolving Loans"), including, up to a $25,000,000 sub-limit (the "DIP L/C Sub-Limit"), and subject to certain conditions thereon, the issuance of

letters of credit (the "DIP Letters of Credit"); and (B) upon the entry of the Final Order, term loans (the "DIP Roll-Up Loans" and, together with the DIP Revolving Loans, the "DIP Loans"; and the DIP Loans, collectively, with the DIP Letters of Credit and with any other financial accommodations provided for under the DIP Facility, the "DIP Extensions of Credit") in an aggregate principal amount not to exceed the aggregate principal amount of all Prepetition Revolving Loans outstanding as of the Petition Date (as defined below), which Prepetition Revolving Loans shall be, on a dollar-for-dollar basis, refinanced as (and deemed repaid by) the DIP Roll-Up Loans (the "Revolver Refinancing");

(ii)     the Court's authorization for the Debtors, subject to satisfaction (or waiver) of all applicable conditions precedent under the DIP Loan Documents (as defined below) in accordance therewith:

(a)     during the period (the "Interim Period") from the date hereof through and including the earlier to occur of (x) the date of entry of the Final Order by this Court and (y) the Termination Date (as defined below), in accordance with the terms of the DIP Credit Agreement (as defined below), to (1) incur DIP Revolving Loans and (2) subject to, and to the extent of any availability under, the DIP L/C Sub-Limit, obtain issuance of DIP Letters of Credit, in an aggregate principal amount (with respect to DIP Revolving Loans and any DIP Letters of Credit) not to exceed $50,000,000 (the "Interim Availability"), and

(b)     upon entry of the Final Order and thereafter until the Termination Date, in accordance with the terms of the DIP Credit Agreement, (1)(A) to incur DIP Revolving Loans and (B) subject to, and to the extent of any availability

under, the DIP L/C Sub-Limit, obtain issuance of DIP Letters of Credit (with respect to the foregoing clauses (A) and (B), in an aggregate principal amount not to exceed $236,200,000 (including the aggregate amount borrowed under the DIP Facility during the Interim Period)), and (2) to incur DIP Roll-Up Loans in an aggregate principal amount not to exceed $188,800,000 and consummate the Revolver Refinancing;

(iii)    the Court's authorization for the Debtors to enter into, execute and deliver documentation evidencing the DIP Facility, including, without limitation, the Senior Secured Superpriority Debtor-in-Possession Credit Agreement, by and among, the DIP Borrower, Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), as arranger, Rabobank, as administrative agent and as collateral agent (in such capacities, collectively, the "DIP Agent"), and as the Issuing Bank (in such capacity, the "DIP Issuing Bank"), the financial institutions from time to time party thereto as lenders (the "DIP Lenders" and, together with the DIP Agent, the DIP Issuing Bank, and each other Holder of Secured Obligations under and as defined in the DIP Credit Agreement, the "DIP Secured Parties"), in substantially the form attached hereto as Exhibit 1 (the "DIP Credit Agreement" and, collectively with this Interim Order, the Final Order, and all other Loan Documents (as defined in the DIP Credit Agreement), including, without limitation, all fee letters and agreements entered into in connection therewith, in each case, as hereafter amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, collectively, the "DIP Loan Documents"), in each case, to which they are a party, and to perform such other and

further acts as may be necessary or appropriate in connection therewith,  or otherwise required under the DIP Loan Documents;

(iv)     the Court's authorization for the Debtors to use the proceeds of the DIP Facility in accordance with the 13-week cash flow forecast prepared by the Debtors and annexed hereto as <u>Exhibit 2</u> (as updated from time to time pursuant to the DIP Loan Documents and subject to the prior approval of the Required Lenders, the "<u>DIP Budget</u>")[3], subject to any Permitted Variances and as otherwise provided herein and in the other DIP Loan Documents;

(v)     the granting by the Court, as of the Petition Date (as defined below), to the DIP Agent (for the benefit of the DIP Lenders) in respect of the DIP Obligations (as defined below), of a superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code and first priority priming liens on and security interests in substantially all assets and property of the Debtors (now owned or hereafter acquired), pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, in each case, as and to the extent, and subject to the priorities, set forth more fully below and in the DIP Loan Documents, and subject to the Carve-Out (as defined below);

(vi)     the Court's authorization for the Debtors to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "<u>Cash Collateral</u>") in which the Prepetition Secured Parties have an interest;

---

[3]  For the avoidance of doubt, any waiver or consent to a budget variance entered into by the Debtors and the DIP Agent (with the consent of the requisite DIP Secured Parties as provided in and consistent with their respective rights under the DIP Loan Documents) pursuant to the DIP Credit Agreement shall be deemed a waiver or consent with respect to any provision in this Interim Order requiring compliance with, or providing authorization subject to,the DIP Budget as it pertains to the applicable budget variance.

(vii)    the granting by the Court, as of the Petition Date, of the Adequate Protection Superpriority Claim (as defined below) and Adequate Protection Liens (as defined below), to the extent of and as compensation for any Diminution in Value (as defined below), and the payment of fees and expenses to the Prepetition Agent (as defined below) for the benefit of the Prepetition Secured Parties, in each case, as set forth more fully below and subject to the Carve-Out;

(viii)    modification by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, this Interim Order and the other DIP Loan Documents;

(ix)    the scheduling by the Court of a final hearing (the "Final Hearing") to consider entry of a Final Order as provided in the DIP Credit Agreement (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion;

(x)    the waiver by the Court of any applicable stay (including under Bankruptcy Rule 6004) and provision for the immediate effectiveness of this Interim Order; and

the Court having jurisdiction to consider the matters raised in the Motion pursuant to U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it

appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of Gary Ralhfs in Support of the First Day Motions and Pursuant to Local Bankruptcy Rule 1007-2*, and *the Declaration of Bo S. Yi in Support of the Motion*; and the Court having held an interim hearing on the Motion on November [●], 2019 (the "<u>Interim Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing as contemplated by Bankruptcy Rule 4001(b)(2); and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

      A.     **<u>Petition Date</u>.**  On November 12, 2019 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Court</u>") commencing these Cases.  The Debtors have continued in the management and operation of their businesses and

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

B.      **Jurisdiction and Venue.**   The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C.      **Committee Formation.**   As of the date hereof, no official committee of unsecured creditors has been appointed in the Cases (together with any other statutory committee, a "Committee").

D.      **Notice**.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by telecopy, email, overnight courier and/or hand delivery, to (i) the United States Trustee for the Southern District of Texas, (ii) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis), (iii) White & Case LLP, as counsel to Coöperatieve Rabobank U.A., New York Branch, the administrative agent under Debtors' prepetition receivables purchase agreement and administrative agent under Debtors' prepetition secured revolving credit facility, (iv) the indenture trustee under the Debtors' prepetition unsecured bond indenture, (v) Mayer Brown LLP, as counsel to PNC Bank, National Association, the predecessor co-agent, purchaser, and letter of credit issuer under the Receivables Financing Agreement (as defined below), (vi) Paul, Weiss, Rifkind, Wharton &

Garrison LLP, as counsel to an ad hoc group of prepetition unsecured noteholders, (vii) the Securities and Exchange Commission, (viii) the Internal Revenue Service, (ix) the United States Attorney's Office for the Southern District of Texas, (x) the state attorneys general for states in which the Debtors conduct business, (xi) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").   Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c) and 9014, the Local Rules and the Complex Case Rules.

E.     **Prepetition Secured Indebtedness.**

(i)     Prepetition Revolving Credit Facility

(a)     Dean Foods, as borrower, each lender party thereto from time to time (the "Prepetition Revolving Lenders"), and Rabobank, as administrative agent and collateral agent (in such capacities, the "Prepetition Agent," and together with the Prepetition Revolving Lenders, and the Issuing Bank and each other Holder of Secured Obligations under (and in each case as defined in) the Prepetition Revolving Credit Agreement (as defined below), the "Prepetition Secured Parties"), are parties to that certain Credit Agreement, dated as of February 22, 2019 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "Prepetition Revolving Credit Agreement" and, together with the Prepetition Security Agreement and the Prepetition Guaranty (each as defined below), and the other Loan Documents (as defined in

the Prepetition Revolving Credit Agreement), in each case, as amended, amended and restated, waived, supplemented and/or modified from time to time, the "Prepetition Loan Documents"), which provided for a revolving borrowing base credit facility in the aggregate principal amount of up to $265,000,000 (which amount was increased by $85,000,000 to an aggregate principal amount of up to $350,000,000 as of August 27, 2019, pursuant to certain supplements to the Prepetition Revolving Credit Agreement), including a letter of credit sub-limit of up to $25,000,000 and swingline availability in an aggregate principal amount of up to $10,000,000 (the "Prepetition Revolving Credit Facility").

(b)     Pursuant to that certain Guaranty, dated as of February 22, 2019 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "Prepetition Guaranty"), each of the subsidiaries of Dean Foods party thereto from time to time (together with Dean Foods, as borrower, the "Prepetition Loan Parties") unconditionally guaranteed on a joint and several basis the Prepetition Obligations (as defined below), which guaranty is secured by the Prepetition Collateral (as defined below).

