

ENTERED
11/14/2019

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | Case No. 19-36313 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, SOLICITATION, AND ADMINISTRATIVE AGENT
(Docket No. 83)

Upon the emergency application (the "**Application**")[2] of Southern Foods Group, LLC and certain of its affiliates (collectively, the "**Debtors**") for entry of an order, pursuant to sections 105(a), 328(a), 503(b), and 1107 of the Bankruptcy Code, Bankruptcy Rules 2002(f), 2014(a), 2016, and 6004, and Local Rules 2014-1 and 9013-1, authorizing the retention and employment of Epiq Corporate Restructuring, LLC ("**Epiq**") as claims, noticing, and solicitation agent ("**Claims and Administrative Agent**"), as more fully described in the Application; and

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

upon the Gallerie Declaration, and the Court having jurisdiction to consider the matters raised in the Application pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court; and the Court having determined that the legal and factual bases set forth in the Application, the Gallerie Declaration, and the Rahlfs Declaration and at the hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Application is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. Notwithstanding the terms of the Services Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2. The Debtors are authorized to retain Epiq as their claims, noticing, solicitation, and administrative agent effective *nunc pro tunc* to the Petition Date under the terms of the Services Agreement, and Epiq is authorized and directed to perform all tasks described in the Application and the Services Agreement, except as otherwise provided in this Order. If Epiq is unclear as to the application of any rule, it is to seek guidance from the Clerk. The Clerk shall

provide Epiq with ECF credentials that allow Epiq to receive ECF notifications and file certificates of service, and any proofs of claim that Epiq receives. Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases and is authorized and directed to maintain official Claims Registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

3.  Epiq is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim. Epiq shall provide access to the claims register, including complete proofs of claim with attachments, if any, without charge.

4.  Epiq shall record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e) and, if the evidence of transfer or notice of such transfer executed by the parties waives the 21-day notice and objection period required by Bankruptcy Rule 3001(e), then Epiq may process the transfer of claim to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case.

5.  Epiq shall maintain the consolidated creditor matrix on behalf of the Debtors. Epiq shall serve notice of the initial 11 U.S.C. § 341 meeting of creditors using the current Official Form 309F notice as modified by the Court. Any claims bar date notice must be approved by the Court prior to being served by Epiq. Epiq is authorized to serve any other document as requested by the Clerk's office, the U.S. Trustee, the Debtors, any official committee appointed in the Chapter 11 Cases, or as otherwise ordered by the Court. Epiq is

authorized to take such other action to comply with all duties and services set forth in the Application.

6. The Debtors are authorized to compensate and reimburse Epiq in accordance with the terms and conditions of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7. Notwithstanding the Application or Services Agreement, to the extent the Debtor wishes to expand the scope of Epiq's services beyond those services set forth in the Application and Services Agreement, the Debtor shall be required to seek further approval from the Court.

8. Epiq shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without prior order of the Court.

9. The Debtors may, in their sole discretion, submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

10. Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel to the Debtors, counsel to any official committee appointed in the Chapter 11 Cases monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

11. If any dispute arises relating to the Services Agreement or Epiq's monthly invoices, the disputing party and Epiq shall meet and confer in an attempt to resolve such

dispute; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

12.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq incurred pursuant to the Services Agreement are to be treated as an administrative expense of the Debtors' estates.

13.     Epiq may apply the Retainer to all prepetition fees and expenses, which Retainer may be replenished to the original Retainer amount; and, thereafter, Epiq may hold the Retainer during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

14.     The Debtors shall indemnify Epiq under the terms of the Services Agreement as modified pursuant to this Order.

15.     Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided under the Services Agreement unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

16.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either (a) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from Epiq's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct, (b) for a contractual dispute in which the Debtors allege breach of Epiq's contractual obligations under the Services Agreement if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law, (c) of any type for which the

Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002, or (d) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

17. If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) or (b) the entry of an order closing the Chapter 11 Cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, Epiq must file an application before this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

18. In the event that Epiq seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Epiq's own applications, both interim and final, but determined by the Court after notice and a hearing.

19. In the event the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code and if claims agent representation would be necessary in the converted chapter 7 cases, Epiq shall continue to be paid in accordance with 28 U.S.C. § 156(c) under the terms set forth herein.

20. In the event Epiq is unable to provide the services set forth in this Order, Epiq shall immediately notify the Clerk and counsel to the Debtors and, upon approval of the Court, turn over all original proofs of claim and computer information to another notice and claims agent with the advice and consent of the Clerk and counsel to the Debtors.

21. After entry of an order terminating Epiq's services, upon the closing of the Chapter 11 Cases or for any other reason, Epiq shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and transmitting to the Clerk's office all claims in an electronic format, if applicable, and shall be compensated by the Debtors in connection therewith.

22. The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

23. Notwithstanding any term in the Services Agreement to the contrary, this Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

24. The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

25. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

26. Epiq shall not cease providing claims providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

27. In the event of any inconsistency between the Services Agreement, the Application, and this Order, this Order shall govern.

**Signed:  November 13, 2019.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**