**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*, | ) ) ) | Case No. 19-36313 (DRJ) |
| Debtors.[1] | ) ) ) | Jointly Administered |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
(A) SALES OF CERTAIN DISCRETE NON-CORE ASSETS AND (B) PAYMENT
OF RELATED COMMISSIONS AND (II) GRANTING RELATED RELIEF**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 20, 2019 AT 9:00 A.M. (CDT) IN COURTROOM 400, 515 RUSK STREET, HOUSTON, TEXAS 77002, BEFORE THE HONORABLE DAVID R. JONES. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN 21 DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Southern Foods Group, LLC, Dean Foods Company, and certain of their affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing the (A) Sales of Certain Non-Core Discrete Assets and (B) Payment of Related Commissions and (II) Granting Related Relief* (the "**Motion**"). This Motion is supported by the *Declaration of Gary Rahfls in Support of Motion of Debtors for Entry of an Order (I) Authorizing the (A) Sales of Certain Non-Core Discrete Assets Free and (B) Payment of Related Commissions and (II) Granting Related Relief* attached hereto (the "**Rahlfs Sale Declaration**"). In further support of the Motion, the Debtors respectfully state as follows:

## Relief Requested

1. By this Motion, and pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto (the "**Proposed Order**" and, if entered, the "**Order**"), authorizing the Debtors to (a) sell the Assets (as defined herein) to the Purchasers (as defined herein) pursuant to the Prepetition Sale Agreements (as defined herein, and such sales, the "**363 Sales**") and (b) pay the Broker Commissions (as defined herein) in connection with the 363 Sales.

## Jurisdiction, Venue, and Authority

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). In addition, the Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District

of Texas (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. On November 12, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.

5. On November 22, 2019, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**"). *See Notice of Appointment of Committee of Unsecured Creditors* [D.I. 288].

6. Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 46], which is incorporated herein by reference.

7. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 9] entered by the Court on November 12, 2019 in each of the Chapter 11 Cases.

**The Sales of the Assets**

8.      Contemporaneous herewith, the Debtors filed motions seeking entry of orders providing for (a) the retention of Evercore Group L.L.C. as investment banker for the Debtors to, among other things, pursue a marketing process for the sale of all or substantially all of the Debtors' assets and operations (such sale, a "**Going Concern Sale**"),[2] and (b) the establishment of procedures for the sale of *de minimis* assets free and clear of liens, claims, interests, and encumbrances and the abandonment of property (the "**De Minimis Sale Motion**").  As further described in such motions, the Debtors believe the relief requested therein is necessary to maximize the value of the Debtors' estates for the benefit of all stakeholders.  However, as explained in the Ralhfs Sale Declaration, separate and apart from any Going Concern Sale and without interruption to any Going Concern Sale, the Debtors, in the ordinary course of their operations, are constantly re-evaluating their substantial real estate and manufacturing footprint, which includes a portfolio of approximately 70 plants in a multitude of locations and comprises approximately 675 facilities, to maximize the efficiency and economics of their operations.  Rahlfs Sale Declaration ¶ 4.

9.      As a natural part of that process, prior to the Petition Date, certain of the Debtors commenced several marketing and sale initiatives for individual, non-core, non-operational plants or facilities, or components thereof, that are no longer being used for the Debtors' operations.  Rahlfs Sale Declaration ¶ 5.  These initiatives included robust marketing efforts since 2018, all managed by a professional broker, and resulted in the Debtors receiving offers (the "**Prepetition Offers**") from the Purchasers for the Assets that were subsequently

---

[2] The Debtors are also in the process of preparing a motion that will seek entry of an order establishing bidding procedures for the Going Concern Sale.  Such procedures are currently contemplated to include authority for the continued sale of discrete non-core assets outside of the formal sale process outlined therein.

memorialized in the Prepetition Sale Agreements entered into prior to the Petition Date by the Debtors and the Purchasers.  The Debtors, in their reasonable business judgement and upon the advice of their advisors, believe that the Prepetition Offers constitute the highest and best available offers for such Assets and would allow the Debtors to maximize value for the benefit of their estates.  *Id*.  While some of the 363 Sales should fall within the thresholds requested in the De Minimis Sale Motion, the Purchasers have informed the Debtors that time is of the essence for them and that any delay will endanger the consummation of the 363 Sales, resulting in a loss of value to the Debtors and their estates.  *Id*.  Accordingly, the Debtors, upon consultation with their advisors, have filed this Motion seeking approval of the 363 Sales and to take any and all necessary and appropriate actions to consummate such transactions in accordance with the Prepetition Sale Agreements.  *Id*.

