IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| SOUTHERN FOODS GROUP, LLC, *et al.*, ) | CASE NO. 19-36313 (DRJ) |
| ) | |
| DEBTORS.[1] ) | JOINTLY ADMINISTERED |
| ) | |

**WESTCHESTER FIRE INSURANCE COMPANY'S MOTION FOR RELIEF FROM
THE AUTOMATIC STAY TO CANCEL SURETY BONDS AND
FOR ADEQUATE PROTECTION**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANTS MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 21, 2020, AT 2:00 P.M. IN COURTROOM 400, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS, 77002.**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

1


Comes now, Westchester Fire Insurance Company ("Westchester"), by and through counsel, and moves pursuant to 11 U.S.C. § 362, for an order granting Westchester relief from the automatic stay to cancel certain surety bonds issued on behalf of Southern Foods Group, LLC, and certain of its affiliates (collectively, the "Debtors"), and for adequate protection (the "Motion"). In support of its Motion, Westchester states as follows:

## SUMMARY OF THE MOTION

1. Prior to the Petition Date, Westchester issued numerous surety bonds (the "Bonds") at the request of the Debtors to assure the Debtors' obligations to various entities, including state taxing authorities, state transportation authorities, state workers' compensation departments, utilities, and a labor union. The aggregate penal amount of the active Bonds is approximately $4.1 million. The Bonds are credit instruments and each activity covered by the Bonds undertaken by the Debtors post-petition represents an extension of credit by Westchester.

2. Westchester seeks an order lifting the automatic stay to permit cancellation of certain bonds (the "Cancellable Bonds") in accordance with the stated terms of each bond, or in accordance with applicable state or federal law. Cause exists to lift the stay because (i) the Cancellable Bonds are not property of the Debtors' estates, (ii) the Cancellable Bonds constitute financial accommodations that can neither be assumed nor assigned by the Debtors, and (iii) Westchester does not consent to the extension of post-petition surety credit and lacks adequate protection for the same. Permitting Westchester to exercise its rights to cancel the Cancellable Bonds will prevent the Debtors from forcing Westchester to provide surety credit for the Debtors' post-petition operations.

3. Westchester does not concede that cancellation of the Cancellable Bonds requires relief from the automatic stay. However, Westchester brings this Motion out of an abundance of

caution in light of decisions holding that, although surety bonds are not property of a principal's bankruptcy estate, the surety may be required to obtain an order lifting the stay to provide the debtor an opportunity to procure surety credit from another source.

4. In addition to stay relief, Westchester further requests that the Debtors be required to provide additional collateral as adequate protection for Westchester's involuntary extension of post-petition surety credit.

## JURISDICTION

5. The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 157(a) and 1334.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

7. This proceeding is a core proceeding under 28 U.S.C. § 157(b).

8. Westchester consents to the Bankruptcy Court entering a final order adjudicating the Application pursuant to *Wellness Int'l Network Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

## BACKGROUND

9. On November 12, 2019, (the "Petition Date"), the Debtors commenced these cases by filing voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 to 1532 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas.

10. The Debtors continue to manage and operate their businesses as debtors in possession as permitted by 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

4821-8202-3342, v. 1

11. On November 22, 2019, the United States Trustee appointed an official committee of unsecured creditors.

12. The Debtors manufacture, market, and distribute a wide variety of branded and private label dairy and dairy case products, including fluid milk, ice cream, cultured dairy products, creamers, ice cream mix, and other dairy products to retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States. A further description of the Debtors' businesses and the reasons for filing these chapter 11 cases is set forth in the *Declaration of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First-Day Pleadings*. [Dkt Entry No. 46].

13. Pursuant to the Debtors' operations, the Debtors are required to obtain surety bonds to assure certain of the Debtors' obligations to various entities including state taxing authorities, state transportation authorities, state workers' compensation departments, utilities, and a labor union. Prior to the Petition Date, Westchester issued surety bonds on behalf and at the request of the Debtors to assure certain of these obligations to certain entities (the "Obligees"). The aggregate penal sums of the Bonds are $4,099,566.00. A subset of the Bonds, the Cancellable Bonds, also include provisions that allow Westchester, as surety, to cancel the Cancellable Bonds upon giving appropriate notice and the lapse of a designated amount of time, which ranges from 30 to 90 days. The aggregate penal sums of the Cancellable Bonds are $2,717,538.00. A listing of the Cancellable Bonds is contained in **Exhibit A** to this Motion.

