IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re )<br>)<br>)<br>)<br>SOUTHERN FOODS GROUP, *et al*, )<br>)<br>Debtors.¹ )<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 19-36313 (DRJ)<br>Jointly Administered<br><br>Hearing Date:  March 12, 2020<br>Hearing Time:  2:00 P.M. |

**JOINDER, LIMITED OBJECTION, AND RESERVATION OF RIGHTS OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS TO DEBTORS' MOTION FOR APPROVAL OF BIDDING PROCEDURES MOTION AND STALKING HORSE ASSET PURCHASE AGREEMENT (RELATED TO DOCKET Nos. 925, 935)**

The International Brotherhood of Teamsters, by and through their undersigned counsel, hereby makes this Limited Objection and Reservation of Rights (the "Objection") and Joins in the Objection of the Official Committee of Unsecured Creditors, with respect to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Designation of Dairy Farmers of America, Inc. as the Stalking Horse Bidder for Substantially All of Debtors' Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling Auction For, and*

---

¹ The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group (1364); Dean Foods Co. (9681); Alta-Dena Certified Dairy (1347); Berkeley Farms (8965); Cascade Equity Realty (3940); Country Fresh (6303); Dairy Information Systems Holdings (9144); Dairy Information Systems (0009); Dean Dairy Holdings (9188); Dean East II (9192); Dean East (8751); Dean Foods North Central (7858); Dean Foods of Wisconsin (2504); Dean Holding Co. (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Co. (9785); Dean Management (7782); Dean Puerto Rico Holdings (6832); Dean Services (2168); Dean Transportation, Inc. (8896); Dean West II (9190); Dean West (8753); DFC Aviation Services (1600); DFC Energy Partners (3889); DFC Ventures (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail (9828); Garelick Farms (3221); Mayfield Dairy Farms (3008); Midwest Ice Cream Co. (0130); Model Dairy (7981); Reiter Dairy (3675); Sampson Ventures (7714); Shenandoah's Pride (2858); Steve's Ice Cream (6807); Suiza Dairy Group (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan (7200).

1

*Hearing to Approve, Sale of Debtors' Assets, (F) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (G) Approving Assumption and Assignment Procedures, and (H) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Bidding Procedures Motion") [Dkt. 925].

## BACKGROUND

1. On November 12, 2019 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 to 1532 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

2. The Debtors continue to manage and operate their businesses as debtors in possession as permitted by 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in these chapter 11 cases. The United States Trustee has appointed an official committee of unsecured creditors.

3. At the Petition Date, Debtors employed approximately 15,000 people in full time and part time positions. Approximately 40%, or 6,000, of these employees are represented by a labor organization and work under terms established by collective bargaining agreements ("CBAs"). The Teamsters thus represent a majority of the Debtors' unionized employees at locations across the continental United States and Hawaii.

4. The International Brotherhood of Teamsters and 57 of its affiliated local unions (collectively, "Teamsters") represent approximately one-third, or 5,100, of Debtors' hourly employees. The Teamsters are party to over 60 different collective bargaining agreements

2

establishing wages, hours, and conditions of employment for bargaining unit members with the Debtors in these Cases, including Alta Dena Certified Dairy; Berkley Farms, Inc.; Country Fresh LLC; Dean Dairy Holdings Co.; Dean Foods North Central; Dean Foods Co.; Dean Foods of Wisconsin; Dean Transportation, Inc.; Fresh Dairy Delivery; Garelick Farms; Mayfield Dairy Farms; Midwest Ice Cream Co.; Reiter Dairy; Southern Foods Group; Suiza Dairy Group; Tuscan/Lehigh Dairies. The bargaining units are located throughout the continental United States and Hawaii. Some of these agreements were entered into as late as November 2019.

5. The Teamsters are creditors in this case in their capacity as the exclusive bargaining representatives of these employees, who are also creditors in their own right. *U.S. Truck Co. v. Teamsters*, 89 B.R. 618, 621-623 (E.D. Mich. 1988) (holding that the Teamsters union is the creditor which owns claims arising under the collective bargaining agreement); *In re Altair Airlines, Inc.*, 727 F.2d 88 (3rd Cir. 1984).

6. On February 17, 2020, the Debtors filed the Bidding Procedures Motion as well as a Stalking Horse Asset Purchase Agreement Dated as of February 16, 2020. (the "APA")

7. The Debtors currently operate 57 manufacturing facilities (each a "**Facility**") in 29 states located largely based on customer needs and other market factors, with distribution capabilities across all 50 states. [Motion, ¶11] In addition to those 57 manufacturing facilities, Debtors operate dozens of warehouses, rail stops, and transportation depots.

