# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*[1] | § § | Case No. 19-36313 (DRJ) |
| Debtors. | § § § | (Jointly Administered) |

**OBJECTION OF THE STOP & SHOP SUPERMARKET COMPANY LLC AND FOOD LION LLC TO MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (B) APPROVING THE DESIGNATION OF DAIRY FARMERS OF AMERICA, INC. AS THE STALKING HORSE BIDDER FOR SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (C) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, (D) APPROVING BID PROTECTIONS, (E) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (F) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, (G) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (H) GRANTING RELATED RELIEF AND (II)(A) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) <u>GRANTING RELATED RELIEF</u>**
**(Relates to Docket No. 925)**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

The Stop & Shop Supermarket Company LLC ("**Stop & Shop**") and Food Lion LLC ("**Food Lion**" and collectively with Stop & Shop, the "**Retailers**") hereby file this objection ( the "**Objection**") to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Designation of Dairy Farmers of America, Inc. as the Stalking Horse Bidder for Substantially All of Debtors' Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (F) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (G) Approving Assumption and Assignment Procedures, and (H) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "**Bid Procedures Motion**") [Docket No. 925] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Retailers request that the Court decline to approve the Bidding Procedures without full, public disclosure of the per-Facility allocation of the Purchase Price in the Stalking Horse Agreement.[2]  As has been previously raised in this case and acknowledged by the Court, DFA has huge market power in the dairy industry, and its acquisition of the Debtors' assets raises antitrust concerns.[3]  The Retailers, as the owners of supermarket chains in New England, the Mid-Atlantic and Southeastern United States, are particularly concerned about the competition-destroying effects of DFA's acquisition of the Debtors' assets.

---

[2]  Capitalized terms not defined here have the meaning ascribed to them in the Bid Procedures Motion.

[3]  First Day H'rg Tr. 21:24-22:2, 64:16-65:20 (Nov. 13, 2019) [Docket No. 270].

2

2.     While it is unknown at this time whether DFA's acquisition will pass muster under Antitrust Laws, it is possible that DFA may be forced to remove certain Facilities from the proposed acquisition in order to obtain antitrust approval.  An allocation of the purchase price per Facility in the Stalking Horse Agreement will allow the Debtors and other parties in interest to quickly and efficiently evaluate alternative bids for those assets without having to conduct any remarketing process.  This will produce substantial savings for the Debtors estates and promote the speedy resolution of Antitrust Law matters that may arise.

3.     In addition to the foregoing concerns about the anti-competitive nature of DFA's bid, the Retailers object to the Bidding Procedures' failure to allocate DFA's bid over each of the Facilities.  Each of the Facilities is, effectively, a stand-alone facility that can be sold individually.  Numerous regional dairy producers and processors would be capable of bidding on a subset of the Facilities, thereby increasing the likelihood of a fulsome sale process.  As a result, this is a case in which the value of all the individual sales may exceed the global bid proposed by DFA.  The Retailers object to the Bidding Procedures as having a chilling effect on the bidding for the Debtors' assets and not being tailored to maximize the value to be obtained from this sale.  Therefore, the Bidding Procedures should not be approved in this form because they are not in in the best interests of the Debtors' estates.

**BACKGROUND**

4.     Stop & Shop and Food Lion collectively own and operate over 1,400 supermarkets in New England, the Mid-Atlantic and the Southeastern United States.  In the ordinary course of their business, the Retailers purchase processed milk and other dairy products directly from the Debtors and DFA for retail sale at certain of its supermarket stores.

5.     On November 12, 2019 (the "**Petition Date**") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**")

in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). On February 17, 2020, the Debtors filed the Bid Procedures Motion [Docket No. 925] and the Stalking Horse Agreement [Docket No. 935].

## OBJECTION

6. The Retailers have significant concerns that DFA's acquisition of the Debtors' assets will result in a monopoly for raw milk in various markets and an unreasonable restraint of trade in violation of Antitrust Laws. The Debtors are already "the largest processor and direct-to-store distributor of fresh fluid milk and other dairy and dairy case products in the United States."[4] DFA is the largest single milk supplier to the Debtors and the largest milk cooperative in the country.[5] DFA also already operates many milk processing and distribution facilities. A combination of the Debtors and DFA will result in a company that is both the largest milk supplier and the largest milk distributor in the country.

