United States Bankruptcy Court for the Southern District of Texas, Houston Division

Southern Foods Group, LLC d/b/a Dean Foods Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4419
Beaverton, OR 97076-4419

Name of Debtor: **Dean Foods Company**
Case Number: **19-36314**

☐ Check box if the address on the envelope sent to you by the court needs to be updated. Identify your replacement address in Part 1 (Section 3) below.

For Court Use Only

# Proof of Claim (Official Form 410)

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of claims under 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim): **Alliant Technologies, L.L.C. d/b/a TenFour**

Other names the creditor used with the debtor: _____

**2. Has this claim been acquired from someone else?** ☒ No ☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

See Addendum

Name _____

_____
Number    Street

_____
City        State     ZIP Code

Country (if international): _____

Contact phone: _____

Contact email: _____

Where should payments to the creditor be sent? (if different)

See Addendum

Name _____

_____
Number    Street

_____
City        State     ZIP Code

Country (if international): _____

Contact phone: _____

Contact email: _____

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims register (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:

D 1 2 8

**7. How much is the claim?**
$ 333,935.73 pre-petition (See Addendum)

Does this amount include interest or other charges?
☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Services Performed

**9. Is all or part of the claim secured?**

☐ No    See Addendum

☐ Yes.   The claim is secured by a lien on property.
**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

_____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:** $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any
default as of the date of the petition:** $_____

**Annual Interest Rate (when case was filed)** _____%
                         ☐ Fixed  ☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of petition.

$_____

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property:

_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☐ No

☒ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☒ Other. Specify subsection of 11 U.S.C. § 507 (a)(2) that applies.

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$ *See Addendum*

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☒ No

☐ Yes. Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9): $_____

---

| **Part 3:** | **Sign Below** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   March 17, 2020           [signature]
                  MM / DD / YYYY      Signature

Print the name of the person who is completing and signing this claim:

Name    Mark                    P                    Cantaluppi
        First name              Middle name          Last name

Title   Chief Financial Officer

Company  Alliant Technologies, L.L.C. d/b/a TenFour
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  360           Mt Kemble Avenue
         Number        Street

         Morristown              New Jersey      07960
         City                    State           ZIP Code

Contact Phone   (973) 775-4178        Email  MCantaluppi@tenfour.com

---

ADDENDUM TO PROOF OF CLAIM OF

ALLIANT TECHNOLOGIES, L.L.C. d/b/a TENFOUR

(Dean Foods Company, Case No. 19-36314)

Alliant Technologies, L.L.C., d/b/a TenFour ("TenFour") makes and files this Proof of Claim under 11 U.S.C. § 501 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3003 against debtor Dean Foods Company ("Dean Foods").

Pursuant to the following documents (the "Documents"), TenFour agreed to provide technology services to Dean Foods, for which Dean Foods agreed to make monthly payments to TenFour:

- Master Services Agreement effective September 4, 2013 between TenFour and KII Telecommunications, LLC ("KII"), pursuant to which any member of KII could become a "Participating Member" under the Master Services Agreement;

- Participation Agreement entered into December 10, 2015 between Alliant and Dean Foods, pursuant to which Dean Foods became a Participating Member under the Master Services Agreement;

- Alliant Service Addendum for KII Companies between TenFour and Dean Foods; and

- Registration of Alternate Name filed with the New Jersey State Treasurer on February 8, 2017, pursuant to which Alliant Technologies, L.L.C. is doing business as TenFour.

True and correct copies of the Documents are appended hereto.

Exhibit A: TenFour's Objection to Cure Costs

Under the Documents, TenFour provided technology services to Dean Foods. In connection with such services, TenFour also placed certain equipment owned by TenFour at Dean Foods' locations. Under the Documents, Dean Foods pays TenFour monthly fees for the technology services and use of TenFour's equipment.

Also appended hereto are two unpaid, pre-petition invoices sent by TenFour to Dean Foods. As of November 12, 2019 (the "Petition Date"), the accrued and unpaid obligation under the Documents, as reflected in the appended invoices, was $333,935.73 (the "Pre-Petition Amount").

In addition to the Pre-Petition Amount, the accrued and unpaid post-Petition Date obligation under the Documents is $234,720.27 for the period February 1, 2020 through February 29, 2020, as reflected on the additional invoices appended hereto (the "Post-Petition Amount"). The Post-Petition Amount is entitled to administrative priority under Bankruptcy Code Sections 507(a)(2) and 503(b)(1)(A).

Based on the foregoing, the cure amount as of the date hereof is $568,656.00.

TenFour also has a claim for all future amounts owed under the Documents.

\*      \*      \*      \*      \*

The filing of this Proof of Claim is not intended to and does not submit TenFour to the jurisdiction of the Bankruptcy Court for any purpose.

TenFour expressly reserves its right to amend or further supplement this Proof of Claim in all respects, including but not limited to liquidating any unliquidated amounts, asserting a claim or claims for additional amounts due and/or claims based on alternative theories or liabilities, and any claims for damages arising from events or conduct by Dean Foods. TenFour

further reserves the right to assert all or part of its claim, including without limitation, the Post-Petition Amount, and any other post-Petition Date amounts, as administrative claims or other priority claims, and to file additional claim(s) for administrative claims or other priority claims. Any and all of the foregoing claims asserted in this Proof of Claim arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. § 507(a)(2), 11 U.S.C. § 503 or applicable court order.

Filing this Proof of Claim is not: (i) a waiver or release of the TenFour's rights against any person, entity or property, (ii) a consent by TenFour to the jurisdiction of the Bankruptcy Court with respect to the subject matter of this claim, any objections or other proceedings commenced with respect thereto, or any other proceeding commenced in the Bankruptcy Case or otherwise involving TenFour, (iii) consent by TenFour to trial by jury as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (iv) a waiver of the right of TenFour to a trial by jury in any matter herein or in any case, controversy or proceeding related hereto, (v) a waiver of the right of TenFour to have final orders in non-core matters entered only after *de novo* review by the United States District Court, or (vi) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of the Bankruptcy Court with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in the Bankruptcy Case against or otherwise involving TenFour.

TenFour does not waive any of its rights to any claims asserted herein by not ascribing a specific dollar amount thereto at this time.

By executing and filing this Proof of Claim, TenFour does not waive any right to any security or any other right or rights with respect to any claim it has or may have against Dean Foods or any other person, persons, entity or entities. TenFour expressly reserves all rights accruing to it and the filing of this Proof of Claim is not intended and should not to be construed to be as: (i) an election of remedies, (ii) a waiver of any past, present or future defaults or events of default under any of documents described herein, (iii) a waiver or limitation of any of TenFour's rights, including without limitation, a waiver of the obligations owing to TenFour or rights, claims, actions or defenses to which TenFour is or may be entitled under the License Agreement, in law or equity or otherwise, or (iv) a waiver or limitation of any other rights of TenFour.

The amount of all payments has been credited and deducted for the purpose of making this Proof of Claim.

All notices relating to this Proof of Claim should be sent to:

Theodore A. Cohen, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

-and-

Alliant Technologies, L.L.C., d/b/a TenFour
Attn: Gary Finkel, VP Finance
360 Mt. Kemble Avenue
Morristown, New Jersey 07960

All payments relating to this Proof of Claim should be sent to:

Alliant Technologies, L.L.C., d/b/a TenFour
Attn: Gary Finkel, VP Finance
360 Mt. Kemble Avenue
Morristown, New Jersey 07960

alliant - kii msa v1 - (execution version 09-04-13).docx

## MASTER SERVICES AGREEMENT

This Master Services Agreement ("Master Agreement"), effective September 4, 2013 (the "Effective Date"), is made and entered into between Alliant Technologies, LLC, a New Jersey limited liability company, ("Alliant") and KII Telecommunications, LLC, a Delaware limited liability company ("KII"). Except where the context indicates otherwise, the term "party" means Alliant, KII or each Participating Member and the term "parties" means collectively Alliant, KII and each Participating Member.

1) **Definitions.**

   a) "Configuration Item" ("CI") means a discrete, measurable object requiring management. Its configuration or process may be modified from time to time. Example CIs may include electronic devices, circuits, application software, software code objects or reports.

   b) "Knowledge Base" is a repository of information maintained by Alliant, which includes, among other things, Participating Member Information as well as Alliant's methods and procedures for providing the Services.

   c) "Non-Participating Member Equipment" means equipment including, but not limited to configuration items (CI) (e.g., servers, switches, routers and software licenses installed on the equipment) supplied by Alliant or anyone other than a Participating Member.

   d) "Participating Member Information" means Participating Member proprietary information stored in the Knowledge Base.

   e) "Participating Member" means a member of KII including members that join KII at any time during the Term of this Master Agreement.

   f) "Participation Agreement" means the agreement that a Participating Member will enter into with Alliant in order to be able to purchase Services.

   g) "Service Rate Card" means the fees that Alliant will charge the Participating Members for the Services. The Service Rate Cards in effect as of the Effective Date are set forth on Appendix D.

   h) "Services" means the services described in a Service Addendum or SOW that is executed between Alliant and a Participating Member pursuant to a Participation Agreement.

   i) "Service Activation Date" means the earlier of (i) the date on which Alliant begins providing the Services to a Participating Member pursuant to a Service Addendum or (ii) the date on which the Services are first made available by Alliant for use by a Participating Member pursuant to a Service Addendum.

   j) "Service Addendum(s)" means a schedule to the Participation Agreement that describes Services to be provided by Alliant to the Participating Member. A Service Addendum includes, among other things, a pricing schedule, a description of the Service and its features, and a service level agreement (where applicable). Each Service Addendum shall be issued and accepted by the parties in accordance with the provisions of this Master Agreement and shall only be effective when executed by Alliant.

   k) "Statement of Work (SOW)" means a schedule to a Participation Agreement that describes a specific consulting or deployment Service offered by Alliant. An SOW may include, among other things, a description of the services to be provided by Alliant, milestones, project plans (where applicable) and fees for the Services. Each SOW shall be issued and accepted by the parties in accordance with the provisions of this Master Agreement and shall only be effective when executed by Alliant.

alliant - kii msa v1 - (execution version 09-04-13).docx

2) **Services.** Alliant will offer the Services to all Participating Members. A Participating Member who desires to purchase any of the Services will enter into a Participation Agreement with Alliant in substantially the form set forth as Appendix A. Alliant will provide copies of all executed Service Addendums to KII. The particular Services that each Participating Member purchases shall be described in a Service Addendum and/or SOW. Each Service Addendum and SOW shall become a schedule to the Participation Agreement. All Participation Agreements entered into pursuant to this Master Agreement shall be governed by the terms set forth in this Master Agreement. In the event of a conflict between the terms of this Master Agreement on the one hand and the terms of a Participation Agreement on the other hand, the terms of the Participation Agreement shall prevail.

3) **Term.** This Master Agreement shall commence on the Effective Date and, unless terminated in accordance with Section 4 below, shall continue in effect for as long as Alliant is providing Services to any Participating Member under any Participation Agreement (the "Term"). Issuance or acceptance of a newly signed Participation Agreement will automatically reinstate this Master Agreement even if time has lapsed since the completion of Services under all prior Participation Agreements. The term of each Service Addendum shall be specified in the Service Addendum.

4) **Termination of Master Agreement.** Either Alliant or KII may terminate this Master Agreement effective upon delivery of written notice to the other party upon one or more of the following grounds ("Cause"): (i) the institution of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of debts by the other party; (ii) the making of an assignment for the benefit of creditors by the other party; (iii) the dissolution of the other party; or (iv) any material breach of this Master Agreement by the other party where such breach has not been cured within a period of thirty (30) days following written notice thereof by the non-breaching party. All Participation Agreements shall terminate automatically upon termination of the Master Agreement. No Participating Member shall have the right to terminate this Master Agreement pursuant to this Section 4 or otherwise.

5) **Termination of a Participation Agreement, Service Addendum or SOW.** A Participation Agreement may be terminated by Alliant for Cause automatically if and when: (a) the Participating Member ceases to be a Participating Member of KII or (b) the Participating Member breaches any term or condition of the MSA or Participation Agreement and fails to cure such breach within 30 days after receiving notice of such breach from Alliant; or (c) the MSA is terminated for any reason. The Participating Member shall not be entitled to notice or a right to cure if the grounds for termination are under subsection (c) above. Upon termination of the Participation Agreement, (a) the Participating Member shall remit to Alliant all amounts due for the Services through the date of termination; (b) all Service Addendums and Statements of Work between Alliant and such Participating Member shall automatically terminate; (c) the Participating Member shall discontinue use of all Services; and (d) the Participating Member shall remit to Alliant all early termination fees that are due pursuant to each Service Addendum to which such Participating Member is a party. The grounds for termination of a Service Addendum or Statement of Work are set forth in the Participation Agreement. The grounds for termination of a Service Addendum may also be set forth in a Service Addendum.

6) **Effect of Termination.** Upon termination of this Master Agreement, all Participation Agreements shall automatically terminate and, unless otherwise agreed to by KII, Alliant and the Participating Members, all Participating Members will discontinue use of the Services. Upon termination of a Participation Agreement, the affected Participating Member will discontinue use of all Services that are being provided to such Participating Member as of the date of termination. Termination of this Master Agreement or a Participation Agreement shall not relieve either Alliant or KII of any obligations under this Master Agreement, the Participation Agreement, any Service Addendum or

alliant - kii msa v1 - (execution version 09-04-13).docx

any SOW intended to continue, including, without limitation, the obligation to pay for Service prior to such termination. All terms and provisions of this Master Agreement that should by their nature survive the termination of this Master Agreement shall so survive.

7) **Transition Assistance.** In the event of termination of a Participation Agreement or this Master Agreement for any reason other than by Alliant for Cause, Alliant will assist Participating Member in the transition of the Services to an alternate arrangement with Alliant or to another service provider of Participating Member's choice. Such transition period shall not exceed a period of ninety (90) days and Alliant shall be entitled to receive reasonable compensation, as mutually agreed, for all transition services provided to Participating Member during such transition period.

8) **Non-Participating Member Equipment.** Alliant or its suppliers, licensors or designees will at all times keep title to, and all other ownership rights in all Non-Participating Member Equipment. Participating Member shall not open, repair, maintain, modify or move the Non-Participating Member Equipment or remove or otherwise tamper with any ownership or other identification marks or tags on Non-Participating Member Equipment (or allow others to do the same). If Participating Member violates this provision, Participating Member shall pay Alliant all costs that Alliant or any of its licensors or suppliers incur to repair or correct the affected equipment. Participating Member shall not place or permit anyone to place any lien, charge or other like restriction on the Non-Participating Member Equipment.

9) **Service Description Changes.** Alliant reserves the right to make changes and/or improvements to the Services at any time without incurring any obligation to KII, the Participating Members or a third party. The Participating Members shall accept the Services so changed or improved in fulfillment of existing Participation Agreements. Notwithstanding the foregoing, if the changes that Alliant makes to a particular Service adversely impacts the Participating Members, KII shall notify Alliant of such within thirty (30) days after the earlier of (i) the date on which Alliant provides written or electronic notification of such revision to KII or (ii) the date on which KII first learns of the Service change. Such notice shall describe in reasonable detail the reasons why KII believes it is adversely impacted by such changes. Alliant shall have thirty (30) days (the "Cure Period") to either (i) revise the affected Service to remove the adverse impact or (ii) allow Participating Member to continue to use the immediately prior version of the Service. If Alliant does not take one of those two actions within such thirty (30) day period, Participating Member shall have the right to terminate the applicable SOW or Service Addendum on written notice to Alliant following the Cure Period. If KII Member does not notify Alliant within such thirty (30) day period, KII and the Participating Members shall be deemed to have accepted the Service so changed or improved in fulfillment of the applicable Service Addendum.

10) **SOW Change Order Request.** In the event that a Participating Member desires to change the terms of an SOW, the Participating Member will deliver to Alliant an SOW Change Order Request in substantially the format attached hereto as <u>Appendix B</u>. Upon receipt of an SOW Change Order Request, Alliant will determine whether such changes are commercially reasonable and, if so, Alliant will provide Participating Member with a quote that addresses the fees and other issues relating to such SOW Change Order Request. If both parties agree to the SOW Change Order Request, the appropriate authorized representatives of Alliant and such Participating Member will sign the SOW Change Order Request, indicating the acceptance of the changes by the parties. No SOW Change Order Request will be binding unless and until fully executed by both parties.

11) **Operations Service Change Request.** In the event that a Participating Member desires to change the terms of a Service Addendum, the Participating Member will deliver to Alliant an Operations Service Change Request form in substantially the format attached hereto as <u>Appendix C</u>. Upon receipt of an Operations Service Change Request form, Alliant will determine whether such

changes are covered in the previously executed Service Addendum. If both parties agree to the Operations Service Change Request, the appropriate authorized representatives of each party will sign the Operations Service Change Request, indicating the acceptance of the changes by the parties. No Operations Service Change Request will be binding unless and until fully executed by both parties. It is the responsibility of both parties to adhere to the approved change management process.

12) **Use Guidelines**.

   i) Each Participating Member shall use commercially reasonable efforts to comply with Alliant's installation, maintenance and operational specifications with respect to the Services. Each Participating Member will be responsible for all the costs of relocation of the Services once installed by Alliant, and/or its subcontractors at such Participating Member's premises if such relocation is done at Participating Member's request. Each Participating Member will provide Alliant and its subcontractors, reasonable access to such Participating Member's premises to perform any acts required by a Service Addendum with respect to the installation or activation of the Services as long as Alliant and its subcontractors follow the requisite Participating Member's procedures to gain access.

   ii) Each Participating Member shall use the Services only for lawful purposes. Any transmission or re-transmission of material in violation of any Federal or State laws and/or regulations is expressly prohibited. Alliant does not censor or monitor use of the Service(s), and use of any underlying configuration items used in delivering the Services. Alliant shall have no liability to censor and/or monitor the data transmitted using the Service(s). Alliant exercises no control whatsoever over the content of the information passing through the Non-Participating Member Equipment.

   iii) Violation of the provisions set forth in this Section 12 may result in the suspension or termination of the Services, and may also result in Alliant exercising any other rights or remedies available to it.

13) **Service Fees & Costs.** Fees for the Services are set forth in the Service Rate Cards. The Service Rate Cards are attached hereto as <u>Appendix D</u> and shall remain in effect for the Term of this Master Agreement unless changed pursuant to Section 15 hereof. Each Participating Member will make payment directly to Alliant. Each Participating Member will receive Services pursuant to the Rate Card then in effect.

14) **Volume Based Discounts.** Alliant will provide volume based discounts to each Participating Member based on the aggregate volume of Services purchased by all Participating Members collectively. Such discounts will be uniformly applied to all Participating Members. The volume based discounts will be reflected on the Service Rate Cards. In order to receive the discounted rates, each Participating Member will need to execute the Service Addendum relating to the desired Service.

15) **Rate Changes at end of Rate Term.** Unless otherwise agreed by KII and Alliant, each Service Rate Card shall remain in effect for at least 12 months ("<u>Rate Term</u>"). At least thirty (30) days prior to the end of each Rate Term, KII and Alliant will conduct a rate review. Changes to Service Rate Cards will be based on market changes and the estimated aggregate volume of Services to be purchased by the Participating Members in the aggregate over the next 12-month period. KII shall have the right to use consultants to assist KII with the rate reviews.

16) **Rate Changes During Rate Term.** Notwithstanding anything to the contrary set forth in Section 15 hereof, the parties shall have the ability, on mutual agreement, to change one or more Service

Rate Cards prior to the end of any Rate Term. Any changes made to a Service Rate Card prior to the expiration of the Rate Term shall remain in effect for the remainder of the Rate Term and thereafter shall be subject to further change pursuant to Section 15 hereof.

17) **Moratorium on New Service Addendums**. If the parties are unable to reach agreement with respect to new rates by the end of the Rate Term in accordance with the procedure set forth in Section 15 hereof, the Rates Card then in effect will continue to apply, but KII shall have the right to institute a moratorium on the execution of new Service Addendums. In order to exercise the right to institute a moratorium, KII shall provide at least 30 days prior written notice to Alliant, which notice shall not be sent prior to the end of the Rate Term. Upon the effective date of such moratorium, no new Service Addendums will be executed. The moratorium, however, will not affect any Service Addendums that are in effect prior to the effective date of such moratorium.

18) **Purchase Orders.** If Participating Member issues a purchase order or any other order form for any Services, the terms of this Master Agreement and the applicable Participation Agreement shall supersede all terms and conditions set forth on such ordering document. Moreover, if Participating Member issues a purchase order or any other order form for any Services before full execution of the Participation Agreement with the applicable Service Addendum or SOW, Participating Member shall be deemed to have accepted the terms and conditions set forth in this Master Agreement and the Participation Agreement along with the relevant Service Addendum(s) or SOW as if fully executed by the parties. Notwithstanding the foregoing, Alliant shall have the right at any time to suspend Services to a Participating Member until Alliant receives the executed Participating Agreement from such Participating Member.

19) **Taxes**. All fees and charges are exclusive of any taxes, fees and duties or other amounts, however designated, and including without limitation value added and withholding taxes which are levied or based upon such charges, or upon this Master Agreement. Any taxes related to Services shall be paid by Participating Member (except for taxes based on Alliant's income) unless Participating Member shall present an exemption certificate acceptable to the taxing authorities.

20) **Invoicing & Payment Terms**. Alliant shall bill each Participating Member separately for the Services provided to such Participating Member. KII shall not be responsible for any fees owed to Alliant by a Participating Member and no Participating Member shall be liable for the fees owed to Alliant by another Participating Member. Certain Services are billed in arrears and certain Services are billed in advance as identified in the applicable Service Addendums and SOW's. All invoices are due net thirty (30) days from the invoice date. Invoices that remain unpaid for sixty (60) days past the invoice date shall begin to accrue interest on the 60th day at a rate equal to the lesser of 1.5% per month or the maximum legal rate. Each Participating Member shall be responsible for all costs and fees incurred by Alliant (including attorneys' fees) in connection with any action to recover unpaid fees or charges from such Participating Member. In addition, Alliant reserves the right to suspend a Participating Member's Services in the event any invoices are not paid within 90 days from the invoice date by such Participating Member. Billing for a Service Addendum will commence on the Service Activation Date.

21) **Disputed Payments.** In the event a Participating Member in good faith disputes any charges invoiced by Alliant, the Participating Member shall promptly pay all undisputed charges, and shall notify Alliant in writing of any such disputed amounts within sixty (60) days after the invoice date, identifying in reasonable detail its reasons for the dispute and the nature and amount of the dispute. All amounts not timely and appropriately disputed within sixty (60) days after the invoice date shall be deemed final and not subject to further dispute. If Participating Member was billed in error, a credit for the amount billed incorrectly will be made to the next invoice. If the amount

Exhibit A: TenFour's Objection to Cure Costs

was billed correctly, Participating Member will pay the amount within fifteen (15) business days of confirmation.

22) <u>Management Fees</u>. Commencing with calendar year 2014, Alliant will pay a management fee (the "Management Fee") to KII equal to One percent (1%) of the monthly recurring Service fees in excess of TEN MILLION DOLLARS ($10,000,000), which are received by Alliant collectively from all Participating Members that purchases Services under a Participation Agreement in each calendar year. The Management Fee will be calculated on the monthly recurring Service fees that Alliant receives from the Participating Members between January 1st and December 31st each year that this Master Agreement remains in effect. Alliant will remit payment of the Management Fees to KII once per year on or before March 31st of the following calendar year. By way of example, if Alliant receives a total of $20,000,000 in monthly recurring Service fees from the Participating Members in calendar 2014, Alliant shall remit to KII a Management Fee of $100,000 on or before March 31, 2015.

23) <u>DISCLAIMER OF WARRANTIES.</u> EXCEPT AS EXPRESSLY SET FORTH IN THIS MASTER AGREEMENT OR A SERVICE ADDENDUM, ALLIANT HEREBY DISCLAIMS ALL WARRANTIES, CONDITIONS OR GUARANTEES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY WARRANTIES OR CONDITIONS OF MERCHANTABILITY, NON-INFRINGEMENT, SATISFACTORY QUALITY, AND/OR FITNESS FOR A PARTICULAR PURPOSE. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, THE SERVICES ARE PROVIDED "AS IS," AND NEITHER ALLIANT NOR ANY OF ITS PROVIDERS, LICENSORS, OFFICERS, EMPLOYEES, OR AGENTS MAKES ANY WARRANTY, CONDITION OR GUARANTEE WITH RESPECT TO THE SERVICES OR AS TO THE RESULTS TO BE OBTAINED FROM THE USE OF THE SERVICES, UNDER THIS MASTER AGREEMENT OR ANY SERVICE ADDENDUM.

PARTICIPATING MEMBER ASSUMES TOTAL RESPONSIBILITY AND RISK FOR PARTICIPATING MEMBER'S USE AND ITS END USERS' USE OF THE SERVICES PROVIDED BY ALLIANT. PARTICIPATING MEMBER ACKNOWLEDGES THAT THE INTERNET (1) CONTAINS MATERIALS WHICH ARE SEXUALLY EXPLICIT OR MAY BE OFFENSIVE TO SOME PEOPLE AND (2) IS ACCESSIBLE BY PERSONS WHO MAY ATTEMPT TO BREACH THE SECURITY OF NETWORK FACILITIES. ALLIANT HAS NO CONTROL OVER AND EXPRESSLY DISCLAIMS ANY LIABILITY OR RESPONSIBILITY WHATSOEVER FOR THE CONTENT OF MATERIALS TRANSMITTED OVER THE INTERNET, SERVICE INTERRUPTIONS ATTRIBUTABLE TO PARTICIPATING MEMBER'S NETWORK, ANY PARTICIPATING MEMBER EQUIPMENT FAILURES, A FORCE MAJEURE EVENT OR ANY OTHER SUCH CAUSES.

24) <u>Non-Solicitation.</u> Participating Member and Alliant agree that during the Term of this Master Agreement and for a period of one (1) year thereafter, neither party will hire, make any employment offers, consulting offers or otherwise seek to hire (as an employee or consultant) the personnel of the other party, without the written consent of the other party. In the event either party hires an employee of the other party, the offending party shall pay a penalty equal to fifty percent (50%) the then-current annual salary of the employee in question. This section shall not prevent a party from hiring any employee of the other party who responds to a general advertisement for employment; providing, however, that the party who hires such employee shall bear the burden of proving that the employment was, in fact, the result of a general advertisement.

25) <u>LIMITATION OF LIABILITY.</u> NEITHER KII, ALLIANT, NOR ANY PARTICIPATING MEMBER SHALL BE LIABLE TO THE OTHER PARTY (OR TO ANY PERSON OR ENTITY CLAIMING THROUGH THE OTHER PARTY) FOR LOST PROFITS OR FOR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR IN ANY

alliant - kii msa v1 - (execution version 09-04-13).docx

MANNER CONNECTED WITH THIS MASTER AGREEMENT, A PARTICIPATION, A SERVICE ADDENDUM, SOW, THE SERVICE OR THE SUBJECT MATTER HEREOF, REGARDLESS OF THE FORM OF ACTION AND WHETHER OR NOT SUCH PARTY HAS BEEN INFORMED OF, OR OTHERWISE MIGHT HAVE ANTICIPATED, THE POSSIBILITY OF SUCH DAMAGES. THE MAXIMUM LIABILITY OF ALLIANT, ITS SUPPLIERS AND ITS SUBCONTRACTORS FOR DAMAGES SUFFERED BY A PARTICIPATING MEMBER ARISING OUT OF OR RELATING TO THIS MASTER AGREEMENT OR ANY PARTICIPATION AGREEMENT SHALL NOT EXCEED THE FEES PAID BY SUCH PARTICIPATING MEMBER TO ALLIANT FOR THE AFFECTED SERVICES DURING THE 12-MONTH PERIOD PRIOR TO THE DATE SUCH CLAIM ARISES. IN NO EVENT SHALL ANY OTHER LIABILITY ATTACH TO ALLIANT. ALLIANT, KII AND EACH PARTICIPATING MEMBER HEREBY WAIVE ANY CLAIM THAT THESE EXCLUSIONS DEPRIVE THEM OF AN ADEQUATE REMEDY OR CAUSE THIS MASTER AGREEMENT TO FAIL OF ITS ESSENTIAL PURPOSE. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION WILL NOT APPLY TO:

a) BODILY INJURY, DEATH, OR DAMAGE TO REAL OR TANGIBLE PROPERTY;

b) DAMAGES ARISING FROM GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; OR

c) DAMAGES RESULTING FROM OR RELATING TO A BREACH OF SECTION 8 (NON-PARTICIPATING MEMBER EQUIPMENT), SECTION 26 (INDEMNIFICTION FOR THIRD PARTY CLAIMS), SECTION 29 (CONFIDENTIAL INFORMATION), SECTION 30 (INTELLECTUAL PROPERTY) OR SECTION 31 (RESTRICTIONS).

d) EARLY TERMINATION FEES OWED TO ALLIANT PURSUANT TO ANY PARTICIPATION AGREEMENT OR SERVICE ADDENDUM.

26) **Indemnifications for Third Party Claims.** Alliant and each Participating Member (each, the "Indemnifying Party") will indemnify, defend and hold harmless the other party (including, without limitation, such other party's officers, directors, employees, owners, Related Entities and agents) (each, an "Indemnified Party") from and against any and all claims or actions (filed, asserted or threatened), liabilities, damages, costs and expenses (including, without limitation, court costs and reasonable attorneys' fees) (collectively "Losses") in connection with an actual or threatened claim asserted by a third party arising out of or relating to the Indemnifying Party's breach of any representation, warranty or obligation under this Master Agreement or such Participating Member's Participation Agreement. The Indemnifying Party's indemnification obligation pursuant to this Section 26 shall not apply to the extent such Losses are caused by the Indemnified Party.

27) **Indemnification Procedures.** The Indemnified Party will promptly notify the Indemnifying Party of the existence of any claim, demand or other action giving rise to a claim for indemnification under Section 26 hereof (a " Claim") and will give Indemnifying Party a reasonable opportunity to defend the same at its own expense and with its own counsel, provided that the Indemnified Party will at all times have the right to participate in such defense at its own expense. If, within a reasonable time after receipt of notice of a Claim, the Indemnifying Party fails to undertake to so defend, the Indemnified Party will have the right, but not the obligation, to defend and to compromise or settle (exercising reasonable business judgment) the Claim for the account and at the risk and expense of the Indemnifying Party. Each party shall make available to the other, at the other's expense, such information and assistance as the other shall reasonably request in connection with the defense of a Claim.

