# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISIONS

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SOUTHERN FOOD GROUPS, LLC, *et al.* | § | Case No. 19-36313 (DRJ) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

## CALIFORNIA DAIRIES, INC.'S STATEMENT AND JOINDER REGARDING DEBTORS' MOTION TO APPROVE ENTRY INTO DAIRY FARMERS OF AMERICA, INC. PURCHASE AGREEMENT

TO THE HONORABLE DAVID R. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW California Dairies, Inc. ("CDI"), a creditor of Southern Food Groups, LLC, *et al.*, the above-captioned debtors and debtors in possession (together, the "Debtors"), and hereby files this Statement and Joinder ("Statement") Regarding the Debtors' *Motion for Entry of Order Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances* [Dkt. 925] (the "Sale Motion").[2] In support of this Statement, CDI respectfully represents as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

[2] Capitalized terms used that are not otherwise defined herein, shall have the meanings ascribed to such terms in the Sale Motion.

## PRELIMINARY STATEMENT

1. CDI is a milk marketing and processing cooperative owned by nearly 400 California dairy farmers. As the second largest milk marketing cooperative in the United States, CDI produces 16 billion pounds of milk annually, 40% of California's milk by volume, 20% of the total butter manufactured in the United States, and also operates as the largest U.S. leading manufacturer of butter and milk powder. In connection with its operations, CDI has supplied milk, butter, and related products to Debtor Alta-Dena Certified Dairy, LLC ("Alta Dena"), among other Debtors. As of the Petition Date, CDI was owed over $3.5 million on account of unpaid deliveries to Alta Dena and other Debtors (inclusive of approximately $1.5 million owed to CDI from the milk pool settlement fund on account of Debtors' underpayment). Additionally, CDI continues to supply goods to the Debtors on a post-petition basis, including approximately $7 million worth of fluid milk per month.

2. CDI is a member of the Official Committee of Unsecured Creditors in these chapter 11 cases (the "Committee") and operates as the Committee's co-chair.

3. CDI files this Statement in furtherance of the principles of fairness and transparency that should underlie any bankruptcy sale process. In short, it is the position of CDI that the sale process resulting in the bid of Dairy Farmers of America, Inc. ("DFA") failed to afford all prospective buyers a full, fair, and reasonable opportunity for all persons to make informed bids. For nearly two months before the deadline for Qualified Bids, CDI—a genuine prospective purchaser—repeatedly requested basic diligence information from the Debtors. The Debtors, while indicating to CDI that information was forthcoming, severely delayed or outright refused to provide CDI with key requested diligence information, much of which was basic economic information. Nonetheless, CDI is cognizant of the general economic position of these Debtors and the urgency with which the estates' assets must be liquidated and monetized.

Consequently, CDI files this Statement in lieu of an objection to the sale.

## STATEMENT

**A.     General Background**

4.      On November 12, 2019 (the "Petition Date"), each of the Debtors filed a separate voluntary petition commencing cases under chapter 11 of the Bankruptcy Code. A trustee or examiner has not been appointed.

5.      The Debtors' primary business consists of manufacturing, marketing, and distributing a wide variety of branded and private label dairy and dairy case products, including fluid milk, ice cream, cultured dairy products, creamers, ice cream mix, and other dairy products to retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States.

6.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 22, 2019, the Office of the United States Trustee for the Southern District of Texas appointed the Committee. [Dkt. 288].

**B.     The Proposed Sale Transaction**

7.      On February 17, 2020, the Debtors filed the Sale Motion. The Sale Motion sought to establish DFA as the stalking horse bidder for substantially all of the assets of the Debtors.

8.      The Court entered an order approving bidding procedures (but not DFA as stalking horse bidder) on March 19, 2020. That order established March 30, 2020, as the deadline for Qualified Bids to be submitted. [Dkt. 1178].

**C.     CDI's Interest In Purchasing Debtors' Properties**

9.      Even before the Debtors filed the Sale Motion, CDI expressed an interest to the

Debtors in purchasing certain of the Debtors' properties.³ To this end, on January 24, 2020, CDI executed a confidentiality agreement with the Debtors. On February 5, 2020, CDI received a process letter from the Debtors soliciting indications of interest in the Debtors' assets. That same day, CDI sent the Debtors a detailed due diligence request list.

10. Over the next month and a half, CDI continued to request this diligence information from the Debtors, but much of the information was never provided. On February 18, 2020, CDI submitted a formal letter of intent to the Debtors and sent its detailed due diligence request list again. Then, on February 27, 2020, CDI representatives had a telephone call with Debtors' investment banker, Evercore, about the missing diligence information. On March 2, 2020, CDI representatives emailed Evercore about the missing diligence information. Evercore replied that it would discuss CDI's request with the Debtors and get back with CDI. CDI waited a week, and after not hearing back from Evercore, it again emailed Evercore about the missing diligence information and again provided its due diligence request list. CDI representatives had an additional communication with Evercore about the diligence list on March 12, 2020.

