IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SOUTHERN FOODS GROUPS, LLC, *et al.*, | ) | Case No. 19-36313 (DRJ) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**DECLARATION OF ANTHONY MAGRO IN SUPPORT OF
THE DEBTORS' REPLY IN SUPPORT OF MOTION TO APPROVE SALES OF
DEBTORS' ASSETS AND RELATED RELIEF**

I, Anthony Magro, declare as follows:

1. I am a Senior Managing Director at Evercore Group L.L.C. ("**Evercore**"), an investment banking advisory and investment management firm. Evercore has extensive experience in providing high quality investment banking services in financially distressed situations, including advising debtors, creditors, and other constituents in chapter 11 cases

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

and out-of-court restructurings. Evercore is the investment banker to the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

2. I submit this declaration (this "**Declaration**") in support of the Debtors' *Reply in Support of the Motion to Approve Sales of Debtors' Assets and Related Relief* (the "**Reply**" in support of the "**Motion**").[2]

3. The statements in this declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have received from the Debtors' employees or advisors or professionals of Evercore working directly with me or under my supervision, direction, or control, or from the Debtors' books and records maintained in the ordinary course of their businesses.

4. I am not being specifically compensated for this testimony other than through payments received by Evercore as a professional retained by the Debtors. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

### Background and Qualifications

5. I joined Evercore in 2011 and have nearly 40 years of experience in mergers and acquisitions advisory and corporate finance. Prior to joining Evercore, I held positions at Dillon, Read & Co. Inc., Kidder, Peabody & Co, Inc., Bear, Stearns & Co. Inc., Banc of

---

[2] Capitalized terms used but not defined otherwise herein shall have the meanings ascribed to them in the Motion.

2

America Securities LLC, and Bank of America Merrill Lynch.  I have a Bachelor of Arts degree from Dartmouth College (1976).

6. Evercore is a leading independent investment banking advisory and investment management firm established in 1996.  Evercore's investment banking business includes its advisory business, which provides a range of investment banking services to multinational corporations on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings, and other strategic transactions.

7. Evercore has been involved in many large and complex restructuring cases in this and other districts around the United States, including *In re Murray Energy Holdings Co.,* No. 19-56885 (Bankr. S.D. Ohio, Dec. 11, 2019); *In re EP Energy Corporation*, Case No. 19-35654 (Bankr. S.D. Tex. Oct. 4, 2019); *In re Jones Energy, Inc.,* Case No. 19-32112 (Bankr. S.D. Tex. Apr. 14, 2019); *In re Sheridan Holding Company II, LLC*, Case No. 19-35198 (Bankr. S.D. Tex. Sept. 15, 2019); *In re Southcross Energy Partners, L.P.*, Case No. 19-10702 (Bankr. D. Del. Apr. 2, 2019); *In re David's Bridal, Inc.*, Case No. 18-12635 (Bankr. D. Del. Nov. 19, 2018); *In re New MACH Gen, LLC*, Case No. 18-11369 (Bankr. D. Del. Jun. 11, 2018); *In re Enduro Resource Partners LLC*, Case No. 18-11174 (Bankr. D. Del. May 15, 2018); *In re Tops Holding II Corp.*, Case No. 18-22279 (Bankr. S.D.N.Y. Mar. 22, 2018); *In re Fieldwood Energy LLC*, Case No. 18-30648 (Bankr. S.D. Tex. Mar. 8, 2018); *In re Pac. Drilling S.A.*, Case No. 17-131393 (Bankr. S.D.N.Y. Jan. 26, 2018); *In re Orchard Acquisition Co., LLC (J.G. Wentworth)*, Case No. 17-12914 (Bankr. D. Del. Jan. 5, 2018); *In re Castex Energy Partners, L.P.*, Case No. 17-35835 (Bankr. S.D. Tex. Dec. 4, 2017); *In re GulfMark Offshore, Inc.*, Case No. 17-11125 (Bankr. D. Del. June 15, 2017); *In re Vanguard Nat. Res., LLC*, Case No. 17-30560 (Bankr. S.D. Tex. Mar. 20,

2017); *In re Azure Midstream Partners, LP*, Case No. 17-30461 (Bankr. S.D. Tex. Mar. 10, 2017); *In re Chaparral Energy, Inc.,* Case No. 16-11144 (Bankr. D. Del. May 9, 2016); *In re Midstates Petroleum Company, Inc.,* Case No. 16-32237 (Bankr. S.D. Tex. May 1, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Feb. 8, 2016); *In re Parallel Energy LP,* Case No. 15-12263 (Bankr. D. Del. Dec. 16, 2015); *In re The Great Atl. & Pac. Tea Co., Inc.,* Case No. 15-23007 (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Altegrity, Inc.*, Case No. 15-10226 (Bankr. D. Del. March 16, 2015); *In re Mineral Park, Inc.,* Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014 & Oct. 2, 2014); and *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014).

## Marketing Process for the Debtors' Assets

8. Evercore has been engaged as investment banker to the Debtors since February 2019. The Debtors initially retained Evercore to assist with a broad evaluation of potential strategic alternatives. It was ultimately determined that these options could not be pursued for a variety of reasons. By early October 2019, the Debtors saw a sharp decline in their third quarter 2019 results and realized that they faced a financial outlook that was deteriorating more rapidly than prior forecasts. Evercore explored a variety of potential out-of-court financing transactions. Ultimately, however, the Debtors concluded, in consultation with Evercore and other advisors, that such an out-of-court transaction was not actionable under the circumstances. Accordingly, the Debtors commenced the Chapter 11 Cases in order to manage liquidity, prevent potentially ruinous customer and vendor flight, and pursue the consummation of one or more sale transactions or a plan of reorganization through a court-supervised process.

