IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SOUTHERN FOODS GROUP, LLC, *et al.*[1] | § § § | Case No. 19-36313 (DRJ) |
| Debtors. | § § § | (Jointly Administered) |

**EMERGENCY MOTION OF FOOD LION LLC
AND MARYLAND AND VIRGINIA MILK PRODUCERS
COOPERATIVE ASSOCIATION, INC. FOR RELIEF FROM THE
AUTOMATIC STAY TO ALLOW COMMENCEMENT OF ANTITRUST ACTION**

> This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.
>
> Represented parties should act through their attorney.
>
> Emergency relief has been requested. A hearing will be conducted on this matter on April 22, 2020 at 2:00 pm CT in Courtroom 400, 4th floor, 515 Rusk Street, Houston, TX 77002. If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.
>
> Relief is requested not later than April 22, 2020.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200). The debtors' mailing address is 2711 North Haskell Avenue, Suite 3400, Dallas, TX 75204.

Food Lion LLC ("**Food Lion**") and Maryland and Virginia Milk Producers Cooperative Association, Inc. ("**MDVA**" and together with Food Lion, "**Movants**") hereby file this emergency motion for relief from the automatic stay to allow Movants to commence an expedited antitrust action in a United States District Court located in North Carolina (the "**District Court**") seeking to address the anti-competitive effects of the sale of certain of the above-captioned debtors' (the "**Debtors**" or "**Dean Foods**") assets free and clear of liens, claims, interests, and encumbrances (the "**DFA Sale**") to Dairy Farmers of America, Inc. ("**DFA**"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Movants have consistently raised their concerns that the DFA Sale violates antitrust laws because the combination of the Debtors and DFA will severely restrict competition in the raw and processed fluid milk markets. Now that the closing of the DFA Sale appears imminent, the only avenue left for Movants to vindicate their rights under the law is to file suit seeking to enjoin the DFA Sale. Such suit should be brought in the District Court in the first instance. Therefore, Movants seek relief from the automatic stay so they may stop this unlawful combination before it is too late.

2. In particular, Movants are concerned about the milk markets in North and South Carolina. Food Lion operates a number of supermarkets in this region and has experienced firsthand the anticompetitive conduct perpetrated by the Debtors and DFA in the past. MDVA, a competing milk cooperative, is the only significant competitor to DFA for the supply of raw milk in the Carolinas. If the sale to DFA approved by this Court is permitted to close, this competition will be permanently lost. A combined Dean Foods/DFA will wield even more power to pursue such anticompetitive behavior at the expense of Food Lion, consumers, MDVA, and other milk producers.

3. Relief from the stay is appropriate here primarily because it will promote the interests of judicial economy and the economical resolution of Movants' claims. Movants should be allowed to commence their antitrust action in the District Court because such action will eventually end up in a federal district court, and the District Court is located in the district where most of the facilities are located that Movants will raise concerns about in their complaint. Thus, were Movants to bring their claims directly in this Court, such proceeding would be subject to mandatory withdrawal of the reference. Since a federal district court is the ultimate destination for Movants' claims, requiring them to first file in the Bankruptcy Court would simply add needless cost and delay to the process and consume valuable judicial resources. There is no point in doing this, particularly in light of the global pandemic currently affecting the country and the proceedings of this court and other courts.

4. In addition, allowing Movants to proceed directly with the claims in District Court will achieve a prompt and full resolution of the issues. The District Court is the ideal venue to resolve antitrust claims as such claims are regularly adjudicated there and it is located near the facilities at issue. Prompt resolution is also necessary because the Debtors have stated that they expect the DFA Sale to close at the end of April or in early May. Any delay in commencing the antitrust action may result in the DFA Sale closing before Movants have their day in court, foreclosing effective pre-closing antitrust relief.

5. As a result, the Court should modify the automatic stay to allow Movants to commence an action in the District Court by seeking to enjoin the sale of certain assets located in North and South Carolina to DFA.

**JURISDICTION AND VENUE**

6. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this motion for relief from the automatic stay under 28 U.S.C. § 1334. This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

7. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are Section 362 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Bankruptcy Local Rules for the Court (the "**Bankruptcy Local Rules**").

**BACKGROUND**

9. Food Lion owns and operates over 1,000 supermarkets in the Southeastern United States, including in North and South Carolina. In the ordinary course of its business, Food Lion purchases processed milk and other dairy products directly from the Debtors and DFA for retail sale at certain of its supermarket stores.