(c)     Pursuant to that certain Pledge and Security Agreement, dated as of February 22, 2019 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "Prepetition Security Agreement") and the other Prepetition Loan Documents, the Prepetition Obligations owed to the Prepetition Secured Parties are secured by first priority Liens (as defined in the Prepetition Revolving Credit Agreement, the "Prepetition Liens") on, and security

interests in, all of the Collateral (as defined in the Prepetition Revolving Credit Agreement), collectively, the "Prepetition Collateral").

(ii)     Receivables Financing

(a)     Dairy Group Receivables, L.P. ("Dairy Group") and Dairy Group Receivables II, L.P. (together with Dairy Group, the "Receivables Sellers"), as sellers, certain subsidiaries of Dean Foods who originated the receivables sold to the Receivables Sellers, as Servicers (as defined in the Receivables Financing Agreement (as defined below), the "Receivables Financing Servicers"), the Purchasers (as defined in the Receivables Financing Agreement, the "Receivables Purchasers"), Rabobank, as agent for the Receivables Purchasers (in such capacity, the "Receivables Financing Agent"), and as issuer of letters of credit (in such capacity, the "Receivables LC Issuer"), are parties to that certain Eighth Amended and Restated Receivables Purchase Agreement, dated as of February 22, 2019 (as amended by the Ninth Amended and Restated Receivables Purchase Agreement, dated on or before the Effective Date under and as defined in the DIP Credit Agreement, and as may be further amended and restated, waived, supplemented and/or modified from time to time, the "Receivables Financing Agreement" and, together with the other Transaction Documents (as defined in the Receivables Financing Agreement), the "Receivables Financing Documents"), which provided for a receivables securitization facility in the aggregate principal amount of up to $450,000,000, which shall be reduced to $425,000,000 upon entry by the Court of an order approving the continuation and amendment of the Receivables Purchase Agreement on an interim basis (the "Interim Securitization

Order"), including the ability to issue letters of credit up to an aggregate face amount of $450,000,000, which shall be reduced to $425,000,000 upon entry of the Interim Securitization Order (collectively, the "Receivables Financing") pursuant to which the Receivables Sellers sold certain accounts receivables belonging to certain subsidiaries of Dean Foods to the Receivables Purchasers.

(b)     Notwithstanding that transfers of the Transferred Receivables pursuant to (and as defined in) the Receivables Financing Agreement are intended to be true sales, the Obligations under (and as defined in) the Receivables Financing Agreement owed by Receivables Sellers and the Receivables Financing Servicers to the Receivables Purchasers are secured by first priority protective liens on, and security interests in, the  Transferred Receivables and other Pool Assets (as defined in the Receivables Financing Agreement and, collectively with the Transferred Receivables, the "Receivables Financing Collateral").

(c)     Pursuant to that certain Fifth Amended and Restated Performance Undertaking, dated February 22, 2019 (as amended pursuant to that certain Sixth Amended and Restated Performance Undertaking, dated as of the Closing Date, and as may be further amended, restated, supplemented, or otherwise modified from time to time) and that certain Fourth Amended and Restated Performance Undertaking, dated as of February 22, 2019 (as amended pursuant to that certain Fifth Amended and Restated Performance Undertaking, dated on or before the Effective Date under and as defined in the DIP Credit Agreement, and as may be further amended, restated, supplemented or otherwise modified from time to time), the DIP Borrower has provided to the Receivables Financing Agent, for

itself and for the benefit of the Receivables Purchasers and the applicable Receivables Sellers, an absolute, unconditional and continuing guaranty of the full and punctual performance by each of the Receivables Financing Originators of certain obligations under the Receivables Financing Documents.

(iii)    <u>Prepetition Unsecured Notes</u>.  Pursuant to that certain Indenture, dated as of February 25, 2015 (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "<u>Prepetition Indenture</u>"), among Dean Foods, as issuer, The Bank of New York Mellon Trust Company, N.A., as trustee, and the Guarantors (as defined in the Prepetition Indenture), Dean Foods issued 6.50% Senior Notes due March 15, 2023 in an aggregate principal amount of $700,000,000.

(iv)    <u>Intercreditor Agreement</u>.  The respective rights of the Prepetition Secured Parties, on the one hand, and the Receivables Purchasers and Receivables Sellers, on the other hand, to, and the priority of their respective rights to and security interests in, the Lender Collateral and the Securitization Assets (each as defined therein), are set forth in that certain Intercreditor Agreement, dated as of February 22, 2019, among certain of the Debtors, the Prepetition Agent and the Receivables Financing Agent (as amended, amended and restated, waived, supplemented and/or modified from time to time, the "<u>Intercreditor Agreement</u>").

F.    **<u>Stipulations as to Prepetition Obligations</u>**.  Without limiting the rights of a Committee (if any is appointed) or any other party in interest, in each case, with standing and requisite authority, as and to the extent set forth in paragraph 6 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree:

(i)    <u>Prepetition Obligations</u>.

(a)      As of the Petition Date, the Prepetition Loan Parties were justly and lawfully indebted and liable to the Prepetition Secured Parties under the Prepetition Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $188,800,000  on account of outstanding Loans under (and as defined in) the Prepetition Revolving Credit Agreement (the "Prepetition Revolving Loans"), plus all accrued and unpaid interest thereon, and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations, including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by the Prepetition Loan Parties, and all other Obligations under (and as defined in) the Prepetition Revolving Credit Agreement (collectively, the "Prepetition Obligations").

(b)      **Enforceability of the Prepetition Obligations.**      (i) The Prepetition Obligations constitute legal, valid, binding, non-avoidable obligations of the Prepetition Loan Parties enforceable in accordance with the terms of the applicable Prepetition Loan Documents, and (ii) no offsets, recoupments, challenges, contests, attacks, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge, cause of action, or defense, including avoidance, disallowance, disgorgement, subordination (equitable or otherwise), re-characterization, or other challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(c) **Enforceability of Prepetition Liens.** The Prepetition Liens granted by the Prepetition Secured Parties, to or for the benefit of the Prepetition Agent and the other Prepetition Loan Parties, as security for the Prepetition Obligations, encumber the Prepetition Collateral, as the same existed on or at any time prior to the Petition Date. The Prepetition Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise. As of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware of any liens or security interests over the Prepetition Collateral of the Prepetition Loan Parties having priority over the Prepetition Liens, except certain Permitted Liens (as defined in the Prepetition Revolving Credit Agreement). The Prepetition Liens were granted to or for the benefit of the Prepetition Agent and the other Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.

(ii) **Indemnity.** The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the

DIP Liens (as defined below) and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Loan Documents, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto in accordance with the terms of the Prepetition Loan Documents or the DIP Loan Documents, as applicable.  No exception or defense in contract, law or equity exists as of the date of this Interim Order to any obligation set forth, as the case may be, in this paragraph F(ii), in the DIP Loan Documents, or in the Prepetition Loan Documents to indemnify and/or hold harmless the DIP Agent, any other DIP Secured Party, or any Prepetition Secured Party, as the case may be, and any such defenses are hereby waived.

(iii)    **No Control.**  None of the DIP Secured Parties or the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility, the Prepetition Obligations, the DIP Loan Documents and/or the Prepetition Loan Documents.

(iv)    **No Claims or Causes of Action**.  As of the date hereof, there exist no claims or causes of action against any of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties with respect to, in connection with, related to, or arising from the DIP Loan Documents, the Prepetition Loan Documents, the DIP Facility and/or

the Prepetition Revolving Obligations that may be asserted by the DIP Loan Parties, the Prepetition Loan Parties or, to the Debtors' knowledge, any other person or entity.

(v)     **Release.**   The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit all former, current and future DIP Secured Parties and any Prepetition Secured Parties that become DIP Lenders, all holders of participation interests under the DIP Credit Agreement or the Prepetition Revolving Credit Agreement, all Affiliates of the DIP Secured Parties and of the Prepetition Secured Parties, and each of the former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of each DIP Secured Party and each Prepetition Secured Party and of each of their respective Affiliates, in each case in its capacity as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Revolving Credit Facility and the other Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any

so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Agent, the other DIP Secured Parties, and/or the Prepetition Secured Parties.   The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction of the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order.

H.     **Immediate Need for Postpetition Financing and Use of Cash Collateral.**  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and the Local Bankruptcy Rules.  Good cause has been shown for entry of this Interim Order.  An immediate need exists for the Debtors to obtain funds and liquidity to, as the case may be, continue operations, pay the costs and expenses of administering the Cases, and administer and preserve the value of their businesses and estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize the return for all creditors requires the immediate availability of the DIP Facility and the use of Cash Collateral.  In the absence of the immediate availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates and creditors would occur.  Further, the possibility for a successful restructuring would be jeopardized in the absence of the availability of funds in accordance with the terms of this Interim Order.  Thus, the ability of the Debtors to preserve and maintain the value of their assets

and maximize the return for creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

I.     **No Credit Available on More Favorable Terms.**  The Debtors have been unable to obtain on more favorable terms and conditions than those provided in this Interim Order (i) adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, (ii) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, (iii) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (iv) credit for money borrowed secured by a junior lien on property of the estate that is subject to a lien.  The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claim (as defined below) to (or for the benefit of) the DIP Secured Parties, or without granting the adequate protection (including the Revolver Refinancing) as set forth herein.