## Huntley Assets

10. As set forth in the Rahlfs Sale Declaration, prior to the Petition Date, the Debtors agreed to sell those certain combined plant and depot parcels located at 11710-11718 Mill Street, Huntley IL (the "**Huntley Assets**") for a purchase price of $2.1 million (the "**Huntley Purchase Price**") to Country Delight, Inc. ("**Country Delight**") pursuant to that certain Real Estate Sale Contract, dated as of May 28, 2019, by and between Country Delight and Debtor Dean Dairy Holdings, LLC (as amended, restated, amended and restated, and supplemented from time to time in accordance with the terms thereof, the "**Huntley Sale Agreement**").  Rahlfs Sale Declaration ¶ 6.  The Debtors employed Cushman & Wakefield (the "**Broker**") as the broker to market the property in starting September 2018 pursuant to that certain Listing Agreement for Sale, dated as of June 21, 2018, by and between Dean Dairy Holdings, LLC and the Broker (as

amended, restated, amended and restated, and supplemented from time to time in accordance with the terms thereof, the "**Huntley Listing Agreement**"). *Id*.

11. While the Broker was able to garner strong initial interest in and conducted multiple tours of the Huntley Assets, interest declined as potential buyers realized that the property required significant investment for use in food services. Rahlfs Sale Declaration ¶ 7. Since November 2018, the Debtors received offers for the individual plant parcel of $1 million from a third party and $1.9 million from Country Delight. *Id*. Ultimately, the Debtors successfully negotiated with Country Delight on the terms of a combined sale of the plant and depot parcels at an increased total price of $2.1 million, culminating in the prepetition execution of the Huntley Sale Agreement. *Id*. Country Delight is one of the Debtors' largest distributors in the region and, therefore, the transaction represents both the best opportunity to monetize the Huntley Assets and a prudent strategic transaction with a valued commercial counterparty. *Id*.

Lynn Assets

12. Prior to the Petition Date, the Debtors agreed to sell that certain facility located at 626 & 680 Lynnway, Lynn, MA (the "**Lynn Assets**") for a purchase price of $10.6 million (the "**Lynn Purchase Price**") to AW Perry, Inc. ("**AW Perry**") pursuant to that certain Real Estate Sale Contract, dated as of April 23, 2019, by and between AW Perry and Debtor Garelick Farms, LLC (as amended, restated, amended and restated, and supplemented from time to time in accordance with the terms thereof, the "**Lynn Sale Agreement**"). Rahlfs Sale Declaration ¶ 8. The Debtors employed the Broker to market the property starting in September 2018 pursuant to that certain Listing Agreement for Sale, dated as of July 1, 2018, by and between Garelick Farms, LLC and the Broker (as amended, restated, amended and restated, and supplemented from time to time in accordance with the terms thereof, the "**Lynn Listing Agreement**"). *Id*.

13. The Broker distributed to likely buyers a marketing package relating to the Lynn Assets and conducted property tours in advance of their solicitation of offers. Rahlfs Sale Declaration ¶ 9. The Broker targeted local, regional, and national developers in the marketing campaign, resulting in the receipt of seven initial offers. *Id*. The top five bidders were then asked to submit best and final offers, and the Debtors and the Broker conducted interviews with the three highest bidders. *Id*. After evaluating the bids based on price and ability to manage certain zoning variance and environmental issues associated with the Lynn Assets, the Debtors ultimately selected AW Perry's offer as the highest and best and negotiated and entered into the Lynn Sale Agreement with AW Perry. *Id*. AW Perry a well-established developer of industrial property in the Boston area and has extensive experience dealing with environmentally impacted properties. *Id*.

### Braselton Assets

14. Prior to the Petition Date, the Debtors agreed to sell that certain facility located at 1160 Broadway Avenue, Braselton, GA (the "**Braselton Assets**" and, collectively with the Huntley Assets and Lynn Assets, the "**Assets**")[3] for a purchase price of $5.67 million (the "**Braselton Purchase Price**" and, collectively with the Huntley Purchase Price and Lynn Purchase Price, the "**Asset Purchase Prices**") to Federal Investment Group, LLC ("**FIG**" and, collectively with Country Delight and AW Perry, the "**Purchasers**") pursuant to that certain Real Estate Sale Contract, dated as of September 5, 2019, by and between FIG and Debtor Mayfield Dairy Farms, LLC (as amended, restated, amended and restated, or supplemented from time to time in accordance with the terms thereof, the "**Braselton Sale Agreement**" and, collectively,

---

[3] Pursuant to the Braselton Sale Agreement (as defined here), a small portion of the property comprising parking and limited warehouse space will be leased back to the Debtors following the sale to support the Debtors distribution and logistics in the region.