14. On July 11, 2002, in consideration for the issuance of the Bonds, Debtor Dean Foods Company (the "Indemnitor") executed an agreement of indemnity (the "Indemnity Agreement") in favor of Westchester under which the Indemnitor agreed, inter alia, to indemnify and hold Westchester harmless from and against any and all liability related to the Bonds.

15. The terms of the Indemnity Agreement set forth a number of contractual rights and limitations provided to Westchester by the Indemnitor and the bond principals in conjunction with the issuance of the Bonds. A true and accurate redacted copy of the Indemnity Agreement is attached as **Exhibit B**. For example, "the Indemnitor shall pay … upon written request by the [Westchester] at any time, collateral security for its suretyship until the [Indemnitor] shall furnish to [Westchester] competent written evidence, satisfactory to the [Westchester], of the termination of any past, present and future liability under any Bond." The Indemnity Agreement further requires the Indemnitor to indemnify Westchester for all losses, costs, fees, and expenses incurred by reason of the execution of or breach of the Debtors' obligations secured by the Bonds.

16. Even in the absence of an indemnity agreement, by law, the Debtors, as the principal obligors of the bonded obligations, are liable to Westchester for all losses and expenses incurred in connection with the Bonds, and Westchester is subrogated to the rights of the Obligees for any obligations it pays under the Bonds. *See, e.g., Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.,* 135 F.3d 831, 834 (2d Cir. 1998).

17. To secure the obligations of the Indemnitor under the Indemnity Agreement and the Debtor-principals under the Bonds, Westchester holds an irrevocable standby letter of credit issued by PNC Bank, N.A. in the amount of $3,000,000.00 (the "Letter of Credit").

## ARGUMENT

### *THE BONDS ARE NOT PROPERTY OF THE DEBTORS' ESTATES*

18. Section 541 of the Bankruptcy Code provides, with certain exceptions, that all interests of a debtor in property as of commencement of the case become property of the debtor's estate. 11 U.S.C. § 541(a)(1). Whether a debtor has an interest in property as of the petition date is determined pursuant to applicable state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

If a debtor does not have an interest in the property on the petition date, the property is not part of the debtor's estate.

19. A debtor-principal does not have any interest in a surety bond, which is issued to protect other non-debtor third-party obligees. *In re Hallmark Builders, Inc.*, 205 B.R. 974, 976 (Bankr. M.D. Fla. 1996); *Capitol-York Const. Corp. v. Lynnhaven Marine Const., Inc. (In re Capitol-York Const. Corp.)*, 43 B.R. 52, 56 (Bankr. S.D.N.Y. 1984). As explained by the United States Bankruptcy Court for the Middle District of Florida, "[a surety] bond is essentially a third-party beneficiary contract to protect certain specified classes of people …. A surety bond is not property of the estate." *Hallmark Builders*, 205 B.R. at 976; *see also Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108, 1115 (6th Cir. 1981); *Bonjour, Gough & Stone v. Pacific Employers Ins. Co. (In re Buna Painting & Drywall Co., Inc.)*, 503 F.2d 618, 619 (9th Cir. 1974) (*per curiam*); *In re Nelson Quality Eggs*, Bk. No. 6-89-60, 1989 WL 29877, at *1 (Bankr. D. Minn. Mar. 29, 1989); *Capitol-York Const.*, 43 B.R. at 56 ("the bond is not property of the debtor's estate"); *accord Hallmark Builders*, 205 B.R. at 976 ("The Debtor was never entitled to the bond because the Debtor never had a property interest in it.").

20. The Cancellable Bonds are not property of the Debtors' estates. The Cancellable Bonds issued on behalf of the Debtors assure the Debtors' obligations to certain of the Obligees. Under no scenario would the Debtors have a valid claim to any proceeds of the Cancellable Bonds or have any rights under the Cancellable Bonds. In summary, certain of the Obligees hold the property rights in the Cancellable Bonds, not the Debtors. Accordingly, the Cancellable Bonds are not property of the Debtors' estates.