8. The Bid Procedures indicate that for a bid to be Qualified, it must:

> Include[] a statement of proposed terms for employees, including with respect to the Debtors' affected collective bargaining agreements and affected labor unions.

[Motion, 18 at sec. D(3)(d); see also Proposed Bidding Procedures, Doc. 925-2, 26].

9. The APA provides at section 8.04, that with respect to collective bargaining agreements:

3

> (c) *Collective Bargaining Agreements*. Buyer does not accept or assume any Collective Bargaining Agreements to which Seller or any of its Subsidiaries is a party to or subject to, and expressly declines to be bound by or accept the terms of any such Collective Bargaining Agreements, and all successor obligations under any Collective Bargaining Agreement are for the avoidance of doubt Excluded Liabilities for purposes of this Agreement, unless any such Collective Bargaining Agreement is designated as a Desired 365 Contract after being modified in a manner acceptable to Buyer pursuant to Section 1113 of the Bankruptcy Code, which in no event will include Buyer contributing to, being a successor to Seller for purposes of, or having any Liabilities with respect to, a Multiemployer Plan. Other than the Assumed Plan Liabilities, Buyer shall not be obligated to, and does not, accept or adopt any wage rates, employee benefits, employee policies, or any other terms and conditions of employment. Any successor liability with respect to any Seller Benefit Plan (including any Multiemployer Plan) other than any Assumed Plan Liabilities is for the avoidance of doubt an Excluded Liability.

The APA further provides that rejection of the CBAs or modification of the CBAs is a condition precedent to the proposed sale.

> Section 9.05. Collective Bargaining Agreements. The Bankruptcy Court shall have entered an order approving (a) the rejection of each Collective Bargaining Agreement (other than any such agreement solely and exclusively related to an Excluded Facility) or (b) the modification of each Collective Bargaining Agreement (other than any such agreement solely and exclusively related to an Excluded Facility) in a manner acceptable, in form and substance, to Buyer, in each case, pursuant to Section 1113 of the Bankruptcy Code, and the order approving each such rejection or modification shall have become a Final Order.

[Doc. 935-1]

10. Over the weekend of March 6, 2020, Debtors for the first time made a written proposal under §1113 of the Code. The proposal was presented to the International Brotherhood of Teamsters, however, which is not the exclusive bargaining representative of the local unions and employees under §1113. Notwithstanding that the proposal was not made to the exclusive bargaining representative of the local unions, aside from proposing the elimination of participation in health, welfare, and pension plans, the proposal itself is vague in critical respects so that it is unclear what affected Teamsters' members benefits would be and whether there would be any post-sale contracts with a Buyer. The proposal specifically states that the Buyer has a "free way

out" of the CBAs and could automatically and unilaterally terminate all CBAs after the sale, which makes the negotiation process meaningless.

11. While the APA includes a list of "excluded" facilities, the precise list of depots, smaller or satellite plans and facilities, and warehouses deemed to be "included" or "excluded" is not yet known.

12. In light of the vague proposal and the opacity of the APA's included facility list, it is unclear to the Teamsters what is being proposed concerning bargaining unit members' terms and conditions of employment before and after sale; which of their members are affected; or how the sale will have an impact on their contracts and claims.

13. While discussions with the Buyer, potential competing bidders, or the Debtors, or some combination(s) of them are anticipated, there has not yet been substantial progress as to any of these potential negotiations.

## RESERVATION OF RIGHTS

14. Given the uncertainty surrounding the impact of the Bid Procedures and the APA upon the Teamsters' rights, claims, contracts and benefits, the Teamsters reserve all rights with respect to the Debtors' obligations to the collective bargaining representatives under the pre-petition CBAs, including without limitation, all contractual rights, claims, liabilities and accruals. Nothing herein shall be deemed to waive any of the Teamsters' procedural, substantive, remedial or other rights and privileges including the rights to (i) amend this Objection and Reservation of Rights; (ii) raise any additional objections to the Bid Procedures Motion, Designation of Stalking Horse Bidder, Entry into the APA, Scheduling of or Conduct of Auction, Approval of the Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, or the Form and Manner of any of these things; or (iii) join any objection or reservation raised by one or more

parties in interest, whether before or at the hearing on the Bidding Procedures Motion, or any subsequent hearing in connection with the sale of the Debtors' assets.

15. Over half of the collective bargaining agreements – covering a majority of Debtors' Teamster-represented warehouses, garages, transportation depots, manufacturing and other facilities – contain provisions making those agreements binding upon Debtors' successors or assigns. Although the specific successorship language varies, several agreements covering facilities contain the following clause:

> This Agreement shall be binding upon the Parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or any portion thereof, is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than the effective date of sale.