7. Section 7 of the Clayton Act provides that "no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce . . . where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."[6] This provision applies to asset sales in bankruptcy.[7] The Retailers contend that DFA's acquisition of the Stalking Horse Assets may violate this section of the Clayton Act or other Antitrust Laws due to the reduction in competition

---

[4] Decl. of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings (Rahlfs Decl.) [Docket No. 46] ¶ 8.

[5] *Id.* at ¶ 5.

[6] 15 U.S.C. § 18.

[7] *See, e.g.*, *In re AMR Corp.*, 527 B.R. 874, 882 (Bankr. S.D.N.Y. 2015) (addressing Section 7 of the Clayton Act with respect to a merger in bankruptcy).

in the fluid milk and ice cream market caused by the combination of the Debtors and DFA's businesses.[8]

8. For example, both the Debtors and DFA have a history of anticompetitive behavior in the Southeastern United States. *See In re Southeast Milk Antitrust Litig.,* 08-MD-100 (E.D. Tenn.). As a result of this conduct, the Debtors already dominate the Southeastern United States fluid milk and ice cream market where Food Lion owns and operates its supermarkets. In some instances, the Debtors are now the only viable source of processed milk for Food Lion's stores. Further consolidation of the market through a combination with DFA would only serve to increase the monopoly power of DFA/Dean and allow it to significantly raise the costs of its rivals, thereby reducing competition in the marketplace. This will inevitably result in higher prices and be subject to intense antitrust scrutiny by the U.S. Department of Justice and other interested parties.

9. If the Retailers' contentions are correct, DFA may be forced to remove certain of the Facilities from the Stalking Horse Assets to comply with applicable Antitrust Law. If so, the Debtors may need to resolicit bids for whatever Facilities or other Stalking Horse Assets DFA will be required to remove from the sale. In that event, having the per-Facility purchase price allocation of the Stalking Horse Bid available and public means that the Debtors and other parties in interest will be able to compare different bids based solely on the Facilities DFA is required to remove without having to re-run the entire bidding process. This will provide significant savings to the Debtors' estates and speed the resolution of antitrust matters related to the sale.

10. Further, section 2(b) of the Bidding Procedures provides that a competing bid will only be considered if it "allocates the Bid consideration among the Bid Assets and Contracts and

---

[8] DFA's purchase of the Debtors' assets may also violate other provisions of Antitrust Law. This example is provided purely for illustrative purposes, and the Retailers reserve all rights with respect to any claims they may have under applicable law.

Leases to be assumed on a per Facility basis."[9]  Thus, while bidders other than the Stalking Horse Bidder are required to allocate their Bid Consideration on a per-Facility basis, there is no requirement that the Stalking Horse Bid provide such an allocation.  This makes it difficult to compare, "apples to apples," the Stalking Horse Bid with other bids, and indeed, may result a chilling effect on the sale process.

### CONCLUSION

11. For the reasons stated above, the Court should not approve the Bidding Procedures unless the Stalking Horse Bidder publicly discloses the per-Facility purchase price allocation of the consideration in the Stalking Horse Bid.

Dated: March 9, 2020
Houston, Texas

**HUNTON ANDREWS KURTH, LLP**

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II
(Texas Bar No. 24012503)
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:    713-220-4200
Fax:    713-220-4285
Email: taddavidson@HuntonAK.com

-and-

Gregory G. Hesse
(Texas Bar No. 09549419)
1445 Ross Avenue, Suite 3700
Dallas, Texas  75202
Tel:    214-979-3000
Fax:    214-880-0011
Email: ghesse@HuntonAK.com

*Counsel for The Stop & Shop Supermarket Company LLC and Food Lion LLC*

---

[9] Bid Procedures § 2(b).

**C**ERTIFICATE OF **S**ERVICE

The undersigned hereby certifies that on March 9, 2020, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system on the parties registered to receive electronic notices in this case.

By: /s/ *Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II