28) **Force Majeure.** No party shall have any claim or right against the other for any failure of or delay in performance by such other party if the failure or delay is caused by or the result of causes beyond the reasonable control of such other party, including, but not limited to, acts of God, fire,

aliiant - kii msa v1 - (execution version 09-04-13).docx

flood, hurricane, or other natural catastrophe; terrorist actions, laws, orders, regulations, directions or actions of governmental authorities having jurisdiction over the subject matter hereof; or any civil or military authority, national emergency, insurrection, riot or war; inability to obtain equipment, material or other supplies, or other similar occurrence beyond the control and without the fault or negligence of the affected party. Any such delay or failure shall suspend the affected Service Addendum until the delay or failure ceases, and the Service Addendum shall be deemed extended accordingly. Notwithstanding the foregoing, if the excusable delay exceeds sixty (60) days, either party may terminate any affected Service Addendum immediately upon written notice without incurring any termination liability hereunder.

29) <u>Confidential Information</u>. For purposes of this Master Agreement, the term "Confidential Information" shall mean any and all information that Alliant or a Participating member (each, the "Disclosing Party") discloses to the other (the "Receiving Party") in written, graphic, recorded, photographic or any machine readable form or that is orally conveyed to the Receiving Party. Confidential Information shall include all information that Participating Member receives directly or indirectly from any Alliant licensor or supplier. The Receiving Party agrees it will use Confidential Information only in connection with performing its obligations under this Master Agreement or a Service Addendum and it shall not disclose any Confidential Information to any person or persons outside of its organization. The Receiving Party further agrees to store and maintain all Confidential Information in a secure place. Upon termination, the Receiving Party agrees to make no further use or utilization of any Confidential Information and, upon written request, will return all Confidential Information to the Disclosing Party.

It is expressly understood that Confidential Information shall not include any information that:

a) was in the public domain at the time it was disclosed;

b) is disclosed with the prior written approval of the Disclosing Party;

c) becomes known to the Receiving Party from a third party that does not owe any confidentiality obligations to the Disclosing Party; or

d) is disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body.

Without limiting the foregoing, Participating Member should treat any fees, costs, or terms set forth in this Master Agreement or a Participation Agreement as "Confidential Information" and shall not disclose such information to persons outside of Participating Member's organization. The provisions of this section shall survive termination of expiration of the Master Agreement.

30) <u>Intellectual Property</u>. Except as expressly provided in an SOW, Alliant is the exclusive owner of all copyrights, patents, trademarks, trade secrets and other intellectual property rights (collectively, "<u>Alliant Intellectual Property</u>") existing now and in the future in the Services and any associated technology and methodologies or in any developments or enhancements thereof (including, without limitation, any such developments or enhancements undertaken specifically on behalf of the Participating Member). Except for the rights granted to Participating Member by this Master Agreement and/or Services Addendum(s) and SOW, a Participating Member shall have no right, title or interest in any Alliant Intellectual Property.

31) <u>Restrictions</u>. No Participating Member shall, and no Participating Member shall authorize any third party to, (i) modify, adapt, reverse engineer, disassemble, de-compile or otherwise derive source code from the Alliant Intellectual Property or the Services; (ii) create derivative works based on the Alliant Intellectual Property or the Services; or (iii) except for the distribution of Services as authorized under this Master Agreement, transfer the Services or any part thereof to

alliant - kii msa v1 - (execution version 09-04-13).docx

any third party without Alliant's prior written consent. Participating Member shall not remove, alter, cover or obfuscate any copyright notices or other proprietary rights notices placed or embedded on or in any Services.

32) **Knowledge Base.** Except for information that Alliant designates in the Knowledge Base as Participating Member Information, or information that is considered Participating Member Confidential Information under this Master Agreement, Alliant is the sole and exclusive owner of all information contained in the Knowledge Base. Participating Member hereby grants to Alliant, its licensors and suppliers a worldwide, royalty-free, license to use the Participating Member Information and Participating Member Confidential Information during the Term of this Master Agreement for the sole purpose of providing the Services to Participating Member. Upon termination of this Master Agreement, at Participating Member's request and expense, Alliant shall return all Participating Member Information (including hardware configuration files and incident tickets) to Participating Member in a format designated by Alliant.

33) **Use of Trademarks.** No party may use the other party's name, logos, trademarks, trade names or other proprietary marks ("Marks") in any advertising or publicity without first obtaining the written approval to do so. Notwithstanding the foregoing, Alliant shall have the right to reference each Participating Member as being a KII of Alliant in any marketing materials distributed by Alliant.

34) **Assignment.** No party shall be permitted to assign this Master Agreement without the prior written consent of the other party. Notwithstanding the foregoing, either party may assign this Master Agreement and/or the Participation Agreements without the consent of the other party (i) to a affiliate or (ii) in connection with a merger, sale or transfer of substantially all of its assets to a third party. Subject to the foregoing, this Master Agreement and all Participation Agreements shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

35) **Subcontracting.** Alliant may subcontract portions of the work and Services to a subcontractor or to a third party, but shall remain responsible for any such work performed and all service levels and other agreed upon performance criteria agreed to by Alliant.

36) **Governing Law.** The substantive laws of the State of New Jersey shall in all respects govern this Master Agreement, the Participation Agreement and all Service Addendums and all SOW's without regard to conflicts of law principles.

37) **Dispute Resolution.** Unless otherwise provided in a Service Addendum, any dispute arising out of, or relating to, this Master Agreement, a Participation Agreement, and/or a Service Addendum (or SOW), or the breach thereof, or regarding the interpretation thereof, shall be finally settled by arbitration conducted in New Jersey in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect before a single arbitrator appointed in accordance with such rules. Judgment upon any award rendered therein may be entered and enforcement obtained thereon in any court having jurisdiction. The arbitrator shall have authority to grant any form of appropriate relief, whether legal or equitable in nature, including specific performance. For the purpose of any judicial proceeding to enforce such award or incidental to such arbitration or to compel arbitration, the parties hereby submit to the exclusive jurisdiction of the state and federal courts located in the State of New Jersey. The costs and attorneys fees of such arbitration shall be borne proportionate to the finding of fault as determined by the arbitrator. Judgment on the arbitration award may be entered by any court of competent jurisdiction

38) **Entire Agreement.** This Master Agreement, including all Participation Agreements constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersede

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

any and all prior or contemporaneous agreements, written or oral relating to the subject matter hereof.

39) <u>Modification of Terms.</u> Neither this Master Agreement, nor any Participation Agreement, Service Addendum or an SOW may be modified at any time without the written agreement of all parties to such agreement.

40) <u>Waiver.</u> The failure by a party to exercise any right conferred by or under this Master Agreement shall not be deemed to be a waiver of any such right nor operate so as to bar the exercise or enforcement of any such right on any later occasion.

41) <u>Notices.</u> All written notices or other documents that a party is required or permitted to send in connection with this Master Agreement or any Service Addendum shall be sent to the respective parties at the following addresses, or to such email address, facsimile number or address as subsequently modified by written notice given in accordance with this Section 36:

If to Alliant:    Alliant Technologies, LLC
                  35 Airport Road
                  Morristown, NJ 07960
                  Fax: (973) 263-5237
                  Attn: Gary Finkel
                  Email: gfinkel@allianttech.com

If to KII:        KII    Telecommunications,
                  LLC

                  Hunter Lane

                  Basking Ridge, NJ

42) <u>Export Control.</u> Participating Member will comply with all applicable laws, administrative regulations, and executive orders of any applicable jurisdiction relating to the control of imports and exports of commodities and technical data pursuant to this Master Agreement and each Service Addendum. Participating Member shall indemnify and hold Alliant harmless against all claims, cost, damage, expense, or liability arising out of or in connection with a breach of this section.

43) <u>Reports.</u> As frequently as Alliant reasonably requests, Participating Member will provide Alliant with information that is necessary to confirm Participating Member's compliance with this Master Agreement and/or any Service Addendum.

44) <u>Counterparts.</u> This Master Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Master Agreement may be executed and delivered by facsimile, or by email in a document format and delivery of the signature page by such method will be deemed to have the same effect as if the original signature had been delivered to the other parties.

alliant - kii msa v1 - (execution version 09-04-13).docx

By signing below, the authorized representatives of the parties agree to the terms and conditions outlined in this Master Agreement and hereto have caused this Master Agreement to be duly executed.

Alliant Technologies, LLC

Signature:

Print:     BRUCE FLITCROFT

Title:     CLO

Date:     9/5/2013

KII Telecommunications, LLC

Signature:

Print:     John A. Gerson

Title:     President

Date:     9 5 13

alliant - kii msa v1 - (execution version 09-04-13).docx

# APPENDIX A - PARTICIPATION AGREEMENT

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

## APPENDIX B - SOW CHANGE ORDER REQUEST FORM

| Change Order Title: | | | |
|---|---|---|---|
| Change Order Number: | | Engagement ID #: | |
| Requestor: | | Date of Request: | |
| Change Order Details | | | |

**Change Order Description:**

**Reason for Change Order:**

**Describe Changes to Service Addendum Deliverables or other items:**

**To be completed by the Project Manager**

**Impact to Resource Requirements:**

**Impact of Project Time and Scheduled Delivery Date:**

**Impact on Pricing:**

**Notes or Additional Information**

**Project Specific Assumptions:**

**Acceptance**

Except as changed within this form, all terms and conditions of the above-referenced SOW remain in full force and effect.

By signing below as a duly authorized representative of each party, I acknowledge I have read the information contained within the Change Order Request form and agree to the documented changes to the above-referenced SOW.

[INSERT NAME OF CUSTOMER]

Signature: _____

Print: _____

Title: _____

Date: _____

ALLIANT TECHNOLOGIES, LLC

Signature: _____

Print: _____

Title: _____

Date: _____

alliant - kii msa v1 - (execution version 09-04-13).docx

## APPENDIX C – Operations Service Change Request

Alliant Technologies LLC

MM-DD-YYYY

Except as changed within this form, all terms and conditions of the above-referenced Service Addendum remain in full force and effect.

By signing below as a duly authorized representative of each party, I acknowledge I have read the information contained within the Operations Service Change Request form and agree to the documented changes to the above-referenced Service Addendum.

| Customer | Alliant Technologies, LLC |
|---|---|
| Signature: | Signature: |
| Print: | Print: |
| Title: | Title: |
| Date: | Date: |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

## APPENDIX D - Service Rate Card

| AVPN - 3 Year<br>Access + Port + COS + RMM + ER<br>Service Addendum Rate Card | | |
|---|---|---|
| **Description** | **MRC 3-YR** | **NRC** |
| AVPN T1 In Region 0 -20 miles | $331 | $  0.00 - Waived |
| AVPN T1 In Region 21-50 miles | $410 | $  0.00 - Waived |
| AVPN T1 In Region >51 miles | $427 | $  0.00 - Waived |
| | | |
| AVPN T1 Out of Region1 0 -20 miles | $387 | $  0.00 - Waived |
| AVPN T1 Out of Region1 21-50 miles | $536 | $  0.00 - Waived |
| AVPN T1 Out of Region1 >51 miles | TBD | $  0.00 - Waived |
| | | |
| AVPN T1 Out of Region2 0 -20 miles | $422 | $  0.00 - Waived |
| AVPN T1 Out of Region2 21-50 miles | $685 | $  0.00 - Waived |
| AVPN T1 Out of Region2 >51 miles | TBD | $  0.00 - Waived |
| | | |
| AVPN 2XT1 In Region 0 -20 miles | $606 | $  0.00 - Waived |
| AVPN 2XT1 In Region 21-50 miles | $764 | $  0.00 - Waived |
| AVPN 2XT1 In Region >51 miles | $798 | $  0.00 - Waived |
| | | |
| AVPN 2XT1 Out of Region1 0 -20 miles | $719 | $  0.00 - Waived |
| AVPN 2XT1 Out of Region1 21-50 miles | $1,015 | $  0.00 - Waived |
| AVPN 2XT1 Out of Region1 >51 miles | TBD | $  0.00 - Waived |
| | | |
| AVPN 2XT1 Out of Region2 0 -20 miles | $788 | $  0.00 - Waived |
| AVPN 2XT1 Out of Region2 21-50 miles | $1,314 | $  0.00 - Waived |
| AVPN 2XT1 Out of Region2 >51 miles | TBD | $  0.00 - Waived |
| | | |
| AVPN 5MB Ethernet In Region A | $1,129 | $  0.00 - Waived |
| AVPN 5MB Ethernet Out of Region 1 | $1,482 | $  0.00 - Waived |
| AVPN 5MB Ethernet Out of Region 1A | $2,440 | $  0.00 - Waived |
| AVPN 5MB Ethernet Out of Region 2 | $980 | $  0.00 - Waived |
| | | $  0.00 - Waived |
| AVPN 10MB Ethernet In Region A | $1,337 | $  0.00 - Waived |
| AVPN 10MB Ethernet Out of Region 1 | $1,660 | $  0.00 - Waived |
| AVPN 10MB Ethernet Out of Region 1A | $2,682 | |

allant - kii msa v1 - (execution version 09-04-13).docx

| | | | |
|---|---|---|---|
| AVPN 10MB Ethernet Out of Region 2 | $1,157 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| AVPN 20MB Ethernet In Region A | $1,572 | | $ 0.00 - Waived |
| AVPN 20MB Ethernet Out of Region 1 | $2,079 | | $ 0.00 - Waived |
| AVPN 20MB Ethernet Out of Region 1A | $3,046 | | $ 0.00 - Waived |
| AVPN 20MB Ethernet Out of Region 2 | $1,463 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| AVPN 50MB Ethernet In Region A | $2,390 | | $ 0.00 - Waived |
| AVPN 50MB Ethernet Out of Region 1 | $3,161 | | $ 0.00 - Waived |
| AVPN 50MB Ethernet Out of Region 1A | $4,222 | | $ 0.00 - Waived |
| AVPN 50MB Ethernet Out of Region 2 | $2,460 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| AVPN 100MB Ethernet In Region A | $3,688 | | $ 0.00 - Waived |
| AVPN 100MB Ethernet Out of Region 1 | $4,954 | | $ 0.00 - Waived |
| AVPN 100MB Ethernet Out of Region 1A | $5,984 | | $ 0.00 - Waived |
| AVPN 100MB Ethernet Out of Region 2 | $3,974 | | $ 0.00 - Waived |

Note:  Region assignments (Region A, Region 1, Region 1A, Region 2) are determined based on the local exchange provider:
- In-Region = AT&T provides LEC connectivity
- Out of Region = Other LEC provider, determined by NPA-NXX

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# MIS BASIC - 3 Year
## Access + Port + RMM + ER
## Service Addendum Rate Card

| Description | MRC 3-YR | | NRC |
|---|---|---|---|
| MIS T1 In Region 0 -20 miles | $296 | | $ 0.00 - Waived |
| MIS T1 In Region 21-50 miles | $375 | | $ 0.00 - Waived |
| MIS T1 In Region >51 miles | $392 | | $ 0.00 - Waived |
| | | | |
| MIS T1 Out of Region1 0 -20 miles | $353 | | $ 0.00 - Waived |
| MIS T1 Out of Region1 21-50 miles | $501 | | $ 0.00 - Waived |
| MIS T1 Out of Region1 >51 miles | TBD | | $ 0.00 - Waived |
| | | | |
| MIS T1 Out of Region2 0 -20 miles | $387 | | $ 0.00 - Waived |
| MIS T1 Out of Region2 21-50 miles | $650 | | $ 0.00 - Waived |
| MIS T1 Out of Region2 >51 miles | TBD | | $ 0.00 - Waived |
| | | | |
| MIS 2XT1 In Region 0 -20 miles | $527 | | $ 0.00 - Waived |
| MIS 2XT1 In Region 21-50 miles | $685 | | $ 0.00 - Waived |
| MIS 2XT1 In Region >51 miles | $719 | | $ 0.00 - Waived |
| | | | |
| MIS 2XT1 Out of Region1 0 -20 miles | $640 | | $ 0.00 - Waived |
| MIS 2XT1 Out of Region1 21-50 miles | $937 | | $ 0.00 - Waived |
| MIS 2XT1 Out of Region1 >51 miles | TBD | | $ 0.00 - Waived |
| | | | |
| MIS 2XT1 Out of Region2 0 -20 miles | $710 | | $ 0.00 - Waived |
| MIS 2XT1 Out of Region2 21-50 miles | $1,235 | | $ 0.00 - Waived |
| MIS 2XT1 Out of Region2 >51 miles | TBD | | $ 0.00 - Waived |
| | | | |
| MIS 5MB Ethernet In Region A | $872 | | $ 0.00 - Waived |
| MIS 5MB Ethernet Out of Region 1 | $1,225 | | $ 0.00 - Waived |
| MIS 5MB Ethernet Out of Region 1A | $2,184 | | $ 0.00 - Waived |
| MIS 5MB Ethernet Out of Region 2 | $723 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| MIS 10MB Ethernet In Region A | $924 | | $ 0.00 - Waived |
| MIS 10MB Ethernet Out of Region 1 | $1,246 | | $ 0.00 - Waived |
| MIS 10MB Ethernet Out of Region 1A | $2,269 | | $ 0.00 - Waived |
| MIS 10MB Ethernet Out of Region 2 | $744 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | | | |
|---|---|---|---|
| MIS 20MB Ethernet In Region A | $1,019 | | $ 0.00 - Waived |
| MIS 20MB Ethernet Out of Region 1 | $1,526 | | $ 0.00 - Waived |
| MIS 20MB Ethernet Out of Region 1A | $2,494 | | $ 0.00 - Waived |
| MIS 20MB Ethernet Out of Region 2 | $911 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| MIS 50MB Ethernet In Region A | $1,263 | | $ 0.00 - Waived |
| MIS 50MB Ethernet Out of Region 1 | $2,035 | | $ 0.00 - Waived |
| MIS 50MB Ethernet Out of Region 1A | $3,096 | | $ 0.00 - Waived |
| MIS 50MB Ethernet Out of Region 2 | $1,334 | | $ 0.00 - Waived |
| | | | $ 0.00 - Waived |
| MIS 100MB Ethernet In Region A | $1,741 | | $ 0.00 - Waived |
| MIS 100MB Ethernet Out of Region 1 | $3,007 | | $ 0.00 - Waived |
| MIS 100MB Ethernet Out of Region 1A | $4,037 | | $ 0.00 - Waived |
| MIS 100MB Ethernet Out of Region 2 | $2,027 | | $ 0.00 - Waived |
| | | | |
| | | | |

Note:  Region assignments (Region A, Region 1, Region 1A, Region 2) are determined based on the local exchange provider:
- In-Region = AT&T provides LEC connectivity
- Out of Region = Other LEC provider, determined by NPA-NXX

Alliant Technologies, LLC Confidential.  Unauthorized Distribution is Prohibited
Page 18 of 36

alliant - kii msa v1 - (execution version 09-04-13).docx

# AVPN IPFLEX - 3 Year
## Service Addendum Rate Card

| Description | PLAN | MRC 3-YR | NRC |
|---|---|---|---|
| Concurrent Call Plan A - LD only | A | $10.86 | $  0.00 - Waived |
| Concurrent Call Plan B - (Local and LD) | B | $14.56 | $  0.00 - Waived |
| Concurrent Call Plan B - (Local and LD Package ) Included 300 LD off-net minutes per concurrent call | C | $16.53 | $  0.00 - Waived |
| | | | |
| Cost for calls over / above per CC offnet MOU | all plans | $0.05 | $  0.00 - Waived |
| | | | |
| Virtual Telephone Numbers | A | $0.00 | $  0.00 - Waived |
| Virtual Telephone Numbers | B | $0.37 | $  0.00 - Waived |
| Virtual Telephone Numbers | C | $0.37 | $  0.00 - Waived |
| | | | |
| Up to 12 Concurrent Calls | NA | $18.51 | |
| Over 12 Concurrent Calls | NA | $12.34 | |
| | | | |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# Circuit RMM/ER - 3 Year
## Service Addendum Rate Card

| Monitoring and Repair Description | SKU | MRC | | NRC |
|---|---|---|---|---|
| RMM for non Alliant Circuits | RMM-RC | $ 23.50 | | $ 49.00 |
| RMM + ER for non Alliant Circuits | RMM-ER-BNDL | $ 80.00 | | $ 78.00 |
| RMM - Monitoring Probe | RMM-DEVICE | $ 0.00 | | $3,500.00 |

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited
Page 20 of 36

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# SmartWare Service Addendum Rate Card

| Description | | Base Platform | List MRC | Discounted SW/SC/PCM Bundle 3-Year MRC | NRC |
|---|---|---|---|---|---|
| SMALL BRANCH | Ethernet Router | CISCO1941-SEC/K9 Service Bundle | $ 115.00 | $ 78.20 | $ 0.00 - Waived |
| SMALL BRANCH | 2 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $190.00 | $129.20 | $ 0.00 - Waived |
| SMALL BRANCH | 4 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 260.00 | $ 176.80 | $ 0.00 - Waived |
| SMALL BRANCH | LAN Switch | 2960S-24TD-L | $170.00 | $115.60 | $ 0.00 - Waived |
| SMALL BRANCH | Firewall | ASA5515-K9 | $275.00 | $187.00 | $ 0.00 - Waived |
| MEDIUM BRANCH | Ethernet Router | CISCO2951-SEC/K9 | $285.00 | $193.80 | $ 0.00 - Waived |
| MEDIUM BRANCH | T3 Router | CISCO2951-SEC/K9 | $630.00 | $428.40 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | 2960S-48TD-L | $190.00 | $129.20 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C2960S-48FPS-L | $265.00 | $180.20 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3750X-24T-E | $435.00 | $295.80 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3850-48T L (40Gbps) | $300.00 | $204.00 | $ 0.00 - Waived |
| | LAN Switch | WS-C3750X-48T-E | $655.00 | $445.40 | $ 0.00 - Waived |
| MEDIUM BRANCH | Firewall | ASA5525-K9 | $405.00 | $275.40 | $ 0.00 - Waived |
| LARGE BRANCH | Ethernet Router | CISCO3945E/K9 | $635.00 | $431.80 | $ 0.00 - Waived |
| LARGE BRANCH | T3 Router | CISCO3945E/K9 | $955.00 | $649.40 | $ 0.00 - Waived |
| LARGE BRANCH | Base LAN Switch | WS-C4507R+E | $235.00 | $159.80 | $ 0.00 - Waived |
| LARGE BRANCH | Chassis LAN Switch | WS-C4507R+E | $935.00 | $635.80 | $ 0.00 - Waived |
| LARGE BRANCH | Firewall | ASA5545-K9 | $735.00 | $499.80 | $ 0.00 - Waived |
| DATACENTER | Router Bundle | ASR1000-SIPX | $1,005.00 | $683.40 | $ 0.00 - Waived |
| DATACENTER | Nexus Switch | N5K-C5548UP | $1,455.00 | $989.40 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | | | | | |
|---|---|---|---|---|---|
| DATACENTER | Nexus Low Latency Switch | N3K-C3548P-10G | $1,505.00 | $1,023.40 | $ 0.00 - Waived |
| DATACENTER | Chassis-based LAN Switch | WS-C6506-E | $1,975.00 | $1,343.00 | $ 0.00 - Waived |
| DATACENTER | Server | UCSC-C220-M3S | $100.00 | $68.00 | $ 0.00 - Waived |
| | | | | | |
| | | | | | |
| WAN/Firewall | ISR Router | CISCO1941/K9 | $55.00 | $37.40 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO1921-SEC/K9 | $135.00 | $91.80 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO2921-5EC/K9 | $230.00 | $156.40 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO2951/K9 | $255.00 | $173.40 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO3925-SEC/K9 | $440.00 | $299.20 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO3945E-SEC/K9 | $725.00 | $493.00 | $ 0.00 - Waived |
| WAN/Firewall | ISR Router | CISCO3945E | $485.00 | $329.80 | $ 0.00 - Waived |
| | | | | | |
| WAN Optimization | Riverbed WAN Opt | EX560H | TBD | TBD | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | EX760H | TBD | TBD | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | CX7055H | $605.00 | $411.40 | $ 0.00 - Waived |
| | | | | | |
| Wireless | Wireless AP | AIR-CAP2602I-A-K9 | $40.00 | $27.20 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP1602I-a-K9 (Internal antennas) | $25.00 | $17.00 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP1602E-a-K9 (External antennas) | $30.00 | $20.40 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602I-a-K9(Internal antennas) | $40.00 | $27.20 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602E-a-K9 (External antennas) | $40.00 | $27.20 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602I-a-K9 (Internal antennas) | $50.00 | $34.00 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602E-A-K9 (External antennas) | $55.00 | $37.40 | $ 0.00 - Waived |
| Wireless | License | AIR-CT2504-50-K9 (50 AP Licenses) | $435.00 | $295.80 | $ 0.00 - Waived |
| Wireless | License | AIR-CT5508-250-K9 (250 AP Licenses) | $2,175.00 | $1,479.00 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-12-K9 | $370.00 | $251.60 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-50-K9 | $755.00 | $513.40 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-100-K9 | $1,340.00 | $911.20 | $ 0.00 - Waived |
| Wireless | Wireless Service | WS-SVC-WISM2-3-K9(=) (300 AP | $1,840.00 | $1,251.20 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | Module | Licenses) | | | |
|---|---|---|---|---|---|
| | | | | | |
| Security | Cisco Identity Svcs Engine | (ISE)-3315 | $405.00 | $275.40 | $  0.00 - Waived |
| Security | Cisco Identity Svcs Engine | (ISE)-3355 | $605.00 | $411.40 | $  0.00 - Waived |
| Security | Cisco Identity Svcs Engine | (ISE)-3395 | $770.00 | $523.60 | $  0.00 - Waived |
| | | | | | |
| Security | Firewall | Cisco ASA 5512x | $220.00 | $149.60 | $  0.00 - Waived |
| Security | Firewall | Cisco ASA 5525x | $305.00 | $207.40 | $  0.00 - Waived |
| Security | Firewall | Cisco ASA 5545x | $1,070.00 | $727.60 | $  0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-10 | $205.00 | $139.40 | $  0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-20 | $535.00 | $363.80 | $  0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-40 | TBD | TBD | $  0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S170 | $135.00 | $91.80 | $  0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S370 | $335.00 | $227.80 | $  0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S670 | $670.00 | $455.60 | $  0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C170 | $135.00 | $91.80 | $  0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C370 | $335.00 | $227.80 | $  0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C670 | TBD | TBD | $  0.00 - Waived |
| Security | Access Control | ACS 5.3 | TBD | TBD | $  0.00 - Waived |
| Security | Access Control | ACS 5. 4 | TBD | TBD | $  0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# SmartWatch Service Addendum Rate Card

| NBD Maintenance & Monitoring | | Key Component | MRC | Discounted SW/SC/PCM Bundle 3-Year MRC | NRC |
|---|---|---|---|---|---|
| SMALL BRANCH | Ethernet Router | CISCO1941-SEC/K9 Service Bundle | $ 47.36 | $ 35.88 | $ 0.00 - Waived |
| SMALL BRANCH | 2 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 55.83 | $ 40.80 | $ 0.00 - Waived |
| SMALL BRANCH | 4 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 55.83 | $ 40.80 | $ 0.00 - Waived |
| SMALL BRANCH | LAN Switch | 2960S-24TD-L | $ 60.12 | $ 45.54 | $ 0.00 - Waived |
| SMALL BRANCH | Firewall | ASA5515-K9 | $ 117.12 | $ 88.73 | $ 0.00 - Waived |
| MEDIUM BRANCH | Ethernet Router | CISCO2951-SEC/K9 | $ 172.60 | $ 130.76 | $ 0.00 - Waived |
| MEDIUM BRANCH | T3 Router | CISCO2951-SEC/K9 | $ 172.60 | $ 130.76 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | 2960S-48TD-L | $ 76.71 | $ 58.11 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C2960S-48FPS-L | $ 85.93 | $ 65.10 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3750X-24T-E | $ 85.01 | $ 64.40 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3850-48T L (40Gbps) | $ 107.14 | $ 81.16 | $ 0.00 - Waived |
| MEDIUM BRANCH | Firewall | ASA5525-K9 | $ 190.88 | $ 144.61 | $ 0.00 - Waived |
| LARGE BRANCH | Ethernet Router | CISCO3945E/K9 | $ 297.83 | $ 225.63 | $ 0.00 - Waived |
| LARGE BRANCH | T3 Router | CISCO3945E/K9 | $ 297.83 | $ 225.63 | $ 0.00 - Waived |
| LARGE BRANCH | Base LAN Switch | WS-C4507R+E | $ 429.06 | $ 325.05 | $ 0.00 - Waived |
| LARGE BRANCH | Chassis LAN Switch | WS-C4507R+E | $ 429.06 | $ 325.05 | $ 0.00 - Waived |
| LARGE BRANCH | Firewall | ASA5545-K9 | $ 356.84 | $ 270.33 | $ 0.00 - Waived |
| DATACENTER | Router Bundle | ASR1000-SIPX | $ 192.27 | $ 145.66 | $ 0.00 - Waived |
| DATACENTER | Nexus Switch | N5K-C5548UP | $ 219.46 | $ 166.26 | $ 0.00 - Waived |
| DATACENTER | Nexus Low | N3K-C3548P-10G | $ 409.70 | $ 310.38 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | | | | | | |
|---|---|---|---|---|---|---|
| | Latency Switch | | | | | |
| DATACENTER | Chassis-based LAN Switch | WS-C6506-E | $ 872.23 | $ 660.78 | $ 0.00 - Waived |
| DATACENTER | Server | UCSC-C220-M3S | $ 93.15 | $ 70.57 | $ 0.00 - Waived |
| | | | | | | |
| | | | | | | |
| | ISR Router | CISCO1921-SEC/K9 | $ 35.84 | $ 27.15 | $ 0.00 - Waived |
| | ISR Router | CISCO1941/K9 | $ 47.36 | $ 35.88 | $ 0.00 - Waived |
| | ISR Router | CISCO2921-SEC/K9 | $ 109.60 | $ 83.03 | $ 0.00 - Waived |
| | ISR Router | CISCO2951/K9 | $ 194.11 | $ 147.05 | $ 0.00 - Waived |
| | ISR Router | CISCO3925-SEC/K9 | $ 194.11 | $ 147.05 | $ 0.00 - Waived |
| | ISR Router | CISCO3945E-SEC/K9 | $ 297.83 | $ 225.63 | $ 0.00 - Waived |
| | ISR Router | CISCO3945E | $ 297.83 | $ 225.63 | $ 0.00 - Waived |
| | | | | | | |
| | LAN Switch | WS-C3750X-48T-E | $ 131.11 | $ 99.32 | $ 0.00 - Waived |
| | | | | | | |
| WAN Optimization | Riverbed WAN Opt | EX560H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | EX760H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | CX7055H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| | | | | | | |
| Wireless | Wireless AP | AIR-CAP1602I-a-K9 (Internal antennas) | $ 29.38 | $ 22.26 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP1602E-a-K9 (External antennas) | $ 30.00 | $ 22.73 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602I-a-K9(Internal antennas) | $ 31.84 | $ 24.12 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602E-a-K9 (External antennas) | $ 32.46 | $ 24.59 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602I-a-K9 (Internal antennas) | $ 34.30 | $ 25.98 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602E-A-K9 (External antennas) | $ 34.91 | $ 26.45 | $ 0.00 - Waived |
| Wireless | License | AIR-CT2504-50-K9 (50 AP Licenses) | $ 284.62 | $ 215.62 | $ 0.00 - Waived |
| Wireless | License | AIR-CT5508-250-K9 (250 AP Licenses) | $ 1,323.39 | $ 1,002.56 | $ 0.00 - Waived |
| | | | | | | |
| Wireless | Wireless Controller | AIR-CT5508-12-K9 | $ 244.67 | $ 185.35 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-50-K9 | $ 474.39 | $ 359.39 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-100-K9 | $ 823.98 | $ 624.23 | $ 0.00 - Waived |
| Wireless | Wireless | WS-SVC-WISM2-3- | $ 1,123.62 | $ 851.23 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | Service Module | K9(=) (300 AP Licenses) | | | |
|---|---|---|---|---|---|
| | | | | | |
| Security | Cisco Identity Svcs Engine | (ISE)-3315 | TBD | TBD | $ 0.00 - Waived |
| Security | Cisco Identity Svcs Engine | (ISE)-3355 | $ 432.14 | $ 327.38 | $ 0.00 - Waived |
| Security | Cisco Identity Svcs Engine | (ISE)-3395 | $ 535.55 | $ 405.72 | $ 0.00 - Waived |
| | | | | | |
| Security | Firewall | Cisco ASA 5512x | TBD | TBD | $ 0.00 - Waived |
| Security | Firewall | Cisco ASA 5525x | $ 283.08 | $ 214.46 | |
| Security | Firewall | Cisco ASA 5545x | $ 356.84 | $ 270.33 | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-10 | TBD | TBD | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-20 | TBD | TBD | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-40 | TBD | TBD | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S170 | $ 61.50 | $ 46.59 | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S370 | $ 116.82 | $ 88.50 | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S670 | $ 209.02 | $ 158.35 | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C170 | $ 37.22 | $ 28.20 | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C370 | $ 55.66 | $ 42.17 | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C670 | $ 86.39 | $ 65.45 | $ 0.00 - Waived |