11. On March 16, 2020—more than five weeks after CDI first provided its initial diligence request list to the Debtors and signed a confidentiality agreement—Evercore informed CDI that it could not be privy to certain basic, key due diligence items absent execution of a "Clean Team Agreement." Not understanding the delay in being provided the Clean Team Agreement, but recognizing that the deadline for Qualified Bids was rapidly approaching, CDI quickly negotiated a Clean Team Agreement and executed it two days later.

12. This signed agreement, however, did little to solve the problem. On March 19, 2020, the day after signing the Clean Team Agreement, CDI representatives had a call with

---

³ Pursuant to Committee bylaws, CDI has been walled off from Committee deliberations involving the specific sale of any of the Debtors' assets.

Evercore and discussed missing high priority diligence items. While Evercore did provide a few diligence documents on March 21, 2020, much of the basic diligence information had still not been provided. For this reason, the day after receiving documents, CDI representatives tried to set up a call with Evercore for March 23, 2020. Evercore, however, responded that proposed timeframe for the call was too short. While Evercore did provide a few more documents on March 23, 2020—just one week before Qualified Bids were due—its production remained incomplete. This same day, Evercore also notified CDI that several members on CDI's executive team—including its CEO and CFO—were not approved as Clean Team members. This effectively prevented these executives from providing input about key information for the bid.

13. To date, CDI has still not received basic diligence information necessary to properly formulate its bid. For example, Debtors have never provided:

    a. Key vendor information, including Debtor purchase amounts on a vendor by vendor basis. With this information, CDI would have had a better understanding of the vendor arrangements and could have determined potential synergies with CDI, which could have provided CDI a basis to reduce its bid.

    b. Detailed descriptions and dollar amounts of stand-alone costs. CDI was only provided a high level discussion of necessary support functions performed at corporate and home office. CDI was not provided any information regarding cost of these services that were allocated to the assets being considered. With this information, CDI would have been able to determine the likely incremental costs to take over these functions. Instead, it was forced to rely on conservative estimates for incremental costs in its bid.

    c. Intercompany purchase details. Without this information, CDI was forced to make conservative estimates in its bid as to the impact of intercompany purchases.

    d. Answers to CDI's questions about variances in the profit and loss accounts. Without these answers, CDI could not assess if there were on-time or run rate expenses that would not continue. CDI was forced to assume there would be no earnings add backs and make conservative estimates as to the true recurring earnings.

  14. Of course, these are only a few glaring examples. The deadline to submit Qualified Bids came and went without CDI receiving this information and other requested diligence information. Likewise, other critical information was not provided until very late in the process, thus hampering CDI's analysis. This included:

    a. Customer contracts and sales by dollar by customer. This basic and vital information was not provided until March 23, 2020, at which time only 4 customer contracts were provided. Further, because CDI's management was prohibited from the "Clean Team" by the Debtors, they were unable to comment on revenue arrangements and pricing and assess any potential synergies with CDI's own customer base.

    b. Detailed monthly trial balances. Fluid milk monthly income statements were not provided until March 18, 2020. Monthly balance sheet detail was never obtained. Had it been provided, CDI may have been able to use less conservative estimates for working capital needs, thus increasing net present value.

  15. CDI ultimately did submit a bid for certain of the Debtors' assets. That bid was forced to price in a discount for material unknown information.

  16. The Debtors now seek findings that "the sale process was … conducted in a non-collusive, fair, and good faith manner, and the process … afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer…." (DFA proposed sale order Dkt. No. 1350-1 ¶ L); *see also* Dkt. No. 1350-1 ¶ S ("The sales process conducted by the Debtors in accordance with the Bidding Procedures Order was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all entities."), ¶ T (sale process "(a) afforded all creditors, other parties in interest, and all potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best

offer(s) to purchase the Acquired Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets.").

17. The Debtors did not aggressively market their assets to CDI. Instead, they inexplicably delayed or refused to provide CDI with basic diligence information that CDI repeatedly requested.

## JOINDER

18. CDI joins in the MDVA Objection and Reservation of Rights filed at docket number 1415 and incorporates the arguments therein as if fully set forth herein. Any order approving a sale to DFA should provide that the (i) the Court is not determining whether the sale would or would not violate applicable antitrust laws, and (ii) the Court's approval of the sale in no way affects any antitrust claims, challenges, or proceedings arising from the sale and any party in interest retains any antitrust claims, challenges, or proceedings arising from the sale.

Respectfully Submitted,

**BRACEWELL LLP**

By: /s/ *Jason G. Cohen*
      Jason G. Cohen
      Texas Bar No. 24050435
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone: (713) 221-1416
      Facsimile: (800) 404-3970
      Jason.Cohen@bracewell.com

*Counsel for California Dairies, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of April 2020, a true and correct copy of the foregoing document was served upon all registered ECF users.

/s/ *Jason G. Cohen*