9. To that end, in October, 2019, Evercore and the Debtors engaged in negotiations and discussions with Dairy Farmers of America, Inc. ("**DFA**"). As the Debtors' long-time commercial partner and raw milk vendor, DFA was considered likely to be able to contribute significant value to the Debtors' businesses and negotiate and potentially reach a sale agreement with the Debtors prior to the Petition Date. The Debtors publicly announced on November 12, 2019, that they were engaged in advanced discussions with DFA with regard to its role as a potential stalking horse bidder for the purchase of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code. The Debtors and DFA signed an asset purchase agreement in February 2020 for the purchase of substantially all of the Debtors' assets (the "**Stalking Horse Agreement**") in exchange for a purchase price that the Debtors proposed as a stalking horse bid. The bidding process was ultimately converted to the process proposed by the Court, which entailed the withdrawal by the Debtors of DFA as proposed stalking horse bidder, and culminated in bid submissions by interested parties on March 30, 2020.

10. Over the past several months, Evercore has extensively marketed the Debtors' assets to a broad group of strategic, financial, and regional buyers. Through these efforts, Evercore sought to maximize the number of participants that may participate as buyers and maximize the value of the Debtors' assets to be achieved through the sale process.

11. Evercore contacted and/or received inbound interest from approximately 186 entities, including approximately 93 potential strategic buyers (among which were 54 regional dairy companies) and approximately 93 potential financial buyers (among which were 50 real estate investors). Based on discussions with these entities, Evercore provided

approximately 105 parties with confidential information regarding the Company's business after such parties executed non-disclosure agreements with the Debtors. Several of these parties expressed interest in considering a transaction with the Debtors and were granted access to a data room containing additional confidential information regarding the Debtors' assets. Evercore provided additional details to these parties, including access to confidential diligence materials.

12. Potential bidders had access to updated information prepared by the Debtors and Evercore and a substantial body of information, inclusive of historical and projected financial information, operational data, and an extensive data room (including information gathered specifically based upon the due diligence requests of potential buyers), conference calls with management of the Debtors, and site visits to facilities in which bidders expressed interest.

13. I understand that in connection with this Motion only a single party—California Dairies, Inc.—has raised any issue with respect to information sharing during the due diligence process. Evercore responded to substantially all of California Dairies' diligence requests. Many of the contracts and vendor details that California Dairies asked for during the due diligence process were negotiated and applicable only on a national level and therefore were simply not relevant to regional purchasers (like California Dairies, which bid on the two Debtor facilities in Southern California). Certain competitively sensitive documents and data relevant only to the Debtors' national business were not made available to potential bidders with interest in only regional assets, as such documents would not have been relevant to diligencing or formulating a bid for the purchase of such assets. Ultimately, as California Dairies acknowledges, the Debtors worked with California

Dairies to provide much of this information by using a Clean Team Agreement.  I also note that another party submitted a bid with a higher price than California Dairies for only one of the two facilities that California Dairies bid on, and this party requested significantly less confidential information and completed its diligence in a significantly shorter time period than California Dairies.

**Final Bids Received by the Debtors**

14. The Debtors received bids from a total of 35 interested parties.

15. The only party that submitted a bid for the vast majority of the Debtors' plants and related assets was DFA.  DFA offered $433 million for 44 facilities.  This reflects an $8 million improvement from the offer in the Stalking Horse Agreement for the same set of assets.

16. The Debtors also received bids for certain of their assets from the following additional parties:

   a. Prairie Farms Dairy, Inc. ("**Prairie Farms**") offered $75 million for a number of plants as a going concern (and other assets primarily related to such plants).

   b. Mana Saves McArthur, LLC ("**Mana**") offered $16.5 million for certain Florida-based assets.

   c. Producers Dairy Foods ("**Producers Dairy**") offered $6.7 million for the Debtors' Reno, Nevada plant as a going concern and certain trademark and intellectual property assets.

   d. Harmoni, Inc. ("**Harmoni**") offered $7.25 million for certain assets relating to the Debtors' "Uncle Matt's Organic" business.

7

  e. Industrial Realty Group, LLC ("**IRG**") offered $25.5 million for certain assets in Hawaii.

  f. An additional 29 bidders submitted bids for certain of the Debtors' facilities. The assets that are the subjects of these bids are largely assets on which DFA bid as well. Many facilities received no offer aside from the DFA bid.

17. The Debtors, in consultation with their advisors (including Evercore), evaluated the final bids in order to maximize proceeds resulting from the sale of the Debtors' assets. The Debtors ultimately selected bids submitted by DFA, Prairie Farms, Mana, Producers Dairy, Harmoni, and IRG (the "**Winning Bids**").

18. The bids are contingent on collective bargaining agreement modifications, which will need to be achieved either consensually or through Sections 1113 and 1114 of the Bankruptcy Code on a timetable that is consistent with when the closings must occur.

19. In my opinion, the combination of bids that comprise the Winning Bids will maximize proceeds for the Debtors' estate and the Debtors' selection of the Winning Bids is the product of sound and reasonable business judgment. The selection of a group of piecemeal bids—as opposed to DFA's anchoring bid and a complementary set of smaller bids—would have resulted in a substantially lower recovery.

20. Having conducted a robust marketing process, it is my view that there is no meaningful possibility that the Debtors will obtain a greater recovery in the near term than that provided for by the Winning Bids. And denying or delaying the relief sought in the Motion could jeopardize the Debtors' bids-in-hand. Because of this and in light of the

Debtors' worsening liquidity concerns, the timely approval of the Motion is critical to the estate's prospects of surviving bankruptcy as a going concern.

21. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 3, 2020

/s/ Anthony Magro_____
Anthony Magro
Senior Managing Director
Evercore Group L.L.C.