10. MDVA is a vertically integrated dairy cooperative owned and operated by 1,000 dairy families from Pennsylvania to Georgia. Like other dairy cooperatives, including DFA, MDVA markets and sells the raw milk produced by its members' dairy farms on their behalf. MDVA also owns and operates milk processing facilities that produce products like milk powder and butter as well as bottling plants that produce bottled fluid milk, cream, half & half, and similar products.

11. North Carolina is home to four major milk processing facilities, two of which are owned by the Debtors. South Carolina is home to two major milk processing facilities, one of which is owned by the Debtors. The three milk processing facilities owned by the Debtors in North and South Carolina are referred to as the **Carolinas Facilities**.

**I.     Bankruptcy Proceedings**

12. On November 12, 2019 (the "**Petition Date**") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

13. On February 17, 2020, the Debtors filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Approving the Designation of Dairy Farmers of America, Inc. As the Stalking Horse Bidder for Substantially All the Debtors' Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling Auction for and hearing to Approve, Sale of Debtors' Assets, (F) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (G) Approving Assumption and Assignment Procedures, and (H) Granting related Relief and (II) (A) Approving Sale of Debtors Assets Free and Clear of Liens, Claims, Interest, and Encumbrances (B Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "**Sale Motion**") [Docket No. 925]. On the same day, the Bankruptcy Court set a hearing for March 12, 2020 (the "**Bid Procedures Hearing**"), on the portion of the Sale Motion to establish bid procedures and to approve DFA as the "Stalking Horse Bidder" on the assets subject to the Sale Motion.

14. On March 9, 2020, Food Lion filed an objection to the proposed bid procedures in the Sale Motion [Docket No. 1065] due to its concerns about the impact a potential sale to DFA would have on the milk market. Food Lion proposed changes to the bid procedures to provide for fair, competitive bidding on the Debtors' assets, specifically that DFA's purchase price should be allocated among the various assets it proposed purchasing.

15. On March 9, 2020, MDVA also filed an objection to the proposed bid procedures in the Sale Motion [Docket No. 1058]. Like Food Lion, MDVA objected to the Debtors' failure

5

to require that the DFA purchase price be allocated among the various assets it proposed purchasing and raised concerns about the antitrust issues inherent in the proposed sale to DFA.

16. At the Bid Procedures Hearing, the Court denied the Debtors' request to name DFA the "Stalking Horse Bidder," denied the Debtors' request to establish bidding protections for the benefit of DFA, established March 30, 2020, as the deadline for parties to submit bids to purchase any of the Debtors' assets, and set the sale hearing for April 3, 2020. On March 19, 2020, the Court entered an order approving the bidding procedures (the "**Bidding Procedures Order**") [Docket No. 1178]. Under the Bidding Procedures Order, interested parties were authorized to submit bids for individual assets, pools of assets, or substantially all of the Debtors' assets. However, the Bidding Procedures Order did not require bidders to allocate their purchase price among the various assets covered by their bids.

17. On March 30, 2020, DFA submitted a bid to purchase the majority of the Debtors' assets, including the Carolinas Facilities, as well as several other milk plants across the United States. As required by the Bidding Procedures Order, shortly after midnight of March 30-31, 2020, Dean filed with the Bankruptcy Court the Notice of Bid Results [Docket No. 1270], which, *inter alia,* identified DFA as the winning bidder for assets it bid on, including the Carolinas Facilities. Several other parties submitted bids, including MDVA, which submitted a bid for the Carolinas Facilities located in High Point, North Carolina. MDVA was selected as the backup bidder for this facility.

18. On April 1, 2020, Food Lion filed a limited objection (the "**Limited Objection**") [Docket No. 1406] to the DFA Sale due to the potential anticompetitive impact the sale would have on the milk market in the Carolinas.

19. On April 1, 2020, MDVA filed an objection and reservation of rights (the "**MDVA Objection**") [Docket No. 1415] to the DFA Sale raising the same potential anticompetitive impacts the sale would have on the milk market in the Carolinas.