J.     **Adequate Protection for Secured Parties.**  The Prepetition Agent and the other Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use of Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof and the DIP Budget (subject to Permitted Variances).  The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof, including the DIP Budget (subject to Permitted Variances), during the Interim Period, subject to the terms and conditions set forth in this Interim Order and in the other DIP Loan Documents, including the protections afforded parties acting in "good faith" under Section 363(m) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to the

adequate protection as and to the extent set forth herein pursuant to Sections 361, 362, and 363 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agent and Prepetition Secured Parties' consent thereto; provided, that nothing in this Interim Order or the other DIP Loan Documents shall (i) be construed as a consent by any Prepetition Secured Party that it would be adequately protected in the event any debtor-in-possession financing is provided by a third party (i.e., other than the DIP Lenders), or a consent to the terms of any financing or use of Cash Collateral, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) pursuant to any financing or use of Cash Collateral, in each case, except under the terms hereof, or (ii) prejudice, limit or otherwise impair the rights of the Prepetition Agent (for the benefit of the Prepetition Secured Parties) to seek new, different or additional adequate protection under any circumstances after the date hereof.

K.    **Section 552.**  In light of, as applicable, the subordination of the Prepetition Liens and the Adequate Protection Liens to the DIP Liens and the Carve-Out, and the granting of the DIP Liens on the Prepetition Collateral, the Prepetition Secured Parties are each entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

L.    **Extension of Financing.**  The DIP Secured Parties are committing to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents (including the DIP Budget, subject to Permitted Variances), and subject to (i) the

entry of this Interim Order (and the Final Order), approval of each provision of the DIP Credit Agreement, and (ii) findings by this Court that such financing is essential to the Debtors' estates (and the continued operation of the DIP Loan Parties), that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to and in connection with this Interim Order (and the Final Order) and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case may be, this Interim Order, the Final Order, or any other order, as provided in Section 364(e) of the Bankruptcy Code.  The Prepetition Secured Parties have consented to the use of the Prepetition Collateral and the Cash Collateral, solely in respect of the DIP Facility provided by the DIP Secured Parties, and not in respect of any other postpetition financing or cash collateral facility.

       M.     **Business Judgment and Good Faith Pursuant to Section 364(e).**

       (i)     The terms and conditions of the DIP Facility, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

       (ii)     All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the other DIP Loan Documents by any DIP Loan Party are granted to or for the benefit of the DIP Secured Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

(iii)    The DIP Facility and the DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties.

(iv)    The use of the proceeds to be extended under the DIP Facility and the DIP Loan Documents will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

N.    **Relief Essential; Best Interest.**  The relief requested in the Motion (and provided in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property, and satisfies the requirements of Bankruptcy Rule 6003.  It is in the best interest of the Debtors' estates, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be allowed to enter into the DIP Facility, incur the DIP Obligations, grant the liens and claims contemplated herein and under the DIP Loan Documents to the DIP Secured Parties and the Prepetition Secured Parties, and use Prepetition Collateral, including Cash Collateral, as contemplated herein.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors, the Prepetition Secured Parties and the DIP Secured Parties, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted.**  The Motion is granted in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of

this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

    2.    **DIP Facility.**

    (a)    **DIP Obligations, etc.**    The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur and to perform all obligations under the DIP Facility (including the DIP Obligations) in accordance with and subject to this Interim Order (and, upon its entry, the Final Order) and the other DIP Loan Documents, to enter into, execute and/or deliver all DIP Loan Documents and all other instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the DIP Loan Parties under the DIP Facility, including the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to (i) pay all principal, interest, fees and expenses, indemnities and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, (A) the non-refundable payment to the Arranger, the DIP Agent or the DIP Lenders (as the case may be) of any arrangement, backstop, upfront or administrative fee in any letter agreement between the Debtors, on the one hand, and the DIP Agent, Arranger and/or the DIP Lenders, on the other hand; and (B) the reasonable fees and expenses of White & Case LLP (as counsel to the Prepetition Agent and DIP Agent and as counsel to the Receivables Financing Agent), FTI Consulting (as financial advisors), and any other attorneys and financial and other advisors and consultants of the DIP Agent and the DIP Lenders (including any local counsel and any additional counsel to the Receivables Financing Agent) as may be reasonably required (the "DIP Lender Professionals"), in each case, as and to the extent provided for herein and in

accordance with the other DIP Loan Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities, and all other Obligations (including indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Loan Documents, the "DIP Obligations"), and (ii) upon the entry of the Final Order, and subject to paragraph 6 hereof, to (x) incur the DIP Roll-Up Loans, which shall be deemed to refinance (and repay), on a dollar-for-dollar basis, all outstanding Prepetition Revolving Loans, in accordance with the terms and conditions of this Interim Order and the other DIP Loan Documents and (y) and immediately pay in cash all accrued and unpaid interest and fees outstanding in respect of the Prepetition Revolving Loans as of the date the DIP Roll-Up Loans are incurred, as provided herein and in accordance with the Prepetition Loan Documents. The DIP Obligations shall not otherwise be subject to further approval of this Court.  The DIP Loan Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms.  All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and in the other DIP Loan Documents by any DIP Loan Party are granted to or for the benefit of the DIP Secured Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby (subject, in the case of the DIP Roll-Up Loans, to paragraph 6 hereof).  No obligation incurred, payment made, transfer or grant of security set forth in the DIP Loan Documents by any DIP Loan Party as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

The term of the DIP Facility shall commence following the entry of this Interim Order on the Effective Date and end on the Termination Date, subject to the terms and conditions set forth herein and in the other DIP Loan Documents, including the protections afforded a party acting in good faith under Section 364(e) of the Bankruptcy Code.

(b)     **Authorization to Borrow, etc.**  In order to enable them to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the other DIP Loan Documents, the DIP Borrower is hereby authorized under the DIP Facility during the Interim Period to borrow (and the DIP Guarantors are authorized to guarantee repayment of) DIP Revolving Loans and, subject to any conditions or limitations set forth in the DIP Loan Documents, to issue DIP Letters of Credit, in an aggregate principal amount not to exceed the Interim Availability (and, with respect to any DIP Letters of Credit, the DIP L/C Sublimit) under the DIP Facility.

(c)     **Conditions Precedent.**  The DIP Lenders shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder or under the other DIP Loan Documents unless all conditions precedent to making DIP Extensions of Credit under the DIP Loan Documents have been satisfied or waived in accordance with the terms of the DIP Loan Documents.

(d)     **DIP Collateral.**  As used herein, "DIP Collateral" shall mean, all now owned or hereafter acquired assets and property, whether real or personal, of the Debtors including, without limitation, all Prepetition Collateral, all assets and property pledged under the DIP Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods,

investment property, inventory, deposit accounts, "core concentration accounts," "cash collateral accounts", any bank accounts, and in each case all amounts on deposit therein (or credited thereto) from time to time, equity interests (including all the equity interests of any Debtor in any foreign subsidiary), securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, farm products, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property (whether or not such real property constituted Prepetition Collateral under the Prepetition Loan Documents), fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, interests of any Debtor in any foreign subsidiary, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing, and including, solely upon entry of the Final Order, the proceeds of all of the Debtors' claims and causes of action under Sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "Avoidance Actions"), whether received by judgment, settlement or otherwise.  Notwithstanding the foregoing, the DIP Collateral shall not include any Excluded Property (as defined in the DIP Credit Agreement); provided, however, that DIP Collateral shall include proceeds and products of such Excluded Property (except to the extent such proceeds or products also constitute Excluded Property).

(e)     **DIP Liens.**  Effective immediately upon the entry of this Interim Order, and subject to the Carve-Out, as set forth more fully in this Interim Order, the DIP Agent and each of the other DIP Secured Parties, in order to secure the DIP Obligations, are hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected,

continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Agent and the DIP Secured Parties (x) during the Interim Period, in respect of the DIP Obligations under the DIP Revolving Facility (including, subject to any conditions or limitation specified in the DIP Loan Documents, any DIP Letters of Credit issued under the DIP L/C Sublimit) and (y) upon entry of the Final Order, in respect of the remaining DIP Revolving Loans (including, subject to any conditions or limitation specified in the DIP Loan Documents, any DIP Letters of Credit issued under the DIP L/C Sublimit) and the DIP Roll-Up Loans (pursuant to this Interim Order, any Final Order and the other DIP Loan Documents, the "DIP Liens")):

> (I)        pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable first priority liens on and security interests in all DIP Collateral that was not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date; and

> (II)        pursuant to Section 364(c)(3) and Section 364(d) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable first priority priming liens on and security interests in all other DIP Collateral, which liens and security interests shall, in each case, be (x) junior only to any pre-existing liens as of the Petition Date of a third party, *i.e.,* not any Prepetition Secured Parties (each a "Third Party Lienholder") on the DIP Collateral, but solely to the extent that such liens and security interests of any Third Party Lienholders were, in each case, as of the Petition Date, valid enforceable, perfected and non-avoidable liens, or were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, and (i) senior to the Prepetition Liens or (ii) attached to

property of the Debtors that did not constitute Prepetition Collateral (such liens in the preceding clauses (i) and (ii), the "Permitted Third Party Liens"), and (y) senior to all other liens on, and security interests in the DIP Collateral, including without limitation, the Prepetition Liens, the Adequate Protection Liens, and the liens of any Third Party Lienholders which are *pari passu* with or junior to the Prepetition Liens.