-7-

with the Huntley Sale Agreement and Lynn Sale Agreement, the "**Prepetition Sale Agreements**"). Rahlfs Sale Declaration ¶ 10. The Debtors employed the Broker to market the property starting in July 2018 pursuant to that certain Listing Agreement for Sale, dated as of June 1, 2018, by and between Mayfield Dairy Farms, LLC and the Broker (as amended, restated, amended and restated, and supplemented in accordance with the terms thereof, the "**Braselton Listing Agreement**" and, collectively with the Huntley Listing Agreement and Lynn Listing Agreement, the "**Listing Agreements**"). *Id.*

15.     The Broker marketed the Lynn Assets on a local, regional, and national basis, and provided tours of the site to six interested parties. Rahlfs Sale Declaration ¶ 11. Ultimately, the Debtors received two formal written offers and the Debtors, upon due consideration and consultation with their advisors, determined that FIG's offer of $5.67 million, which the Debtors had negotiated up from an initial bid of $5.25 million, represented the highest and best offer, particularly when factoring in execution risks and strategic considerations. Thereafter, the Debtors negotiated and entered into the Braselton Sale Agreement with FIG. *Id.* FIG is an experienced developer and commercial real estate owner that also has significant experience in sale lease back transactions involving new investment in the property to the benefit of the seller/lessee. *Id.*

16.     For the reasons set forth in further detail herein and in the Rahlfs Sale Declaration, the Debtors respectfully request the Court's approval of the 363 Sales pursuant to the Prepetition Sale Agreements.

## Basis for Relief

17.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary

course of business must be based upon the sound business judgment of the debtor. *See, e.g.*, *Inst'l Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale . . . ."); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014); *In re St. Marie Clinic PA*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

18. Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005). As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor in possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

19. Moreover, section 105(a) of the Bankruptcy Code confers a bankruptcy court with broad equitable powers to confer relief in alignment with bankruptcy policies. *See U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (holding that section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to fashion equitable remedies "in a manner consistent with the provisions of the Bankruptcy Code"); *see also In re Young*, 416 F. App'x 392, 398 (5th Cir. 2011) (recognizing that "[s]ection 105(a) of Title 11 permits the bankruptcy court to exercise broad authority"); *In re Trevino*, 599 B.R. 526, 542–43 (Bankr. S.D. Tex. 2019) (noting that the bankruptcy court has "broad authority" under section 105(a) of the Bankruptcy Code); *In re Padilla*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) (citations omitted) ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and . . . 'authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.'").

### A Sound Business Justification Exists for the 363 Sales

20. A sound business justification for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g., In re Lionel Corp.*, 722 F.2d at 1063; *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 566 n.16 (8th Cir. 1997) (recognizing the paramount goal of any proposed sale of property of estate is to maximize value). As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to provisions of the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

21.     Here, the Debtors are seeking approval of the 363 Sales and authority to consummate the transactions contemplated by the Prepetition Sale Agreements for the purpose of enhancing the economic value of Debtors' estates. Rahlfs Sale Declaration. ¶ 12. As noted above, the Assets consist of discrete, non-core plants or facilities for which the Debtors have no current operational use.[4]  *Id*. at ¶ 5. Prompt approval of the 363 Sales is necessary in order to maximize distributable value for the benefit of the Debtors' estates and their stakeholders and to avoid the risk of the Purchasers exercising their respective termination rights under the respective Prepetition Sale Agreements. Indeed, each of the Purchasers has advised the Debtors that any delay in approval of the 363 Sales would significantly increase the risk to the consummation of their respective transaction. *Id*. at ¶¶ 5, 13. The proposed 363 Sales involved robust prepetition marketing efforts with the assistance of a professional broker, and the Debtors reached the decision to sell the Assets after weighing all of the relevant factors and consulting with their counsel and financial advisors. *Id*. at ¶¶ 5, 12. Moreover, the Debtors are conferring with the advisors to their prepetition and post-petition secured lenders regarding their support of the 363 Sales and intend to confer with the Committee as well. *Id*. at ¶ 12.