### *THE BONDS ARE FINANCIAL ACCOMMODATIONS THAT CANNOT BE ASSUMED OR ASSIGNED BY THE DEBTORS*

21. Pursuant to 11 U.S.C. § 365, a debtor or trustee may generally assume or assign an executory contract. However, 11 U.S.C. § 365(c)(2) precludes the assumption or assignment of a contract to extend financial accommodations. More specifically:

> (c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-
>
> * * *
>
> (2) such a contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor; . . . .

11 U.S.C. § 365(c)(2). According to the legislative history "[t]he purpose of this section is to make clear that a party to a transaction which is based upon the financial strength of a debtor should not be required to extend new credit to the debtor …" S. Rep. No. 95–989, 95th Cong. 2nd Sess. (1978) 58–59 5 U.S. Code & Admin. News (1978) p. 5844–45.

22. Although undefined by the Bankruptcy Code, "financial accommodations" have been defined by courts as "contracts the principle purpose of which is to extend financing to or guarantee the financial obligations of the debtor." *See Citizens and S. Nat'l Bank v. Thomas B. Hamilton, Co. Inc. (In re Thomas B. Hamilton Co., Inc.,* 969 F.2d 1013, 1020 (11th Cir. 1992); *see also Huntington Nat'l Bank Co. v. Alix (In re Cardinal Indus., Inc.)*, 146 B.R. 720, 731 (Bankr. S.D. Ohio 1992)("Courts have defined the term 'financial accommodation' as the extension of money or credit to accommodate another."). Surety bonds are predicated upon the financial strength of the debtor and obligate the surety "to make good on certain financial liabilities of the debtor in the event the debtor does not or cannot pay." *Wegner Farms v. Merchants Bonding Co. (In re Wegner Farms Co.),* 49 B.R. 440, 444 (Bankr. D. Iowa 1985); *c.f. Gov't Nat'l Mort. Corp. v. Adana Mort. Bankers, Inc. (In re Adana Mort. Bankers, Inc.)*, 12 B.R. 977, 987 (Bankr. N.D.

Ga. 1980) ("[t]he obligation to pay money on the obligation of another is a financial accommodation"). Given that surety bonds guarantee the financial obligations of a debtor-principal, courts have roundly categorized surety bonds as contracts of financial accommodation under 11 U.S.C. § 365(c)(2). *See Thomas B. Hamilton Co., Inc.,* 969 F.2d at 1020; *Wegner Farms*, 49 B.R. at 444; *see also Edwards Mobile Home Sales, Inc. v. Westchester Ins. Co. (In re Edwards Mobile Home Sales, Inc.)*, 119 B.R. 857, 860 (Bankr. M.D. Fla. 1990); *In re Placid Oil Co.*, 72 B.R. 135, 139 (Bankr. N.D. Tex. 1987) (categorizing surety bonds as an obvious example of a financial accommodation).

23. The Cancellable Bonds are extensions of surety credit that guarantee the financial obligations of the Debtors to certain of the Obligees. The Cancellable Bonds are nothing more than a replacement for a cash deposit or a letter of credit to protect the relevant Obligees as the intended beneficiaries of the Cancellable Bonds. Because the Cancellable Bonds qualify as financial accommodations, the Debtors can neither assume nor assign them.

### *CAUSE EXISTS TO LIFT THE AUTOMATIC STAY TO ALLOW CANCELLATION OF THE CANCELLABLE BONDS*

24. Westchester is entitled to relief from the automatic stay to cancel the Cancellable Bonds. Section 362(d) of the Bankruptcy Code provides that:

> (d)   On request of a party-in-interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-
>
> > (1)   for cause, including the lack of adequate protection of an interest in property of such party-in-interest; or
> >
> > (2)   with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A)   the Debtor does not have an equity interest in such property; and
> > >
> > > (B)   such property is not necessary to an effective reorganization.