The foregoing successorship language is included in CBAs between the Teamsters and Debtors covering Included Assets under the APA.

16. <u>The Bidding Procedures Presume an Illegal Modification of the Collective Bargaining Agreements.</u>  The CBAs have not been modified or rejected, and therefore are still binding upon the Debtors because of the requirements of 11 U.S.C. §1113(f).  The Asset Purchase Agreement however specifically requires that the Court have already entered an order rejecting the agreements or modifying them to the requirements of the Buyer on or before April 27, 2020.  This requirement presumes that the Court has already decided (or will decide) that the successorship clauses will be rejected before the Debtors have even made such a proposal.  It cannot be known, therefore, whether the proposed bid procedures are lawful.[2]

---

[2] The agreements might be assigned, making this objection moot, or the Teamsters might reach other agreements with the purchaser.  Failing such eventualities, however, the sale will violate §1113 because it

17. A debtor must continue to comply with its collective bargaining agreements unless and until a court rejects them or the parties modify them. 11 U.S.C. §1113. A debtor cannot, in a §363 sale, circumvent §1113, meaning that the sale must include the successorship obligation contained in the labor contracts. In <u>Journal Register</u>, 488 B.R. 835, 840 (Bankr. S.D.N.Y. 2013), the court explained:

> The collective bargaining agreement continues to bind the debtor post-petition, and a debtor cannot reject a collective bargaining agreement except in accordance with Bankruptcy Code § 1113. … A debtor cannot bypass § 1113 and obtain a *de facto* rejection of its collective bargaining agreement simply by refusing to perform it. Although the obligation to comply with the successor clause is only one duty among many under a collective bargaining agreement, a debtor's intentional breach of a material provision of the collective bargaining agreement is tantamount to a rejection, or alternatively, a unilateral alteration of its provisions in violation of Bankruptcy Code § 1113(f). Thus, *as a general proposition, a sale under Bankruptcy Code §363 cannot circumvent the condition imposed under a successor clause absent compliance with § 1113.*

18. In the APA, the Debtors have essentially committed themselves in advance to a sale to a Buyer that will dictate unilaterally what must be contained in a CBA going forward. This situation precludes good faith negotiations between the Debtors and the collective bargaining representatives. This agreement in turn suggests that the Court is not deciding the issues under §1113, but rather rationalizing after-the-fact whatever the Buyer may declare is "necessary." <u>In re The Lady H Coal Co., Inc.</u>, 193 B.R. 233, 243 (S.D. W. Va. 1996) ("[A] debtor has a duty under §1113 to not obligate itself prior to negotiations with its union employees, which would likely

---

will be carried out in direct contravention to the successorship clauses in the labor contracts. Because a debtor can only obtain approval of a reorganization plan if it complies with all provisions of Chapter 11, 11 U.S.C. §1129(a)(2), it will effectively become impossible for the Debtors to reorganize within the meaning of Chapter 11. While it is theoretically possible to complete the §1113 process in the 46 days between March 12 and April 27, this tight schedule all but presumes that the Court will reject the CBAs regardless of the law or merits but merely to facilitate a sale which has become the Debtors' alternative to liquidation. Section 1113 contemplates bona fide negotiations and a genuine hearing upon the merits, not a foregone conclusion.

7

preclude reaching a compromise. … In this case, the Debtors could not have bargained in good faith as the Debtors were, prior to any negotiations with the union, locked into an agreement where the purchaser was not assuming the [collective bargaining agreement]").

## JOINDER IN OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

19. The Teamsters hereby join in the objections and arguments made by the Official Committee of Unsecured Creditors to the Debtors' Motion for Approval of Bidding Procedures and Stalking Horse Asset Purchase Agreement.

**WHEREFORE,** the Teamsters respectfully request that the Court:

A) Deny the relief requested to the extent it requires any modification to any CBA to which the Teamsters have not consented;

B) Require that any order authorizing the relief requested in the Bidding Procedures Motion adjust the mandated deadlines to permit compliance with the provisions of the Code and other federal statutes pertaining to the ratification, rejection or assumption of CBAs; and

C) Grant the Teamsters such other and further relief as the Court deems just and proper.

Dated this 9th day of March, 2020.

/s/ Sara J. Geenen
Frederick Perillo (Wis. Bar 100840)
Sara J. Geenen (Wis. Bar 1052748)
The Previant Law Firm, s.c.
310 W Wisconsin Ave, #100MW
Milwaukee, WI 53203
sjg@previant.com