alllant - kii msa v1 - (execution version 09-04-13).docx

| 4-Hour Premium Maintenance & Monitoring | | Key Component | List MRC | Discounted SW/SC/PGM Bundle 3-Year MRC | NRC |
|---|---|---|---|---|---|
| SMALL BRANCH | Ethernet Router | CISCO1941-SEC/K9 Service Bundle | $ 55.83 | $ 40.80 | $ 0.00 – Waived |
| SMALL BRANCH | 2 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 60.73 | $ 46.01 | $ 0.00 – Waived |
| SMALL BRANCH | 4 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 60.73 | $ 46.01 | $ 0.00 – Waived |
| SMALL BRANCH | LAN Switch | 2960S-24TD-L | $ 81.17 | $ 61.49 | $ 0.00 – Waived |
| SMALL BRANCH | Firewall | ASA5515-K9 | $ 172.29 | $ 130.52 | $ 0.00 – Waived |
| | | | | | |
| MEDIUM BRANCH | Ethernet Router | CISCO2951-SEC/K9 | $ 261.11 | $ 197.81 | $ 0.00 – Waived |
| MEDIUM BRANCH | T3 Router | CISCO2951-SEC/K9 | $ 295.45 | $ 204.00 | $ 0.00 – Waived |
| MEDIUM BRANCH | LAN Switch | 2960S-48TD-L | $ 107.75 | $ 81.63 | $ 0.00 – Waived |
| MEDIUM BRANCH | LAN Switch | WS-C2960S-48FPS-L | $ 122.50 | $ 92.81 | $ 0.00 – Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3750X-24T-E | $ 120.97 | $ 91.64 | $ 0.00 – Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3850-48T L (40Gbps) | $ 156.31 | $ 118.42 | $ 0.00 – Waived |
| MEDIUM BRANCH | Firewall | ASA5525-K9 | $ 437.82 | $ 331.68 | $ 0.00 – Waived |
| | | | | | |
| LARGE BRANCH | Ethernet Router | CISCO3945E/K9 | $ 461.49 | $ 349.61 | $ 0.00 – Waived |
| LARGE BRANCH | T3 Router | CISCO3945E/K9 | $ 461.49 | $ 349.61 | $ 0.00 – Waived |
| LARGE BRANCH | Base LAN Switch | WS-C4507R+E | $ 671.39 | $ 508.63 | $ 0.00 – Waived |
| LARGE BRANCH | Chassis LAN Switch | WS-C4507R+E | $ 671.39 | $ 508.63 | $ 0.00 – Waived |
| LARGE BRANCH | Firewall | ASA5545-K9 | $ 555.83 | $ 421.09 | $ 0.00 – Waived |
| | | | | | |
| DATACENTER | Router Bundle | ASR1000-SIPX | $ 292.61 | $ 221.67 | $ 0.00 – Waived |
| DATACENTER | Nexus Switch | N5K-C5548UP | $ 336.10 | $ 254.62 | $ 0.00 – Waived |
| DATACENTER | Nexus Low Latency Switch | N3K-C3548P-10G | $ 640.50 | $ 485.23 | $ 0.00 – Waived |
| DATACENTER | Chassis-based LAN Switch | WS-C6506-E | $ 1,380.55 | $ 1,045.87 | $ 0.00 – Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | | | | | |
|---|---|---|---|---|---|
| DATACENTER | Server | UCSC-C220-M3S | $ 85.93 | $ 65.10 | $ 0.00 – Waived |
| | | | | | |
| | | | | | |
| | ISR Router | CISCO1941/K9 | $ 60.73 | $ 46.01 | $ 0.00 – Waived |
| | ISR Router | CISCO1921-SEC/K9 | $ 42.29 | $ 32.04 | $ 0.00 – Waived |
| | ISR Router | CISCO2921-SEC/K9 | $ 160.30 | $ 121.44 | $ 0.00 – Waived |
| | ISR Router | CISCO2951/K9 | $ 295.53 | $ 223.89 | $ 0.00 – Waived |
| | ISR Router | CISCO3925-SEC/K9 | $ 295.53 | $ 223.89 | $ 0.00 – Waived |
| | ISR Router | CISCO3945E-SEC/K9 | $ 461.49 | $ 349.61 | $ 0.00 – Waived |
| | ISR Router | CISCO3945E | $ 461.49 | $ 349.61 | $ 0.00 – Waived |
| | | | | | |
| | LAN Switch | WS-C3750X-48T-E | $ 194.72 | $ 147.52 | $ 0.00 – Waived |
| WAN Optimization | Riverbed WAN Opt | EX560H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 – Waived |
| WAN Optimization | Riverbed WAN Opt | EX760H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 – Waived |
| WAN Optimization | Riverbed WAN Opt | CX7055H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 – Waived |
| | | | | | |
| Wireless | Wireless AP | AIR-CAP1602I-a-K9 (Internal antennas) | $ 31.99 | $ 24.24 | $ 0.00 – Waived |
| Wireless | Wireless AP | AIR-CAP1602E-a-K9 (External antennas) | $ 32.92 | $ 24.94 | $ 0.00 – Waived |
| Wireless | Wireless AP | AIR-CAP2602I-a-K9(Internal antennas) | $ 35.84 | $ 27.15 | $ 0.00 – Waived |
| Wireless | Wireless AP | AIR-CAP2602E-a-K9 (External antennas) | $ 36.91 | $ 27.96 | $ 0.00 – Waived |
| Wireless | Wireless AP | AIR-CAP3602I-a-K9 (Internal antennas) | $ 39.83 | $ 30.18 | $ 0.00 – Waived |
| Wireless | Wireless AP | AIR-CAP3602E-A-K9 (External antennas) | $ 40.75 | $ 30.87 | $ 0.00 – Waived |
| Wireless | License | AIR-CT2504-50-K9 (50 AP Licenses) | $ 440.28 | $ 333.55 | $ 0.00 – Waived |
| Wireless | License | AIR-CT5508-250-K9 (250 AP Licenses) | $ 2,102.31 | $ 1,592.66 | $ 0.00 – Waived |
| | | | | | |
| Wireless | Wireless Controller | AIR-CT5508-12-K9 | $ 376.36 | $ 285.12 | $ 0.00 – Waived |
| Wireless | Wireless Controller | AIR-CT5508-50-K9 | $ 743.92 | $ 563.58 | $ 0.00 – Waived |
| Wireless | Wireless Controller | AIR-CT5508-100-K9 | $ 1,303.26 | $ 987.32 | $ 0.00 – Waived |
| Wireless | Wireless Service Module | WS-SVC-WISM2-3-K9(=) (300 AP Licenses) | $ 1,782.69 | $ 1,350.52 | $ 0.00 – Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| Security | Cisco Identity Svcs Engine | (ISE)-3315 | TBD | | TBD | | $ 0.00 - Waived |
|----------|----------------------------|------------|-----|---|-----|---|------------------|
| Security | Cisco Identity Svcs Engine | (ISE)-3355 | $ 676.31 | | $ 512.35 | | $ 0.00 - Waived |
| Security | Cisco Identity Svcs Engine | (ISE)-3395 | $ 841.80 | | $ 637.73 | | $ 0.00 - Waived |
| | | | | | | | |
| Security | Firewall | Cisco ASA 5512x | TBD | | TBD | | $ 0.00 - Waived |
| Security | Firewall | Cisco ASA 5525x | $ 437.82 | | $ 331.68 | | |
| Security | Firewall | Cisco ASA 5545x | $ 555.83 | | $ 421.09 | | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-10 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-20 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-40 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S170 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S370 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S670 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C170 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C370 | Not Available | | Not Available | | $ 0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C670 | Not Available | | Not Available | | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

allliant - kii msa v1 - (execution version 09-04-13).docx

| 36 Month Premium Onsite Maintenance / Monitoring | Key Component | List MRC | Discounted SW/SC/PCM Bundle 3-Year MRC | NRC |
|---|---|---|---|---|
| SMALL BRANCH | Ethernet Router | CISCO1941-SEC/K9 Service Bundle | $ 55.78 | $ 40.80 | $ 0.00 - Waived |
| SMALL BRANCH | 2 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 83.72 | $ 57.80 | $ 0.00 - Waived |
| SMALL BRANCH | 4 x T1 Router | CISCO1941-SEC/K9 Service Bundle | $ 64.43 | $ 48.81 | $ 0.00 - Waived |
| SMALL BRANCH | LAN Switch | 2960S-24TD-L | $ 95.15 | $ 72.08 | $ 0.00 - Waived |
| SMALL BRANCH | Firewall | ASA5515-K9 | $ 209.17 | $ 158.46 | $ 0.00 - Waived |
| MEDIUM BRANCH | Ethernet Router | CISCO2951-SEC/K9 | $ 369.32 | $ 251.60 | $ 0.00 - Waived |
| MEDIUM BRANCH | T3 Router | CISCO2951-SEC/K9 | $ 295.45 | $ 204.00 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | 2960S-48TD-L | $ 146.78 | $ 111.20 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C2960S-48FPS-L | $ 146.78 | $ 111.20 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3750X-24T-E | $ 145.09 | $ 109.92 | $ 0.00 - Waived |
| MEDIUM BRANCH | LAN Switch | WS-C3850-48T L (40Gbps) | $ 189.35 | $ 143.44 | $ 0.00 - Waived |
| MEDIUM BRANCH | Firewall | ASA5525-K9 | $ 356.69 | $ 270.22 | $ 0.00 - Waived |
| LARGE BRANCH | Ethernet Router | CISCO3945E/K9 | $ 570.59 | $ 432.26 | $ 0.00 - Waived |
| LARGE BRANCH | T3 Router | CISCO3945E/K9 | $ 570.59 | $ 432.26 | $ 0.00 - Waived |
| LARGE BRANCH | Base LAN Switch | WS-C4507R+E | $ 833.04 | $ 631.09 | $ 0.00 - Waived |
| LARGE BRANCH | Chassis LAN Switch | WS-C4507R+E | $ 833.04 | $ 631.09 | $ 0.00 - Waived |
| LARGE BRANCH | Firewall | ASA5545-K9 | $ 688.60 | $ 521.67 | $ 0.00 - Waived |
| DATACENTER | Router Bundle | ASR1000-SIPX | $ 359.45 | $ 272.31 | $ 0.00 - Waived |
| DATACENTER | Nexus Switch | N5K-C5548UP | $ 413.85 | $ 313.52 | $ 0.00 - Waived |
| DATACENTER | Nexus Low Latency Switch | N3K-C3548P-10G | $ 794.32 | $ 601.76 | $ 0.00 - Waived |
| DATACENTER | Chassis-based LAN Switch | WS-C6506-E | $ 1,719.38 | $ 1,302.56 | $ 0.00 - Waived |
| DATACENTER | Server | UCSC-C220-M3S | $ 93.15 | $ 70.57 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | | | | | |
|---|---|---|---|---|---|
| | ISR Router | CISCO1941/K9 | $ 69.64 | $ 52.76 | $ 0.00 - Waived |
| | ISR Router | CISCO1921-SEC/K9 | $ 46.75 | $ 35.41 | $ 0.00 - Waived |
| | ISR Router | CISCO2921-SEC/K9 | $ 194.26 | $ 147.17 | $ 0.00 - Waived |
| | ISR Router | CISCO2951/K9 | $ 320.11 | $ 242.51 | $ 0.00 - Waived |
| | ISR Router | CISCO3925-SEC/K9 | $ 363.14 | $ 275.11 | $ 0.00 - Waived |
| | ISR Router | CISCO3945E-SEC/K9 | $ 570.59 | $ 432.26 | $ 0.00 - Waived |
| | ISR Router | CISCO3945E | $ 570.59 | $ 432.26 | $ 0.00 - Waived |
| | | | | | |
| | LAN Switch | WS-C3750X-48T-E | $ 237.29 | $ 179.76 | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | EX560H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | EX760H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| WAN Optimization | Riverbed WAN Opt | CX7055H | Non-Cisco – Not Available | Non-Cisco – Not Available | $ 0.00 - Waived |
| | | | | | |
| Wireless | Wireless AP | AIR-CAP1602I-a-K9 (Internal antennas) | $ 33.69 | $ 25.52 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP1602E-a-K9 (External antennas) | $ 34.91 | $ 26.45 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602I-a-K9(Internal antennas) | $ 38.60 | $ 29.24 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP2602E-a-K9 (External antennas) | $ 39.83 | $ 30.18 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602I-a-K9 (Internal antennas) | $ 43.52 | $ 32.97 | $ 0.00 - Waived |
| Wireless | Wireless AP | AIR-CAP3602E-A-K9 (External antennas) | $ 44.75 | $ 33.90 | $ 0.00 - Waived |
| Wireless | License | AIR-CT2504-50-K9 (50 AP Licenses) | $ 544.16 | $ 412.24 | $ 0.00 - Waived |
| Wireless | License | AIR-CT5508-250-K9 (250 AP Licenses) | $ 316.73 | $ 239.95 | $ 0.00 - Waived |
| | | | | | |
| Wireless | Wireless Controller | AIR-CT5508-12-K9 | $ 464.25 | $ 351.71 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-50-K9 | $ 923.71 | $ 699.78 | $ 0.00 - Waived |
| Wireless | Wireless Controller | AIR-CT5508-100-K9 | $ 1,622.88 | $ 1,229.45 | $ 0.00 - Waived |
| Wireless | Wireless Service Module | WS-SVC-WISM2-3-K9(=) (300 AP Licenses) | $ 1,965.17 | $ 1,488.76 | $ 0.00 - Waived |
| | | | | | |
| Security | Cisco Identity Svcs Engine | (ISE)-3315 | TBD | TBD | $ 0.00 - Waived |
| Security | Cisco Identity | (ISE)-3355 | $ 839.19 | $ 635.75 | $ 0.00 - Waived |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

| | Svcs Engine | | | | |
|---|---|---|---|---|---|
| Security | Cisco Identity Svcs Engine | (ISE)-3395 | $   1,046.18 | $     792.56 | $   0.00 - Waived |
| Security | Firewall | Cisco ASA 5512x | TBD | TBD | $   0.00 - Waived |
| Security | Firewall | Cisco ASA 5525x | $     541.08 | $     409.91 | |
| Security | Firewall | Cisco ASA 5545x | $     688.60 | $     521.67 | $   0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-10 | Not Available | Not Available | $   0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-20 | Not Available | Not Available | $   0.00 - Waived |
| Security | Intrusion Prevention | AIP-SSM-40 | Not Available | Not Available | $   0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S170 | Not Available | Not Available | $   0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S370 | Not Available | Not Available | $   0.00 - Waived |
| Security | Web Security Appliance | Cisco Ironport WSA S670 | Not Available | Not Available | $   0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C170 | Not Available | Not Available | $   0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C370 | Not Available | Not Available | $   0.00 - Waived |
| Security | Email Security Appliance | Cisco Ironport C670 | Not Available | Not Available | $   0.00 - Waived |

Alliant Technologies, LLC Confidential.  Unauthorized Distribution is Prohibited

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

## RMM Service Addendum Rate Card

| Description | Alliant SKU | MRC 1-YR | MRC 3-YR | MRC 5-YR | NRC |
|---|---|---|---|---|---|
| RMM Basic Monitoring | RMM-B | $ 13.00 | $ 10.40 | $ 8.83 | $ 49.00 |
| RMM Resource Monitoring | RMM-R | $ 29.00 | $ 23.20 | $ 20.84 | $ 49.00 |
| RMM Enterprise Network Monitoring | RMM-EN | $ 49.00 | $ 39.20 | $ 36.28 | $ 49.00 |
| RMM Enterprise Datacenter Monitoring | RMM-ED | $ 49.00 | $ 39.20 | $ 36.28 | $ 49.00 |
| RMM Application Monitoring (add-on to Enterprise Datacenter) | RMM-A | $ 9.00 | $ 7.20 | $ 6.18 | $ 49.00 |
| RMM SAN Storage Monitoring (add-on to Enterprise Datacenter) | RMM-SAN | $ 9.00 | $ 7.20 | $ 4.12 | $ 49.00 |
| RMM Netflow Monitoring (add-on to Enterprise Network) | RMM-RNF | $ 19.00 | $ 15.20 | $ 12.01 | $ 49.00 |
| RMM Synthetic Response Time Monitoring (per Site) | RMM-RSPNS | $ 159.00 | $127.20 | $114.95 | $ 99.00 |
| RMM - Monitoring Probe | RMM-DEVICE | $      - | $      - | $      - | $3,500.00 |
| Custom-branded 800 Number with personalized greeting | PCM-HD-TOLL-VINIT | $      - | $      - | $      - | $1,395.00 |
| Custom-branded 800 Number Renewal | PCM-HD-TOLL-VREN | $      - | $      - | $      - | $ 695.00 |

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

## SmartCure Service Addendum Rate Card

| Description | Alliant SKU | MRC 1-YR | MRC 3-YR | MRC 5-YR | | NRC |
|---|---|---|---|---|---|---|
| SmartCure Engineering Response - Category 0 | SMRTCU-CAT0 | $ 39.00 | $ 33.15 | $ 30.81 | | $ 9.00 |
| SmartCure Engineering Response - Category 1 | SMRTCU-CAT1 | $ 49.00 | $ 41.65 | $ 38.71 | | $ 19.00 |
| SmartCure Engineering Response - Category 2 | SMRTCU-CAT2 | $ 79.00 | $ 67.15 | $ 62.41 | | $ 29.00 |
| SmartCure Engineering Response - Category 3 | SMRTCU-CAT3 | $ 159.00 | $135.15 | $125.61 | | $ 39.00 |
| SmartCure Engineering Response - Category 4 | SMRTCU-CAT4 | $ 199.00 | $169.15 | $157.21 | | $ 49.00 |
| SmartCure Engineering Response - Category 5 | SMRTCU-CAT5 | $ 299.00 | $254.15 | $236.21 | | $ 59.00 |
| SmartCure Engineering Response - Category 6 | SMRTCU-CAT6 | $ 399.00 | $339.15 | $315.21 | | $ 69.00 |
| SmartCure Engineering Response - Category 7 | SMRTCU-CAT7 | $ 89.00 | $ 67.15 | $ 62.41 | | $ 29.00 |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# Engineering Response Service Addendum Rate Card

| Description | Alliant SKU | MRC 1-YR | MRC 3-YR | MRC 5-YR | NRC |
|---|---|---|---|---|---|
| Engineering Response - Category 0 | ER-PR-CAT0 | $ 39.00 | $ 33.15 | $ 30.81 | $ 9.00 |
| Engineering Response - Category 1 | ER-PR-CAT1 | $ 49.00 | $ 41.65 | $ 38.71 | $ 19.00 |
| Engineering Response - Category 2 | ER-PR-CAT2 | $ 79.00 | $ 67.15 | $ 62.41 | $ 29.00 |
| Engineering Response - Category 3 | ER-PR-CAT3 | $ 159.00 | $135.15 | $125.61 | $ 39.00 |
| Engineering Response - Category 4 | ER-PR-CAT4 | $ 199.00 | $169.15 | $157.21 | $ 49.00 |
| Engineering Response - Category 5 | ER-PR-CAT5 | $ 299.00 | $254.15 | $236.21 | $ 59.00 |
| Engineering Response - Category 6 | ER-PR-CAT6 | $ 399.00 | $339.15 | $315.21 | $ 69.00 |
| Engineering Response - Category 7 | ER-PR-CAT7 | $ 89.00 | $ 67.15 | $ 62.41 | $ 29.00 |

Exhibit A: TenFour's Objection to Cure Costs

alliant - kii msa v1 - (execution version 09-04-13).docx

# Proactive Configuration Management Service Addendum Rate Card

| Description | Alliant SKU | MRC 1-YR | MRC 3-YR | MRC 5-YR | | NRC |
|---|---|---|---|---|---|---|
| PCM Technology Help Desk support with Anti-X and patch management | PCM-HD | $ 39.00 | $ 33.15 | $ 30.81 | | $ 39.00 |
| PCM - Category 0 | PCM-CAT0 | $ 9.00 | $ 7.65 | $ 7.11 | | $ 0.00 - Waived |
| PCM - Category 1 | PCM-CAT1 | $ 19.00 | $ 16.15 | $ 15.01 | | $ 0.00 - Waived |
| PCM - Category 2 | PCM-CAT2 | $ 29.00 | $ 24.65 | $ 22.91 | | $ 0.00 - Waived |
| PCM - Category 3 | PCM-CAT3 | $ 49.00 | $ 41.65 | $ 38.71 | | $ 0.00 - Waived |
| PCM - Category 4 | PCM-CAT4 | $ 99.00 | $ 84.15 | $ 78.21 | | $ 0.00 - Waived |
| PCM - Category 5 | PCM-CAT5 | $ 199.00 | $169.15 | $157.21 | | $ 0.00 - Waived |
| PCM - Category 6 | PCM-CAT6 | $ 399.00 | $339.15 | $315.21 | | $ 0.00 - Waived |
| PCM - Category 7 | PCM-CAT7 | $ 29.00 | $ 24.65 | $ 22.91 | | $ 0.00 - Waived |

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited
Page 36 of 36

Exhibit A: TenFour's Objection to Cure Costs

dnf-kpa-001-v03-f-151210



# PARTICIPATION AGREEMENT

This Participation Agreement ("Participation Agreement") is entered into this 10 day of December, 2015, by and between Alliant Technologies, LLC ("Alliant") and Dean Foods Company ("Participating Member").

## 1. RECITALS

1.1      Alliant and KII Telecommunications Partners, Inc. ( "KII" ) entered into a Master Services Agreement, dated September 4, 2013 (the  "MSA" ).

1.2      Participating Member wants to obtain Services from Alliant and Alliant wants to provide Services to Participating Member and its Affiliates under the terms and conditions of the MSA and this Participation Agreement.

## 2. AGREEMENT

In consideration of the recitals set forth in Section 1 above, which are hereby re-stated and agreed to by the parties, and for valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, Alliant and Participating Member hereby agree to the terms and conditions of this Participation Agreement. Unless otherwise defined, capitalized terms in this Participation Agreement have the meanings ascribed to them in the MSA. At times, this Participation Agreement and the MSA are referred to collectively herein as the "Agreements".

## 3. INCORPORATION OF MSA

Alliant and Participating Member agree that all the terms and conditions of the MSA are incorporated herein.   This Participation Agreement shall take precedence and control with respect to any inconsistencies between the MSA and this Participation Agreement.

## 4. ADOPTION OF MSA

Participating Member acknowledges and agrees that KII and Alliant may modify the MSA at any time. Participating Member agrees to all the terms and conditions set forth in the MSA as so modified, and hereby consents to, agrees to be bound by, and waives notice of any extensions, deletions or other modifications of the terms and conditions of the MSA agreed upon by KII and Alliant (including, without limitation, any addition of new products, services or programs, or any deletions or modifications of program benefits).  Participating Member further acknowledges and agrees that all terms, conditions, rights and remedies under the MSA are fully enforceable against Participating Member; provided, however, that (a) Participating Member has no right to terminate the MSA; (b) Participating Member has no right to any notices under the MSA; and (c) any and all other rights and remedies available to Participating Member hereunder will be applicable to Participating Member only with respect to this Participation Agreement.

## 5. SERVICE

Alliant agrees to provide Services to Participating Member and its Affiliates pursuant to the terms and conditions of the Agreements.  To order Services, Participating Member shall execute a Service Addendum and/or SOW for the desired Service.  Each such Service Addendum and SOW shall become a part of this Participation Agreement as if set forth herein at length. All Service Addendums and SOW's entered into pursuant to this Participation Agreement shall be governed by the terms set forth in the Agreements. The Service Addendum shall take precedence and control with respect to any inconsistencies between the Service Addendum and this Participation Agreement.

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.





dnf-kpa-001-v03-f-151210

**ALLIANT**
T E C H N O L O G I E S

## 6. TERM

This Participation Agreement will commence on the date first written above and will continue to remain in effect unless and until terminated in accordance with the Agreements. The term of each Service shall be set forth in the Service Addendum or SOW relating to such Service.

## 7. REPRESENTATIONS AND WARRANTIES

Participating Member hereby represents and warrants that: (a) it meets, and will continue to meet throughout the term of this Participation Agreement, the definition of "Participating Member" set forth in the Agreement; (b) any of Participating Member's Affiliates receiving Service under the Agreement meet

and will continue to meet throughout the term of the Agreement, the definition of Affiliate set forth in the MSA; and (c) Participating Member shall be fully responsible for the use of Services by its Affiliates and for all actions or omissions undertaken by such Affiliates.

## 8. TERMINATION OF SERVICE ADDENDUM OR STATEMENT OF WORK

8.1    **For "Cause" by Alliant or Participating Member**.  A Service Addendum or Statement of Work may be terminated by Alliant or Participating Member for Cause automatically if the other party breaches any term or condition of the Service Addendum or Statement of Work and fails to cure such breach within 30 days (15 days in the event of non-payment of any fees or charges) after receiving notice of such breach from the non-breaching party.

8.2    **Effect of Termination of a Service Addendum or Statement of Work**.  Upon termination of a Service Addendum or Statement of Work pursuant to Section 8.1, (a) Participating Member shall remit to Alliant all amounts due for the Services through the date of termination; (b) Participating Member shall discontinue use of the affected Services; and (c) Participating Member shall remit to Alliant all early termination fees that are due pursuant to each Service Addendum.  Termination of a Service Addendum or Statement of Work pursuant to this Section 8 shall not affect any other Service Addendum or Statement of Work.

## 9. EARLY TERMINATION FEES

In the event that a Service Addendum or Service component (e.g. a Configuration Item) is terminated prior to the Minimum Retention Period set forth in the Service Addendum for any reason other than termination by Participating Member for Cause pursuant to Section 8.1 hereof, Participating Member shall pay to Alliant the early termination fees set forth in the terminated Service Addendum. In addition to the foregoing early termination fees, if Participating Member terminates or cancels Service under any Service Addendum for any reason (other than for Cause as set forth in Section 8.1 hereof) prior to expiration of the Service Term, Participating Member shall reimburse Alliant for all actual out-of-pocket costs and charges imposed on Alliant by any and all third parties (e.g., Alliant's service providers) as a result of such early termination.

## 10. ADDRESS FOR NOTICES

All notices, requests, demands and other communications to Participating Member required or permitted under this Participation Agreement shall be provided to the address set forth below.  Notices must be sent via overnight courier with confirmed delivery or first class mail, certified and prepaid, and are effective upon receipt:

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

| 2 of 3

dnf-kpa-001-v03-f-151210



**ALLIANT**
T E C H N O L O G I E S

Dean Foods Company

2711 N. Haskell, Suite 3400

Dallas, TX 75204

Attention: General Counsel

With a copy to: Chief Information Officer, same address

## 11. CONSENT TO DISCLOSURE

Participating Member consents to the disclosure by Alliant to KII of information regarding the Services that Participating Member is receiving under this Participation Agreement, the amount of revenue received by Alliant as a result of Participating Member's participation hereunder, and such similar information related to the aggregate performance of KII and Participating Members under the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Participation Agreement as of the date first written above.

| **Dean Foods Company** | **Alliant Technologies, LLC** |
|---|---|
| By _Ida McKinley_ | By _[signature]_ |
| Name _Ida McKinley_ | Name _Gary Finical_ |
| Title _Sr. Director, IT Process & Governance_ | Title _CFO_ |
| Date _12/10/15_ | Date _12/10/2015_ |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs



DNF-SAE-001-v006-F-151210

# Alliant Service Addendum for KII Companies

This Service Addendum ("Service Addendum") is made and entered into between **Alliant Technologies, LLC,** ("Alliant") and **Dean Foods Company** ("Participating Member"). This Service Addendum describes the features, assumptions, service level objectives and pricing for the following Alliant services ("Services"). This Service Addendum is effective as of the date it is fully executed by both parties ("Service Addendum Effective Date").

- Infrastructure as a Service ("SmartWare")
- Network Monitoring and Maintenance ("SmartWatch")
- Monitoring – Remote Monitoring and Management ("RMM")
- RMM Application Inspection Service option ("AIS")
- Repair - Engineering Response ("ER")
- Administration - Proactive Configuration Management ("PCM")
- Onsite Administration ("PCM Onsite")
- Wide-Area Network (WAN) Services – Alliant VPN, Session Initiation Protocol (SIP) option, CoS option, Remote Access option and Network Based Firewall (NBFW) option
- Internet Connectivity Service – Alliant Managed Internetwork Service - Alliant MIS ("MIS")
- Broadband Connectivity Services - Managed Broadband

Some of the general terms and conditions for the Service are defined separately in the Participation Agreement ("Participation Agreement") between the parties, effective as of December 10, 2015. Certain other general terms and conditions are set forth in this Service Addendum. In the event of any conflict between the terms of this Service Addendum and the terms set forth in the Participation Agreement, the terms set forth in this Service Addendum will govern unless expressly stated otherwise in the Participating Agreement.