20. At the conclusion of the sale hearing on April 3, 2020, the Bankruptcy Court approved the DFA Sale. On April 5, 2020, the Court entered its order approving the DFA Sale (the "**DFA Sale Order**") [Docket No. 1572]. The DFA Sale Order has attached to it at Exhibit A the Asset Purchase Agreement between the Debtors and DFA. The DFA Sale Order further authorized the Debtors, in the event DFA fails to close, to sell assets to the backup bidders.

21. To partially resolve the Limited Objection and the MDVA Objection, the Debtors and DFA both agreed to include the following language in the DFA Sale Order to preserve Movants' rights to challenge the DFA Sale:

> **Anti-Trust Enforcement.** Notwithstanding anything to the contrary contained herein, no provision of this Order or the APA shall operate to impair, prejudice, or otherwise abrogate the rights (if any) of The Stop & Shop Supermarket Company LLC and Food Lion LLC, the Maryland and Virginia Milk Producers Cooperative Association, Inc. and the California Dairies, Inc. and any of their affiliates, subsidiaries, successors, or assigns, to challenge the Sale Transaction under the antitrust laws of the United States. All such rights are explicitly reserved pursuant to this order.

DFA Sale Order ¶ 37. As a result, Movants retain the right file the proposed action to enjoin the DFA Sale. However, the automatic stay under section 362 of the Bankruptcy Code may prevent Movants from exercising those rights at this time.

**II.   The Debtors and DFA's Anticompetitive Conduct**

22. Movants' concerns about the anticompetitive effects of the DFA Sale are rooted in a long history of anticompetitive conduct by both the Debtors and DFA. In short, as demonstrated in the draft complaint attached at **Exhibit A**, the Debtors and DFA have a pattern of acting in concert to use their respective power in the processed and raw milk markets to push competitors

7

out and consolidate the markets for themselves. Moreover, as further explained in the draft complaint, the sale of all the Debtors' assets in North Carolina to DFA will exacerbate the competitive concerns there and threatens significant harm to Movants.

## RELIEF REQUESTED

23. Movants seek entry of an order modifying the automatic stay to allow them to commence an action under Section 7 of the Clayton Act in the District Court to enjoin the Debtors from conveying the Carolinas Facilities to DFA.

## BASIS FOR RELIEF

24. Section 362(d)(1) of the Bankruptcy Code allows the Court to grant relief from the automatic stay for "cause, including lack of adequate protection."[2] Because the Bankruptcy Code does not define what constitutes "cause" under Section 362(d)(1), courts must determine whether relief from the stay is appropriate on a case-by-case basis.[3] The Fifth Circuit has noted that this lack of definition affords "flexibility to the bankruptcy courts."[4] Courts have held that such "cause" includes allowing an action to proceed before another court.[5]

25. In determining whether cause exists to modify the automatic stay to allow litigation to proceed in another forum, bankruptcy courts consider certain factors, including the following twelve, non-exclusive factors:

(1) whether the relief will result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

---

[2] 11 U.S.C. § 362(d)(1).

[3] *Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer)*, 152 F.3d 341, 343 n.4 (5th Cir. 1998).

[4] *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006) (citations omitted).

[5] *See, e.g.*, *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) ("Allowing a matter to proceed in another forum may constitute cause.").

(3) whether the other proceeding involves Debtor as a fiduciary;

(4) whether a specialized tribunal has been established to hear the particular cause of action;

(5) whether the debtor's insurer has assumed full responsibility;

(6) whether the action primarily involves third parties;

(7) whether litigation in the other forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success would result in a judicial lien avoidable by the debtor;

(10) interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the proceedings have progressed to the point that parties are ready for trial; and

(12) impact of the stay on the parties and the balance of harm.[6]

26. Not all factors may be relevant to each case and the decision to lift the stay is ultimately within the discretion of the Court.[7] "Further, the decision to lift the stay may be upheld on judicial economy grounds alone."[8]

27. Here, the interests of judicial economy and the expeditious and economical resolution of litigation strongly favor relief from the stay because even if Food Lion were to bring its antitrust claims before this Court, such action would be subject to mandatory withdrawal of the reference under 28 U.S.C. § 157(d). That section provides that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating

---

[6] *Id.* (citing *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).