Notwithstanding anything to the contrary contained in this Interim Order or any other DIP Loan Documents, all DIP Liens securing DIP Obligations in respect of the DIP Revolving Facility (including, subject to any conditions or limitation specified in the DIP Loan Documents, any DIP Letters of Credit issued under DIP L/C Sublimit) shall, upon entry of the Final Order, be *pari passu* with the DIP Roll-Up Loans.

(f)     **DIP Liens Senior to Other Liens.**  Effective immediately upon entry of this Interim Order, the DIP Liens shall secure all of the DIP Obligations in respect of the DIP Revolving Facility (including the DIP L/C Sublimit) and, upon entry of the Final Order, also in respect of the DIP Roll-Up Loans, and  shall not, without the consent of the DIP Agent, be made subject or subordinate to, or *pari passu* with, (1) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code, (2) any lien or security interest arising on or after the Petition Date (but shall be subject to the Carve-Out), or (3) any other lien or security interest under Section 363 or 364 of the Bankruptcy Code or otherwise, other than to the Carve-Out or to the extent expressly provided herein, by any court order heretofore or hereafter entered in the Cases.  The DIP Liens and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy

Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Cases.  It is understood and agreed, and hereby ordered, that, notwithstanding the immediately preceding sentence or anything else to the contrary set forth in this Interim Order, in any other DIP Loan Document, or in any other order of this Court entered in the Cases, any amounts advanced or expended by the Prepetition Secured Parties or the DIP Secured Parties, in their sole and absolute discretion and without requiring the consent or approval of any other party, after the occurrence and during the continuation of an Event of Default, directly or indirectly, to protect, preserve, maintain, market, sell or liquidate the Prepetition Collateral or DIP Collateral, including to fund the Debtors' operations during a sale process pursuant to Section 363 of the Bankruptcy Code, and any reasonable professional or advisory fees and expenses of White & Case LLP (as counsel to the Prepetition Agent and DIP Agent and as counsel to the Receivables Financing Agent), FTI Consulting, any local counsel, any additional counsel to the Receivables Financing Agent, and any other advisors, appraisers and/or liquidators retained by the DIP Agent in accordance with the DIP Loan Documents to assist or advise it in such capacities and for such purposes, shall be added to the DIP Obligations for all purposes hereunder and under the other DIP Loan Documents.  The DIP Liens and the Adequate Protection Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or, upon entry of the Final Order, the "equities of the case" exception of Section 552 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code.

(g)     **Superpriority Administrative Claim.**   Effective immediately upon the entry of this Interim Order, and subject to the Carve-Out, the DIP Agent and each of the other DIP Secured Parties, are hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code,

an allowed superpriority claim in the amount of the DIP Obligations owed to them and outstanding from time to time (all such claims granted to the DIP Agent and the other DIP Secured Parties, (x) during the Interim Period, in respect of DIP Obligations under the DIP Revolving Facility (including, subject to any conditions or limitation specified in the DIP Loan Documents, any DIP Letters of Credit issued under the DIP L/C Sublimit), and (y) upon entry of the Final Order, in respect of DIP Obligations under the DIP Revolving Facility (including, subject to any conditions or limitation specified in the DIP Loan Documents, any DIP Letters of Credit issued under the DIP L/C Sublimit) and in respect of the DIP Roll-Up Loans, the "DIP Superpriority Claim"), which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Debtors who are DIP Loan Parties (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provisions of the Bankruptcy Code, including Sections 105, 326, 327, 328, 330, 331, 363, 364, 365, 503, 506(b), 506(c) (subject to the entry of the Final Order), 507(a) (other than 507(a)(1)), 546, 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject only to the Carve-Out, and *pari passu* solely with respect to any superpriority administrative expense claim granted to the Receivables Financing Agent or the Receivables Purchasers pursuant to the Interim Securitization Order (the "Receivables Superpriority Claim"), which DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered

administrative expenses allowed under Section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all pre- and post-petition assets and property, whether existing on the Petition Date or thereafter acquired, of the Debtors and all proceeds thereof (excluding Avoidance Actions, but including, effective upon entry of the Final Order, proceeds of Avoidance Actions). Other than with respect to the Carve-Out and as expressly provided herein, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim, any of the DIP Obligations, Prepetition Liens, or any other claims of the DIP Secured Parties arising hereunder or under the other DIP Loan Documents, or otherwise, in connection with the DIP Facility.

3. **Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility.** Subject to the terms and conditions of this Interim Order, the other DIP Loan Documents, and the DIP Budget (subject to Permitted Variances), and to the adequate protection granted to or for the benefit of the Prepetition Secured Parties as hereinafter set forth, each Debtor is authorized during the Interim Period (and not beyond) to (a) use the Cash Collateral and (b)(i) use DIP Loans, including the proceeds thereof, and (ii) issue DIP Letters of Credit under the DIP Facility in an amount not to exceed the Interim Availability. Notwithstanding anything herein to the contrary, the Debtors' right to use proceeds of DIP Facility or to use Cash Collateral shall terminate on the Termination Date, including upon written notice being provided by the DIP Agent to the Debtors that an Event of Default has occurred and is continuing; provided that, solely as and to the extent provided in paragraph 14 below, during the Default

Notice Period (as defined below), the Loan Parties shall be permitted to continue to use Cash Collateral and proceeds of the DIP Facility in the ordinary course of business and in accordance with the DIP Budget (subject to Permitted Variances), and may request an expedited hearing before the Court to address such issues as may be heard pursuant to paragraph 14 below. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

4.     **Adequate Protection for Prepetition Secured Parties.**  As adequate protection for the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), the Prepetition Agent for the benefit of the Prepetition Secured Parties shall receive adequate protection as follows:

(i)     **Adequate Protection Liens.**  Until the Revolver Refinancing occurs (and, thereafter, on a contingent basis until the expiration of the Challenge Period), to the extent of, and in an aggregate amount equal to, the aggregate diminution in value of such interests, from and after the Petition Date, calculated in accordance with Section 506(a) of the Bankruptcy Code, resulting from, among other things, the use, sale or lease by the Debtors of the Prepetition Collateral (including from the use of Cash Collateral), the granting of the DIP Liens, and the subordination of the Prepetition Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of Section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value"), pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Agent and each of the other Prepetition Secured Parties, shall have replacement security interests in and liens upon (the "Adequate Protection Liens") all of the DIP Collateral, which Adequate Protection

Liens shall be (i) subject to the Carve-Out, (ii) junior and subject to the DIP Liens and any Permitted Third Party Liens and (iii) senior and prior to all other liens thereon.  The Adequate Protection Liens shall in all cases be subject to the Carve-Out.

(ii)    **Adequate Protection Superpriority Claims.**    Until the Revolver Refinancing occurs (and, thereafter, on a contingent basis until the expiration of the Challenge Period), to the extent of the aggregate Diminution in Value, the Prepetition Agent and each of the other Prepetition Secured Parties shall have, subject to the payment of the Carve-Out, an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") as provided for in Section 507(b) of the Bankruptcy Code, immediately junior and subject to the DIP Superpriority Claim and any Receivables Superpriority Claim, and payable from and having recourse to all DIP Collateral; provided, that the Prepetition Secured Parties shall not receive or retain any payments, property, distribution or other amounts in respect of the Adequate Protection Superpriority Claim unless and until the DIP Obligations and (without duplication) the DIP Superpriority Claim has indefeasibly been paid in full in cash.