22.     Accordingly, a strong business justification exists for approving the 363 Sales and related relief requested herein. The Debtors respectfully submit that this articulated business reason surpasses the relevant business judgment standard and does not represent a decision that is clearly erroneous, arbitrary, or made in bad faith or on inadequate information. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003)); *Richmond Leasing Co.*, 762 F.2d at 1309; *Resolution Tr. Corp. v. Official Unsecured Creditors Comm. (In re Def. Drug Stores, Inc.)*, 145

---

[4] Except for the small portion of the Braselton Assets that will be leased back in conjunction with the Braselton Sale Agreement. Rahlfs Sale Declaration. ¶ 10 n.3.

B.R. 312, 317 (B.A.P. 9th Cir. 1992); *In re Food Barn Stores, Inc.*, 107 F.3d at 567 n.16 (citing *Richmond Leasing Co.*, 762 F.2d at 1309) ("Where the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate.'").

### The 363 Sales Will Produce a Fair and Reasonable Price

23. The Asset Purchase Prices are fair and reasonable prices for each of the respective Assets. As set forth in the Rafhls Sale Declaration, the Debtors retained the Broker to conduct a robust marketing process for each of the Assets. Rafhls Sale Decl. ¶¶ 5, 13. The Listing Agreements each provide for a Seller Broker Commission (as defined herein) calculated as a percentage of the final purchase price. *Id*. at ¶¶ 13. Accordingly, the Broker was incentivized to solicit the highest purchase price. *Id*. In light of the foregoing, the Debtors contend that the Asset Purchase Prices are fair and reasonable, and that permitting the Debtors to consummate the 363 Sales at the Asset Purchase Prices is in the best interests of the Debtors' estates and their economic stakeholders.

### The Assets Should be Sold
### Free and Clear of Liens, Claims, Interests, and Encumbrances

24. The Debtors seek the authority to sell the Assets to the Purchasers free and clear of any and all liens, claims, interests, and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the applicable sale. Rahlfs Sale Declaration ¶ 11. As demonstrated below, the 363 Sales free and clear of all liens, claims, interests, and encumbrances are both (a) consistent with the Bankruptcy Code and (b) appropriate given the facts of the Chapter 11 Cases. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property of the estate free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

      a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

      b.    such entity consents;

      c.    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

      d.    such interest is in bona fide dispute; or

      e.    such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Patriot Place, Ltd.*, 486 B.R. 773, 814 (Bankr. W.D. Tex. 2013) ("Section 363(f) of the Bankruptcy Code sets forth five alternative conditions that must be satisfied by the Court to authorize a debtor . . . to sell its property . . . free and clear of interests of a third party.").

    25.    Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

    26.    The Debtors submit that the 363 Sales free and clear of liens, claims, interests, and encumbrances will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code. For example, to the extent a party objects to the 363 Sales on the basis that it holds a prepetition lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims, under section 363(f)(5) of

the Bankruptcy Code, or that such lien is in bona fide dispute, under section 363(f)(4) of the Bankruptcy Code.

27. Moreover, the Debtors have sent or will send notice of this Motion to any purported prepetition and post-petition lienholders, Ralhfs Sale Declaration ¶ 15, thereby affording them the opportunity to object to the Court granting the relief requested herein.  If such lienholders do not object to the proposed 363 Sales, then their consent should reasonably be presumed.  See Hargave v. Twp. of Pemberton, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein). Importantly, the Debtors are conferring with the advisors of their prepetition and post-petition secured lenders regarding their support of the 363 Sales.  Accordingly, the Debtors submit that the proposed 363 Sales satisfy section 363(f)(2) of the Bankruptcy Code.

28. The Debtors further submit that, because the Assets may be sold free and clear of any liens, claims, interests, or encumbrances pursuant to section 363(f) of the Bankruptcy Code, any such liens, claims, interests, or encumbrances shall be transferred and attached to the net sale proceeds in the same order of priority that such liens, claims, interests, or encumbrances had on the Assets.