4821-8202-3342, v. 1

11 U.S.C. § 362(d).

25. "Section 362 gives the court wide latitude in crafting relief from the automatic stay." *Hallmark Builders*, 205 B.R. at 977. Although the determination of cause is made on a case-by-case basis, when a debtor does not have property rights in or cannot otherwise profitably use or monetize the subject of the relief from stay motion, cause exists to lift the automatic stay. *See In re W. Electronics Inc.*, 852 F.2d 79, 83-84 (3d Cir. 1988) ("the debtor in possession did not have a legally cognizable interest in the contract and it was an abuse of discretion for the court to decline to lift the stay"). For instance, when a debtor does not have any property rights in a contract, cause exists to lift the automatic stay if the debtor's continued operation pursuant to the contract jeopardizes the counterparty's interest. *See In re B-K of Kan., Inc.*, 69 B.R. 812, 815 (Bankr. D. Kan. 1987). Similarly, if a debtor is prohibited from assuming or assigning an executory contract because it is a financial accommodation, cause exists to lift the automatic stay and allow termination by the non-debtor counterparty as the debtor cannot use or monetize the executory contract. *E.g.*, *Adana Mort. Bankers*, 12 B.R. at 988. Realistically, granting relief from stay to allow termination by the counterparty is the only possible result given a debtor's inability to assume or assign a financial accommodation. *Id.* (relief from stay to allow the "termination [of the financial accommodations] is the inevitable final disposition").[2]

26. Cause exists to lift the automatic stay to allow Westchester to cancel the Bonds. As noted above, Westchester is not obligated to continue to advance surety credit to the Debtors and is unwilling to do so. The Debtors have no property rights in the Cancellable Bonds. Moreover, as financial accommodations, the Bonds are unassumable and unassignable by the Debtors.

---

[2] The Bankruptcy Code recognizes the propriety of terminating a financial accommodation. Section 365(e)(2)(B) expressly excepts financial accommodations from the general bar to the effectiveness of *ipso facto* clauses.

4821-8202-3342, v. 1

Without the ability to use or monetize the Bonds and because cause exists to lift the automatic stay to allow Westchester to cancel the Cancellable Bonds pursuant to and subject to the terms of the Bonds and applicable law. Currently, Westchester is being forced to extend post-petition surety credit to the Debtors, the exact situation the exception for financial accommodations in 11 U.S.C. § 365 was enacted to avoid.

27. Some courts have required sureties to seek relief from stay prior to cancelling bonds in order to allow the debtor the opportunity to obtain post-petition surety credit. *See Wegner Farms*, 49 B.R. at 445. In this case, each of the Cancellable Bonds provides a notice period of between 30 and 90 days for cancellation that gives the Debtors an ample window to obtain replacement bonds. To date, the Debtors have not proposed or offered terms for Westchester's extension of post-petition surety credit, and Westchester has not accepted any such terms. Westchester should not be forced to continue to provide post-petition surety credit due to the automatic stay when the Debtors have failed to offer terms for a consensual extension of post-petition surety credit.

### THE DEBTORS SHOULD BE REQUIRED TO PROVIDE FURTHER COLLATERAL TO WESTCHESTER AS ADEQUATE PROTECTION FOR THE POST-PETITION EXTENSION OF SURETY CREDIT

28. Until the Bonds are terminated, Westchester is entitled to adequate protection to protect against claims that may be asserted under the Bonds post-petition. Westchester hereby provides notice that it will not continue to extend surety credit to the Debtors. Since any continued collection of patient funds would constitute an unauthorized extension of surety credit under the Bonds, the Debtors should be required to provide collateral to Westchester as adequate protection for any post-petition involuntary extension of surety credit.[3] The collateral provided to

---

[3] Although the face value of the Letter of Credit is greater than the aggregate penal sum of the Cancellable Bonds, it is less than the aggregate penal sum of the Bonds.

Westchester should be in an amount sufficient to assure the Debtors' post-petition performance of its bonded obligations and to secure any losses incurred by Westchester under the Bonds.