Unless otherwise stated herein, the information contained within this Service Addendum is limited to the Service and is not applicable to other agreements or Service Addendums Participating Member has with Alliant.

Both parties acknowledge and agree that Alliant shall provide a copy of this Service Addendum to KII Telecommunications LLC ("KII").

## 1. DEFINITIONS

A. "Acceptable Use Policy ("AUP")" applies to (i) Services provided over or accessing the Internet and (ii) wireless (i.e., cellular) data and messaging Services. The AUP can be found at att.com/aup or other locations Alliant or its suppliers may designate.

B. "Affiliate" of a party means any entity that controls, is controlled by or is under common control with such party.

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



C. "Assignee" means each of the persons, companies and entities that provide financing for Assigned Assets for use by Participating Member in connection with the SmartWare Service and SmartWatch Service as set forth from time to time in a CI Schedule

D. "Assigned Assets" means the SmartWatch Assigned Assets and the SmartWare Assigned Assets (as defined in Sections 8) and on the CI Schedule.

E. "Configuration Item" or "CI" means a discrete, measurable object requiring management as part of Alliant providing a managed service for the Participating Member. Example CIs include electronic devices, circuits, application software, software code objects or reports. A listing of estimated initial Configuration Items shall be included in the attached Appendix A, which will change from time to time. Billing for services will be based on actual services provided for CIs in production.

F. "Damages" means collectively all injury, damage, liability, loss, penalty, interest and expense incurred including, without limitation, reasonable attorneys' fees.

G. "Master Services Agreement ("MSA")" means the Master Services Agreement dated September 5, 2013 and executed by and between "Alliant" and KII.

H. "Minimum Retention Period" or "MRP" means the minimum period that Participating Member is obligated to make payments for each Configuration Item in order to avoid the payment of the early termination fees set forth herein. The Minimum Retention Period for each Configuration Item commences on the Service Activation Date.

I. "Monthly Recurring Charge" or "MRC" means the monthly recurring charges that Participating Member is obligated to pay for a Service. The MRC for each Service is set forth on Appendix A (which may be modified from time to time in accordance with the procedures set forth in this Service Addendum and the MSA.

J. "Non-Participating Member Equipment" means equipment including but not limited to configuration items (CI) (e.g. servers, switches, routers and software licenses installed on the equipment) supplied by Alliant or anyone other than the Participating Member.

K. "Pricing Schedule" (also known as a "Service Rate Card"), means a pricing schedule (including related attachments) or other document that is attached to or is later executed by the parties and references this Service Addendum. A Pricing Schedule includes the CI pricing and pricing for associated services, the pricing (including discounts and commitments, if applicable) and the Minimum Retention Period for each Configuration Item. The Pricing Schedule for each Service is included in the corresponding sections of this document, and the description of the services assigned to each Configuration Items is attached hereto as Appendix A.

L. "Service" means the services offered and purchased through a Service Addendum and further set forth in detail in each applicable Service Description. A listing of all initial Services shall be included in the attached Appendix A

M. "Service Activation Date" means the earlier of (i) the date on which Alliant begins providing the Services to a Participating Member or (ii) the date on which the Services are first made available by Alliant for use by Participating Member.

N. "Service Description" is a detailed description of a Service that Alliant makes available to Participating Member via a hyperlink referenced in this Service Addendum.

O. "Service Publications" means Pricing Schedules, Service Descriptions and the AUP.

DNF-SAE-001-v006-F-151210



P. "Site" means the physical location where Alliant installs or provides a Service at the request of Participating Member.

Q. "User" means anyone who uses or accesses any Service provided to Participating Member.

## 2. SERVICE ADDENDUM TERM

This Service Addendum shall become effective on the Service Addendum Effective Date and shall remain in effect until terminated pursuant to the terms of this Service Addendum or the Participation Agreement.

## 3. PARTICIPATING MEMBER PRICE PROTECTION

Pricing for each RFC order will be governed by the then current Service Rate Cards (Appendix A). Fees for each activated CI shall be fixed for the duration of the service period, including, but not limited to, the Minimum Retention Period. Unit pricing (MRCs and NRCs) for each CI and associated Services ordered from any Service Rate Card are guaranteed not to increase for 60 months from Service Activation Date or until cancelled or refreshed by Participating Member pursuant to the terms and conditions set forth herein. Pricing in the Participating Member's Service Rate Cards are guaranteed for 12 months from issuance. Notwithstanding any fees set forth on a current Service Rate Card, for any RFC order Alliant will extend to Participating Member the lowest fees currently available to any other KII member for the same Service for the same or shorter Minimum Retention Period, and any new Service Rate Card will, at the time it is issued to Participating Member, contain the lowest pricing available to any other KII member for the same Service for the same or shorter Minimum Retention Period. Notwithstanding the foregoing, at no time will fees on any future Service Rate Card increase for the same Services on CIs in production at the same Minimum Retention Period.

## 4. MINIMUM RETENTION PERIOD

Each Configuration Item will have a Minimum Retention Period of five (5) years or as set forth in Appendix A. If Participating Member cancels a CI before the end of the Minimum Retention Period, Participating Member agrees to pay Alliant the Monthly Recurring Charge for the balance of the Minimum Retention Period as set forth in Appendix A herein.

Upon completion of the Minimum Retention Period, Participating Member may continue using the Service or Configuration Item until either Participating Member chooses to upgrade the Service or Configuration Item, delete the CI from service, or until Alliant reasonably determines the Service or CI is beyond its usable life. Participating Member may continue to use the available Service as long as Participating Member pays the Monthly Recurring Charges.

## 5. EARLY TERMINATION FEES

Each Configuration Item has a Minimum Retention Period of five (5) years. Except as otherwise provided herein or in Section 6 of the MSA, if Participating Member cancels a CI before the end of the Minimum Retention Period, Participating Member agrees to pay Alliant the Monthly Recurring Charges for the balance of the Minimum Retention Period. Upon completion of the Minimum Retention Period, Participating Member may continue using the Service until Participating Member chooses to either upgrade the Service or delete the CI from service. Participating Member may continue to use the Service as long as Participating Member pays the Monthly Recurring Charges with respect to each Service.



DNF-SAE-001-v006-F-151210

## 6. SERVICE DESCRIPTIONS

Service Descriptions referenced by this Addendum may be accessed at the following URL locations listed below. All applicable Service features, Service Level Objectives and Service Level Agreements are described within the Service Descriptions. Participating Member shall use the following user IDs and passwords for access to the Service Description: UserID: **AlliantCustomer**; P/W: **AlliantCustomer35340!**

    A. Participating Member acknowledges that it has reviewed these Service Descriptions.

- SmartWare - www.allianttech.com/contracts/smartware
- SmartWatch - www.allianttech.com/contracts/smartwatch
- RMM - www.allianttech.com/contracts/rmm
- ER - www.allianttech.com/contracts/er
- PCM - www.allianttech.com/contracts/pcm
- PCM Onsite - www.allianttech.com/contracts/pcm-onsite-tier-iii
- Alliant VPN WAN Services (MPLS) - www.allianttech.com/contracts/avpn
- Wan Services (Managed Internet Service) - www.allianttech.com/contracts/mis
- Managed Broadband - www.allianttech.com/contracts/broadband

    B. <u>Scope of Services</u>. Any items not expressly covered within this Service Addendum are considered out of scope and subject to additional charges.

    C. <u>Alliant Changes to Service Descriptions</u>. Alliant reserves the right to revise the features and components of the Service Descriptions from time to time. Alliant will notify Participating Member prior to the date on which such material revisions will become effective and will provide Participating Member with an updated Service Description. "Materially adverse impacts" do not include changes to non-stabilized pricing, changes required by governmental authority, or assessment of or changes to additional charges such as surcharges or taxes. If Alliant revises a Service Description such that the revision has a materially adverse impact on Participating Member, (i) Alliant shall have the option to make revisions to the Service that remedy such materially adverse impact within 30 days after receipt of notice from Participating Member; or (ii) if Alliant does not exercise such option, Participating Member shall have the right to retain the prior version of the Service for a period of up to 60 months.

## 7. CONFIGURATION ITEMS AND SERVICES

    A. A list of the Configuration Items ("CIs") and Services that Participating Member may order is set forth in Appendix A attached hereto. Subject to this Section 7, Appendix A may be modified from time to time to include newly added CIs ("Newly Added CIs"). All subsequent RFC's (orders) are subject to the then currently applicable Service Rate Cards made part of Appendix A.

    B. <u>Changes to CIs and Services</u>. Either Participating Member or Alliant can create an Operations Service Request For Change (RFC) to any current, in effect Service Addendum. No Operations Service Change Request will be binding unless and until fully executed by both parties. It is the responsibility of both parties to adhere to the approved change management process. All requests for CI's or Services to be added, removed or change of service level need to be approved

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



as described below.

C. Alliant requires at least forty-eight (48) hours' notice to initialize the CI and add it to Participating Member's service and billing profile. All add and change of service level CI changes will be effective the day CI Initialization, scheduled test, and go-live is completed. CI Initialization fees and CI support coverage fees for changes will be applied to Participating Member's billing profile and will be included on Participating Member's monthly bill. Alliant's NMS system will report on new CI's found and will, on a quarterly basis, recommend operations service changes (RFCs) with proposed CI changes via email. Participating Member can acknowledge the change of CI's via the Operations Service Change Request process described above.

D. Removing an existing CI from Service Addendum coverage - Subject to Early Termination Fees (as applicable to the specific Service affected), Participating Member may, upon written request to the Alliant Service Desk via RFC, have a CI removed (deleted) from coverage. All CI removals will be effective as soon as reasonably possible, and generally executed by the first day of the calendar month that follows the date the request was accepted. Dependent on the Minimum Retention Period in effect for a CI, retiring CI coverage may not impact monthly charges generated to Participating Member. Alliant may at its discretion pro-rate charges for CIs that change status mid-month.

 a. Moving Location of an existing SmartWare CI Under Service Addendum coverage. Participating Member may, upon written request to the Alliant Service Desk via RFC, have a SmartWare CI removed from production and kept in inventory for redeployment. All SmartWare CI removals will be effective as soon as reasonably possible, and no later than the first day of the calendar month that follows the date the request was accepted. In the case of removal from production, SmartWare CI's are to be returned to Alliant for storage and reconfiguration. MRC's will still be in effect during storage and therefore no Early Termination fees are applied unless the SmartWare CI is deleted from Service from to completion of the Minimum Retention Period.

 b. All CI Adds and changes, including increasing the service level of CIs, will be effective as of the Service Activation Date.

## 8. SMARTWARE FEES AND CHARGES

A. **Alliant SmartWare Fees**. Fees for the SmartWare Service are set forth above and in Appendix A and are based on (i) the total number of SmartWare CIs provided to Participating Member, and (ii) the SmartWare charge for those SmartWare CIs. SmartWare CIs may be added at the Participating Member's discretion using approved RFC and Change Management procedures. Each Newly Added SmartWare CI will be quoted by Alliant and, if acceptable to Participating Member, paid for by Participating Member once service is activated. . Each Newly Added SmartWare CI shall be subject to its own MRC, NRC and Minimum Retention Period (which are reflected on Appendix A, RFC Add/Delete Form and/or the relevant CI Schedule). In the event that the parties enter into a new MSA, the SmartWare fees will continue as governed by the existing MSA and the existing Service Addendum. Each SmartWare CI not previously initialized into Alliant's Network Management System may be subject to a CI Initialization non-recurring charges pursuant to Appendix A contained herein. All such additions will be added to this Agreement as updates to Appendix A, by RFC, or by CI Schedule.



DNF-SAE-001-v006-F-151210

The initial CI inventory and pricing for that inventory is set forth in Appendix A and Appendix C, which may change from time to time with Participating Member pre-approval. The SmartWare fees set forth in Appendix C or in a CI Schedule are non-refundable. In situations where the CIs on a CI Schedule are to be delivered over a period of time that exceeds thirty (30) days, Alliant and Participating Member may execute a preliminary CI Schedule that provides for payment of appropriate Non-recurring and Monthly Recurring fees pending full execution of a CI Schedule.

B. **Changes to SmartWare CIs.** If Participating Member initiates changes via an approved Operations Service Change Request (RFC) that adds additional quantities of existing CIs, subject to the limitations described in the Participating Member Price Protection Section (Section 3) above, those additions will be subject to the prices set forth in Appendix A of this Addendum. RFCs to add new CIs not previously included will result in new CIs listed in Appendix A. Participating Member is responsible paying for all applicable local use and VAT taxes. SmartWare fees are billed in advance for each month. Fees for each activated CI shall be fixed for the duration of the service period including, but not limited to, the Minimum Retention Period.

1. All reasonable transportation, delivery, and installation costs ("Transportation Costs") associated with incremental CI's shipped to existing sites shall be borne by the Participating Member.

2. Alliant shall have the right to increase the service fees for any CI to cover governmental taxes or fees (i.e. use tax) that Alliant is required to collect or which Alliant or any of its affiliates incur as a result of Participating Member's use of the CI.

3. Except for relocations or moves within the state in which the CIs are initially located, if any of the SmartWare CIs are relocated or moved out of state, Alliant shall have the right to change the fees charged for such CI's by an amount equal to the net change in sales taxes or other fees imposed by the state and or country into which the CI's are moved (as compared with the state from which such CIs were moved). Movement of CIs outside the country in which they were originally deployed are not permitted.

4. Monthly Recurring Charge is based on number of CIs and per-CI pricing based on exact configuration and quantities in production and in inventory for redeployment at time of monthly billing.

5. Alliant's SmartWare fees listed in the Service Rate Card in Appendix A apply only to the initial CIs listed thereon. Except as provided in Section 3 above (Participating Member Price Protection), SmartWare fees for future deployed CIs may fluctuate over time, and Alliant cannot guarantee that CIs purchased in the future will be offered at these same rates, or that every CI will be available in the future.

6. Installing/adding SmartWare CIs into the Participating Member network, including physical and logical connection, configuration, and Participating Member-specific promotion to production tasks is considered a Transition activity that may incur additional implementation fees to Participating Member under a separate Statement of Work.

## 9. SMARTWATCH FEES AND CHARGES

A. **Fees.** SmartWatch ("SmartWatch Services Fees") are based on (i) the total number of CIs under SmartWatch coverage, (ii) the level of maintenance coverage for each device (e.g. Premium 4 Hour hardware replacement, Next Business Day hardware replacement), and (iii) the monitoring level of

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



each covered device for each CI under SmartWatch coverage (e.g. Resource Monitoring, Enterprise Monitoring). Devices may be added to coverage at the Participating Member's discretion using the approved change management procedures ("Newly Added SmartWatch Services"). Newly Added SmartWatch Services will be reflected on either an amendment to Appendix A via RFC or on a CI Schedule. Each Newly Added SmartWatch Service added will be quoted by Alliant and, if agreed to by the Participating Member, paid for by Participating Member. Each Newly Added SmartWatch Service shall be subject to its own Minimum Retention Period (which is reflected on Appendix A and the relevant CI Schedule). Each device not already activated into Alliant's Network Management System may be subject to a CI Initialization NRC. The NRC for initialization includes collecting CI identification data (manufacturer, model, features and additions, serial number, MAC address) as well as applicable network topology (VLAN, Access Lists) and access and login credentials as required for the appropriate Alliant Service. The NRC also includes entering this CI data into Alliant's Network Management System (NMS) to provide necessary functional support.

B. **SmartWatch Service Levels**

Alliant establishes a default SmartWatch Service level for each CI based on its functional use and industry best practices. Participating Member shall have a right to choose the recommended or an alternate service level based on prevailing business needs from the following coverage levels where available:

1. <u>SmartWatch Standard</u>:  Standard Maintenance coverage for all CIs under SmartWatch includes Next Business Day hardware replacement directly from the Hardware Manufacturer.

2. <u>SmartWatch Premium</u>:  For an incremental fee, Premium Coverage provides four (4) hour hardware delivery for designated CIs.

3. <u>SmartWatch Premium Onsite</u>: Premium Onsite Coverage includes equipment accompanied by a certified manufacturer's technician to physically exchange the new device or component with the failed component.  The availability of this service is dependent on manufacturer availability in the Participating Member location.

4. <u>SmartWatch Enhanced Limited Lifetime Warranty (ELLW)</u>: Alliant's ELLW warranty solution provides next business day hardware replacement of covered products where available. Under the terms of this warranty option, Alliant will arrange for the manufacturer to use commercially reasonable efforts to ship a replacement for next business day delivery via the Return Materials Request (RMA) process.  SmartWatch ELLW is offered on limited Cisco switching CIs only, and does not include all IOS) software upgrades (i.e. enhanced IOS images not available.  ELLW-covered CIs will receive both hardware replacement and IOS version upgrades for the lifetime of the service.

Standard Coverage, Premium Coverage, Premium Onsite Coverage and SmartWatch ELLW options are available on most covered CIs, and are assigned based on Participating Member request.  Premium and Premium Onsite Coverage are subject to higher fees, and may not be available for every CI or at every Participating Member Site.

C. **SmartWatch NRC's.**  A one-time NRC Fee of $49 will be charged for the service activation of each CI under SmartWatch coverage not already in Alliant's Network Management System (NMS).  Renewal of



DNF-SAE-001-v006-F-151210

SmartWatch Service for existing CIs at is not subject to incremental activation NRC's. Following the Minimum Retention Period, renewal of any SmartWatch CI does not guarantee previously quoted rates.

D. **SmartWatch Monitoring Appliances and Associated Fees.** A fee of $99 per month will be charged during the Service Period to fund the procurement and operation of the SmartWatch RMM network monitoring appliance A fee of $19 per month will be charged for procurement and installation of the Cisco SmartWatch monitoring appliance.

## 10. SERVICE TERMS FOR SMARTWARE AND SMARTWATCH SERVICES

A. **Acceptance and Location.** Participating Member either (a) confirms that the SmartWare CIs have been received by Participating Member and deployed by Alliant pursuant to this Service Addendum and are unconditionally accepted by Participating Member for the purposes of this Service Addendum or (b) agrees that if such CIs have not yet been delivered and deployed, that unconditional acceptance of the CIs will occur on the Service Activation Date. Participating Member may not relocate any SmartWare CIs from the location specified in the CI Schedule without Alliant's prior written consent. Participating Member, or Alliant on Participating Member's behalf, shall notify the Assignee in writing of all relocations of any SmartWare CIs.

B. **Alliant's Default SmartWatch Service Levels.** Alliant applies a default SmartWatch Service level for each CI in which SmartWare Service has been Activated.

C. **Return and Refresh and Buyout Options.** At the end of the Minimum Retention Period, Participating Member shall continue to pay the MRCs for use of the SmartWare CIs until the CIs are returned to Alliant. At the end of the Minimum Retention Period, Participating Member may continue the use of the CI and the CI's applicable service attributes at the current MRC's for up to 60 months from original service activation date. This period can be extended by mutual consent of both Parties. Extensions beyond 60 months may incur new rate card pricing for those affected CI's and their respective service attributes at Alliant's discretion. Alternatively, the Participating Member may exercise, at the Participating Member's discretion, one of the following options;

1. Return all SmartWare CIs to Alliant in good condition, normal wear and tear accepted to any place in the United States as directed by Alliant (the "CI Return Option");

2. Refresh the SmartWare CI as set forth below, (the "CI Refresh Option"), Upon entering into a new Minimum Retention Period not to exceed 48 months, Alliant will offer to Participating Member the CI Refresh Option after 48 months from each eligible CI's original activation date. This CI Refresh Option will include Alliant's Transition Services for CI replacement without the typical Service NRCs, and Alliant will waive the Professional Services fees associated with CI procurement, configuration, testing, and rollout. Participating Member acknowledges and agrees that a refresh may not be available for every SmartWare CI. In order to exercise the CI Refresh Option, Participating Member shall provide written notice to Alliant of its intent to do so in the form of an RFC at least 30 days in advance of exercising such option. If Participating Member exercises the CI Refresh Option for a particular SmartWare CI, (i) the deleted SmartWare CI will be returned to Alliant in conjunction with the installation of the new SmartWare CI which will be the then-current model that Alliant offers; (ii) the new SmartWare CI will have a new Minimum Retention Period in accordance with Section 3 hereof; and (iii) Participating Member will pay Alliant's then-current

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



MRC for such new SmartWare CI for the period of usage including the new Minimum Retention Period.

3. Purchase the CIs at Fair Market Value, which purchase shall hereafter be referred to as (the "CI Buyout Option"). For the purpose of exercising the CI Buyout Option, "Fair Market Value" shall be determined based upon the "in place, in use" value of the equipment between two parties at the time of the exercise of the CI Buyout Option under no compulsion to buy or sell, which in the case of Cisco equipment, shall be based upon the Cisco calculator tool, not to exceed 20% of total scheduled payments for the Minimum Retention Period for such SmartWare CIs. In order to exercise the CI Buyout Option, Participating Member shall provide written notice to Alliant of its intent to do so at least 30 days in advance of exercising such option. If Participating Member exercises the CI Buyout Option for a particular SmartWare CI, title to the purchased SmartWare CI will be transferred to Participating Member and such SmartWare CI shall no longer be considered Non-Participating Member Equipment. Upon exercising the CI Buyout Option, the SmartWare Service will automatically discontinue with respect to each such SmartWare CI for which Participating Member exercises the CI Buyout Option. If Participating Member exercises the Buyout Option with respect to any SmartWare CI, Participating Member must also satisfy all SmartWatch payments due for the remainder of the Minimum Retention Period with respect to such CI. However, other Alliant Services such as SmartWatch, RMM, ER and PCM shall not be impacted by the CI Buyout Option by Participating Member. Note: This purchase option (iii) can be removed from the SA at Participating Members discretion prior to agreement execution.

D. **Financing**. Participating Member acknowledges and agrees that Alliant may from time to time obtain financing with respect to CIs that are covered by both the SmartWatch and SmartWare Services. Participating Member acknowledges that Alliant is entitled to effect such financing by selling, transferring and assigning to an Assignee without notice to Participating Member, all right, title and interest of Alliant in and to (i) the SmartWare CIs and/or the associated SmartWatch Services Fees (ii) all SmartWare MRCs and SmartWatch MRCs (iii) the aggregate of the SmartWare Early Termination Fees and SmartWatch Early Termination Fees that apply with respect to such SmartWare CIs and the SmartWatch Services that are subject to such financing and (iv) all other personal property related to the SmartWare CIs, MRCs, and SmartWatch Early Termination Fees and the SmartWare Early Termination Fees under this Service Addendum (collectively, the "SmartWatch Assigned Assets"); provided, that such assignment shall not impact Alliant's obligations to provide other Services hereunder. Participating Member acknowledges that no portion of the SmartWare or SmartWatch MRCs are attributable to the other Services (i.e., Services other than the SmartWatch Service) performed by Alliant under the Service Addendum. Whenever SmartWare CIs provided by Alliant to Participating Member are financed, Alliant shall provide Participating Member with a CI Schedule in the form attached to the MSA as Appendix C ("CI Schedule"), which upon confirmation of its accuracy, Participating Member will acknowledge by execution thereof. The CI Schedule(s) will be unconditionally accepted upon the Service Activation Date. All SmartWare CIs and SmartWatch Service Fees for CIs under SmartWatch coverage listed on a CI Schedule shall be subject to the terms and conditions set forth in this Section 10.

E. **Right to Assign**. With respect to all SmartWare CIs and all SmartWatch Services listed on a CI Schedule, Participating Member consents to the assignment of such SmartWatch Assigned Assets by Alliant to the Assignee. Participating Member further acknowledges and agrees that such

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



SmartWatch Assigned Assets may be further sold, transferred, and assigned by the Assignee to any other financial institution or financing source without the consent of Participating Member. Alliant shall provide Participating Member with notice of any such assignment. Participating Member shall not be entitled to assign its rights and obligations under any CI Schedule without the express written consent of the Assignee; provided, however, that Participating Member may assign its rights and obligations hereunder to any of its Affiliates or to a successor of all or that portion of Participating Member's business that receives Services hereunder provided that Participating Member shall also remain liable for the obligations of its Affiliates hereunder. Regardless of any such assignment of any SmartWare or Smartwatch Asset by Alliant or any Assignee of Alliant, Alliant will remain fully responsible hereunder for performance of the Services provided and associated with any such assigned asset.

F. **Third Party Beneficiary Status**. With respect to all CIs listed on a CI Schedule and with respect to the rights (not the obligations) related to the SmartWatch Assigned Assets, the Assignee shall be deemed to be a third party beneficiary of the rights conferred pursuant to the terms and conditions of the SmartWare and/or SmartWatch Services as set forth in this Service Addendum. Consequently, Alliant and Participating Member shall not amend, modify, supplement, or terminate, without the prior written consent of the Assignee, any of the provisions set forth in this Service Addendum relating to or affecting the ownership of the Assigned Assets or Participating Member's payment obligations with respect to the Assigned Assets. Any attempt to so amend, modify, supplement, or terminate such provisions without the prior written consent of the Assignee shall be ineffective and null and void.

G. **Taxes**. Participating Member will pay, when due, all license fees, duties, fees, charges, assessments and sales, use, property, excise, goods and services, value-add and other taxes of any nature (including penalties and interest, but excluding income or capital taxes of the Assignee), now or hereafter imposed by any federal, state, municipal or foreign taxing authority on or in connection with the SmartWare CIs provided under any CI Schedule, including but not limited to any imposed on the purchase, sale, ownership, delivery, leasing, possession, use, operation and return of the SmartWare CIs. Participating Member shall indemnify, defend, and hold the Assignee harmless from and against any losses, damages, suits, claims, demands, fees, expenses and other harms whatsoever arising out of or relating to such taxes, including but not limited to claims for taxes, customs duties and other fees relating to the import or export of such SmartWare CIs or withholding tax, other taxes, fees or assessments (including interest and penalties thereon) that may arise out of such SmartWare CIs being located outside of (or being transported to or from) the United States. If any withholding, value added or other foreign tax is due ("Relevant Taxes") as a result of such SmartWare CIs located outside of the United States, Participating Member agrees, to the extent permitted by applicable law and if requested by the Assignee, to self-assess with respect to any Relevant Taxes and remit and file all Relevant Tax returns in regards to such Relevant Taxes under Participating Member's tax registration number and filings. Participating Member represents and warrants that it shall have obtained the appropriate export and import permits and licenses with respect to the export and import of such SmartWare CIs, including any permits that might be required for the Assignee.

H. **ABSOLUTE AND UNCONDITIONAL OBLIGATION. EACH SMARTWATCH, SMARTWARE MRC, SMARTWATCH EARLY TERMINATION FEE AND SMARTWARE EARLY TERMINATION FEE, AS**

DNF-SAE-001-v006-F-151210



**APPLICABLE, PAYABLE BY PARTICIPATING MEMBER UNDER A CI SCHEDULE(S) SHALL BE A SEPARATE AND DISCRETE PAYMENT OBLIGATION OF PARTICIPATING MEMBER AND SHALL BE PAYABLE INDEPENDENT OF ALLIANT'S PROVISION OF SERVICES HEREUNDER. PARTICIPATING MEMBER SHALL PAY ALL SUCH MRCs AND EARLY TERMINATION FEES, IF ANY, OR CI BUYOUT OPTION, AS APPLICABLE, ABSOLUTELY AND UNCONDITIONALLY TO THE ASSIGNEE WITHOUT REGARD TO ANY DEFENSE, CLAIM, COUNTERCLAIM, RECOUPMENT, SUSPENSION, REDUCTION, RECISSION, ABATEMENT, SETOFF OR OTHER RIGHT WHATSOEVER THAT PARTICIPATING MEMBER MAY HAVE AGAINST ALLIANT OR THE ASSIGNEE WHETHER ARISING UNDER THIS SERVICE ADDENDUM OR ANY OTHER AGREEMENT BETWEEN ALLIANT AND PARTICIPATING MEMBER, OR ANY OTHER TRANSACTION, AND WITHOUT REGARD TO THE EXPIRATION OR EARLY TERMINATION OF THIS SERVICES ADDENDUM OR THE MSA OR ANY OTHER SERVICE ADDENDUM OR SOW THEREUNDER, AND WHETHER BY OPERATION OF LAW, ANY ACT OF THE PARTIES TO ANY SUCH AGREEMENT OR OTHERWISE.**

I. **Triggering Event**. Each of the following events shall be a "Triggering Event" under each CI Schedule: (a) Participating Member fails to pay when due any amount payable under CI Schedule(s) or is otherwise in default under a CI Schedule; (b) Participating Member fails to comply with any other requirement under a CI Schedule(s); (c) the Services Addendum or any CI Schedule thereunder is terminated prior to the end of its initial term for any reason whatsoever, including, without limitation, for convenience, cause, or by operation of law; (d) Alliant undergoes any of the events set forth in subsections (i) or (ii) of Section 4 of the MSA; or (e) a proceeding is started by or against Participating Member under any bankruptcy, insolvency, winding-up or other similar law.

J. **Rights Upon Triggering Event**. Upon the occurrence of a Triggering Event that is not cured within fifteen (15) days after the Assignee has notified Participating Member in writing of such event, on Assignee's written demand, Participating Member shall either (i) immediately commence making all required MRC payments directly to the Assignee and continue to perform its obligations under Sections 8, 9 and 10 of this Service Addendum, in which case Participating Member shall have continued possession and use of the SmartWare CIs and agrees to contact the hardware manufacturer with respect to monitoring and maintenance for the affected SmartWare; or (ii) remit to the Assignee all SmartWare Early Termination Fees and related SmartWatch Early Termination Fees and purchase the SmartWare CIs for their Fair Market Value (as defined below). Upon payment of the amounts set forth in subsection (ii) above, title to the purchased CI will be transferred to Participating Member, on an "as is where is" basis and such SmartWare CI shall no longer be considered Non-Participating Member Equipment. "Fair Market Value" shall be determined based upon the "in place, in use" value of the equipment between two parties at the time of the exercise of the CI Buyout Option under no compulsion to buy or sell, which in the case of Cisco equipment, shall be based upon the Cisco calculator tool, not to exceed 20% of total scheduled payments for the Minimum Retention Period for such SmartWare CIs. Upon payment of the amounts set forth in subsection (iii) above, title to the purchased CI will be transferred to Participating Member, on an "as is where is" basis and such SmartWare CI shall no longer be considered Non-Participating Member Equipment.