[7] *See, e.g.*, *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

[8] *Xenon Anesthesia of Tex.*, 510 B.R. at 112.

organizations or activities affecting interstate commerce."[9] Courts have interpreted this section to require mandatory withdrawal where "the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law."[10]

28. Consideration of Movants' claims will necessarily entail material and substantial consideration of federal antitrust law. Adjudication of Movants' claims would require far more than "simple application of fixed legal standards."[11] Rather, adjudication of Movants' claims would require a full antitrust proceeding, including identifying the relevant product and geographic market and determining whether the DFA Sale violates Section 7 of the Clayton Act. Courts usually find that the presence of substantial and material antitrust issues necessitates mandatory withdrawal.[12]

29. Since any attempt to prosecute Movants' antitrust claims in this Court would necessarily result in removal of the action to a federal district court, and the District Court is located in the district where the majority of the Carolinas facilities are located, interests of judicial economy and the expeditious and economical resolution of litigation strongly favor relief from the stay.

30. In addition, granting the motion will result in complete resolution of the issues because the District Court will either enjoin the sale of the Carolinas Facilities or not. If the District Court does not enjoin the sale of the Carolinas Facilities, then the DFA sale will be allowed to close as planned. Movants intend to seek an expedited hearing in the District Court to resolve the

---

[9] 28 U.S.C. § 157(d).

[10] *Levine v. M & A Custom Home Builder & Developer, LLC,* 400 B.R. 200, 203 (S.D. Tex. 2008).

[11] *Lifemark Hosps. of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21, 24 (E.D. La. 1993).

[12] *See, e.g.*, *Lifemark Hosps. of Louisiana, Inc.*, 161 B.R. at 27 (holding that proceedings requiring substantial and material consideration of antitrust laws necessitated mandatory withdrawal); *Michigan Milk Producers Ass'n v. Hunter*, 46 B.R. 214, 216 (N.D. Ohio 1985) (same).

matter as soon as practicable. And while Movants do not doubt this Court's ability to understand the issues at stake in antitrust litigation, the District Court is highly experienced in adjudicating such matters and is located in the same region as the Carolinas Facilities. Such claims are regularly brought before the District Court, and the District Court will be very familiar with all aspects of Movants' claims. Finally, if the stay is not lifted to allow Movants to commence the antitrust action before the DFA Sale closes, Movants will lose their ability to seek effective pre-closing antitrust relief.

## BASIS FOR EMERGENCY RELIEF

31.     Emergency relief is requested because the Debtors have stated that the DFA Sale is set to close sometime at the end of April or in early May. Accordingly, Movants submit that emergency consideration is warranted. In accordance with Bankruptcy Local Rule 9013-1(i), counsel for Movants hereby certifies the accuracy of this Motion.

## CERTIFICATE OF CONSULTATION

32.     In accordance with Bankruptcy Local Rule 4001-1(a)(1), the undersigned counsel for Food Lion hereby certifies that on April 20, 2020, counsel conferred with counsel for the Debtors and was unable to reach an agreement on the requested relief in this Motion.

## CONCLUSION

33.     For the reasons set forth above, Movants respectfully request that the court enter an order (i) modifying the automatic stay to allow Movants to commence an antitrust action challenging the DFA Sale and (ii) granting such other and further relief as the Court deems just and equitable.

Dated: April 20, 2020
      Houston, Texas

**HUNTON ANDREWS KURTH, LLP**

*/s/ Timothy A. ("Tad") Davidson I*
Timothy A. ("Tad") Davidson II
(Texas Bar No. 24012503)
Philip M. Guffy
(Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: 713-220-4200
Fax: 713-220-4285
Email: taddavidson@HuntonAK.com
       pguffy@HuntonAK.com

-and-

Gregory G. Hesse
(Texas Bar No. 09549419)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: 214-979-3000
Fax: 214-880-0011
Email: ghesse@HuntonAK.com

*Counsel for Food Lion LLC*

**O'CONNORWECHSLER PLLC**

*/s/ Annie E. Catmull*
Annie E. Catmull
State Bar No. 00794932
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Tel.: (281) 814-5977
aecatmull@o-w-law.com

*-and-*

**TROUTMAN SANDERS LLP**

*/s/ Richard E. Hagerty*
Richard E. Hagerty (admitted *pro hac vice*)
VSB No. 47673
401 9th Street, N.W.,
Suite 1000
Washington, D.C. 20004
Tel.: (202) 274-1910
richard.hagerty@troutman.com

*Attorneys for MDVA*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 20, 2020, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system on the parties registered to receive electronic notices in this case.

By: /s/ *Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II