(iii)    **Adequate Protection Payments, etc.**

(I)    (x)  From and after the entry of this Interim Order, the Prepetition Agent (for the benefit of the Prepetition Secured Parties) shall receive from the Debtors, cash payment of all accrued and unpaid interest and fees owing by the Debtors, whether incurred or accrued prior to or on or after the Petition Date, under the Prepetition Revolving Credit Agreement, at the applicable default rates provided for in the Prepetition Revolving Credit Agreement (including LIBOR pricing options, which

shall remain available until such time as the LIBOR Borrowing (as defined in the Prepetition Revolving Credit Agreement) expire, at which time such loans will accrue interest at the Alternate Base Rate (as defined in the Prepetition Revolving Credit Agreement)) and on the payment dates provided therein, including all accrued and unpaid letter of credit participation fees, unused commitment fees, and fronting fees owing to the Issuing Bank under (and as defined in) the Prepetition Revolving Credit Agreement and/or the other Prepetition Secured Parties under the Prepetition Loan Documents, whether incurred or accrued prior to or on or after the Petition Date, and (y) immediately upon the entry of the Final Order, subject to paragraph 6 hereof, the Debtors shall (1) incur the DIP Roll-Up Loans, which shall be deemed to refinance (and repay), on a dollar-for-dollar basis, all outstanding Prepetition Revolving Loans, in accordance with the terms and conditions of this Interim Order and the other DIP Loan Documents and (2) pay to the Prepetition Secured Parties, in cash, all remaining accrued and unpaid interest and fees owing by the Debtors under the Prepetition Revolving Credit Agreement as of the date the DIP Roll-Up Loans are incurred, at the applicable default rates provided for in the Prepetition Revolving Credit Agreement, including all accrued and unpaid letter of credit participation fees, unused commitment fees, and fronting fees owing to the Issuing Bank under (and as defined in) the Prepetition Revolving Credit Agreement and/or the other Prepetition Secured Parties under the Prepetition Loan Documents.

(II)    Promptly upon the entry of this Interim Order (and in the case of legal professionals retained by any Prepetition Lender, within three (3) business days after receipt of an invoice therefrom), the Debtors shall pay all reasonable and documented fees, costs and expenses of the Prepetition Agent and the Prepetition Secured Parties, including cash payments of all reasonable and documented professional and advisory fees, costs and expenses of the Prepetition Agent and the Prepetition Secured Parties incurred in connection with the negotiation, administration, and monitoring of the Prepetition Loan Documents, Prepetition Revolving Credit Facility, the Receivables Financing Documents, the DIP Loan Documents and/or the DIP Facility, including, without, limitation, the reasonable documented fees, costs and expenses of the Prepetition Agent's legal, financial, other advisory, tax, investment banking and other professionals (including, without limitation, White & Case LLP (as counsel to the Prepetition Agent and DIP Agent and as counsel to the Receivables Financing Agent), FTI Consulting, and any local counsel, any additional counsel to the Receivables Financing Agent, and any replacement or addition thereto that the Prepetition Agent deems reasonably appropriate), and any legal professionals retained by any Prepetition Lender (collectively, the "Prepetition Lender Professionals"), incurred in connection with the negotiation, execution, administration, and monitoring of the Prepetition Loan Documents, the Receivables Financing Documents, the DIP Loan Documents and/or the DIP Facility as of the

Petition Date, and thereafter, until the Revolver Refinancing has occurred, and subject to the procedures set forth in paragraph 17(b) hereof, promptly upon the receipt of invoices therefor, the Debtors shall pay all reasonable and documented fees, costs and expenses of the Prepetition Agent incurred in connection with the negotiation, execution, administration and monitoring of the Prepetition Loan Documents, the Receivables Financing Documents, the DIP Loan Documents and/or the DIP Facility, including the professional and advisory fees of the Prepetition Lender Professionals. Payment of any amounts set forth in this clause (II) shall not be subject to disgorgement.

(iv) **DIP Roll-Up Loans**.  Subject to the entry of the Final Order, the Debtors shall use the DIP Roll-Up Loans to consummate the Revolver Refinancing.

(v) **Financial Reporting, etc.**  Until the Revolver Refinancing occurs, the Debtors shall deliver to the Prepetition Agent all monthly financial reporting given to the U.S. Trustee, and all of the financial reporting and notices as, and when, required to be provided to the DIP Agent under, and in all instances consistent with, the DIP Loan Documents; provided that delivery of such reports and notices to the DIP Agent (in its capacity as such) shall satisfy the requirements of this paragraph.

5. **DIP Lien and Adequate Protection Replacement Lien Perfection.**  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to

validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date.  It shall constitute a Default if, as and to the extent required under the DIP Loan Documents, the Debtors shall not execute and deliver to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, security agreements, notices and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Liens.  The DIP Agent and the Prepetition Agent, in their discretion, may file a certified copy of this Interim Order as a financing statement or a notice with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  To the extent that the Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan Document, the DIP Agent is also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies or is the secured party under any loan document, financing statement, deed of trust, mortgage or other instrument or document which may otherwise be required under the law of any

jurisdiction to validate, attach, perfect or prioritize liens (any such instrument or document, a "Security Document"), the DIP Agent is also deemed to be the secured party under each such account control agreement, loss payee under the Debtors' insurance policies, and the secured party under each such Security Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and/or the Final Order, as applicable, and the other DIP Loan Documents.  The Prepetition Agent shall serve as agent for the DIP Agent for purposes of perfecting their respective security interests and liens on all DIP Collateral comprised of Prepetition Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

6.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' stipulations, admissions, agreements, releases, and waivers contained in this Interim Order, including the stipulations set forth in Paragraph F of this Interim Order (the "Stipulations"), are and shall be binding upon the Debtors and any and all of the Debtors' successors-in-interest and assigns (including, without limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other estate representative). The Stipulations, and all other admissions, agreements, releases and waivers set forth in this Interim Order also are and shall be binding upon all other parties-in-interest (including any Committee) and each of their respective successors-in-interest and assigns, unless, and solely to the extent that (i) such parties-in-interest, in each case with standing and requisite authority to do so (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) have timely filed the proper pleadings, and timely commenced the

appropriate proceedings under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 7 below), (a) objecting to or challenging any of the Stipulations or (b) otherwise asserting or prosecuting any action against the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees in connection with matters covered by the Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge"), by no later than (x) with respect to the official committee of unsecured creditors (if one is appointed), the date that is sixty (60) days from the date such committee is appointed and (y) with respect to all other parties in interest, the date that is seventy-five (75) days from the entry of this Interim Order (the period described in the immediately preceding clauses (x) and (y) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "Challenge Period Termination Date"), as such date may be extended as to any such party-in-interest by the Prepetition Agent (with the consent of the Required Lenders (as defined in the Prepetition Revolving Credit Agreement)) and each applicable individual Prepetition Secured Party that is the subject of a Challenge or by any such later date as has been ordered by the Court for cause upon a motion filed and served within the Challenge Period (before giving effect to such extension) and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal. Any Challenge not asserted by the timely and proper filing of a pleading by a party-in-interest with the requisite standing and authority as contemplated herein prior to the Challenge Termination Date shall be deemed forever waived, released, and barred with respect to such

party-in-interest.  To the extent a party-in-interest with requisite standing and authority timely and properly commences a Challenge prior to the Challenge Period Termination Date, all claims, causes of action and other matters not specifically set forth in such Challenge shall be deemed forever waived, released, and barred with respect to such party-in-interest.  To the extent the Stipulations (or any of them) are (x) not subject to a Challenge timely and properly commenced prior to the Challenge Period Termination Date or (y) subject to a Challenge timely and properly commenced prior to the Challenge Period Termination Date, to the extent any such Challenge does not result in a final and non-appealable judgment or order of the Court that is inconsistent with such Stipulations, then, in each case, without further notice, motion or application to, or order of, or hearing before, this Court and without the need or requirement to file any proof of claim: (a) any and all such Challenges by any Committee, and any other party in interest shall be deemed to be forever waived, released, and barred (including in any Successor Case); and (b) the Prepetition Obligations shall be deemed to be an allowed secured claim within the meaning of Sections 502 and 506 of the Bankruptcy Code for all purposes in connection with the Cases, and all of the Stipulations and all other waivers, releases and affirmations set forth in this Interim Order (or any not properly and timely challenged) shall be in full force and effect and shall be binding, conclusive and final on any person, entity or party-in-interest, including any Committee (in each case, and their successors-in-interest and assigns), in the Cases and in any Successor Case for all purposes, without any further order of the Court, and shall not be subject to challenge or objection by the Committee or any other party-in-interest, including, without limitation, any trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates.  If any Challenge is timely and properly filed during the Challenge Period, the Stipulations and all other waivers, releases and affirmations contained in

this Interim Order shall nonetheless remain binding, and preclusive as provided in this paragraph 6, on all other parties in interest (including any Committee), and on any other person or entity, except for the plaintiff or movant timely and successfully asserting such Challenge, as set forth in a final, non-appealable order of a court of competent jurisdiction. Notwithstanding anything to the contrary herein, the right to commence any Challenge under this Interim Order is only preserved as against any particular Prepetition Obligation or Prepetition Collateral, or against any Prepetition Secured Party to the extent such Challenge is commenced timely and properly, prior to the Challenge Period Termination Date, and in respect of such Prepetition Obligation, Prepetition Collateral, or Prepetition Secured Party, and is otherwise waived as set forth in this paragraph 6.  All remedies or defenses of any party with respect to any Challenge are hereby preserved.   Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee (if any) appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Obligation, and an order of the Court (or any other court of competent jurisdiction) conferring such standing on a Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party-in-interest.