## The Broker's Fee Should Be Approved

29. Pursuant to each of the Listing Agreements, the Debtors agreed to pay the Broker a commission of 5% of the gross sale price of the applicable Assets upon the closing of the applicable 363 Sale (the "**Seller Broker Commissions**").  Rahlfs Sales Declaration ¶ 18.  In addition, the Debtors have agreed to pay such other commissions contracted for between the respective Purchasers and their real estate brokers with respect to the Huntley Assets and Lynn Assets (the "**Purchaser Broker Commissions**" and, together with the Seller Broker Commissions, the "**Broker Commissions**").  *Id*.  As detailed in the Rahlfs Sales Declaration, the

Debtors selected the Broker and executed the Listing Agreements in accordance with their fiduciary duties. *Id*. Indeed, retention of such professionals is both routine and essential in the context of similar discrete real property sales. *Id*. Without the Broker, the Debtors would not have been able to ensure that they had identified the highest and best offers, which would have harmed both the Debtors' estates and stakeholders. *Id*. Further, the Broker was selected in order minimize costs with respect to the sales and marketing process while maximizing the proceeds of the sale, as the Seller Broker Commissions represent standard rates and are calculated based on the purchase price paid, thereby incentivizing the Broker to achieve the best results. *Id*. Finally, the Debtors negotiated and agreed to the payment of the Purchaser Broker Commissions as a required component of executing the Prepetition Sale Agreements with the Purchasers (as applicable). *Id*. Accordingly, the Debtors respectfully submit that the Court should authorize the Debtors to pay the Broker Commissions pursuant to the Listing Agreements.

## **Waiver of Stay Under Bankruptcy Rule 6004(h)**

30.     The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to ensure consummation of the Prepetition Sale Agreements to maximize the value of the Debtors' estates and recoveries for their economic stakeholders. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**Debtors' Reservation of Rights**

31.     Nothing contained herein is intended or should be construed as, or deemed to constitute, an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, or an assumption or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to Assets, the Prepetition Sale Agreements, Listing Agreements, or the 363 Sales under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

32.     Notice of this Motion has been provided by telecopy, email, overnight courier, and/or hand delivery to (a) the U.S. Trustee, (b) each member of the Committee, (c) White & Case LLP, as counsel to Coöperatieve Rabobank U.A., New York Branch, the administrative agent under Debtors' prepetition receivables purchase agreement, the administrative agent under the Debtors' prepetition secured revolving credit facility, and the administrative agent under the Debtors' proposed post-petition financing facility, (d) indenture trustee under the Debtors' prepetition unsecured bond indenture, (e) Mayer Brown LLP, as counsel to PNC Bank, National Association, the co-agent under Debtors' prepetition receivables purchase agreement, (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to an ad hoc group of prepetition unsecured noteholders, (g) the Securities and Exchange Commission, (h) the Internal Revenue Service, (i) the United States Attorney's Office for the Southern District of Texas, (j) the state attorneys general for states in which the Debtors conduct business, (k) all other parties asserting

a security interest in the assets of the Debtors to the extent reasonably known to the Debtors (l) the Broker, and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Motion and any Order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/SouthernFoods. The Debtors submit that, under the circumstances, the foregoing notice constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rule 2002, 4001(b) and (c), 6004(a), and 9014, the Local Rules, and the Complex Case Rules and no other or further notice is required.

## **No Prior Request**

33.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

34.     WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: November 27, 2019
Houston, Texas

        Respectfully submitted,

        **NORTON ROSE FULBRIGHT US LLP**

        */s/ William R. Greendyke*
        William R. Greendyke (SBT 08390450)
        Jason L. Boland (SBT 24040542)
        Robert B. Bruner (SBT 24062637)
        Julie Goodrich Harrison (SBT 24092434)
        1301 McKinney Street, Suite 5100
        Houston, Texas 77010-3095
        Tel.: (713) 651-5151
        Fax: (713) 651-5246
        william.greendyke@nortonrosefulbright.com
        jason.boland@nortonrosefulbright.com
        bob.bruner@nortonrosefulbright.com
        julie.harrison@nortonrosefulbright.com

        *-and-*

        **DAVIS POLK & WARDWELL LLP**

        Brian M. Resnick (admitted *pro hac vice*)
        Steven Z. Szanzer (admitted *pro hac vice*)
        Nate Sokol (admitted *pro hac vice*)
        Daniel E. Meyer (admitted *pro hac vice*)
        450 Lexington Avenue
        New York, New York 10017
        Tel.: (212) 450-4000
        Fax: (212) 701-5800
        brian.resnick@davispolk.com
        steven.szanzer@davispolk.com
        nathaniel.sokol@davispolk.com
        daniel.meyer@davispolk.com

        *Proposed Counsel to the Debtors and Debtors in Possession*