29. A debtor has the burden of proving that a creditor's interest in property is adequately protected. *In re Timbers of Inwood Forest Assocs., Ltd.,* 793 F.2d 1380, 1388 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, Ltd., 484 U.S. 365 (1988); *see Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.),* 490 B.R. 470, 477–78 (S.D.N.Y. 2013). The general purpose of the adequate protection requirements in the Bankruptcy Code is to protect a creditor from prejudice to its interests in property due to the pendency of the automatic stay. *Travelers Life and Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton, Inc.)*, 98 B.R. 170, 173 (S.D.N.Y. 1989). When the parties have already agreed to the terms of adequate protection, courts generally respect such bargained-for protections and craft adequate protection to reflect the parties' expectations. *See Greives v. Bank of W. Ind. (In re Greives)*, 81 B.R. 912, 969 (Bankr. N.D. Ind. 1987) (requiring debtors to obtain insurance as part of adequate protection based on the associated requirement in the underlying agreement). Pursuant to the Indemnity Agreement, the Indemnitor and Westchester have already agreed that the Indemnitor must provide collateral sufficient to safeguard Westchester from losses under the Bonds as adequate protection. Accordingly, the Court should require the Debtors to post collateral sufficient to protect Westchester pursuant to the terms of the Indemnity Agreement. In this case, the amount is $1,099,566.00, the difference between the aggregate penal sum of the Bonds and the face value of the Letter of Credit.

### WAIVER OF STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(3)

30. Cause exists to waive the 14-day stay imposed by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4001(a)(3). Bankruptcy Rule 4001(a)(3) imposes a 14-day stay

11

on the effect of an order granting relief from the automatic stay.  Cause is an elastic concept that considers the equities and balance of the harms between the parties.  In a situation analogous to this case, a court concluded that cause exists for an insurer to immediately cancel an insurance policy where the debtor could not provide adequate protection of the insurer's interests.  *See In re QA3 Fin. Corp.*, No. BK11-80297-TJM, 2011 WL 1297840, at *3 (Bankr. D. Neb. Apr. 5, 2011).  Here, not only can the Debtor not provide adequate protection but the Cancellable Bonds include a 30-day to 90-day notice provisions.  As a result, even after the entry of an order granting of stay relief, Westchester will still have to wait at least 30 days before the cancellation of the Bonds is effective.  These are same periods that the Debtors would have outside of bankruptcy.  As a result, cause exists to waive the 14-day stay imposed by Bankruptcy Rule 4001(a)(3).

**WHEREFORE,** Westchester respectfully requests that the Court enter the proposed order: (1) granting Westchester relief from the automatic stay to cancel the Cancellable Bonds and waiving the 14-day stay imposed by Bankruptcy rule 4001(a)(3), (2) providing Westchester with adequate protection by requiring the Debtors to deposit cash or provide a letter of credit in an amount of $1,099,566.00, and (3) granting such other relief as is appropriate.

Respectfully submitted,

MANIER & HEROD, P.C.

/s/ Michael E. Collins
Michael E. Collins (TX Bar No. 24029006)
Robert W. Miller (admitted *pro hac vice*)
1201 Demonbreun St., Suite 900
Nashville, TN  37203
Telephone:   (615) 742-9350
Facsimile:   (615) 242-4203
E-mail:      mcollins@manierherod.com

*Attorneys for Westchester Fire Insurance Company*

12

4821-8202-3342, v. 1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and served upon all parties receiving notice pursuant to the CM/ECF system on this the December 27, 2019, as well as the following parties via U.S. mail, postage prepaid:

| | |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>Attn: Marty L. Brimmage, Jr. | Akin Gump Strauss Hauer & Feld LLP<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>Attn: Ira S. Dizengoff |
| Davis Polk & Wardwell, LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attn: Brian M. Resnick | Norton Rose Fulbright, LLP<br>Fulbright Tower<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Attn: William R. Greendyke |
| Office of the United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002 | White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Attn: Scott Greissman |
| Gray Reed,<br>1300 Post Oak Blvd, Suite 2000. Houston, TX 77056<br>Attn: Jason S. Brookner | PNC Bank<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Attn: Brian Trust |

/s/ Michael E. Collins
Michael E. Collins

4821-8202-3342, v. 1