K. **Remedies In the Event Participating Member Does Not Exercise its Rights Upon Triggering Event**. If Participating Member does not exercise any of its rights in Section 10 J above, and in addition to any other remedies Assignee may have hereunder, the Assignee may; (a) take possession



DNF-SAE-001-v006-F-151210

of any SmartWare CI wherever it is located without court order or other process of law; (b) terminate the CI Schedule(s) and require Participating Member to immediately pay the Assignee, as a genuine pre-estimate of liquidated damages and not as a penalty, the applicable SmartWare Early Termination Fees and SmartWatch Early Termination Fees and applicable taxes; (c) dispose of the SmartWare CIs or any part thereof, at public or private sale or other disposition, for cash or credit, and on such terms as the Assignee will determine; (d) contact the supplier of the SmartWare CIs and terminate software license rights and direct the supplier to refund any unearned portion of the licensing, maintenance or support fees directly to the Assignee for application against the sums due hereunder, and (e) exercise any other remedy available to the Assignee, whether at law, in equity or otherwise. For the avoidance of doubt, if the Participating Member has paid the applicable SmartWatch Early Termination Fees and SmartWare Early Termination Fees and applicable taxes for such SmartWare CIs, the Assignee shall not have the right to take possession of the SmartWare CIs for the remainder of the Minimum Retention Period. The Assignee will apply the net proceeds from any sale or other disposition of the SmartWare CIs (after deducting all costs of such sale or other disposition) against the amounts owing by Participating Member hereunder. Participating Member shall remain liable for any deficiency. Participating Member will pay all costs and expenses incurred by the Assignee, including attorney fees and court costs, arising out of any Triggering Event, including, without limitation, the exercise of the Assignee's rights and remedies hereunder. All of the Assignee's remedies hereunder are cumulative and not alternative.

L.  **SmartWatch MRC Discount Upon Triggering Event.** Upon the exercise by Participating Member of its rights pursuant to subsection J above (Rights Upon Triggering Event), the **then-current** SmartWatch MRC shall be reduced by eight percent (8%) (such reduction being the estimation agreed upon between the parties to compensate Participating Member for the disruption of the Alliant value added services added to the Hardware Manufacturer supplied monitoring and maintenance services under the SmartWatch Services) and such reduced amount shall be either paid to Assignee or used to calculate the SmartWatch Early Termination fees depending on which of the two options in subsection K that Participating Member elects. For greater certainty, Participating Member agrees to look solely to the Hardware Manufacturer or partner for monitoring and maintenance services for the CIs

M.  With respect to the indemnification obligations in this Section 10: (i) the indemnified party will notify the indemnifying party in writing promptly upon learning of any claim or suit for which indemnification may be sought, provided that failure to do so shall not affect the indemnity except to the extent the indemnifying party is prejudiced thereby; (ii) the indemnifying party shall have control of the defense or settlement, provided that the indemnified party shall have the right to participate in such defense or settlement with counsel of its own selection and at its sole expense; and (iii) the indemnified party shall reasonably cooperate with the defense, at the indemnifying party's expense.

## 11. ADDITIONAL TERMS FOR NON-PARTICIPATING MEMBER EQUIPMENT AND ASSIGNED ASSETS

The following additional terms and conditions apply to all Non-Participating Member Equipment and the Assigned Assets.

A.  **Ownership, Use and Non-Disturbance of Assigned Assets.** The Assignee shall have title to or hold the license to all SmartWare CIs listed on a CI Schedule. The Assignee shall not interfere with or

Exhibit A: TenFour's Objection to Cure Costs



DNF-SAE-001-v006-F-151210

disturb Participating Member's continued physical possession and use of such SmartWare CIs, related SmartWatch coverage and Assigned Assets for so long as Participating Member is not in default under the CI Schedule(s). Participating Member shall comply with all applicable laws relating to the use, possession, or operation of such Assigned Assets. It is expressly understood that all such Assigned Assets shall be and remain personal property, and Participating Member shall do all commercially reasonable acts necessary to ensure that the Assigned Assets remain personal property and do not become fixtures.

B. **Liens**. Participating Member shall make commercially reasonable efforts to keep all Non-Participating Member Equipment and all Assigned Assets free and clear of any lien, security interest, hypothec, mortgage, charge, privilege, adverse claim or other encumbrance of any nature whatsoever (a "Lien"), except those Liens in favor of the Assignee hereunder. Participating Member grants the Assignee a security interest in such Assigned Assets and in the right to use such Assigned Assets. Participating Member will as soon as it is commercially possible notify Alliant of, and Participating Member will as soon as it is commercially possible at its own cost and expense take whatever action is necessary to duly discharge, any such mortgage, security interest, pledge, charge, lien, encumbrance or claim when the same may arise during the term of this Service Addendum.

C. **Risk of Loss**. With respect to all Non- Participating Member Equipment and Assigned Assets, Participating Member shall be responsible for any loss, theft or destruction of, or damage to any such Non- Participating Member Equipment and Assigned Assets (collectively, "Loss") from any and every cause whatsoever, whether or not insured, from the Service Activation Date until the date on which such Non-Participating Member Equipment is returned to Alliant and, with respect to the Assigned Assets, until the date such Assigned Assets are returned to the Assignee (or to Alliant if so directed by the Assignee) or purchased by Participating Member pursuant to the terms hereof. With respect to Assigned Assets, Participating Member shall be required to make payment of the MRCs and other amounts under the CI Schedule even if there is a Loss.

D. **Indemnity**. Participating Member will defend, indemnify and hold the Assignee harmless from all losses, claims, costs, expenses, damages, actions and liabilities whatsoever, including legal fees and expenses, which the Assignee may suffer or incur in connection with or arising from Participating Member's use of the SmartWare CIs, and SmartWatch coverage provided under any CI Schedule(s) and their possession, use and return. The indemnity set forth in this Section 11D shall not apply if no Triggering Event has occurred.

E. **Participating Member Representations and Warranties**. Participating Member represents and warrants to Alliant and the Assignee that as of the date of execution of this Service Addendum and each CI Schedule (i) this Service Addendum and each CI Schedule has been duly authorized, executed and delivered by Participating Member and constitutes a legal, valid and binding obligation of Participating Member's enforceable against Participating Member in accordance with its terms, subject to applicable bankruptcy and other similar laws affecting the rights of creditors generally; and (ii) the entering into and performance of this Service Addendum and each CI Schedule does not, and will not, violate any law applicable to the Participating Member or the use of the Services provided under this Service Addendum, any provisions of Participating Member's articles or by-laws or result in any breach of or constitute a default under or result in the creation of any Lien on the Non-

DNF-SAE-001-v006-F-151210



Participating Member Equipment or the Assigned Assets pursuant to any instrument or agreement to which Participating Member is a party or by which it or its assets may be bound.

F. **Warranties**. Participating Member will receive the benefit of any manufacturer warranties pertaining to the Non-Participating Member Equipment and the Assigned Assets. Participating Member agrees that it will not pursue any warranty claims directly against the manufacturer, provided that at the time of such claims Alliant is not in breach of its SLA responsibilities with respect to such Non-Participating Member Equipment. In the event that Alliant is in breach of the SLA with respect to Non-Participating Member Equipment, Participating Member shall have the right at its sole discretion to pursue applicable warranty claims directly against the manufacturer with respect to such Non-Participating Member Equipment.

G. **No Warranties from Assignee**. The Assignee has not made or given any warranties, representations or conditions of any kind whatsoever (whether express, implied, statutory or otherwise), with respect to the Assigned Assets or the services to be performed by Alliant under this Service Addendum including any relating to the merchantability of the Assigned Assets or their quality or fitness for any particular purpose. The Assignee shall have no obligation or liability to Participating Member with respect to this Service Addendum whatsoever, including, but not limited to, the rendering of services related to the Assigned Assets regardless of how related any such service or obligation may be to the SmartWare CIs. If Participating Member encounters any problems with the Assigned Assets or otherwise under this Service Addendum, Participating Member's sole recourse is against Alliant and shall not affect Participating Member's continuing obligations to the Assignee.

H. **Insurance**. With respect to all SmartWare CIs, Participating Member shall maintain at Participating Member's sole cost and expense (a) all risk property insurance against the loss, theft or destruction of, or damage to, each such CI for its full replacement value, naming Alliant and the Assignee as loss payees, and (b) commercial general liability insurance for third party bodily injury and property damage insurance, naming Alliant and the Assignee as an additional insured. Participating Member shall have the right to self-insured for Property Coverage. Participating Member shall give Alliant evidence of such insurance if, as and when requested by Alliant. Such insurance shall be in a form and amount and with companies acceptable to Alliant and the Assignee. If Participating Member does not provide such insurance coverage, Alliant has the right, but not the obligation, to obtain such insurance and pass through the cost of such insurance to Participating Member provided Alliant gives notice in writing of this requirement prior to obtaining such insurance. Although the ownership of provided SmartWare CIs remains with Alliant or the Assignees, the safeguarding and insuring of these devices against damage or loss is the responsibility of the party hosting that equipment. Equipment in transit is the responsibility of the sending party.

## 12. MISCELLANEOUS

A. **Precedence**. Any conflict or inconsistency between the terms and conditions of this Section 12 and other provisions of this Service Addendum shall be resolved in favor of this Section 12 and any conflict of inconsistency between the CI Schedule and this Section 11 shall be resolved in favor of the CI Schedule(s).



DNF-SAE-001-v006-F-151210

B. **Successors and Assigns.** The terms and conditions of this Service Addendum and any CI Schedule shall inure to the benefit of the Assignee and its successors and assigns and shall be binding on Alliant and Participating Member and each of their respective successors and permitted assigns.

C. **Miscellaneous Provisions.** All of Participating Member's obligations under any CI Schedule(s) will survive the termination thereof to the extent required for their full observance and performance. No change or amendment to any CI Schedule will be effective, except by a written instrument signed by the parties thereto. No waiver by the Assignee of any default or any of the Assignee's remedies will be effective unless in writing. Any such waiver is not a waiver of any other later default, whether similar or not, or a waiver of the Assignee's right to exercise its remedies in the future. Except as otherwise expressly provided for, in any CI Schedule, all dollar amounts are stated in the lawful currency of the United States. Time is of the essence. Participating Member will give the Assignee such further assurances, do such acts, and execute such documents as the Assignee may reasonably require to give effect to any Assignment and to protect the Assignee's rights therein. A fax or electronically transmitted signed version of this Service Addendum, when received by the Alliant, Participating Member and Assignee, shall be binding on Participating Member, Alliant and Assignee for all purposes as if originally signed. Alliant and the Assignee can accept this Service Addendum by signing it either manually or electronically. This Service Addendum may be signed in counterparts each of which will be considered an original such all counterparts will be considered and constitute one and the same agreement or Schedule. If Participating Member transmits this Service Addendum by fax or electronically, it agrees that the only version of this Service Addendum that is the original for all purposes is the version containing Participating Member's faxed or scanned signature and the Assignee's signature. This Service Addendum may be retained electronically, in whole or in part, and Participating Member agrees that any such electronic version shall be fully enforceable without the need to produce an original.

## 13. RMM FEES AND CHARGES

A. **Alliant RMM Fees.** Fees for RMM are on a per CI basis and consist of two (2) components: (i) a per CI monitoring MRC, and (ii) one-time CI initialization NRC. The NRC for initialization includes collecting CI identification data (manufacturer, model, features and additions, serial number, MAC address) as well as applicable network topology (VLAN, Access Lists) and access and login credentials as required for the appropriate Alliant Service. The NRC also includes entering this CI data into Alliant's Network Management System (NMS) to provide necessary functional support. On the monthly billing date, an invoice will be generated that reflects the CI Initialization NRC during that month and the CI Monitoring MRC during that monthly period. Installing/adding these CIs into the Participating Member network, including physical and logical connection, configuration, and promotion to production is considered Transition activities that will be offered to Participating Member as a separate Statement of Work. At the end of each calendar month, an invoice will be generated that shows the CI Initialization NRC during that month and the CI Monitoring MRC during that monthly period.

B. **RMM NRC Fees.** A one-time NRC fee of $49 will be charged for RMM Service added each CI.

C. **NMS Monitoring Appliances and associated fees.**

Exhibit A: TenFour's Objection to Cure Costs



DNF-SAE-001-v006-F-151210

For purposes of data collection within Participating Member's network perimeter, Alliant deploys a physical network monitoring appliance for Participating Members with 300 or more than 300 CI's in production. If Participating Member has less than 300 CI's in production, Alliant will provide a virtual Network Monitoring Appliance to be installed by Participating Member on a Participating Member-provided dedicated server within the Participating Member network. Certain restrictions apply regarding suitability of Participating Member-provided host server.

E. **Monitoring Appliances and associated fees**. A fee of $99 per month will be charged during the Service Period to fund the procurement and operation of the RMM network monitoring appliance. In addition, a fee of $19 per month will be charged for procurement and installation of the Cisco SmartWatch monitoring appliance.

## 14. ENGINEERING RESPONSE FEES AND CHARGES

A. **Alliant ER Fees**. Fees for the Service are based on (i) the total number of CIs under coverage, and (ii) the category level (complexity) of each CI, Category 0, Category 1, Category 2, Category 3, Category 4, Category 5, Category 6 or Category 7 (as defined at www.allianttech.com/contracts/er). On the monthly billing date, an invoice will be generated that reflects the number of CIs that were added during that month and the number of CIs under coverage during that monthly period.

B. **Non-Recurring Charges**. The NRC for initialization includes collecting CI identification data (manufacturer, model, features and additions, serial number, MAC address) as well as applicable network topology (VLAN, Access Lists) and access and login credentials as required for the appropriate Alliant Service. The NRC also includes entering this CI data into Alliant's Network Management System (NMS) and Network Configuration Management System (NCM) to provide necessary functional support.

C. **Non-Covered CI Add-on Fee**. When applicable, a one-time Non-Covered CI Add-on fee of $500 (per CI) will be charged in the event Participating Member needs same-day support on a CI that had not previously been activated under ER Service coverage. This fee is in lieu of the regular CI Initialization NRC. CI Support MRC as set forth in Appendix A will apply to all such CIs added to this Service Addendum.

D. **Onsite ER™ Support Fees**. In the event that Alliant determines that Onsite ER™ dispatch is required and the ER or Smartwatch service level associated with the CI does not include Onsite service ( for example ER Standard, or Smartwatch ELLW), the Alliant Service Desk will coordinate the dispatch of an engineer or a technician to assist the desk to further troubleshoot and remediate the problem. Onsite ER™ fees will be billed in thirty (30) minute increments in accordance with Appendix A.

E. **Network Configuration Backup**. The backup of configuration files for covered Network CI's including, but not limited to, firewalls, switches, wireless access points, load balancers and routers, is accomplished nightly through Alliant's network configuration management system (NCM). This is accomplished with multiple configuration versions stored at Alliant for improved restoration capabilities in the case of hardware failure. Alliant will include Configuration Backup on all network CI's covered by ER. Backup of CI's which contain Participating Member production data, such as servers or SAN's, are not included in the Alliant NCM system.

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



F. **Incremental Repair**. Alliant repairs, including onsite Remote Hands for a particular installation due to Participating Member-initiated (unintentional or intentional) service disruption or service installation delay that requires Alliant to dispatch an otherwise unscheduled Site visit will be billed at $ 65.00 per hour for remote remediation and as defined by the onsite support fees indicated in Appendix A.

G. **MRC Suspension**.  Alliant will suspend ER charges for any CI during the period that Participating Member has taken that CI out of service and has returned that CI to Alliant for warehousing purposes.

## 15. PCM FEES AND CHARGES

**Alliant PCM Fees.**  Fees for the PCM Service are set forth in Appendix A and are based on (i) the total number of CIs under coverage, and (ii) the category level (complexity) of each CI (Category 0, Category 1, Category 2, Category 3, Category 4, Category 5, Category 6 or Category 7) as defined at www.allianttech.com/contracts/pcm).  On the monthly billing date, an invoice will be generated that reflects the number of CIs under coverage during that monthly period.

- Any Configuration Items that require addition to this Service Addendum may be added using an RFC Add/ Delete form.  An Emergency Activation Fee of $100 per CI may apply for CIs requiring immediate coverage (less than 48 Hours).

- Alliant will execute requested PCM changes either during business hours or in a pre-scheduled maintenance window that is mutually agreed to by both parties.

Security scans and security compliance audits are not considered administrative activities included in PCM.  Alliant's PCM Service will, however, support Participating Member's need for configuration reports and other information in support of the Participating Member's internal or third party security audits.

**MRC Suspension.**  Alliant will suspend PCM charges for any CI during the period that Participating Member has taken that CI out of service and has returned that CI to Alliant for warehousing purposes.

## 16. PCM ONSITE FEES AND CHARGES

Under the scope of PCM Onsite Service, Alliant will provide a combination of part time and dedicated full-time engineers (FTEs) to support Participating Member's onsite Request for Remediation ("RFR"), Request for Change ("RFC") and project based work.  These resources will be managed by Alliant, but the FTEs will also take daily direction from Participating Member.  This Service will be provided in the following manner:

- Alliant shall use personnel with the degree of skill, necessary credentials and judgment normally exercised by recognized professional firms performing services of the same or substantially similar nature.

Pricing for Service consists of a monthly recurring cost ("MRC") for each FTE resource.  Participating Member will be invoiced monthly for services as follows:

- PCM Onsite MRC will be pro rated during any periods where a resource is not available (e.g., a resource takes a leave of absence or terminates his/her employment with Alliant and there is a period of time until the resource is replaced by Alliant).

Exhibit A: TenFour's Objection to Cure Costs



DNF-SAE-001-v006-F-151210

- Based on pricing from the Service Rate Cards in Appendix A, pricing for the services and CI's indicated in this Service Addendum are listed in Appendix A.

There is no Minimum Retention Period for on-site resources. Participating Member agrees to provide Alliant with at least 90-days' prior written notice in the event that Participating Member elects to remove any such on-site resource.

Pricing assumes:

- **Annual Rate Increase**. MRCs for each resource are subject up to a 5% annual increase after three (3) years from the Service Activation Date unless otherwise agreed upon between Alliant and Participating Member.

- **Professional Work Week**. Forty (40) professional work hours per week per FTE. The above charges will be increased in relation to additional (overtime) hours in the event that Participating Member requests additional resources and/or additional hours per week (rates will remain the same). Alliant defines Standard Business Hours as (Monday – Friday: 9am – 5pm) and Extended Business Hours as (Monday – Friday: 5pm – 9am, Sat, Sun, major holidays).

- **Overtime**. Alliant resources will be expected to deliver forty (40) resource hours per week per FTE, including actual time worked plus applicable PTO. Hours worked beyond 40 in a work week will be considered overtime hours.

- **Allowable PTO** for each employee include the following time off:
  - Participating Member recognized holidays.
  - Alliant vacations days accrued based on employee tenure at Alliant.

- **Equal Opportunity Employer Notice**. Alliant is an equal opportunity employer and refers FTE's, regardless of race, sex, color, religion, creed, ancestry, national origin, disability, age, marital status or other protected class status pursuant to applicable law. Participating Member agrees and warrants that it will not reject an FTE, or otherwise deem an FTE unacceptable, or take any other action for any reason prohibited by federal, state or local laws including, but not limited to, laws pertaining to employment discrimination or employee safety. Subject to Limitation of Liabilities set forth in this Amendment, Participating Member will indemnify and defend Alliant with respect to any and all claims that Participating Member took action in violation of federal, state and/or local laws, including, but not limited to, costs of suit, settlement and attorneys' fees.

- **Engineering Levels**. Alliant provides Engineering support based on Alliant-designated job descriptions and technical capabilities, including Project Manager, Technician, System Engineer, Security Engineer, Network Engineer and Technical Architect.

## 17. WAN SERVICES – ALLIANT VPN SERVICE

A. **Overview**. Alliant Virtual Private Network (VPN) powered by AT&T, is a global AT&T network-based IP VPN solution that is enabled by Multi-Protocol Label Switching (MPLS). Alliant VPN service enables Participating Member to build an application-aware, network-based MPLS virtual private network to link locations and efficiently transmit applications such as voice, data, and video over a single connection. Participating Member has the option of choosing the access method to Alliant

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



VPN which best meets its requirements. Ethernet, MLPPP, DSL, Wireless (3G and 4G) and Dedicated Private Line may all be used to connect to an MPLS port. In addition to a range of port types, Alliant VPN also supports a variety of router ownership and management options. Alliant VPN provides the capability to establish any-to-any connectivity through a single MPLS Port to each Participating Member location. There is no need to order additional private virtual circuits at each site to develop fully meshed communications.

B. **Availability**. Alliant VPN creates a single network based VPN service with a robust set of features to allow Participating Members the flexibility to choose the options they require over time without the need to move from one network VPN service to another. AVPN is generally available in the United States (including Alaska, Hawaii, Puerto Rico and the US Virgin Islands) and in over 50 other counties. It is available in controlled introduction in over 130 countries. Alliant VPN offers several additional service options available including SIP, CoS, Network based firewalls (NBFW) and remote access.

C. **Alliant VPN Fees**. Alliant VPN Pricing is detailed in Appendix A. Alliant reserves the right to begin charging for an Alliant VPN circuit up to 30 days prior to the delivered circuit being activated into Participating Member's WAN.

D. **Alliant VPN Service Changes**. For Alliant VPN the following service change procedures apply:

1. Should the Participating Member require physical changes to their coverage or configuration, such as adding a new location or bandwidth of a Configuration Item (such as an "Alliant VPN" circuit), Participating Member must notify Alliant in writing to detail the contract-impacting change requirements. Change orders or RFC's likely will result in additional one-time(non-recurring charges (NRCs) and additional monthly recurring charges (MRCs). If the proposed changes impact the cost of Alliant VPN services provided or the associated MRCs under this Service Addendum, Alliant will issue, at its discretion, a replacement Operations Service Change Request document.

2. If Participating Member terminates an Alliant VPN, MIS, SIP or CoS, Configuration Item is terminated prior to the Minimum Retention Period for any reason other than as set forth in Section 4 of the MSA ("Cause") or Section 5 of the MSA ("Material Breach"), or as otherwise set forth in Section 6 of the MSA (Termination) or Section 24 of the MSA ("Force Majeure"). Participating Member will pay applicable termination charges as follows:

   a. 100% of the monthly recurring charges for the terminated Service or Configuration Item multiplied by the months remaining, if any, in the first year of the applicable Minimum Retention Period; and

   b. 50% of the monthly recurring charges for the terminated Service or Configuration Item multiplied by the months remaining for the balance (i.e., second year and beyond) in the applicable Minimum Retention Period; and

   c. all associated credits or waived or unpaid non-recurring charges if such termination occurs before the first anniversary of the Service Activation Date.

The charges set forth in paragraph (a) above will not apply if a terminated Configuration Item is replaced within three (3) months with any additional Alliant VPN, MIS, SIP, or CoS WAN Services or Configuration Items, but only if the Minimum Retention Period and associated charge for the additional Service or Configuration Items are equal to or greater than the corresponding

DNE-SAE-001-v006-F-151210

Minimum Retention Period and associated charge for the terminated Configuration Item, respectively.

3. Either Participating Member or Alliant may create an Operations Service Change Request (RFC) to the current, in effect Service Addendum. No Operations Service Change Request will be binding unless and until fully executed by both parties. It is the responsibility of both parties to adhere to the approved change management process. All requests for CIs to be added removed or change of service level need to be approved as described herein. Additional CI's that increase the Participating Member's Network spend will result in additional monthly charges.

4. Alliant requires at least fifteen business days' notice to initialize new CI's and add them to Participating Member's service and billing profile, depending on the type of CI. All adds and changes of service level changes will be effective the day change is initialized, tested, and prepared for go-live. Initialization fees and support coverage fees for changes will be applied to Participating Member's billing profile and will be included on Participating Member's monthly bill.

5. Alliant will issue Service disconnect orders on circuits within 5 business days of receipt of an approved Request for Change document. Circuit disconnect will be effective no more than 30 days following the RFC effective date. Billing may continue for up to 30 days following the RFC effective date.

## 18. WAN SERVICES – ALLIANT VPN SERVICE OPTION - SIP

A. **Overview**. Alliant SIP is an integrated access, converged solution designed to deliver outbound, inbound, local and long distance calling over AT&T's Internet Protocol (IP) and Virtual Private Network (VPN) services. IP Flex can also be referred to as a Session Initiation Protocol (SIP) Trunking solution. It is deployed in situations where Participating Members own their own premises telephony (analog phones, key system, TDM PBX, or IP PBX) equipment. IP Flex provides trunk services over integrated access.

SIP provides Local, US Long Distance, International voice and fax calling, delivered via AT&T's advanced VoIP infrastructure. This service offers three calling plans: LD Only (Plan A), Local and LD (Plan B) and Local and LD with bundled LD minutes (Plan C). Alliant supports the integration of Participating Members' voice and data applications by leveraging their AVPN or MIS data services. All are available with a variety of access choices.

SIP supports voice traffic, originated from Participating Member owned CPE-based telephony platform (e.g. key system or PBX) or the PSTN, which is converted to data packets, allowing Participating Members to use their MIS or Alliant VPN connection for data, voice and fax traffic. Participating Members choose the calling capacity they require in units of Concurrent Calls, which are similar to simultaneous calls and can be engineered using standard voice traffic tools or by using the Participating Member's existing voice channel capacity, providing a flexible solution for any enterprise from large to small. SIP supports traditional key systems, TDM PBXs, and AT&T certified IP PBXs, IP PBX clusters and SBCs (Session Border Controllers).

B. **Alliant SIP Fees**. Initial SIP Pricing is included in site Information detailed in Appendix A, which will be changed from time to time upon agreement of both parties.

## 19. WAN SERVICES – ALLIANT VPN SERVICE OPTION - COS



A. **Overview**. Class of Service (CoS) is an optional feature available on Alliant's VPN and MIS Network services. CoS provides a parameter used to differentiate the types of payloads contained in the traffic being transmitted, and allows Network administrators to assign priorities to the data across the network by packet type. This optional feature accommodates and optimizes all types of applications by enabling a single network to accurately and consistently allow for traffic prioritization, often improving application performance without incremental bandwidth for improved cost-efficiency.

B. **Alliant CoS Fees**. Initial CoS Pricing is included in site Information detailed in Appendix A, which will be changed from time to time upon agreement of both parties.

## 20. WAN SERVICES – ALLIANT MIS SERVICE

A. **Overview**. Managed Internet Service (MIS) is a dedicated Internet access service that provides businesses with high-speed Internet access through communications facilities managed by AT&T. Participating Members enjoy a number of advantages, including (but certainly not limited to) reliable and high-performance connectivity to the Internet. Alliant MIS, powered by AT&T, enables businesses to communicate with millions of Internet users and countless information resources around the world. Alliant's MIS is a complete solution providing the tools required for companies to conduct business over the Internet safely and reliably. Participating Members have the choice of various components, access methods, transmission speeds and Class-of-Service (CoS) options.

Underlying Alliant MIS is AT&T's highly reliable transport, the IP connectivity to the Participating Member, and. the AT&T IP backbone. Participating Member connectivity to the AT&T backbone is provided through the AT&T transport network.

MIS provides high-speed dedicated Internet access for businesses. The key to this service is that it is managed: Alliant monitors the network 24 hours a day, seven days a week, and maintains the communications link between the Participating Member and the AT&T network. Should a problem occur, Alliant diagnoses it and its resolution begins immediately. This affords Participating Member the opportunity to focus their resources on their business, not on their telecommunications needs. MIS combines AT&T's world-class IP backbone and Participating Member service to deliver the reliability, security, quality and performance needed to conduct business over the Internet.

B. Should the Participating Member require physical changes to their coverage or configuration, such as adding a new location or bandwidth of a Configuration Item (such as an "Alliant MIS" circuit), Participating Member must notify Alliant in writing to detail the contract-impacting change requirements. Change orders or RFC's likely will result in additional one-time (non-recurring charges (NRCs) and additional monthly recurring charges (MRCs). If the proposed changes impact the cost of Alliant MIS services provided or the associated MRCs under this Service Addendum, Alliant will issue, at its discretion, a replacement Operations Service Change Request document.

1. Either Participating Member or Alliant may create an Operations Service Change Request (RFC) to the current, in effect Service Addendum. No Operations Service Change Request will be binding unless and until fully executed by both parties. It is the responsibility of both parties to adhere to the approved change management process. All requests for CIs to be added removed or change of service level need to be approved as described herein. Additional CI's that increase the Participating Member's Network spend will result in additional monthly charges.



DNF-SAE-001-v006-F-151210

2. Alliant requires at least fifteen business days' notice to initialize new CI's and add them to Participating Member's service and billing profile, depending on the type of CI. All adds and changes of service level changes will be effective the day change is initialized, tested, and prepared for go-live. Initialization fees and support coverage fees for changes will be applied to Participating Member's billing profile and will be included on Participating Member's monthly bill.

3. Alliant will issue Service disconnect orders on circuits within 5 business days of receipt of an approved Request for Change document. Circuit disconnect will be effective no more than 30 days following the RFC effective date. Billing may continue for up to 30 days following the RFC effective date.

## 21. WAN SERVICE TERMS AND CONDITIONS

A. **Internet Services**. If Participating Member fails to rectify its own, or effect the rectification by its User, of a violation of Alliant's and AT&T's Acceptable Use Policy (AUP) within 5 business days after receiving notice from Alliant, Alliant may suspend the affected Configuration Items. Alliant reserves the right, however, to suspend or terminate the affected Configuration Items immediately when: (i) Alliant's or AT&T's suspension or termination is in response to multiple or repeated AUP violations or complaints; (ii) Alliant or AT&T is acting in response to a court order or governmental notice that certain conduct must be stopped; or (iii) Alliant or AT&T reasonably determines that (a) it may be exposed to sanctions, liability, prosecution or other adverse consequences under applicable law if the violation was allowed to continue; (b) such violation may harm or interfere with the integrity, normal operations or security of Alliant's or AT&T's network or networks with which Alliant or AT&T is interconnected or may interfere with another Participating Member's use of Alliant services or the Internet; or (c) such violation otherwise presents an imminent risk of harm to AT&T, Alliant, Alliant's Participating Members or its or their respective employees.

B. **Termination Charges**. Termination Charges on AVPN, MIS, SIP and CoS.

1. If Participating Member terminates an Alliant VPN, MIS, SIP, or CoS, Configuration Item is terminated prior to the Minimum Retention Period for any reason other than as set forth in Section 4 of the MSA ("Cause") or Section 5 of the MSA ("Material Breach"), or as otherwise set forth in Section 6 of the MSA (Termination), or Section 24 of the MSA ("Force Majeure"). Participating Member will pay applicable termination charges as follows:

   a. 100% of the monthly recurring charges for the terminated Service or Configuration Item multiplied by the months remaining, if any, in the first year of the applicable Minimum Retention Period; and

   b. 50% of the monthly recurring charges for the terminated Service or Configuration Item multiplied by the months remaining for the balance (i.e., second year and beyond) in the applicable Minimum Retention Period; and

   c. all associated credits or waived or unpaid non-recurring charges if such termination occurs before the first anniversary of the Service Activation Date.

2. The charges set forth in Paragraph (a) above will not apply if a terminated Configuration Item is replaced within three (3) months with any additional Alliant VPN, MIS, SIP, or CoS WAN Services

DNF-SAE-001-v006-F-151210



or Configuration Items, but only if the Minimum Retention Period and associated charge for the additional Service or Configuration Items are equal to or greater than the corresponding Minimum Retention Period and associated charge for the terminated Configuration Item, respectively.