7.     **Limitations on Use of Cash Collateral**.  Notwithstanding anything herein to the contrary, no portion of the proceeds of the DIP Facility, the DIP Collateral, Prepetition Collateral, including Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring indebtedness other than as expressly provided in this Interim Order or the DIP Budget, (b) preventing, hindering, impeding, or

delaying any of the Prepetition Agent's or any other Prepetition Secured Party's enforcement or realization upon, or exercise of rights in respect of, any of the Prepetition Collateral or DIP Collateral, other than to seek a determination that an Event of Default has not occurred or is not continuing or in connection with a remedies hearing, (c) seeking to amend or modify any of the rights or interests granted to the Prepetition Agent or any other Prepetition Secured Party under this Interim Order or Prepetition Loan Documents, including seeking to use Cash Collateral on a contested basis, (d) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any Challenge or any other actions under chapter 5 of the Bankruptcy Code (or any similar law), against the Prepetition Agent or any other Prepetition Secured Party, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (e) asserting, joining, commencing, supporting, investigating, or prosecuting any Challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of the Prepetition Secured Parties, arising out of, in connection with, or relating to the Prepetition Loan Documents, or the transactions contemplated thereunder, including, without limitation, (i) any action arising under the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity and extent of the Prepetition Obligations or the validity, extent, perfection and priority of the Prepetition Liens, (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the

Prepetition Liens, in whole or in part, or (v) appeal or otherwise challenge this Interim Order or the Final Order; provided that no more than $75,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by any Committee to investigate (but not prosecute or Challenge, or initiate the prosecution of, including the preparation of any complaint or motion on account of) the Stipulations.

8.      **Carve-Out.**

(a)      As used in this Interim Order, the "Carve-Out" shall mean a carve-out from the DIP Superpriority Claims, the DIP Liens, claims pursuant to section 507(b) of the Bankruptcy Code, and the Adequate Protection Liens and the Prepetition Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice (as defined herein)); (ii) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $75,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses, other than any Transaction Fees (as defined below) (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code or by a Committee, if any, pursuant to section 328 and 1103 of the Bankruptcy Code (collectively, the "Professional Persons"), at any time on or before the first business day following the (a) delivery by the DIP Agent of a Carve-Out Trigger Notice and (b) the Termination Date (including as a result of the occurrence of an Event of Default) (such day, the "Carve-Out Trigger Date"), whether allowed by the Court prior to or

after the Carve-Out Trigger Date; and (iv) Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed $8,000,000 (the "Post-Carve-Out Trigger Notice Cap"), in each case subject to the limits imposed by this Interim Order and the Final Order.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the DIP Agent to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Loan Documents stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  For the avoidance of doubt, the incurrence or payment of any amounts subject to the Carve-Out shall not be restricted by the DIP Budget.

(b)     The Carve-Out shall not include any restructuring, completion, sale, success, divestiture or other transaction fees of any investment bankers or financial advisors of the Debtors or a Committee, if any (such fees, "Transaction Fees"), provided, however, that a Transaction Fee which is earned and payable by the Debtors, upon consummation of an applicable transaction, pursuant to an engagement letter between the Debtors and the Debtors' investment banker, Evercore, which is acceptable to the DIP Agent (with the consent of the requisite DIP Secured Parties as provided in and consistent with their respective rights under the DIP Loan Documents) and is approved by the Court, shall be payable prior to any distribution to, the DIP Secured Parties or the Prepetition Secured Parties, solely from any proceeds received by the Debtors resulting from such transaction.

(c)     Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized (subject to the DIP Budget) to pay Professional Fees that are authorized to be paid in accordance with the provisions of the Bankruptcy Code and any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in these Cases,

as the same may be due and payable, and such payments shall not reduce the Carve-Out.   Upon the occurrence of the Carve-Out Trigger Date, the Post-Carve-Out Trigger Notice Cap shall be reduced, dollar-for-dollar, by the amount of any Professional Fees incurred and accruing by the Debtors or any Committee, and paid to the applicable Professional Persons, following delivery of the Carve-Out Trigger Notice to the Debtors.

(d)     Immediately upon the Carve-Out Trigger Date, and prior to the payment of any DIP Secured Party or Prepetition Secured Party on account of adequate protection, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Carve-Out Reserve") in an amount equal to the sum of the amounts set forth in paragraphs 8(a)(i) through 8(a)(iv) above.

(e)     The Carve-Out Reserve shall be held in a segregated non-interest bearing account in trust at the DIP Agent to pay allowed Professional Fees benefiting from the Carve-Out as provided herein, and the Carve-Out Reserve shall be available only to satisfy such allowed Professional Fees benefiting from the Carve-Out until such Professional Fees are paid in full.

(f)     To the extent the Carve-Out Reserve has not been reduced to zero after the payment in full of such obligations, it shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP Obligations have been indefeasibly paid in full in cash and all commitments under the DIP Facility have been terminated.   Notwithstanding anything to the contrary herein, the Prepetition Agent and the DIP Agent, each on behalf of itself and the relevant secured parties, (y) shall not sweep or foreclose on the Carve-Out Reserve prior to satisfaction in full of all obligations benefitting from the Carve-Out as provided herein, and (z) shall have a security interest upon any residual interest in the Carve-Out Reserve, available

following satisfaction in cash in full of all obligations benefitting from the Carve-Out as provided herein, and the priority of such liens on the residual interest shall be consistent with this Interim Order.  Further, notwithstanding anything to the contrary herein, (A) the failure of the Carve-Out Reserve to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (B) in no way shall the Carve-Out, the Post-Trigger Date Carve-Out Amount, the Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors.

(g)     Notwithstanding anything to the contrary herein or in the DIP Loan Documents, the Carve-Out shall be senior to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, the 507(b) Claims, the Adequate Protection Liens, the Prepetition Liens, and all other liens and claims granted under this Interim Order, the DIP Loan Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

(h)     The DIP Secured Parties and the Prepetition Secured Parties reserve the right to review and object to any fee statement, interim application or monthly application issued or filed by the Professionals Persons.   Notwithstanding anything to the contrary herein or in the DIP Loan Documents, the payment of any allowed Professional Fees pursuant to the Carve-Out shall not, and shall not be deemed, to (i) reduce any Debtor's obligations owed to the DIP Agent, the other DIP Secured Parties, the Prepetition Agent or the other Prepetition Secured Parties (whether under this Interim Order or otherwise) or (ii) other than as necessary to permit the payment of such allowed Professional Fees (in each case, subject to the terms of and as expressly provided in this Interim Order with respect to the Carve-Out), modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Interim Order or

otherwise) in the Prepetition Collateral or the DIP Collateral (or their claims against the Debtors). The DIP Agent, the other DIP Secured Parties, the Prepetition Agent and the other Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, or any fees or expenses of the U.S. Trustee or Clerk of the Court (or of any other entity) incurred in connection with the Cases or any Successor Case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation or to reimburse such expenses.

9. **Section 506(c) Claims.** Subject to the entry of the Final Order, as a further condition of the DIP Facility and the DIP Extensions of Credit under the DIP Credit Agreement and the other DIP Loan Documents, any obligation of the DIP Secured Parties to make DIP Extensions of Credit, and the Debtors' authorization to use the Cash Collateral, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action under Section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the DIP Collateral, the Prepetition Secured Parties, the Prepetition Liens or the Prepetition Collateral. Except for the Carve-Out, nothing contained in this Interim Order, in the Final Order or in the other DIP Loan Documents shall be deemed a consent by the Prepetition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Collateral under Section 506(c) of the Bankruptcy Code or otherwise.

10. **Collateral Rights; Limitations in Respect of Subsequent Court Orders.** Upon the entry of this Interim Order, and thereafter, unless the DIP Agent (at the direction of the Required Lenders) and  the Prepetition Agent (at the direction of the requisite lenders under the

Prepetition Loan Documents) have provided their prior written consent, or all DIP Obligations and Prepetition Obligations have been indefeasibly paid and satisfied in full in cash (including the cash collateralization of all DIP Letters of Credit, and any prepetition letters of credit under the Prepetition Loan Documents (the "Prepetition LCs") in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as the case may be) and discharged, it shall constitute an Event of Default if the Debtors shall seek in these Cases, or in any Successor Case, or there shall be entered in these Cases or in any Successor Case (or in each case any proceeding ancillary thereto), any order which authorizes any of the following: (i) except as and to the extent expressly permitted by the DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order (other than any Receivables Superpriority Claim) to or for the benefit of the DIP Secured Parties or the Prepetition Secured Parties, or (ii) the use of proceeds of the DIP Facility or Cash Collateral for any purpose other than as permitted under the DIP Credit Agreement and in accordance with the DIP Budget (subject to Permitted Variances).

11.     **Proceeds of Subsequent Financing.**   Without limiting the provisions and protections of paragraph 10 above, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations (including the cash collateralization of all DIP Letters of Credit and Prepetition LCs (if any), in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as the case may be), and the termination of the DIP Secured Parties' obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any Chapter 11 plan or plans with respect to the Debtors, the Debtors, the Debtors' estates,

any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Interim Order or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent for application in accordance with the DIP Loan Documents, the relevant Prepetition Loan Documents, and under applicable law (and with respect to payment of any Prepetition Obligations, subject to paragraph 6 hereof).