C. **Continuity of Services**. In the event that Alliant undergoes any of the events set forth in subsections (i), (ii) or (iii) of Section 4 of the MSA, AT&T shall continue to provide the Services to Participating Member in accordance with this Service Addendum. In that event, Participating Member shall remit all payments due under this Service Addendum to AT&T. Participating Member agrees that upon such an event, Participating Member shall have no right to terminate the applicable section of the Service Addendum or the MSA based on such event, notwithstanding anything to the contrary set forth in this Service Addendum or the MSA.

## 22. BROADBAND FEES AND CHARGES

**Alliant Broadband Circuit Fees**. Fees for Broadband are set forth below and in Appendix A and are based on (i) the total number of CIs provided to Participating Member under the Broadband Service, and (ii) the Broadband charges for those Broadband Circuit CIs. Broadband CIs may be added to coverage at the Participating Member's discretion using approved Change Management procedures. Each such Newly Added CI will be quoted by Alliant and paid for by Participating Member in the manner set forth in Sections 3 (Term) and 6 (Early Termination Fees) of the MSA and Sections 4 (Early Termination Fees), 7 (Configuration Items and Services) and 9 (Additional Fees and Discounts) in this Addendum, which shall govern. Namely, each Newly Added CI shall be subject to its own Minimum Retention Period (which is reflected on Appendix A). Each Broadband CI not previously initialized into Alliant's Network Management System may be subject to a CI Initialization non-recurring charges. All such additions will be added to this Agreement as updates to Appendix A.

## 23. BROADBAND SERVICE TERMS

A. **SLAs**. Alliant will exert commercially reasonable efforts to make the Services available to Participating Member as described in the Service Description documents made available to Participating Member. Alliant does not provide a Service Level Agreement for Broadband Services due to the industry standard practices of commercial broadband service delivery.

B. **Broadband Services**. All IP addresses, domain names, and telephone numbers made available by Alliant on Participating Member's behalf in connection with the Services shall at all times remain the property of Alliant or its suppliers and shall be nontransferable, and Participating Member shall have no right to use such IP addresses, domain names, or telephone numbers upon termination or expiration of this Service Addendum.

C. **Software**. Subject to the terms and conditions of this Service Addendum, Participating Member is granted a nonexclusive, nontransferable license to use the Software and Services provided under this Service Addendum. Participating Member will not (a) disassemble, decompile or reverse engineer any Software or Services, or portions thereof; (b) modify the Services in any manner, except if acknowledged by Alliant or its suppliers in writing; or (c) use the Services to provide service bureau or time sharing services to third parties.

Exhibit A: TenFour's Objection to Cure Costs



D. **Loss of Required Rights**. The parties acknowledge that Alliant obtains rights, authorizations and/or licenses from third parties or suppliers and/or governmental authorities including access rights from building owners ("Required Rights") to provide certain Services as contemplated under this Service Addendum and that these Required Rights may be modified or withdrawn through no fault of either party during the Term of this Service Addendum. The parties agree that if the Required Rights are withdrawn or modified, the parties shall negotiate in good faith certain modifications to this Service Addendum necessary to comply with the loss of, or change to, the Required Rights or regulations. If the parties cannot agree on the required modification to this Service Addendum, then to the extent possible, such portion of the Service Addendum affected by the loss or change to the Required Rights may be terminated; provided, however, if partial termination is not practical or it substantially alters the fundamental terms of this Service Addendum, then either party may terminate this Service Addendum in its entirety without further liability to the other party.

E. **Network Maintenance**. Participating Member understands that Alliant may, from time to time, need to interrupt provision of Services for maintenance and other operational reasons, and that Participating Member shall not receive any compensation for such interruptions. Alliant will use reasonable effort to provide notice to Participating Member of such interruptions. Furthermore, Participating Member understands that under rare circumstances it may be necessary for Alliant or its suppliers to restrict or suspend Services to Participating Member or End Users without advance warning. An example of this situation would be temporary closure of specific IP ports to protect End Users from the spread of computer virus.

F. **Lawful Use**. Alliant's services are only to be used for lawful purposes. Any transmission or re-transmission of material in violation of any Federal or State laws and/or regulations is expressly prohibited. This transmission or re-transmission of material extends to and includes, but is not limited to: any copyrighted materials, materials or communications judged to be threatening or obscene, and any material or communications prohibited by trade secret. Alliant does not censor or monitor use of its network(s) and represents that is has no liability to censor and/or monitor the data transmitted on its network(s). Alliant exercises no control whatsoever over the content of the information passing through NAC. Participating Member agrees to indemnify Alliant and its Service Providers from any claims or torts arising out of Participating Members' use of the Services in violation of this Section 23.

G. **Alliant supplied hardware/software**. All hardware and software supplied in conjunction with Alliant Broadband Services is supplied to Alliant by a Broadband Service Provider. Warranty coverage on such hardware and software is provided in accordance with the terms and conditions of the manufacturer's warranty provided to Alliant. Alliant makes no additional warranties.

H. **ALLIANT AND ITS SERVICE PROVIDERS DO NOT WARRANT THAT BROADBAND SERVICES WILL PERFORM AT A PARTICULAR SPEED, WILL BE UNINTERRUPTED, WILL HAVE NO DATA LOSS, OR WILL BE ERROR-FREE OR COMPLETELY SECURE, EXCEPT AS SPECIFIED IN THIS AGREEMENT. CERTAIN THIRD PARTY SERVICES MAY BE PROVIDED BY SERVICE PROVIDERS OTHER THAN ALLIANT, AND ALLAINT MAKES NO CLAIMS AND GRANTS NO RIGHTS TO PARTICIPATING MEMBER IN CONNECTION WITH THESE SERVICES. FOR SUCH THIRD PARTY SERVICES ALLIANT IS ACTING AS AN AGENT ON BEHALF OF PARTICIPATING MEMBER AND ACCEPTS NO LIABILITY OR RESPONSIBILITY FOR THESE SERVICES EXCEPT AS DOCUMENTED IN THIS SERVICE ADDENDUM**

DNF-SAE-001-v006-F-151210



I.  Alliant grants to Participating Member the right to permit End Users to access and use the Services, provided that Participating Member shall remain responsible for the access and use by any End User of the Services, and shall defend, indemnify and hold harmless Alliant and its Service Providers from and against all damages, arising out of third party claims and regardless of the form of action, whether in contract, tort, strict liability or otherwise, concerning or relating to any noncompliance by Participating Member or End Users with any provision of this Service; negligent acts or omissions by Participating Member or End Users. Participating Member's indemnification obligations do not apply to claims for damages to real or tangible property or bodily injury or death negligently caused by Alliant or its suppliers.

## 24. INITIAL INSTALLATION SERVICE

A.  **Installation Engineering.** Alliant will provide Field Engineer support able to perform basic CI installations on site while being guided remotely through required steps or while using pre-defined Standard Operating Procedures that offer step-by-step guidance. Alliant's Field Engineer understands fundamentals of Internetworking, is able to connect to network devices through command interface, and perform common administrative tasks such as establishing Internet line of sight from the Alliant NOC to the deployed CIs. This Field Engineer will be working under the control of an Alliant Project Manager and will work with the project timelines and deliverables in mind.

B.  **Acceptance and Location.** Participating Member has reviewed the location list in Appendix A and confirms that these locations are appropriate for the service and CI deployments described by this Agreement. Alliant will make reasonable notice to Participating Member of the proposed rollout schedule, and Participating Member will make reasonable effort to assure each location is ready for deployment and that Alliant will have requisite access during regular business hours to perform the work described. Locations that are not ready during their assigned schedule due to Participating Member delay will be subject to incremental fees.

C.  **Statement of Work (SOW).** An SOW will be provided separately under the MSA in order to outline scope and responsibilities of both parties in order to complete the initial installation services.

## 25. METHOD OF PAYMENT

Participating Member shall remit the full amount of all fees, charges, MRCs, Early Termination Fees, and other payments for services outlined in Appendix A to this Service Addendum to the following account (the "Account"):

<u>Mail:</u>
Alliant Technologies, LLC
PO Box 6083
Bellmawr, NJ 08099

<u>Wire/ACH:</u>

TD Bank
ABA# 031201360
Alliant Technologies, L.L.C. – A/C# 7862409286

DNF-SAE-001-v006-F-151210



Subject to the following sentence, Participating Member agrees, for the benefit of Assignee, to remit such amounts only to the Account unless and until otherwise directed in writing by the Assignee. All payments made by Participating Member shall be made in the United States and shall be made in US Dollars. Participating Member shall not assign its payment obligations to any affiliate or to any third party. In the event this Service Addendum is terminated for any reason whatsoever, Participating Member shall continue to remit such amounts as directed in writing by the Assignee.

*[Remainder of Page Intentionally Left Blank; Signature Page to Follow]*

Alliant Technologies, LLC. Proprietary & Confidential. Unauthorized Distribution is Prohibited          Page 26 of 27

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



## 26. SERVICE ADDENDUM APPROVAL

This Service Addendum may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Service Addendum may be executed and delivered by facsimile, or by email in a portable document format (.pdf) and delivery of the signature page by such method will be deemed to have the same effect as if the original signature had been delivered to the other parties.

By signing below, the authorized representatives of the parties agree to the content outlined in this Service Addendum and hereto have caused this Service Addendum to be duly executed and certify that the individuals signing below are duly authorized to execute the Service Addendum on behalf of their respective companies and all of their respective affiliates and subsidiaries.

**Dean Foods Company**

Signature: _Ulda McKinley_

Print: _Ida McKinley_

Title: _Sr. Director IT Process + Governance_

Date: _12/10/2015_

**Alliant Technologies, LLC**

Signature: _____

Print: _Gary Finley_

Title: _CFO_

Date: _12/10/2015_

Exhibit A: TenFour's Objection to Cure Costs



## Appendix A
## Pricing Schedule and Minimum Retention Period

| SERVICE RATE CARDS | Effective Date 12/01/2015 | Minimum Retention Period: 60 Months |
|---|---|---|

## SMARTWARE RATE CARD: MRP = 60 MONTHS

| WAN CI Type | CI Description | Service Category # | Unit MRC | Unit NRC |
|---|---|---|---|---|
| Hardware Component | CAB-AUX-RJ45 | NA | $0.34 | $0.00 |
| Software Component | FL-44-HSEC-K9 | NA | $5.46 | $0.00 |
| Software Component | FL-CME-SRST-100 | NA | $25.12 | $0.00 |
| Software Component | FL-CME-SRST-25 | NA | $7.10 | $0.00 |
| Software Component | FL-CME-SRST-5 | NA | $1.86 | $0.00 |
| Hardware Component | GLC-LH-SMD | NA | $10.87 | $0.00 |
| Hardware | ISR4321/K9 | Category 2 | $21.79 | $0.00 |
| Hardware | ISR4321-V/K9 | Category 2 | $33.80 | $0.00 |
| Hardware | ISR4331/K9 | Category 2 | $36.04 | $0.00 |
| Hardware | ISR4331-V/K9 | Category 2 | $54.60 | $0.00 |
| Hardware | ISR4351-V/K9 | Category 2 | $120.12 | $0.00 |
| Hardware | ISR4451-X-V/K9 | Category 2 | $229.32 | $0.00 |
| Hardware Component | NIM-1MFT-T1/E1 | NA | $15.62 | $0.00 |
| Hardware Component | NIM-2MFT-T1/E1 | NA | $24.02 | $0.00 |
| Hardware Component | NIM-4FXO | NA | $10.92 | $0.00 |
| Hardware Component | NIM-4FXS | NA | $10.92 | $0.00 |
| Hardware Component | NIM-4MFT-T1/E1 | NA | $48.05 | $0.00 |
| Hardware Component | NIM-8MFT-T1/E1 | NA | $96.10 | $0.00 |
| Hardware Component | PVDM4-128 | NA | $74.26 | $0.00 |
| Hardware Component | PVDM4-32U256 | NA | $93.91 | $0.00 |
| Hardware Component | PVDM4-32 | NA | $18.56 | $0.00 |
| Hardware Component | PVDM4-64 | NA | $37.13 | $0.00 |
| Hardware Component | PWR-4450-AC/2 | NA | $8.74 | $0.00 |
| Hardware Component | PVDM4-64U128 | NA | $34.94 | $0.00 |
| Hardware | USR5686G OOB Modem | None | $0.00 | $88.19 |
| Hardware | USR3453C OOB Modem | None | $0.00 | $260.80 |

# Appendix A
## Pricing Schedule and Minimum Retention Period



# SMARTWATCH RATE CARD: MRP = 60 MONTHS

### Standard Next Business Day

| WAN CI Type | CI Description | Service Category # | Unit MRC | Unit NRC |
|---|---|---|---|---|
| Hardware Component | CAB-AUX-RJ45 | NA | NA | NA |
| Software Component | FL-44-HSEC-K9 | NA | NA | NA |
| Software Component | FL-CME-SRST-100 | NA | NA | NA |
| Software Component | FL-CME-SRST-25 | NA | NA | NA |
| Software Component | FL-CME-SRST-5 | NA | NA | NA |
| Hardware Component | GLC-LH-SMD | NA | NA | NA |
| Hardware | ISR4321/K9 | Category 2 | $40.87 | $49.00 |
| Hardware | ISR4321-V/K9 | Category 2 | $52.88 | $49.00 |
| Hardware | ISR4331/K9 | Category 2 | $55.10 | $49.00 |
| Hardware | ISR4331-V/K9 | Category 2 | $73.69 | $49.00 |
| Hardware | ISR4351-V/K9 | Category 2 | $139.31 | $49.00 |
| Hardware | ISR4451-X-V/K9 | Category 2 | $211.33 | $49.00 |
| Hardware Component | NIM-1MFT-T1/E1 | NA | NA | NA |
| Hardware Component | NIM-2MFT-T1/E1 | NA | NA | NA |
| Hardware Component | NIM-4FXO | NA | NA | NA |
| Hardware Component | NIM-4FXS | NA | NA | NA |
| Hardware Component | NIM-4MFT-T1/E1 | NA | NA | NA |
| Hardware Component | NIM-8MFT-T1/E1 | NA | NA | NA |
| Hardware Component | PVDM4-128 | NA | NA | NA |
| Hardware Component | PVDM4-32U256 | NA | NA | NA |
| Hardware Component | PVDM4-32 | NA | NA | NA |
| Hardware Component | PVDM4-64 | NA | NA | NA |
| Hardware Component | PWR-4450-AC/2 | NA | NA | NA |
| Hardware Component | PVDM4-64U128 | NA | NA | NA |
| Hardware | USR5686G OOB Modem | None | NA | NA |
| Hardware | USR3453C OOB Modem | None | NA | NA |

### Premium Four Hour Pricing Schedule

| | | | | |
|---|---|---|---|---|
| Hardware | ISR4321/K9 | Category 2 | $54.03 | $49.00 |
| Hardware | ISR4321-V/K9 | Category 2 | $73.24 | $49.00 |
| Hardware | ISR4331/K9 | Category 2 | $76.80 | $49.00 |
| Hardware | ISR4331-V/K9 | Category 2 | $106.50 | $49.00 |
| Hardware | ISR4351-V/K9 | Category 2 | $211.51 | $49.00 |
| Hardware | ISR4451-X-V/K9 | Category 2 | $326.75 | $49.00 |

### Premium Onsite Pricing Schedule - None

Exhibit A: TenFour's Objection to Cure Costs



**Appendix A**
**Pricing Schedule and Minimum Retention Period**



## Appendix A
## Pricing Schedule and Minimum Retention Period

# RMM RATE CARD: MRP = 60 MONTHS

| NMS Appliance | | | |
|---|---|---|---|
| **CI Type** | **Physical/Virtual** | **Unit MRC** | **Unit NRC** |
| Hardware | Alliant Network Management System (NMS) Appliance | $99.00 | $0.00 |
| Hardware | NMS Appliance for Cisco-add-on | $19.00 | $0.00 |
| **Basic – None** | | $10.00 | $49.00 |
| **Resource – None** | | $19.00 | $49.00 |
| **Enterprise – None** | | $29.00 | $49.00 |

# ER RATE CARD: MRP = 60 MONTHS

| Remote Support | | | |
|---|---|---|---|
| **CI Category** | **CI Description** | **Unit MRC** | **Unit NRC** |
| Category 0 | | $10.00 | $20.00 |
| Category 1 | | $20.00 | $50.00 |
| Category 2 | Cisco AVPN 4xxx Series Router | $40.00 | $100.00 |
| Category 3 | | $90.00 | $150.00 |
| Category 4 | | $150.00 | $175.00 |
| Category 5 | | $200.00 | $200.00 |
| Category 6 | | $300.00 | $300.00 |
| Category 7 | | $400.00 | $400.00 |

Alliant Technologies, LLC. Proprietary & Confidential. Unauthorized Distribution is Prohibited



## Appendix A
## Pricing Schedule and Minimum Retention Period

| Onsite Support (per hour) | | | | |
|---|---|---|---|---|
| | Monday - Friday | | Weekends & Holidays | |
| Coverage | 8am-8pm | 8pm-8am | 8am-8pm | 8pm-8am |
| **US & Canada Locations** | | | | |
| Level II Engineer | $149.00 | $163.90 | $163.90 | $196.68 |
| Level III Engineer | $159.00 | $174.90 | $174.90 | $209.88 |
| Level IV Engineer | $200.00 | $220.00 | $220.00 | $264.00 |
| Level V Engineer | $250.00 | $275.00 | $275.00 | $333.00 |
| **International Locations** | | | | |
| Level II Engineer | $350.00 | $385.00 | $385.00 | $462.00 |
| Level III Engineer | $425.00 | $467.50 | $467.50 | $561.00 |
| Level IV Engineer | $475.00 | $522.50 | $522.50 | $627.00 |
| Level V Engineer | $500.00 | $550.00 | $550.00 | $660.00 |

## PCM RATE CARD: MRP = 60 MONTHS

| Remote Support | | | |
|---|---|---|---|
| CI Category | CI Description | Unit MRC | Unit NRC |
| Category 0 | | $3.00 | $0.00 |
| Category 1 | | $9.00 | $0.00 |
| Category 2 | Cisco AVPN 4xxx Series Router | $19.00 | $0.00 |
| Category 3 | | $29.00 | $0.00 |
| Category 4 | | $39.00 | $0.00 |
| Category 5 | | $79.00 | $0.00 |
| Category 6 | | $159.00 | $0.00 |
| Category 7 | | $299.00 | $0.00 |

Exhibit A: TenFour's Objection to Cure Costs



# Appendix A
## Pricing Schedule and Minimum Retention Period

# ALLIANT VPN SERVICE DETAIL RATE CARD: MRP = 60 MONTHS

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0001 | 19 GREENBRIER DEAR RD | ANNISTON | AL | 36201 | 256/240 | T1 | T1 | Yes | | | $360.32 |
| DNF-0002 | 36 BARBER CT | BIRMINGHAM | AL | 35209 | 205/943 | 3xT1 | 3xT1 | Yes | | | $785.93 |
| DNF-0003 | 117 JETPLEX LN | MADISON | AL | 35758 | 256/464 | 2xT1 | 2xT1 | Yes | | | $510.86 |
| DNF-0004 | 7960 SCHILLINGER PARK RD | MOBILE | AL | 36608 | 251/634 | T1 | T1 | Yes | | | $360.32 |
| DNF-0005 | 330 INDUSTRIAL DR | RAINSVILLE | AL | 35986 | 256/638 | T1 | T1 | Yes | | | $899.11 |
| DNF-0006 | 902 MCCLAIN RD STE 6000 | BENTONVILLE | AR | 72712 | 479/845 | T1 | T1 | Yes | | | $360.32 |
| DNF-0007 | 5201 DISTRICT BLVD | BAKERSFIELD | CA | 93313 | 661/827 | T1 | T1 | Yes | | | $275.84 |
| DNF-0008 | 6400 REGIO AVE | BUENA PARK | CA | 90620 | 714/684 | T1 | T1 | Yes | | | $275.84 |
| DNF-0009 | 17637 E VALLEY BLVD | CITY OF INDUSTRY | CA | 91744 | 626/854 | 20 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $1,492.05 |
| DNF-0010 | 17851 RAILROAD ST | CITY OF INDUSTRY | CA | 91748 | 626/932 | 20 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $1,492.05 |
| DNF-0011 | 3053 S GOLDEN STATE BLVD | FRESNO | CA | 93725 | 510/760 | T1 | T1 | Yes | | | $275.84 |
| DNF-0012 | 25500 CLAWITER RD | HAYWARD | CA | 94545 | 510/265 | 3xT1 | 3xT1 | Yes | | | $785.93 |
| DNF-0013 | 730 SPRECKELS AVE | MANTECA | CA | 95336 | 209/239 | T1 | T1 | Yes | | | $325.66 |
| DNF-0014 | 3251 DE FOREST CIR STE C | MIRA LOMA | CA | 91752 | 951/361 | T1 | T1 | Yes | | | $345.15 |
| DNF-0015 | 295 INTERLOCKEN BLVD | BROOMFIELD | CO | 80021 | 303/635 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $1,372.92 |
| DNF-0016 | 2401 W 6TH AVE | DENVER | CO | 80204 | 303/825 | T1 | T1 | Yes | | | $325.66 |
| DNF-0017 | 3600 S YOSEMITE ST STE 250 | DENVER | CO | 80237 | 720/489 | 3xT1 | 3xT1 | Yes | | | $935.39 |
| DNF-0018 | 1325 W OXFORD AVE | ENGLEWOOD | CO | 80110 | 303/761 | 3xT1 | 3xT1 | Yes | | | $935.39 |
| DNF-0019 | 563 SANDHILL LN | GRAND JUNCTION | CO | 81505 | 970-243 | 10 Mbps Ethernet | 5 Mbps Ethernet | Yes | | | $1,210.47 |
| DNF-0020 | 450 25TH ST | GREELEY | CO | 80631 | 970/352 | 2xT1 | 2xT1 | Yes | | | $870.41 |
| DNF-0021 | 550 E 84TH AVE | THORNTON | CO | 80229 | 720/319 | 200 Mbps Ethernet | 200 Mbps Ethernet | Yes | | | $5,499.40 |
| DNF-0021 | 550 E 84TH AVE | THORNTON | CO | 80229 | 720/319 | 200 Mbps Ethernet | 200 Mbps Ethernet | Yes | | | $3,273.87 |

Alliant Technologies, LLC. Proprietary & Confidential. Unauthorized Distribution is Prohibited



# Appendix A
## Pricing Schedule and Minimum Retention Period

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0022 | 100 RAILROAD AVE | HAINES CITY | FL | 33844 | 863/421 | T1 | T1 | Yes | | | $455.62 |
| DNF-0023 | 67 CHOCTAW DR | HAVANA | FL | 32333 | 850/539 | T1 | T1 | Yes | | | $360.32 |
| DNF-0024 | 240 NE 71ST ST | MIAMI | FL | 33138 | 905/751 | 2xT1 | 2xT1 | Yes | | | $510.85 |
| DNF-0025 | 6851 NE 2ND AVE | MIAMI | FL | 33138 | 305/759 | 3xT1 | 3xT1 | Yes | | | $785.93 |
| DNF-0026 | 1675 STATE ROAD 472 | ORANGE CITY | FL | 32763 | 386/775 | T1 | T1 | Yes | | | $455.62 |
| DNF-0027 | 315 N BUMBY AVE | ORLANDO | FL | 32803 | 407/210 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $885.57 |
| DNF-0028 | 650 S WICKHAM RD | WEST MELBOURNE | FL | 32904 | 321/727 | T1 | T1 | Yes | | | $360.32 |
| DNF-0029 | 1805 GORDON HWY | AUGUSTA | GA | 30904 | 706/733 | T1 | T1 | Yes | | | $275.84 |
| DNF-0030 | 818 BEASLEY ST | BLAIRSVILLE | GA | 30512 | 706/745 | T1 | T1 | Yes | | | $739.10 |
| DNF-0031 | 1160 BROADWAY AVE | BRASELTON | GA | 30517 | 706/654 | 10 Mbps Ethernet | 5 Mbps Ethernet 100BaseTX | Yes | | | $1,210.47 |
| DNF-0032 | 145 W GEORGIA INDUSTRIAL BLVD | CARROLLTON | GA | 30117 | 770/214 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0033 | 2255 GRAY HWY | MACON | GA | 31211 | 478/742 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0034 | 1971 DELK INDUSTRIAL BLVD SE | MARIETTA | GA | 30067 | 770/952 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0035 | 1420 GREENWOOD RD | MCDONOUGH | GA | 30253 | 706/654 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0036 | 15 EDEN VALLEY RD SE | ROME | GA | 30161 | 706/234 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0037 | 925 CEDAR ST | HONOLULU | HI | 96814 | 808/944 | 7xT1 | 7xT1 (10.808 Mbps) | Yes | | | $2,855.55 |
| DNF-0038 | 1188 LINCOLN ST SW | LE MARS | IA | 51031 | 712/546 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $2,043.30 |
| DNF-0039 | 1301 W BANNOCK ST | BOISE | ID | 83702 | 208/343 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0040 | 205 W 41ST ST | GARDEN CITY | ID | 83714 | 208/343 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0041 | 1131 ROWLAND RD | POCATELLO | ID | 83204 | 208/237 | T1 | T1 (1.544 Mbps) | Yes | | | $990.83 |
| DNF-0042 | 1253 KINGSLAND DR | BATAVIA | IL | 60510 | 630/389 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0043 | 630 MEADOW ST | BELVIDERE | IL | 61008 | 815/544 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $887.74 |
| DNF-0044 | 3600 RIVER RD | FRANKLIN PARK | IL | 60131 | 847/233 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $885.57 |

# Appendix A
# Pricing Schedule and Minimum Retention Period



| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 100BaseTX | | | | |
| DNF-0045 | 6303 MAXON RD | HARVARD | IL | 60033 | 815/943 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0046 | 11713 MILL ST | HUNTLEY | IL | 60142 | 847/669 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0047 | 610 E STATE ST | O FALLON | IL | 62269 | 618/628 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $510.86 |
| DNF-0048 | 1126 KILBURN AVE | ROCKFORD | IL | 61101 | 815/490 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0049 | 400 CHAMBER DR | DECATUR | IN | 46733 | 260/724 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $1,311.82 |
| DNF-0050 | 225 N 29TH ST | ELWOOD | IN | 46036 | 260/704 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0051 | 1019 FLAXMILL RD | HUNTINGTON | IN | 46750 | 260/356 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $993.87 |
| DNF-0052 | 4420 BISHOP LN | LOUISVILLE | KY | 40218 | 502/451 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0053 | 1300 BARONNE ST | NEW ORLEANS | LA | 70113 | 504/529 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0054 | 1199 W CENTRAL ST | FRANKLIN | MA | 2038 | 508/528 | 10 Mbps Ethernet | 10 Mbps Ethernet 100BaseTX | Yes | | | $1,372.92 |
| DNF-0055 | 330 LYNN WAY | LYNN | MA | 1901 | 781/599 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0056 | 626 LYNN WAY | LYNN | MA | 1905 | 781/599 | 20 Mbps Ethernet | 10 Mbps Ethernet 100BaseTX | Yes | | | $1,492.05 |
| DNF-0057 | 1433 OAKMONT DR | HAGERSTOWN | MD | 21740 | 240/739 | T1 | T1 (1.544 Mbps) | Yes | | | $455.62 |
| DNF-0058 | 7631 JEFFERSON AVE | HYATTSVILLE | MD | 20785 | 301/560 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0059 | 2555 BUCHANAN AVE SW | GRAND RAPIDS | MI | 49548 | 616/514 | 4xT1 | 4xT1 (6.176 Mbps) | Yes | | | $973.29 |
| DNF-0060 | 31770 ENTERPRISE DR | LIVONIA | MI | 48150 | 734/261 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0061 | 200 MEESKE AVE | MARQUETTE | MI | 49855 | 906/225 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $649.48 |
| DNF-0062 | 42589 W RED ARROW HWY | PAW PAW | MI | 49079 | 906/225 | T1 | T1 (1.544 Mbps) | Yes | | | $711.51 |
| DNF-0063 | 2103 5TH AVE N | MOORHEAD | MN | 56560 | 218/233 | 10 Mbps Ethernet | 5 Mbps Ethernet 100BaseTX | Yes | | | $1,210.47 |
| DNF-0064 | 122 MAIN AVE S | THIEF RIVER FALLS | MN | 56701 | 218/681 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $1,311.82 |
| DNF-0065 | 1930 WOODDALE DR | WOODBURY | MN | 55125 | 651/730 | 4xT1 | 4xT1 (6.176 Mbps) | Yes | | | $1,172.57 |



## Appendix A
## Pricing Schedule and Minimum Retention Period

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0066 | 109 S 28TH ST | BILLINGS | MT | 59101 | 406/252 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0067 | 312 3RD AVE S | GREAT FALLS | MT | 59405 | 406/453 | T1 | T1 (1.544 Mbps) | Yes | | | $1,757.77 |
| DNF-0068 | 1300 TWO MILE DR | KALISPELL | MT | 59901 | 406/752 | T1 | T1 (1.544 Mbps) | Yes | | | $1,001.86 |
| DNF-0069 | 10 TRIDENT DR | ARDEN | NC | 28704 | 828/681 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0070 | 3300 THE PLZ | CHARLOTTE | NC | 28205 | 704/334 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0071 | 3436 TORINGDON WAY | CHARLOTTE | NC | 28277 | 704/341 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0072 | 1234 RAMSEY ST | FAYETTEVILLE | NC | 28301 | 910/483 | T1 | T1 (1.544 Mbps) | Yes | | | $466.65 |
| DNF-0073 | 1105 N WILLIAM ST | GOLDSBORO | NC | 27530 | 919/734 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0074 | 1350 W FAIRFIELD RD | HIGH POINT | NC | 27263 | 336/461 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $887.74 |
| DNF-0075 | 8812 MIDWAY WEST RD | RALEIGH | NC | 27617 | 919/783 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0076 | 2221 N PATTERSON AVE | WINSTON SALEM | NC | 27105 | 336/723 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0077 | 800 E 21ST ST | WINSTON SALEM | NC | 27105 | 336/784 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0078 | 1301 E MAIN AVE | BISMARCK | ND | 58501 | 701/223 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0079 | 220 SW 32ND ST | LINCOLN | NE | 68522 | 402/474 | T1 | T1 (1.544 Mbps) | Yes | | | $694.96 |
| DNF-0080 | 10 EXECUTIVE AVE | EDISON | NJ | 8817 | 732/248 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $935.39 |
| DNF-0081 | 600 CUMBERLAND ST | GLOUCESTER CITY | NJ | 8030 | 609/499 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $935.39 |
| DNF-0082 | 200 WEBRO RD | PARSIPPANY | NJ | | 973/884 | 10 Mbps Ethernet | 10 Mbps Ethernet 100BaseTX | Yes | | | $1,011.20 |
| DNF-0083 | 100 INDIAN SCHOOL RD NW | ALBUQUERQUE | NM | 87102 | 505/768 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0084 | 6350 E CENTENNIAL PKWY | LAS VEGAS | NV | 89115 | 702/643 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0085 | 500 GOULD ST | RENO | NV | 89502 | 775/788 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0086 | 504 3RD AVE EXT | RENSSELAER | NY | 12144 | 518/283 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0087 | 1415 W WATERLOO RD | AKRON | OH | 44314 | 330/745 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0088 | 16843 E STATE ROUTE 12 | FINDLAY | OH | 45840 | 419/424 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |

Exhibit A: TenFour's Objection to Cure Costs



# Appendix A
## Pricing Schedule and Minimum Retention Period

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0089 | 1701 GREENE ST | MARIETTA | OH | 45750 | 740/373 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0090 | 1961 COMMERCE CIR | SPRINGFIELD | OH | 45504 | 937/328 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0091 | 4117 FITCH RD | TOLEDO | OH | 43613 | 419/473 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $510.85 |
| DNF-0092 | 215 N DENVER AVE | TULSA | OK | 74103 | 918/587 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $510.85 |
| DNF-0093 | 2365 BUFFALO RD | ERIE | PA | 16510 | 814/899 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0094 | 825 OLD ROUTE 119 HWY N | INDIANA | PA | 15701 | 814/282 | T1 | T1 (1.544 Mbps) | Yes | | | $455.62 |
| DNF-0095 | 2401 WALNUT ST | LEBANON | PA | 17042 | 717/273 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $870.41 |
| DNF-0096 | 110 MANHEIM RD | SCHUYLKILL HAVEN | PA | 17972 | 570/385 | T1 | T1 (1.544 Mbps) | Yes | | | $455.62 |
| DNF-0097 | 1858 ONEIDA LN | SHARPSVILLE | PA | 16150 | 724/962 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $1,372.92 |
| DNF-0098 | 880 ALLENTOWN RD | UPPER GWYNEDD | PA | 19446 | 215/855 | 4xT1 | 4xT1 (6.176 Mbps) | Yes | | | $1,172.57 |
| DNF-0099 | 116 N MONTAGUE DR | COLUMBIA | SC | 29203 | 803/714 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0100 | 4613 DAIRY DR | GREENVILLE | SC | 29607 | 864/288 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0101 | 2002 EXECUTIVE AVE | MYRTLE BEACH | SC | 29577 | 843/626 | T1 | T1 (1.544 Mbps) | Yes | | | $464.28 |
| DNF-0102 | 7153 CROSS COUNTY RD | NORTH CHARLESTON | SC | 29418 | 843/552 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0103 | 1619 ANTIOCH CHURCH RD | PIEDMONT | SC | 29673 | 864/277 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0104 | 1291 NEW CUT RD | SPARTANBURG | SC | 29303 | 864/576 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0105 | 7478 SIMUEL RD | SPARTANBURG | SC | 29303 | 864/587 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0106 | 1200 W RUSSELL ST | SIOUX FALLS | SD | 57104 | 605/336 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $935.39 |
| DNF-0107 | 806 E MADISON AVE | ATHENS | TN | 37303 | 423/745 | 10 Mbps Ethernet | 5 Mbps Ethernet | Yes | | | $723.12 |
| DNF-0108 | 210 WOODLAWN RD | CROSSVILLE | TN | 38555 | 931/484 | T1 | T1 (1.544 Mbps) | Yes | | | $965.32 |
| DNF-0109 | 2900 BRISTOL HWY | JOHNSON CITY | TN | 37601 | 423/283 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0110 | 1048 FORDTOWN RD | KINGSPORT | TN | 37663 | 423/349 | T1 | T1 (1.544 Mbps) | Yes | | | $632.18 |
| DNF-0111 | 9725 PARKSIDE DR | KNOXVILLE | TN | 37922 | 865/693 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |

Exhibit A: TenFour's Objection to Cure Costs



# Appendix A
## Pricing Schedule and Minimum Retention Period

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0112 | 328 INDUSTRIAL AVE | MORRISTOWN | TN | 37813 | 423/587 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0113 | 1401 CHURCH ST | NASHVILLE | TN | 37203 | 615/320 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $510.86 |
| DNF-0114 | 360 MURFREESBORO PIKE | NASHVILLE | TN | 37210 | 615/244 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0115 | 24593 SCOTT HWY | WINFIELD | TN | 37892 | 423/569 | T1 | T1 (1.544 Mbps) | Yes | | | $694.96 |
| DNF-0116 | 2470 VALMONT DR | BRENHAM | TX | 77833 | 979/836 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0117 | 5330 AYERS ST | CORPUS CHRISTI | TX | 78415 | 361/854 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0118 | 2323 Bryan St | Dallas | TX | 75201 | 214/880 | 1000 Mbps Ethernet | 200 Mbps Ethernet | Yes | | | $3,051.57 |
| DNF-0118 | 2323 Bryan St | Dallas | TX | 75201 | 214/880 | 1000 Mbps Ethernet | 200 Mbps Ethernet | Yes | | | $3,051.57 |
| DNF-0119 | 2711 N HASKELL AVE | DALLAS | TX | 75204 | 214/303 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0119 | 2711 N HASKELL AVE | DALLAS | TX | 75204 | 214/303 | 50 Mbps Ethernet | 20 Mbps Ethernet | Yes | | | $1,113.00 |
| DNF-0120 | 3114 S HASKELL AVE | DALLAS | TX | 75223 | 214/824 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $885.57 |
| DNF-0121 | 5150 PULASKI ST | DALLAS | TX | 75247 | 214/905 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0122 | 600 N PIEDRAS ST | EL PASO | TX | 79903 | 915/565 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0123 | 14760 TRINITY BLVD | FORT WORTH | TX | 76155 | 817/684 | 100 Mbps Ethernet | 50 Mbps Ethernet | Yes | | | $1,293.32 |
| DNF-0123 | 14760 TRINITY BLVD | FORT WORTH | TX | 76155 | 817/684 | 100 Mbps Ethernet | 50 Mbps Ethernet | Yes | | | $4,487.60 |
| DNF-0124 | 3417 LEELAND ST | Houston | TX | 77003 | 713/224 | 10 Mbps Ethernet | 10 Mbps Ethernet | Yes | | | $885.57 |
| DNF-0125 | 8119 SAN DARIO AVE | LAREDO | TX | 78045 | 956/722 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0126 | 405 AMBASSADOR ROW | LONGVIEW | TX | 75604 | 903/758 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |
| DNF-0127 | 201 UNIVERSITY AVE | LUBBOCK | TX | 79415 | 806/765 | 2xT1) | 2xT1 (3.088 Mbps) | Yes | | | $679.80 |
| DNF-0128 | 525 BEAUMONT AVE | MCALLEN | TX | 78501 | 956/686 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0129 | 1220 N TENNESSEE ST | MCKINNEY | TX | 75069 | 972/542 | T1 | T1 (1.544 Mbps) | Yes | | | $345.15 |
| DNF-0130 | 1314 FREDERICKSBURG RD | SAN ANTONIO | TX | 78201 | 210/732 | T1 | T1 (1.544 Mbps) | Yes | | | $275.84 |

Exhibit A: TenFour's Objection to Cure Costs



## Appendix A
## Pricing Schedule and Minimum Retention Period

| Site ID # | Street | City | ST | Zip | NPA-NXX | Access Speed | Port Speed | COS | Access MRC | Port MRC | Total MRC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DNF-0131 | 323 INDIANA AVE | WICHITA FALLS | TX | 76301 | 940/766 | T1 | T1 (1.544 Mbps) | Yes | | | $360.32 |
| DNF-0132 | 845 S STATE ST | OREM | UT | 84097 | 801/225 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $935.39 |
| DNF-0133 | 1646 S 4490 W | SALT LAKE CITY | UT | 84104 | 801/975 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0134 | 3730 W 1820 S BLDG 3 | SALT LAKE CITY | UT | 84104 | 801/973 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $935.39 |
| DNF-0135 | 3756 W 1820 S | SALT LAKE CITY | UT | 84104 | 801/973 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0136 | 1821 WARE BOTTOM SPRING RD | CHESTER | VA | 23836 | 804/748 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0137 | 168 DINKEL AVE | MT CRAWFORD | VA | 22841 | 508/528 | T1 | T1 (1.544 Mbps) | Yes | | | $325.66 |
| DNF-0138 | 1505 ROBIN HOOD RD FL 1 | RICHMOND | VA | 23220 | 804/358 | 2xT1 | 2xT1 (3.088 Mbps) | Yes | | | $610.49 |
| DNF-0139 | 3399 S RIDGE RD | ASHWAUBENON | WI | 54115 | 920/336 | 3xT1 | 3xT1 (4.632 Mbps) | Yes | | | $785.93 |
| DNF-0119 | 2711 N HASKELL AVE | DALLAS | TX | 75204 | 214/303 | NA | Transition Credit Repayment | NA | NA | NA | $ 20,666.67 |

## Acceptance

By signing below as a duly authorized representative of each party, I acknowledge that I have read and agree to the information contained in this Appendix A, Rate Card form.

| Dean Foods Company | |
|---|---|
| Signature | *Ida McKinley (signature)* |
| Print | Ida McKinley |
| Title | Sr. Director, IT Process |
| Date | 12/10/15   + Governance |

| Alliant Technologies, LLC | |
|---|---|
| Signature | |
| Print | |
| Title | |
| Date | |

Alliant Technologies, LLC. Proprietary & Confidential. Unauthorized Distribution is Prohibited

Exhibit A: TenFour's Objection to Cure Costs



360 MT. KEMBLE AVENUE | MORRISTOWN, NJ 07960
PHONE: +1 973 267 5236 | FAX: +1 973 267 5237
WWW.ALLIANTTECH.COM

## Appendix B

# ESTIMATED CI VOLUME

| Service | CI Quantity | Service Attribute Quantity | MRP | Total Estimated CI MRC | Total Estimated Svc Attribute MRC | Total Estimated CI NRC | Total Estimated Svc Attribute NRC |
|---|---|---|---|---|---|---|---|
| SmartWare | 286 | 0 | 60 | $12,799.01 | $0.00 | $13,474.22 | $0.00 |
| SmartWatch | | 143 | 60 | $0.00 | $8,615.15 | $0.00 | $7,007.00 |
| RMM | 2 | 0 | 60 | $118.00 | $0.00 | $0.00 | $0.00 |
| ER | | 143 | 60 | $0.00 | $5,720.00 | $0.00 | $14,300.00 |
| PCM | | 143 | 60 | $0.00 | $2,717.00 | $0.00 | $0.00 |
| AVPN | 143 | | 60 | $109,892.77 | $0.00 | $0.00 | $0.00 |
| Transition Credit Repayment | 1 | | 12 | $ 20,666.67* | $0.00 | $0.00 | $0.00 |
| **Total** | | | | **$143,476.45** | **$17,052.15** | **$13,474.22** | **$21,307.00** |

*12 Transition Credit Repayments contingent on Participating Member receiving $248,000.00 lump sum credit from AT&T in December 2015

Table 1 Estimated CI Volume

## Acceptance

By signing below as a duly authorized representative of each party, I acknowledge that I have read and agree to the information contained in this Appendix B, Estimated CI Volume form.

| Dean Foods Company | | Alliant Technologies, LLC | |
|---|---|---|---|
| Signature | *Ida McKinley* (signature) | Signature | |
| Print | IDA MCKINLEY | Print | |
| Title | SR DIRECTOR IT PROCESS | Title | |
| Date | 12/10/2015 | Date | |

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210



# Appendix C
# OPERATIONS SERVICE CHANGE REQUEST/RFC

## General Information

| Customer Name | Dean Foods Company | Order Date | 12/02/15 |
|---|---|---|---|
| Customer ID # | | Order Number | DNF-001 |
| Requestor Name | Dean Foods Company | Requested Service Activation Date | Various (see below) |

## Purpose of RFC:

As of this RFC's execution, this RFC will reflect the initial order of Services and rates provided to Dean Foods Company until further modified by a subsequent RFC.

## RFC Information by Service - WAN

### AVPN

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0001 | ANNISTON | 1 | Transport | AVPN Circuit | RMM, ER | 12/07/15 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0002 | BIRMINGHAM | 1 | Transport | AVPN Circuit | RMM, ER | 12/07/15 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0003 | MADISON | 1 | Transport | AVPN Circuit | RMM, ER | 12/07/15 | ☐ | 60 | $510.86 | $0.00 | $0.00 |
| Add | DNF-0004 | MOBILE | 1 | Transport | AVPN Circuit | RMM, ER | 12/07/15 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0005 | RAINSVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 12/07/15 | ☐ | 60 | $899.11 | $0.00 | $0.00 |
| Add | DNF-0006 | BENTONVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 12/08/15 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0007 | BAKERSFIELD | 1 | Transport | AVPN Circuit | RMM, ER | 12/08/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0008 | BUENA PARK | 1 | Transport | AVPN Circuit | RMM, ER | 12/08/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0009 | CITY OF INDUSTRY | 1 | Transport | AVPN Circuit | RMM, ER | 11/16/15 | ☐ | 60 | $1,492.05 | $0.00 | $0.00 |
| Add | DNF-0010 | CITY OF INDUSTRY | 1 | Transport | AVPN Circuit | RMM, ER | 11/16/15 | ☐ | 60 | $1,492.05 | $0.00 | $0.00 |
| Add | DNF-0011 | FRESNO | 1 | Transport | AVPN Circuit | RMM, ER | 12/08/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0012 | HAYWARD | 1 | Transport | AVPN Circuit | RMM, ER | 12/09/15 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0013 | MANTECA | 1 | Transport | AVPN Circuit | RMM, ER | 12/08/15 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0014 | MIRA LOMA | 1 | Transport | AVPN Circuit | RMM, ER | 12/09/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |

dnf-sae-001-v006-f-151210



# Appendix C

# OPERATIONS SERVICE CHANGE REQUEST/RFC

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0015 | BROOMFIE LD | 1 | Transport | AVPN Circuit | RMM, ER | 12/03/15 | ☐ | 60 | $1,372.92 | $0.00 | $0.00 |
| Add | DNF-0016 | DENVER | 1 | Transport | AVPN Circuit | RMM, ER | 12/09/15 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0017 | DENVER | 1 | Transport | AVPN Circuit | RMM, ER | 12/10/15 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0018 | ENGLEWO OD | 1 | Transport | AVPN Circuit | RMM, ER | 12/10/15 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0019 | GRAND JUNCTION | 1 | Transport | AVPN Circuit | RMM, ER | 12/03/15 | ☐ | 60 | $1,210.47 | $0.00 | $0.00 |
| Add | DNF-0020 | GREELEY | 1 | Transport | AVPN Circuit | RMM, ER | 12/10/15 | ☐ | 60 | $870.41 | $0.00 | $0.00 |
| Add | DNF-0021 | THORNTO N | 1 | Transport | AVPN Circuit | RMM, ER | 11/01/15 | ☐ | 60 | $5,499.40 | $0.00 | $0.00 |
| Add | DNF-0021 | THORNTO N | 1 | Transport | AVPN Circuit | RMM, ER | 11/01/15 | ☐ | 60 | $3,273.87 | $0.00 | $0.00 |
| Add | DNF-0022 | HAINES CITY | 1 | Transport | AVPN Circuit | RMM, ER | 12/10/15 | ☐ | 60 | $455.62 | $0.00 | $0.00 |
| Add | DNF-0023 | HAVANA | 1 | Transport | AVPN Circuit | RMM, ER | 12/10/15 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0024 | MIAMI | 1 | Transport | AVPN Circuit | RMM, ER | 12/11/15 | ☐ | 60 | $510.85 | $0.00 | $0.00 |
| Add | DNF-0025 | MIAMI | 1 | Transport | AVPN Circuit | RMM, ER | 12/11/15 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0026 | ORANGE CITY | 1 | Transport | AVPN Circuit | RMM, ER | 12/11/15 | ☐ | 60 | $455.62 | $0.00 | $0.00 |
| Add | DNF-0027 | ORLANDO | 1 | Transport | AVPN Circuit | RMM, ER | 12/11/15 | ☐ | 60 | $885.57 | $0.00 | $0.00 |
| Add | DNF-0028 | WEST MELBOUR NE | 1 | Transport | AVPN Circuit | RMM, ER | 12/11/15 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0029 | AUGUSTA | 1 | Transport | AVPN Circuit | RMM, ER | 12/14/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0030 | BLAIRSVIL LE | 1 | Transport | AVPN Circuit | RMM, ER | 12/14/15 | ☐ | 60 | $739.10 | $0.00 | $0.00 |
| Add | DNF-0031 | BRASELTO N | 1 | Transport | AVPN Circuit | RMM, ER | 11/24/15 | ☐ | 60 | $1,210.47 | $0.00 | $0.00 |
| Add | DNF-0032 | CARROLLT ON | 1 | Transport | AVPN Circuit | RMM, ER | 12/14/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0033 | MACON | 1 | Transport | AVPN Circuit | RMM, ER | 12/14/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0034 | MARIETTA | 1 | Transport | AVPN Circuit | RMM, ER | 12/14/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0035 | MCDONO UGH | 1 | Transport | AVPN Circuit | RMM, ER | 12/15/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0036 | ROME | 1 | Transport | AVPN Circuit | RMM, ER | 12/15/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210

# Appendix C

## OPERATIONS SERVICE CHANGE REQUEST/RFC



ALLIANT
TECHNOLOGIES

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0037 | HONOLULU | 1 | Transport | AVPN Circuit | RMM, ER | 12/15/15 | ☐ | 60 | $2,855.55 | $0.00 | $0.00 |
| Add | DNF-0038 | LE MARS | 1 | Transport | AVPN Circuit | RMM, ER | 12/15/15 | ☐ | 60 | $2,043.30 | $0.00 | $0.00 |
| Add | DNF-0039 | BOISE | 1 | Transport | AVPN Circuit | RMM, ER | 12/16/15 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0040 | GARDEN CITY | 1 | Transport | AVPN Circuit | RMM, ER | 12/16/15 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0041 | POCATELLO | 1 | Transport | AVPN Circuit | RMM, ER | 12/15/15 | ☐ | 60 | $990.83 | $0.00 | $0.00 |
| Add | DNF-0042 | BATAVIA | 1 | Transport | AVPN Circuit | RMM, ER | 12/16/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0043 | BELVIDERE | 1 | Transport | AVPN Circuit | RMM, ER | 12/17/15 | ☐ | 60 | $887.74 | $0.00 | $0.00 |
| Add | DNF-0044 | FRANKLIN PARK | 1 | Transport | AVPN Circuit | RMM, ER | 11/24/15 | ☐ | 60 | $885.57 | $0.00 | $0.00 |
| Add | DNF-0045 | HARVARD | 1 | Transport | AVPN Circuit | RMM, ER | 12/16/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0046 | HUNTLEY | 1 | Transport | AVPN Circuit | RMM, ER | 12/16/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0047 | O FALLON | 1 | Transport | AVPN Circuit | RMM, ER | 12/17/15 | ☐ | 60 | $510.86 | $0.00 | $0.00 |
| Add | DNF-0048 | ROCKFORD | 1 | Transport | AVPN Circuit | RMM, ER | 12/17/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0049 | DECATUR | 1 | Transport | AVPN Circuit | RMM, ER | 12/18/15 | ☐ | 60 | $1,311.82 | $0.00 | $0.00 |
| Add | DNF-0050 | ELWOOD | 1 | Transport | AVPN Circuit | RMM, ER | 12/17/15 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0051 | HUNTINGTON | 1 | Transport | AVPN Circuit | RMM, ER | 12/18/15 | ☐ | 60 | $993.87 | $0.00 | $0.00 |
| Add | DNF-0052 | LOUISVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 12/18/15 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0053 | NEW ORLEANS | 1 | Transport | AVPN Circuit | RMM, ER | 12/18/15 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0054 | FRANKLIN | 1 | Transport | AVPN Circuit | RMM, ER | 11/24/15 | ☐ | 60 | $1,372.92 | $0.00 | $0.00 |
| Add | DNF-0055 | LYNN | 1 | Transport | AVPN Circuit | RMM, ER | 12/18/15 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0056 | LYNN | 1 | Transport | AVPN Circuit | RMM, ER | 11/05/15 | ☐ | 60 | $1,492.05 | $0.00 | $0.00 |
| Add | DNF-0057 | HAGERSTOWN | 1 | Transport | AVPN Circuit | RMM, ER | 12/21/15 | ☐ | 60 | $455.62 | $0.00 | $0.00 |
| Add | DNF-0058 | HYATTSVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 12/21/15 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0059 | GRAND RAPIDS | 1 | Transport | AVPN Circuit | RMM, ER | 01/06/16 | ☐ | 60 | $973.29 | $0.00 | $0.00 |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210

# Appendix C



## OPERATIONS SERVICE CHANGE REQUEST/RFC

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0060 | LIVONIA | 1 | Transport | AVPN Circuit | RMM, ER | 01/06/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0061 | MARQUETTE | 1 | Transport | AVPN Circuit | RMM, ER | 01/06/16 | ☐ | 60 | $649.48 | $0.00 | $0.00 |
| Add | DNF-0062 | PAW PAW | 1 | Transport | AVPN Circuit | RMM, ER | 01/06/16 | ☐ | 60 | $711.51 | $0.00 | $0.00 |
| Add | DNF-0063 | MOORHEAD | 1 | Transport | AVPN Circuit | RMM, ER | 11/24/15 | ☐ | 60 | $1,210.47 | $0.00 | $0.00 |
| Add | DNF-0064 | THIEF RIVER FALLS | 1 | Transport | AVPN Circuit | RMM, ER | 01/07/16 | ☐ | 60 | $1,311.82 | $0.00 | $0.00 |
| Add | DNF-0065 | WOODBURY | 1 | Transport | AVPN Circuit | RMM, ER | 01/07/16 | ☐ | 60 | $1,172.57 | $0.00 | $0.00 |
| Add | DNF-0066 | BILLINGS | 1 | Transport | AVPN Circuit | RMM, ER | 01/07/16 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0067 | GREAT FALLS | 1 | Transport | AVPN Circuit | RMM, ER | 01/07/16 | ☐ | 60 | $1,757.77 | $0.00 | $0.00 |
| Add | DNF-0068 | KALISPELL | 1 | Transport | AVPN Circuit | RMM, ER | 01/08/16 | ☐ | 60 | $1,001.86 | $0.00 | $0.00 |
| Add | DNF-0069 | ARDEN | 1 | Transport | AVPN Circuit | RMM, ER | 01/08/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0070 | CHARLOTTE | 1 | Transport | AVPN Circuit | RMM, ER | 01/08/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0071 | CHARLOTTE | 1 | Transport | AVPN Circuit | RMM, ER | 01/11/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0072 | FAYETTEVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/08/16 | ☐ | 60 | $466.65 | $0.00 | $0.00 |
| Add | DNF-0073 | GOLDSBORO | 1 | Transport | AVPN Circuit | RMM, ER | 01/08/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0074 | HIGH POINT | 1 | Transport | AVPN Circuit | RMM, ER | 01/11/16 | ☐ | 60 | $887.74 | $0.00 | $0.00 |
| Add | DNF-0075 | RALEIGH | 1 | Transport | AVPN Circuit | RMM, ER | 01/11/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0076 | WINSTON SALEM | 1 | Transport | AVPN Circuit | RMM, ER | 01/11/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0077 | WINSTON SALEM | 1 | Transport | AVPN Circuit | RMM, ER | 01/11/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0078 | BISMARCK | 1 | Transport | AVPN Circuit | RMM, ER | 01/12/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0079 | LINCOLN | 1 | Transport | AVPN Circuit | RMM, ER | 01/12/16 | ☐ | 60 | $694.96 | $0.00 | $0.00 |
| Add | DNF-0080 | EDISON | 1 | Transport | AVPN Circuit | RMM, ER | 01/12/16 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0081 | GLOUCESTER CITY | 1 | Transport | AVPN Circuit | RMM, ER | 01/12/16 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0082 | PARSIPPANY | 1 | Transport | AVPN Circuit | RMM, ER | 11/01/15 | ☐ | 60 | $1,011.20 | $0.00 | $0.00 |

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210



# Appendix C
## OPERATIONS SERVICE CHANGE REQUEST/RFC

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0083 | ALBUQUERQUE | 1 | Transport | AVPN Circuit | RMM, ER | 01/12/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0084 | LAS VEGAS | 1 | Transport | AVPN Circuit | RMM, ER | 01/13/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0085 | RENO | 1 | Transport | AVPN Circuit | RMM, ER | 01/13/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0086 | RENSSELAER | 1 | Transport | AVPN Circuit | RMM, ER | 01/13/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0087 | AKRON | 1 | Transport | AVPN Circuit | RMM, ER | 01/13/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0088 | FINDLAY | 1 | Transport | AVPN Circuit | RMM, ER | 01/14/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0089 | MARIETTA | 1 | Transport | AVPN Circuit | RMM, ER | 01/13/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0090 | SPRINGFIELD | 1 | Transport | AVPN Circuit | RMM, ER | 01/14/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0091 | TOLEDO | 1 | Transport | AVPN Circuit | RMM, ER | 01/14/16 | ☐ | 60 | $510.85 | $0.00 | $0.00 |
| Add | DNF-0092 | TULSA | 1 | Transport | AVPN Circuit | RMM, ER | 01/14/16 | ☐ | 60 | $510.85 | $0.00 | $0.00 |
| Add | DNF-0093 | ERIE | 1 | Transport | AVPN Circuit | RMM, ER | 01/14/16 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0094 | INDIANA | 1 | Transport | AVPN Circuit | RMM, ER | 01/15/16 | ☐ | 60 | $455.62 | $0.00 | $0.00 |
| Add | DNF-0095 | LEBANON | 1 | Transport | AVPN Circuit | RMM, ER | 01/15/16 | ☐ | 60 | $870.41 | $0.00 | $0.00 |
| Add | DNF-0096 | SCHUYLKILL HAVEN | 1 | Transport | AVPN Circuit | RMM, ER | 01/15/16 | ☐ | 60 | $455.62 | $0.00 | $0.00 |
| Add | DNF-0097 | SHARPSVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 11/16/15 | ☐ | 60 | $1,372.92 | $0.00 | $0.00 |
| Add | DNF-0098 | UPPER GWYNEDD | 1 | Transport | AVPN Circuit | RMM, ER | 01/15/16 | ☐ | 60 | $1,172.57 | $0.00 | $0.00 |
| Add | DNF-0099 | COLUMBIA | 1 | Transport | AVPN Circuit | RMM, ER | 01/15/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0100 | GREENVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/18/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0101 | MYRTLE BEACH | 1 | Transport | AVPN Circuit | RMM, ER | 01/18/16 | ☐ | 60 | $464.28 | $0.00 | $0.00 |
| Add | DNF-0102 | NORTH CHARLESTON | 1 | Transport | AVPN Circuit | RMM, ER | 01/18/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0103 | PIEDMONT | 1 | Transport | AVPN Circuit | RMM, ER | 01/18/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0104 | SPARTANBURG | 1 | Transport | AVPN Circuit | RMM, ER | 01/19/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0105 | SPARTANBURG | 1 | Transport | AVPN Circuit | RMM, ER | 01/18/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210



## Appendix C
## OPERATIONS SERVICE CHANGE REQUEST/RFC

| RFC Type | Site ID # | City | Qty. | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0106 | SIOUX FALLS | 1 | Transport | AVPN Circuit | RMM, ER | 01/19/16 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0107 | ATHENS | 1 | Transport | AVPN Circuit | RMM, ER | 11/16/15 | ☐ | 60 | $723.12 | $0.00 | $0.00 |
| Add | DNF-0108 | CROSSVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/19/16 | ☐ | 60 | $965.32 | $0.00 | $0.00 |
| Add | DNF-0109 | JOHNSON CITY | 1 | Transport | AVPN Circuit | RMM, ER | 01/20/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0110 | KINGSPORT | 1 | Transport | AVPN Circuit | RMM, ER | 01/19/16 | ☐ | 60 | $632.18 | $0.00 | $0.00 |
| Add | DNF-0111 | KNOXVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/19/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0112 | MORRISTOWN | 1 | Transport | AVPN Circuit | RMM, ER | 01/20/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0113 | NASHVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/20/16 | ☐ | 60 | $510.86 | $0.00 | $0.00 |
| Add | DNF-0114 | NASHVILLE | 1 | Transport | AVPN Circuit | RMM, ER | 01/20/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0115 | WINFIELD | 1 | Transport | AVPN Circuit | RMM, ER | 01/20/16 | ☐ | 60 | $694.96 | $0.00 | $0.00 |
| Add | DNF-0116 | BRENHAM | 1 | Transport | AVPN Circuit | RMM, ER | 01/21/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0117 | CORPUS CHRISTI | 1 | Transport | AVPN Circuit | RMM, ER | 01/21/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0118 | Dallas | 1 | Transport | AVPN Circuit | RMM, ER | 11/01/15 | ☐ | 60 | $3,051.57 | $0.00 | $0.00 |
| Add | DNF-0118 | Dallas | 1 | Transport | AVPN Circuit | RMM, ER | 11/01/15 | ☐ | 60 | $3,051.57 | $0.00 | $0.00 |
| Add | DNF-0119 | DALLAS | 1 | Transport | AVPN Circuit | RMM, ER | 01/21/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0119 | DALLAS | 1 | Transport | AVPN Circuit | RMM, ER | 11/05/15 | ☐ | 60 | $1,113.00 | $0.00 | $0.00 |
| Add | DNF-0120 | DALLAS | 1 | Transport | AVPN Circuit | RMM, ER | 11/10/15 | ☐ | 60 | $885.57 | $0.00 | $0.00 |
| Add | DNF-0121 | DALLAS | 1 | Transport | AVPN Circuit | RMM, ER | 01/21/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0122 | EL PASO | 1 | Transport | AVPN Circuit | RMM, ER | 01/21/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0123 | FORT WORTH | 1 | Transport | AVPN Circuit | RMM, ER | 11/05/15 | ☐ | 60 | $1,293.32 | $0.00 | $0.00 |
| Add | DNF-0123 | FORT WORTH | 1 | Transport | AVPN Circuit | RMM, ER | 11/05/15 | ☐ | 60 | $4,487.60 | $0.00 | $0.00 |
| Add | DNF-0124 | Houston | 1 | Transport | AVPN Circuit | RMM, ER | 11/10/15 | ☐ | 60 | $885.57 | $0.00 | $0.00 |
| Add | DNF-0125 | LAREDO | 1 | Transport | AVPN Circuit | RMM, ER | 01/22/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210