12.     **Cash Management.**     It shall constitute a Default if the Debtors' cash management system shall not at all times be maintained in accordance with the terms of the DIP Loan Documents and the order of this Court approving the maintenance of the Debtors' cash management system [Dkt. No. ___].   Other than the Collections Accounts (as defined in the Interim Securitization Order, the DIP Agent shall be deemed to have "control" over all bank accounts for all purposes of perfection under the Uniform Commercial Code pursuant to this Interim Order and, if required, pursuant to control agreements reasonably acceptable to the DIP Agent.

13.     **Disposition of DIP Collateral.**   It shall constitute an Event of Default if the Debtors shall sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Credit Agreement (including with respect to the Receivables Financing, in accordance with the Interim Securitization Order and the Receivables Financing Documents).

14.     **Events of Default; Rights and Remedies Upon Event of Default.**

(a)     Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that, upon and after the occurrence of the Termination Date, the DIP Agent

(or the other DIP Secured Parties, to the extent expressly permitted under the DIP Loan Documents) shall, subject to subparagraphs (b) and (c) of this paragraph 14 (including the Default Notice Period to the extent provided therein) and, solely in the case of a Termination Date resulting from an Event of Default, following (i) the delivery of a written notice to counsel to the Debtors, counsel for any Committee appointed in the Cases, and the U.S. Trustee (such notice, a "Default Notice") and (ii) the filing of an emergency motion on the Court's docket, during which period the Court shall hold an expedited hearing (at which hearing the burden shall be on any party opposing the exercise of remedies, and the DIP Secured Parties shall not be required to satisfy the applicable standard for relief from the automatic stay), be entitled to exercise all of their rights and remedies in respect of the DIP Collateral, in accordance with this Interim Order and the other DIP Loan Documents.  The term "Termination Date" shall mean (a) the Scheduled Maturity Date, (b) the effective date of any Chapter 11 plan with respect to the Debtors confirmed by the Court; (c) the date on which all or substantially all of the assets of the Debtors are sold in a sale under any Chapter 11 plan or pursuant to Section 363 of the Bankruptcy Code; (d) the date which is forty-five (45) days after the Petition Date, if the Court has not entered the Final Order by such date; (e) the occurrence of an Event of Default under and as defined in the DIP Credit Agreement, and (f) the acceleration of the DIP Obligations and/or termination of the commitments under the DIP Revolving Facility, in accordance with the terms of the DIP Loan Documents.

(b)    Upon the delivery by the DIP Agent of written notice of the occurrence of an Event of Default, in each case given to counsel to the Debtors, counsel for any Committee appointed in the Cases, and the U.S. Trustee (such notice, a "a Default Notice"): (i)   all commitments of the DIP Lenders to provide any DIP Extensions of Credit shall immediately be

suspended, (ii) the Debtors shall have no right to request any DIP Extensions of Credit, to use proceeds of any DIP Extensions of Credit or DIP Collateral, or to use Cash Collateral, other than to use such Cash Collateral and proceeds of DIP Extensions of Credit towards the satisfaction of the DIP Obligations and the Carve-Out, as provided herein; provided, that, during the Default Notice Period (as defined below) the Debtors may, subject to the limitations set forth herein and in the other DIP Loan Documents, continue to use Cash Collateral and proceeds of DIP Extensions of Credit previously drawn or issued (and any other cash on hand or on deposit in any deposit account or other bank account of a Debtor) in the ordinary course of business, and in accordance with the DIP Budget, to pay for payroll or other expenditures incurred prior to the Termination Date which are critical to the Debtors' operations and the preservation of the DIP Collateral; and (iii) subject to the provisions of this paragraph 14, the DIP Agent shall be permitted to apply such proceeds in accordance with the terms of this Interim Order.   The Debtors and any Committee shall be entitled to an emergency hearing before this Court within five (5) days after the giving of written notice by the DIP Agent of the occurrence of an Event of Default (the "Default Notice Period").   If the Debtors or any Committee do not contest the occurrence of the Event of Default within the Default Notice Period, or if the Debtors or any Committee do timely contest the occurrence of an Event of Default and the Court after notice and a hearing declines (or otherwise within the Default Notice Period fails) to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes, and the automatic stay shall terminate as to the DIP Agent in all respects, as provided in this paragraph 14.   Nothing herein shall preclude the DIP Agent from seeking an order from the Court upon written notice (electronically in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee, counsel to the Debtors and counsel to the Committee, if any,

authorizing the DIP Agent to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than five (5) days' notice, or the Debtors' right to contest such relief.

(c)     Upon the occurrence of the Termination Date (but subject, only in the case of the occurrence of the Termination Date resulting from an Event of Default, ~~subject to the expiration of the Default Notice Period as provided herein~~following the expedited hearing to be held in accordance with paragraph 14(a) hereof), the DIP Agent ~~and the Prepetition Agent are~~is authorized to exercise all remedies and proceed under or pursuant to the applicable DIP Loan Documents and the Prepetition Loan Documents, including, without limitation, to require the DIP Borrower to cash collateralize any DIP Letters of Credit, in accordance with the DIP Loan Documents ~~and the Prepetition Loan Documents, as applicable~~.   All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties, or the Prepetition Secured Parties (subject to obtaining the requisite relief from the automatic stay), shall be turned over and applied in accordance with the terms of this Interim Order, the DIP Loan Documents and the Prepetition Loan Documents.

(d)     The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all DIP Obligations and all liabilities and obligations to the Prepetition Secured Parties hereunder and under the other DIP Loan Documents, as the case may be, and (ii) authorize the DIP Agent, the other DIP Secured Parties to retain and apply payments, and otherwise enforce their respective rights and remedies hereunder.

(e)     Upon the occurrence of a Termination Date, or the delivery by the DIP Agent of a Default Notice (subject to the Default Notice Period), and subject to the terms of this

paragraph 14, including, subparagraph (g) hereof, the Prepetition Agent and other Prepetition Secured Parties may seek a hearing on an expedited basis to consider whether the automatic stay may be lifted so that the Prepetition Agent (on behalf of the Prepetition Secured Parties) may exercise any and all of their rights set forth in this Interim Order or in the Prepetition Loan Documents.

(f)    Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Agent's or the DIP Agent's rights to seek (on behalf of the Prepetition Secured Parties and the DIP Secured Parties, respectively), subject to their relative rights and priorities herein, any other or supplemental relief in respect of the Debtors (including, as the case may be, other or additional adequate protection) nor the DIP Agent's or Prepetition Agent's rights to suspend or terminate the making of DIP Extensions of Credit or use of Cash Collateral in accordance with this Interim Order and the other DIP Loan Documents, or the rights of the Debtors to oppose such relief.  The delay or failure to exercise rights and remedies under this Interim Order or any DIP Loan Document or Prepetition Loan Document, as applicable, shall not constitute a waiver of the DIP Agent's, the DIP Secured Parties', the Prepetition Agent's or the Prepetition Secured Parties' respective rights hereunder, thereunder or otherwise, as applicable. The occurrence of an Event of Default or the Termination Date shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided (or that continue to be provided) to the DIP Agent, the DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Parties under this Interim Order, which rights, remedies, benefits and protections shall survive the Termination Date, as provided herein.

(g)    Notwithstanding anything in this Interim Order to the contrary, neither the Prepetition Agent (on behalf of itself or the other Prepetition Secured Parties) or the other

Prepetition Secured Parties shall be permitted to exercise any rights or remedies unless and until the DIP Obligations are indefeasibly paid and satisfied in full in cash (including the cash collateralization of all DIP Letters of Credit, in accordance with the DIP Loan Documents) and discharged.

15. **Applications of Proceeds of Collateral, Payments and Collections.** As a condition to the DIP Extensions of Credit and the authorization to use Cash Collateral, each Debtor has agreed that all Cash Collateral, all proceeds of any DIP Collateral or Prepetition Collateral (including proceeds realized from a sale or disposition thereof), any amounts held on account of the DIP Collateral or Prepetition Collateral, all payments and collections received by the Debtors with respect to all DIP Collateral and Prepetition Collateral, and all other amounts remitted by any non-Debtor affiliates to any Debtors in respect of, among other things, asset sales and certain other transactions in accordance with the DIP Credit Agreement shall only be used and applied in accordance with this Interim Order, the DIP Credit Agreement, and the other DIP Loan Documents (including repayment and reduction of the DIP Obligations), and in accordance with the DIP Budget (subject to Permitted Variances).

16. **Proofs of Claim, etc.** None of the DIP Secured Parties or the Prepetition Secured Parties shall be required to file proofs of claim in any of the Cases or any Successor Cases for any claim allowed herein, and the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim against each of the applicable Debtors in the Cases. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties, and the Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, respectively, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required,

to file (and amend and/or supplement, as it sees fit) a master proof of claim and/or aggregate proofs of claim in each of the Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by the DIP Agent or the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Secured Parties or Prepetition Secured Parties.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Cases shall not apply to the DIP Agent, the other DIP Secured Parties, the Prepetition Agent or the other Prepetition Secured Parties.