# Appendix C
## OPERATIONS SERVICE CHANGE REQUEST/RFC


ALLIANT
TECHNOLOGIES

| RFC Type | Site ID # | City | Qty | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | DNF-0126 | LONGVIEW | 1 | Transport | AVPN Circuit | RMM, ER | 01/22/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0127 | LUBBOCK | 1 | Transport | AVPN Circuit | RMM, ER | 01/25/16 | ☐ | 60 | $679.80 | $0.00 | $0.00 |
| Add | DNF-0128 | MCALLEN | 1 | Transport | AVPN Circuit | RMM, ER | 01/22/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0129 | MCKINNEY | 1 | Transport | AVPN Circuit | RMM, ER | 01/22/16 | ☐ | 60 | $345.15 | $0.00 | $0.00 |
| Add | DNF-0130 | SAN ANTONIO | 1 | Transport | AVPN Circuit | RMM, ER | 01/22/16 | ☐ | 60 | $275.84 | $0.00 | $0.00 |
| Add | DNF-0131 | WICHITA FALLS | 1 | Transport | AVPN Circuit | RMM, ER | 01/25/16 | ☐ | 60 | $360.32 | $0.00 | $0.00 |
| Add | DNF-0132 | OREM | 1 | Transport | AVPN Circuit | RMM, ER | 01/25/16 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0133 | SALT LAKE CITY | 1 | Transport | AVPN Circuit | RMM, ER | 01/25/16 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0134 | SALT LAKE CITY | 1 | Transport | AVPN Circuit | RMM, ER | 01/26/16 | ☐ | 60 | $935.39 | $0.00 | $0.00 |
| Add | DNF-0135 | SALT LAKE CITY | 1 | Transport | AVPN Circuit | RMM, ER | 01/25/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0136 | CHESTER | 1 | Transport | AVPN Circuit | RMM, ER | 01/26/16 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0137 | MT CRAWFORD | 1 | Transport | AVPN Circuit | RMM, ER | 01/26/16 | ☐ | 60 | $325.66 | $0.00 | $0.00 |
| Add | DNF-0138 | RICHMOND | 1 | Transport | AVPN Circuit | RMM, ER | 01/26/16 | ☐ | 60 | $610.49 | $0.00 | $0.00 |
| Add | DNF-0139 | ASHWAUBENON | 1 | Transport | AVPN Circuit | RMM, ER | 01/26/16 | ☐ | 60 | $785.93 | $0.00 | $0.00 |
| Add | DNF-0119 | DALLAS | 1 | Debit | AVPN Transition Credit Repayment | None | 01/01/16 | ☐ | 12 | $ 20,666.65 | $0.00 | $0.00 |
| | | | | | | | | | | $130,559.42 | $0.00 | $0.00 |

## CIS Hardware

| RFC Type | Site ID # | City | Qty. | CI Type | CI Description | Service Attributes | Requested Service Activation Date | Expedite | MRP | CI MRC | Service Attribute MRC | NRC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | Various | Various | 143 | Hardware Component | CAB-AUX-RJ45 | None | 12/1/2015 | ☐ | 60 | $48.05 | $0.00 | $0.00 |
| Add | Various | Various | 0 | Software Component | FL-44-HSEC-K9 | None | 12/1/2015 | ☐ | 60 | $0.00 | $0.00 | $0.00 |
| Add | Various | Various | 33 | Software Component | FL-CME-SRST-100 | None | 12/1/2015 | ☐ | 60 | $828.96 | $0.00 | $0.00 |
| Add | Various | Various | 48 | Software Component | FL-CME-SRST-25 | None | 12/1/2015 | ☐ | 60 | $340.66 | $0.00 | $0.00 |

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210

**Appendix C**

# OPERATIONS SERVICE CHANGE REQUEST/RFC



| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Add | Various | Various | 17 | Software Component | FL-CME-SRST-5 | None | 12/1/2015 | ☐ | 60 | $31.59 | $0.00 | $0.00 |
| Add | Various | Various | 6 | Hardware Component | GLC-LH-SMD | None | 12/1/2015 | ☐ | 60 | $65.22 | $0.00 | $0.00 |
| Add | Various | Various | 88 | Hardware | ISR4321/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $1,917.52 | $8,788.56 | $13,112.00 |
| Add | Various | Various | 17 | Hardware | ISR4321-V/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $574.60 | $1,901.96 | $2,533.00 |
| Add | Various | Various | 1 | Hardware | ISR4331/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $36.04 | $114.10 | $149.00 |
| Add | Various | Various | 21 | Hardware | ISR4331-V/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $1,146.60 | $2,786.49 | $3,129.00 |
| Add | Various | Various | 12 | Hardware | ISR4351-V/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $1,441.44 | $2,379.72 | $1,788.00 |
| Add | Various | Various | 4 | Hardware | ISR4451-X-V/K9 | SmartWatch, ER2, PCM2 | 12/1/2015 | ☐ | 60 | $917.28 | $1,081.32 | $596.00 |
| Add | Various | Various | 72 | Hardware Component | NIM-1MFT-T1/E1 | None | 12/1/2015 | ☐ | 60 | $1,124.64 | $0.00 | $0.00 |
| Add | Various | Various | 19 | Hardware Component | NIM-2MFT-T1/E1 | None | 12/1/2015 | ☐ | 60 | $456.38 | $0.00 | $0.00 |
| Add | Various | Various | 50 | Hardware Component | NIM-4FXO | None | 12/1/2015 | ☐ | 60 | $546.00 | $0.00 | $0.00 |
| Add | Various | Various | 3 | Hardware Component | NIM-4FXS | None | 12/1/2015 | ☐ | 60 | $32.76 | $0.00 | $0.00 |
| Add | Various | Various | 35 | Hardware Component | NIM-4MFT-T1/E1 | None | 12/1/2015 | ☐ | 60 | $1,681.75 | $0.00 | $0.00 |
| Add | Various | Various | 5 | Hardware Component | NIM-8MFT-T1/E1 | None | 12/1/2015 | ☐ | 60 | $480.50 | $0.00 | $0.00 |
| Add | Various | Various | 0 | Hardware Component | PVDM4-128 | None | 12/1/2015 | ☐ | 60 | $0.00 | $0.00 | $0.00 |
| Add | Various | Various | 1 | Hardware Component | PVDM4-32U256 | None | 12/1/2015 | ☐ | 60 | $93.91 | $0.00 | $0.00 |
| Add | Various | Various | 32 | Hardware Component | PVDM4-32 | None | 12/1/2015 | ☐ | 60 | $593.92 | $0.00 | $0.00 |
| Add | Various | Various | 10 | Hardware Component | PVDM4-64 | None | 12/1/2015 | ☐ | 60 | $371.30 | $0.00 | $0.00 |
| Add | Various | Various | 4 | Hardware Component | PWR-4450-AC/2 | None | 12/1/2015 | ☐ | 60 | $34.96 | $0.00 | $0.00 |
| Add | Various | Various | 1 | Hardware Component | PVDM4-64U128 | None | 12/1/2015 | ☐ | 60 | $34.94 | $0.00 | $0.00 |
| Add | DNF-0117 | CORPUS CHRISTI | 1 | Hardware | NMS Appliance | None | 12/1/2015 | ☐ | 60 | $99.00 | $0.00 | $0.00 |
| Add | DNF-0117 | CORPUS CHRISTI | 1 | Hardware | Cisco Appliance | None | 12/1/2015 | ☐ | 60 | $19.00 | $0.00 | $0.00 |
| Add | Various | Various | 138 | Hardware | USR5686G | None | 12/1/2015 | ☐ | 60 | $0.00 | $0.00 | $12,170.22 |
| Add | Various | Various | 5 | Hardware | USR3453C | None | 12/1/2015 | ☐ | 60 | $0.00 | $0.00 | $1,304.00 |
| | | | | | | | | | | $12,917.01 | $17,052.15 | $34,781.22 |

| RFC Total | MRC | NRC |
|---|---|---|
| RFC Total – 1st 12 Months | $160,528.58 | $34,781.22 |
| RFC Total –Months 13 - 60 | $139,861.93 | $ 0.00 |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210



## Appendix C

## OPERATIONS SERVICE CHANGE REQUEST/RFC

**Acceptance**

By signing below as a duly authorized representative of each party, I acknowledge that I have read the information contained in this Appendix C, Operations Service Change Request/RFC form, and agree to the changes to the Agreement.

| Dean Foods Company | |
|---|---|
| Signature | *Ida McKinley* |
| Print | Ida McKinley |
| Title | Sr. Director IT Process + Governance |
| Date | 12/10/2015 |

| Alliant Technologies, LLC | |
|---|---|
| Signature | |
| Print | |
| Title | |
| Date | |

Alliant Technologies, LLC Proprietary & Confidential
©2015 Alliant Technologies, LLC. All Rights Reserved.

Exhibit A: TenFour's Objection to Cure Costs

# Appendix D

# CI SCHEDULE - SAMPLE


ALLIANT
TECHNOLOGIES

This CI Schedule dated _____ (this "CI Schedule") between Alliant Technologies, LLC, ("Alliant"), Dean Foods Company ("Customer"), and _____ ("Assignee") delivered under the terms and conditions of Alliant Continuous Infrastructure Service Addendum dated_____ (the "Service Addendum").

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties hereto agree as follows:

1. Terms and Conditions. By their execution and delivery of this CI Schedule, the parties reaffirm and incorporate in this CI Schedule by reference all of the terms, conditions, representations, warranties and covenants of the Service Addendum, all of which may be enforced by Assignee against Customer in the same manner as if set forth in full herein. In the event of a conflict between the terms of the Service Addendum and this CI Schedule, the terms of this CI Schedule shall govern.

(a)     Definitions. Unless otherwise defined in this CI Schedule, all capitalized terms used herein shall have the respective meanings assigned to them in the Service Addendum.

"CIs" mean those Configuration Items described in Attachment A under the heading "CI Description".

"MRCs" shall have the meaning set forth in the Service Addendum and as more particularly outlined in Attachment A to this CI Schedule.

"Early Termination Fees" means the termination amount as set forth in the Service Addendum.

"Service Activation Date" means the date set forth below when Customer has unconditionally accepted the SmartWare Services and related SmartWatch coverage outlined on this CIT Schedule and authorized invoicing for those services to begin.

(b)     The Assignment. Alliant has sold, transferred and assigned to Assignee all right, title and interest of Alliant in and to (i) the SmartWare CIs and/or the associated SmartWatch Service Fees (ii) all SmartWare and/or SmartWatch MRCs, (iii) the Early Termination Fees that apply with respect to such SmartWare CI's and related SmartWatch coverage (SmartWare Early Termination Fees and SmartWatch Early Termination Fees) and (iv) all other personal property related to the SmartWare CIs, MRCs, and Early Termination Fees under this CI Schedule, the Service Agreement, or any Service Addendum thereunder (collectively, the "Assigned Assets"). Customer acknowledges that no portion of the Assigned Assets is attributable to any other services performed by Alliant under the Service Addendum.

(c)     Payment. Customer shall remit the full amount of all of the fees relating to the Assigned Assets including, without limitation, all service fees and Early Termination Fees and all other amounts payable with respect to this CI Schedule to the following account:

Mail:
Alliant Technologies, L.L.C.
PO Box 6083
Bellmawr, NJ 08099

Wire/ACH:

TD Bank
ABA# 031201360
Alliant Technologies, L.L.C. – A/C# 7861888100

which account, Customer acknowledges, shall be controlled by Assignee or its assigns. Subject to the following sentence, Customer shall remit such amounts in such manner unless and until otherwise directed in writing by Assignee or its assigns. In the event the Service Addendum is terminated for any reason whatsoever Customer shall remit such amounts as directed in writing by Assignee or its assigns. All payments made by Customer under this CI Schedule, including without limitation, payments related to the Assigned Assets, the MRCs and the Early Termination Fees, shall be made absolutely without deduction of any kind, including of any taxes, withholdings or other charges or imposts. Customer's obligation to pay the MRCs shall continue until the Customer either returns or renews the SmartWare CI and related SmartWatch Services. If Customer fails to pay, when due, any payment payable under this CI Schedule, Customer will pay to the Assignee, on demand, interest on such amounts in default from the date such amounts were due, both before and after judgment, until paid in full, at an annual rate equal to 18% per annum, calculated daily and compounded monthly.

(d)     Remedies. In addition to the remedies provided in Service Addendum, including but not limited to the SmartWare and SmartWatch Sections of the Service Addendum, if Customer fails to pay Assignee the SmartWare Early Termination Fees, SmartWatch Early Termination Fees, along with any other rights arising out of a Triggering Event, within five (5) days following Assignee's written demand thereof, Assignee as the third party beneficiary under the Service Addendum shall cause any license rights, maintenance or other service obligations provided by or on behalf of Alliant under the Service Addendum thereunder to immediately terminate and Customer shall immediately cease to use such services and intellectual property. All of Assignee's remedies hereunder are cumulative and not alternative.

(e)     Security Interest. In the event that this CI Schedule is construed to not be a lease transaction, and to secure the payment and performance by Customer of all obligations owing under this CI Schedule, Customer grants Alliant a precautionary purchase money security interest in the CIs and a security interest in all right, title and interest of Customer ,

Customer Initials:

Exhibit A: TenFour's Objection to Cure Costs

# Appendix D

## CI SCHEDULE - SAMPLE



now existing and hereafter arising, in and to (a) all CIs, (b) all Assigned Assets, (c) all insurance, warranty, rental and other claims and rights to payment and chattel paper arising out of such Assigned Assets, and (e) all proceeds relating to the foregoing.

(f)      Application of Proceeds.  The Early Termination Fees, and any net proceeds from any sale or other disposition of the Assigned Assets (after deducting all costs of such sale or other disposition), shall be applied in the following order:  (i) first, to Assignee for the payment of the any amounts due that constitute Assigned Assets, and (ii) then to Alliant for any amounts due and owing to Alliant under the Service Addendum.

(g)      Change Order.  Without limiting the generality of the Service Addendum, including but not limited to Sections 3, 5,

6, 7, 11 or 12, no subsequent modification of the Service Addendum entered into between Customer and Alliant shall result in lower MRCs or Early Termination Fees as specified in this CI Schedule.

(h)      **Indemnification.**  Alliant and Customer agree to indemnify defend and hold Assignee harmless from and against any losses, damages, suits, claims, demands, taxes, fees expenses and other harms whatsoever arising of or relating to this CI Schedule, including without limitation claims for taxes, customs duties and other fees relating to the import or export of the CIs or any other Taxes, fees or assessments (including interest and penalties thereon) that may arise out of the CIs being located outside of (or transported to or from) the United States.

Customer Initials:

Exhibit A: TenFour's Objection to Cure Costs

# Appendix D
## CI SCHEDULE - SAMPLE



(i)     **IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:**  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.  What that means for you:  When you open an account, we will ask for (i) if you are a legal entity, your name, address, and other information that will allow us to identify you; (ii) if you are an individual, your name, address and date of birth.  We may also ask to see your driver's license or other identifying documents.

1.  **Description and Location of CIs.**  See the list below.

2.      **Service Activation Dates:** _____

3.      **First payment due:** 30 days from invoice date. Monthly invoices begin after Service Activation.

4.      SmartWare MRC under this CI Schedule: _____

5.      SmartWatch MRC under this CI Schedule: _____

6.      **Minimum Retention Period:** _____ months

**EXECUTED** by the undersigned as of the date first set out above.

Alliant Technologies, LLC.

By: _____

Name/Title: _____

Date: _____

Dean Foods Company

By: *Vda McGal* _____

Name/Title: *Vda McKinley / Sr. Director IT Process & Governance* 

Date: *12/10/2015*

(ASSIGNEE) <company name>

By: _____

Name/Title: _____

Date: _____

Exhibit A: TenFour's Objection to Cure Costs

dnf-sae-001-v006-f-151210

# CI Schedule – Appendix D

## ATTACHMENT A TO CI SCHEDULE



ALLIANT
TECHNOLOGIES

| Customer Name: | Customer Billing ID Number: |
|---|---|
| **<Customer>** | **<customer number>** |
| Service Addendum Date | Billing Address |
| **<mm/dd/yyyy>** | **<street address>** |
| Schedule Number and Date | Billing City/St/Zip |
| **<xxxx – mm/dd/yyyy>** | **<city, ST, zip>** |

| Applicable Rate Card | Minimum Retention Period |
|---|---|
| *<Service Addendum Rate Table #>* | *<XX Months>* |
| *<Service Addendum Rate Table #>* | *<XX Months>* |
| *<Service Addendum Rate Table #>* | *<XX Months>* |
| *<Service Addendum Rate Table #>* | *<XX Months>* |

| Customer Site Number | Site Address / CI Description | CI Qty | CI ID# | Component CI QTY | Service Activation Date | Smart Ware MRC | Smart Watch MRC |
|---|---|---|---|---|---|---|---|
| *ccc-00x1* | *<street, city, ST, zip>* | | | | | | |
| | e.g. Cisco 2911-V/K9 | 5 | <xxxxx> | 3 | mm/dd/yyyy | $xx.xx | $xx.xx |
| | e.g. Cisco 2911-V/K9 | 2 | <xxxxx> | 1 | mm/dd/yyyy | $xx.xx | $xx.xx |
| | e.g. Cisco ASA5505 | 1 | <xxxxx> | 1 | mm/dd/yyyy | $xx.xx | $xx.xx |
| *ccc-00x2* | *<street, city, ST, zip>* | | | | | | |
| | e.g. Riverbed CX755 | 2 | <xxxxx> | 3 | mm/dd/yyyy | $xx.xx | $xx.xx |
| | e.g. Riverbed CXA 1555 | 3 | <xxxxx> | 1 | mm/dd/yyyy | $xx.xx | $xx.xx |
| | e.g. Riverbed CX255 | 1 | <xxxxx> | 1 | mm/dd/yyyy | $xx.xx | $xx.xx |
| *ccc-00x6* | *<street, city, ST, zip>* | | | | | | |
| | e.g. Dell R520 Server | 2 | <xxxxx> | 3 | mm/dd/yyyy | $xx.xx | $xx.xx |
| | e.g. VMWare License | 12 | <xxxxx> | 1 | mm/dd/yyyy | $xx.xx | $xx.xx |
| **XX Sites** | | **xxx** | | | **Total MRCs** | **$x,xxx.xx** | **$x,xxx.xx** |

Customer Initials: _____

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited

Exhibit A: TenFour's Objection to Cure Costs

DNF-SAE-001-v006-F-151210



**Appendix E**
**Customer Proprietary Network Information (CPNI)**
**CUSTOMER CONSENT FORM**

The protection of our customers' privacy is of utmost importance to the employees and management of Alliant Technologies, LLC. It is your right to expect CPNI Confidentiality and it is Alliant's legal duty to protect the confidentiality of CPNI. In order to serve you more effectively, Alliant would like to share your CPNI with its affiliate companies and business partners for the purposes of maintaining and troubleshooting your Information Technology (IT) infrastructure and for making more meaningful product and service offers to you. Alliant would also like to use email to communicate with your company about our service. Alliant will never sell your CPNI to anyone for any purpose.

CPNI is defined under Federal regulation (47 CFR S:64.2001) and includes information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by a customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship.

Alliant will restrict or limit the use or disclosure of and access to your CPNI as you may direct, and your Alliant communications services will not be affected by those restrictions. All use, sharing and disclosure of CPNI will be governed by the confidentiality provisions in your Master Agreement with Alliant. You have the right to disapprove these uses or withdraw access to CPNI at any time.

Your signature below permits Alliant to use, share and disclose your CPNI with affiliate companies and business partners for the purposes of service maintenance, troubleshooting and creating offers of products and services to you. Additionally you permit Alliant to use email to communicate with you as part of your service and about all available services.

**AGREED:**

| |
|---|
| **CUSTOMER {Customer business name}:** Dean Foods Company |
| By: *Ida McKinley* <br> (Signed by Authorized Agent or Representative) |
| (Typed or Printed Name) Ida McKinley |
| (Title) Sr. Director, IT Process + Governance　　(Date) 12/10/2015 |

Alliant Technologies, LLC Confidential. Unauthorized Distribution is Prohibited
Page 2

C-150G Rev. 6/2014

New Jersey Division of Revenue & Enterprise Services
**REGISTRATION OF ALTERNATE NAME**

$A N A$

FILED

FEB 0 8 2017

STATE TREASURER

$0600081091$

**Check Appropriate Statute:**

☐ Title 14A:2-2.1 (2) New Jersey Business Corporation Act    ☑ Title 42:2C-4 Limited Liability Company

☐ Title 15A:2-2-3 (b) New Jersey Nonprofit Corporation Act    ☐ Title 42:2A-6 Limited Partnership

Pursuant to the provisions of the appropriate statute, checked above, of the New Jersey Statutes, the undersigned corporation/business entity hereby applies for the registration of an Alternate Name in New Jersey for a period of five (5) years, and for that purpose submits the following application:

1. Name of Corporation/Business:  Alliant Technologies, L.L.C.

2. NJ 10-digit ID number:  0600081091

3. State of Original Incorporation/Formation:  New Jersey

4. Date of Incorporation/Formation:  January 3, 2000

   Date of Authorization (Foreign):

5. Alternate Name to be used:  TenFour

6. State the purpose or activity to be conducted using the Alternate Name:  The design, development and delivery of specifically configured information technology infrastructures

7. The Business intends to use the Alternate Name in this State.

8. The Business has not previously used the Alternate Name in this State in violation of this Statute, or; if it has, the month and year in which it commenced such use is:

Signature requirements:

For Corporations                                   Chairman of the Board., President, Vice-President
For Limited Partnerships                           General Partner
For all Other Business Types                       Authorized Representative

SIGNATURE:                                         TITLE:  Authorized Representative

NAME (please type):  Howard Kalles                 DATE:  February 8, 2017

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Voice:  (973) 267-5236
Fax:    (973) 267-5237

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

# Invoice

Att:

| | |
|---|---|
| Invoice Number: | 12161 |
| Invoice Date: | Sep 10, 2019 |
| Page: | 1 |

Customer ID:  D-128          Federal ID:

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
| | Net 30 Days | 10/10/19 | Mike Sughrue |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| | | Bill Period: 9/1/2019 to 9/30/2019 | | |
| 1.00 | CIS-Dean | MPLS Telecom | 138,722.71 | 138,722.71 |
| 1.00 | CIS-Dean | MPLS Transport NRC | 14,196.11 | 14,196.11 |
| 1.00 | CIS-Dean | MPLS PCM | 2,555.19 | 2,555.19 |
| 1.00 | CIS-Dean | MPLS PCM NRC | | |
| 1.00 | CIS-Dean | MPLS ER | 5,379.35 | 5,379.35 |
| 1.00 | CIS-Dean | MPLS ER NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWatch | 9,458.74 | 9,458.74 |
| 1.00 | CIS-Dean | MPLS SmartWatch NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWare | 15,142.36 | 15,142.36 |
| 1.00 | CIS-Dean | MPLS SmartWare Shipping | | |
| 1.00 | CIS-Dean | MPLS SmartWare NRC | | |
| 1.00 | CIS-Dean | MIS Transport NRC | | |
| 1.00 | CIS-Dean | Cellular Telecom | 2,075.25 | 2,075.25 |
| 1.00 | CIS-Dean | Proserve Physical Infrastructure NRC | | |
| 1.00 | CIS-Dean | Netbond | 8,334.80 | 8,334.80 |
| 1.00 | CIS-Dean | Monitoring Appliance | 118.00 | 118.00 |
| 1.00 | CIS-Dean | Misc Shipping NRC | 104.60 | 104.60 |
| 1.00 | CIS-Dean | Taxes. Fees and Surcharges | 48,940.31 | 48,940.31 |
| | | **Broadband Fees** | | |
| 1.00 | CIS-Dean | Broadband Telecom | 2,354.74 | 2,354.74 |
| 1.00 | CIS-Dean | Broadband NRC | | |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment Received | |
| **TOTAL** | Continued |

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Voice: (973) 267-5236
Fax: (973) 267-5237

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

# Invoice

Att:

| | |
|---|---|
| Invoice Number: | 12161 |
| Invoice Date: | Sep 10, 2019 |
| Page: | 2 |

Customer ID: D-128    Federal ID:

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
| | Net 30 Days | 10/10/19 | Mike Sughrue |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| 1.00 | CIS-Dean | Broadband SmartWatch/RMM | 60.00 | 60.00 |
| 1.00 | CIS-Dean | Broadband ER | 120.00 | 120.00 |
| 1.00 | CIS-Dean | Taxes. Fees and Surcharges | 91.25 | 91.25 |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | 247,653.41 |
| Sales Tax | |
| Total Invoice Amount | 247,653.41 |
| Payment Received | |
| **TOTAL** | 247,653.41 |

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Voice: (973) 267-5236
Fax: (973) 267-5237

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

# Invoice

Att:

| | |
|---|---|
| Invoice Number: | 12232-PRE |
| Invoice Date: | Nov 13, 2019 |
| Page: | 1 |

Customer ID: D-128       Federal ID:

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
| | Net 30 Days | 12/13/19 | James Haag |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| | | Services provided pre-petition(Nov 11th and prior) | | |
| 1.00 | CIS-Dean | MPLS Telecom | 45,688.38 | 45,688.38 |
| 1.00 | CIS-Dean | MPLS Transport NRC | 2,552.57 | -2,552.57 |
| 1.00 | CIS-Dean | MPLS PCM | 940.50 | 940.50 |
| 1.00 | CIS-Dean | MPLS PCM NRC | | |
| 1.00 | CIS-Dean | MPLS ER | 1,980.00 | 1,980.00 |
| 1.00 | CIS-Dean | MPLS ER NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWatch | 3,468.20 | 3,468.20 |
| 1.00 | CIS-Dean | MPLS SmartWatch NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWare | 5,552.20 | 5,552.20 |
| 1.00 | CIS-Dean | MPLS SmartWare Shipping | | |
| 1.00 | CIS-Dean | MPLS SmartWare NRC | | |
| 1.00 | CIS-Dean | MIS Transport NRC | | |
| 1.00 | CIS-Dean | Cellular Telecom | 772.20 | 772.20 |
| 1.00 | CIS-Dean | Proserve Physical Infrastructure NRC | | |
| 1.00 | CIS-Dean | Netbond | 13,400.00 | 13,400.00 |
| 1.00 | CIS-Dean | Monitoring Appliance | 43.27 | 43.27 |
| 1.00 | CIS-Dean | Misc Shipping NRC | | |
| 1.00 | CIS-Dean | Taxes, Fees and Surcharges | 16,027.28 | 16,027.28 |
| | | **Broadband Fees** | | |
| 1.00 | CIS-Dean | Broadband Telecom | 863.40 | 863.40 |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment Received | |
| **TOTAL** | Continued |

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Voice: (973) 267-5236
Fax: (973) 267-5237

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

# Invoice

Att:

| | |
|---|---|
| Invoice Number: | 12232-PRE |
| Invoice Date: | Nov 13, 2019 |
| Page: | 2 |

Customer ID: D-128    Federal ID:

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
| | Net 30 Days | 12/13/19 | James Haag |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| 1.00 | CIS-Dean | Broadband NRC | | |
| 1.00 | CIS-Dean | Broadband SmartWatch/RMM | 22.00 | 22.00 |
| 1.00 | CIS-Dean | Broadband ER | 44.00 | 44.00 |
| 1.00 | CIS-Dean | Taxes. Fees and Surcharges | 33.46 | 33.46 |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | 86,282.32 |
| Sales Tax | |
| Total Invoice Amount | 86,282.32 |
| Payment Received | |
| **TOTAL** | 86,282.32 |

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Voice: (973) 267-5236
Fax: (973) 267-5237

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

# Invoice

Att:

| | |
|---|---|
| Invoice Number: | 12341 |
| Invoice Date: | Feb 10, 2020 |
| Page: | 1 |

Customer ID:  D-128      Federal ID:

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
| | Net 30 Days | 3/11/20 | James Haag |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| 1.00 | CIS-Dean | MPLS Telecom | 144,820.45 | 144,820.45 |
| 1.00 | CIS-Dean | MPLS Transport NRC | 3,347.84 | -3,347.84 |
| 1.00 | CIS-Dean | MPLS PCM | 2,546.00 | 2,546.00 |
| 1.00 | CIS-Dean | MPLS PCM NRC | | |
| 1.00 | CIS-Dean | MPLS ER | 5,360.00 | 5,360.00 |
| 1.00 | CIS-Dean | MPLS ER NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWatch | 9,458.74 | 9,458.74 |
| 1.00 | CIS-Dean | MPLS SmartWatch NRC | | |
| 1.00 | CIS-Dean | MPLS SmartWare | 15,142.36 | 15,142.36 |
| 1.00 | CIS-Dean | MPLS SmartWare Shipping | | |
| 1.00 | CIS-Dean | MPLS SmartWare NRC | | |
| 1.00 | CIS-Dean | MIS Transport NRC | | |
| 1.00 | CIS-Dean | Cellular Telecom | 2,106.00 | 2,106.00 |
| 1.00 | CIS-Dean | WAN Hardware | 3,273.00 | 3,273.00 |
| 1.00 | CIS-Dean | Proserve Physical Infrastructure NRC | | |
| 1.00 | CIS-Dean | Netbond | 8,334.80 | 8,334.80 |
| 1.00 | CIS-Dean | Monitoring Appliance | 118.00 | 118.00 |
| 1.00 | CIS-Dean | Misc Shipping NRC | | |
| 1.00 | CIS-Dean | Taxes, Fees and Surcharges | 44,282.77 | 44,282.77 |
| | | **Broadband Fees** | | |
| 1.00 | CIS-Dean | Broadband Telecom | 2,354.74 | 2,354.74 |
| 1.00 | CIS-Dean | Broadband NRC | | |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment Received | |
| **TOTAL** | Continued |

Alliant Technologies, LLC
d/b/a TenFour
360 Mt. Kemble Avenue
Morristown, NJ 07960

# TENFOUR

**Remit to Address: PO Box 6083**
**Bellmawr, NJ 08099**

Sold To:

Dean Foods Company
c/o IT Supplier Management
2711 N Haskell Ave
Dallas, TX 75204

Att:

Customer ID: D-128    Federal ID:

Voice: (973) 267-5236
Fax: (973) 267-5237

# Invoice

Invoice Number: 12341
Invoice Date: Feb 10, 2020
Page: 2

| Customer PO | Payment Terms | Due Date | Sales Rep |
|---|---|---|---|
|  | Net 30 Days | 3/11/20 | James Haag |

| Quantity | Name | Description | Rate | Amount |
|---|---|---|---|---|
| 1.00 | CIS-Dean | Broadband SmartWatch/RMM | 60.00 | 60.00 |
| 1.00 | CIS-Dean | Broadband ER | 120.00 | 120.00 |
| 1.00 | CIS-Dean | Taxes. Fees and Surcharges | 91.25 | 91.25 |

Check No:

Tax ID Number:
22-3697583

| | |
|---|---|
| Subtotal | 234,720.27 |
| Sales Tax | |
| Total Invoice Amount | 234,720.27 |
| Payment Received | |
| **TOTAL** | 234,720.27 |