      17.    **Other Rights and Obligations.**

      (a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.**  Based on the findings set forth in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacatur, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment, vacatur or stay of any DIP Liens or of the DIP Superpriority Claim

granted to or for the benefit of the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and the DIP Superpriority Claim granted herein, with respect to any such claim.  Because the DIP Extensions of Credit are made in reliance on this Interim Order and the other DIP Loan Documents, the DIP Obligations incurred by the Debtors or owed the DIP Secured Parties prior to the effective date of any stay, modification or vacatur of this Interim Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order.

(b)    **Expenses.**  To the fullest extent provided in this Interim Order and in the other DIP Loan Documents, the Debtors will pay all prepetition and post-petition fees expenses incurred by the DIP Secured Parties (including, without limitation, the reasonable fees and disbursements of the DIP Lender Professionals, and any other local counsel or additional securitization counsel that any DIP Secured Party shall retain and any internal or third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising any such counsel), including in connection with (i) the negotiation, preparation, execution, delivery, funding and administration of the DIP Loan Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Loan Documents, (ii) the Cases or any Successor Cases, or (iii) enforcement of any rights or remedies under the DIP Loan Documents.  Payment of all such fees and expenses, and the fees and expenses of the Prepetition Secured Parties that are paid as adequate protection hereunder, shall not be subject to allowance by the Court, and the Prepetition Secured Parties, the Prepetition Lender

Professionals, the DIP Secured Parties, and the DIP Lender Professionals (and any other professionals for the DIP Secured Parties), shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court or comply with the U.S. Trustee fee guidelines, but shall provide its fee and expense statements or invoices, in summary form, which shall not be required to contain time entries but shall include the number of hours billed by the applicable professional (except for financial advisors compensated on other than an hourly basis) and a summary statement of services provided and the expenses incurred and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client or other privilege, any information constituting attorney work product, or any other confidential or otherwise sensitive information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, with copies to be provided to the Office of the U.S. Trustee and counsel for the Committee (if any) contemporaneously with the delivery of such fee and expense statements or invoices to the Debtors.  The Debtors shall pay in cash all such fees and expenses of any DIP Lender Professional, (i) promptly upon the entry of this Interim Order (or, in the case of DIP Lender Professionals retained by any Prepetition Lender, within three (3) business days after receipt of an invoice therefrom), and (ii) thereafter, within ten (10) days of presentment of such statements or invoices, if no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made..  Any objection raised by the Debtors, the U.S. Trustee or the Committee (if any) with respect to such fee and expense statements or invoices (with notice of such objection provided to the DIP Agent and to the respective DIP Lender Professional) may be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for

such objection.  To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, any Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.  This Court shall retain the jurisdiction to resolve any dispute as to the reasonableness of any fees and expenses.  Such fees and expenses shall not be subject to the DIP Budget and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.  For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Interim Order, each of the fees specified in Section 2.12 of the DIP Credit Agreement (including, any commitment fees, upfront fees, administrative agent fees, arranger fees, exit fees, letter of credit participation fees, letter of credit fronting fees, and unused line fees), are, in each case, upon entry of this Interim Order and irrespective of any subsequent order approving or denying the DIP Facility or any other financing pursuant to Section 364 of the Bankruptcy Code, fully entitled to all protections of Section 364(e) of the Bankruptcy Code and are deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the date of this Interim Order.

(c)     **Credit Bid.**  The DIP Agent, with the consent of the Required Lenders shall have the right (on behalf of the DIP Lenders) to credit-bid the amount of the DIP Obligations (other than, prior to the Challenge Period Termination Date, the DIP Roll-Up Loans) in connection with any sale of all or substantially all of the Debtors' assets and property, including, without limitation, any sale occurring pursuant to Section 363 of the Bankruptcy Code

or included as part of any Chapter 11 plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

(d)    **Binding Effect.**   The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 cases.

(e)    **No Waiver.**   The failure of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the other DIP Loan Documents or the Prepetition Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent and the Prepetition Agent (i) to request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, any Chapter 11 plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the Prepetition Secured Parties, as applicable.

(f)    **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(g)    **Intercreditor Matters.**  Nothing in this Interim Order shall be construed to convey on any individual DIP Lender or Prepetition Revolving Lender any consent, voting or other rights beyond those (if any) set forth in the DIP Loan Documents and Prepetition Loan Documents, as applicable.  Nothing in this Interim Order shall be construed to impair, modify or otherwise affect (i) the Intercreditor Agreement or (ii) any other intercreditor, subordination or similar agreement or arrangement in respect of the Prepetition Obligations and the obligations under the Receivables Financing Documents, which in each case are enforceable to the fullest extent provided by section 510(a) of the Bankruptcy Code and applicable law.

(h)    **No Marshaling.**  Subject to a Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.*; provided, however, that the DIP Secured Parties and Prepetition Secured Parties shall use commercially reasonable efforts to first use all DIP Collateral other than any proceeds of Avoidance Actions to repay the DIP Superpriority Claim and the Adequate Protection Superpriority Claim, as applicable.*

(i)    **Section 552(b).**  The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and, subject to a Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured

Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(j)     **Consent.** Nothing in this Interim Order shall be construed to convey on any individual DIP Secured Party or individual Prepetition Secured Party any consent, voting or waiver rights beyond those (if any) set forth in the DIP Loan Documents or the Prepetition Loan Documents, as applicable.

(k)     **Amendment.**  The Debtors and the DIP Agent (with the written consent of the requisite DIP Secured Parties as provided in and consistent with their respective rights under the DIP Loan Documents) may amend, modify, supplement or waive any provision of the DIP Loan Documents without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the imposition of the default rate or changes to any base rate, LIBOR or similar component thereof) or fees (other than consent fees in connection with such amendment, modification, supplement or waiver) charged in connection with the DIP Facility, (y) increases the commitments of the DIP Lenders to make DIP Extensions of Credit under the DIP Loan Documents, or (z) changes the Termination Date to an earlier date.   Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and approved by the Court after notice to parties in interest.

(l)     **Priority of Terms**.  To the extent of any conflict between or among (a) the express terms or provisions of any of the other DIP Loan Documents, the Motion, any other order of this Court (other than the Final Order when entered), or any other agreements, on the

one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Interim Order shall govern.

(m)     **Survival of Interim Order.**  The provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any Chapter 11 plan in the Cases, (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Cases, (iv) terminating the joint administration of these Cases, (v) withdrawing of the reference of any of the Cases from this Court or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Interim Order, and any protections granted to or for the benefit of the Prepetition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claim and protections for the Prepetition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim) shall maintain their priorities as provided by this Interim Order, the other DIP Loan Documents and the Prepetition Loan Documents (as the case may be), including the Intercreditor Agreement and any other intercreditor arrangement or agreements in respect thereof, until all of the DIP Obligations and the Prepetition Obligations have been indefeasibly paid and satisfied in full in cash (including the cash collateralization of all DIP Letters of Credit and any Prepetition LCs in accordance with the DIP Loan Documents

and the Prepetition Loan Documents, as the case may be) and discharged.  The Court shall retain jurisdiction, notwithstanding any such dismissal, for the purpose of enforcing the claims, liens and security interests referred to in this paragraph 17(m).

(n)  **Enforceability.**  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(o)  **Waiver of any Applicable Stay.**  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

18.  **Final Hearing.**

(a)  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for [——————]December 20, 2019, at [——:——]9:00 a.m. (Central Time) at the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)  On or before [●]November 20, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the

Clerk of the Court no later than ~~November~~ December 12, 2019 at ~~[    :    ]~~5:00 pm (Central Time), which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, Davis, Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick; (b) local counsel for the Debtors, Norton Rose Fulbright US LLP, 1301 McKinney Street, Suite 5100, Houston, Texas 77010, Attn: William R. Greendyke; (c) counsel for the DIP Agent and the Prepetition Agent, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn:  Scott Greissman and Elizabeth Feld; (d) local counsel for the DIP Agent and the Prepetition Agent, Gray Reed, 1300 Post Oak Blvd, Suite 2000. Houston, TX 77056, Attn: Jason S. Brookner; (e) counsel for PNC Bank, Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Brian Trust; (f) counsel to any Committee; and (g) the U.S. Trustee.

19.     **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

_____

David R. Jones

UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 1
DIP CREDIT AGREEMENT

EXHIBIT 2
DIP BUDGET

| Summary report: Litera® Change-Pro for Word 10.7.0.7 Document comparison done on 11/13/2019 6:40:16 PM | |
|---|---|
| **Style name:** Color Legislative Moves+Images | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DMS/AmericasActive/92603919/17 | |
| **Modified DMS:** iw://DMS/AmericasActive/92603919/22 | |
| **Changes:** | |
| Add | 12 |
| Delete | 12 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 28 |