IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Southern Foods Group, LLC, *et al.*,[1] | Case No. 19-36313 (DRJ) |
| Debtors. | (Jointly Administered) |

**PARTIAL JOINDER IN DEBTORS' OBJECTION TO EMERGENCY MOTION OF FOOD LION LLC AND MARYLAND VIRGINIA MILK PRODUCERS COOPERATIVE ASSOCIATION, INC. FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW COMMENCEMENT OF ANTITRUST ACTION AND STATEMENT REGARDING NOTEHOLDERS' RESPONSE AND REQUEST FOR STATUS REPORT AND CONFERENCE PURSUANT TO BANKRUPTCY CODE SECTION 105(d)**

[Relates to Docket Nos. 1693, 1750, 1804]

Dairy Farmers of America, Inc. ("DFA") respectfully submits this Partial Joinder in support of the *Debtors' Objection to Emergency Motion of Food Lion LLC and Maryland and Virginia Milk Producers Cooperative Association, Inc. for Relief from the Automatic Stay to Allow Commencement of Antitrust Action* [Docket No. 1804] (the "Debtors' Objection"), as well as an objection to *Emergency Motion of Food Lion LLC and Maryland and Virginia Milk Producers Cooperative Association, Inc. for Relief from the Automatic Stay to Allow*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta-Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty, LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200).

US-DOCS\115434865.5

*Commencement of Antitrust Action* [Docket No. 1693] (the "Motion"). DFA also respectfully submits a Statement (the "Statement") replying to the *Noteholders' Response to Emergency Motion of Food Lion LLC and Maryland and Virginia Milk Producers Cooperative Association, Inc. for Relief from the Automatic Stay to Allow Commencement of Antitrust Action and Request for Status Report and Status Conference Pursuant to Bankruptcy Code Section 105(d)* [Docket No. 1750] (the "Response"). In support of its Partial Joinder and Statement, DFA respectfully states as follows:

**Partial Joinder and Objection**

1. DFA joins in paragraphs 1 through 34 (except the final sentence of paragraph 20) and paragraphs 56 through 61 of the Debtors' Objection.[2] DFA submits the following additional points.

### A. The Motion is a Collateral Attack on a Final, Non-Appealable Order

2. DFA also submits that the Motion is a collateral attack on a final, non-appealable order issued by the Court. The Sale Order is a final order that, pursuant to Bankruptcy Rule 8002(a), became non-appealable on April 19, 2020, fourteen days after its entry on April 5, 2020. Fed. R. Bankr. P. 8002(a); *see*, *also*, *Gwen v. McBeth (In re Gwen)*, 2015 WL 6758126, *5 (C.D. Cal. 2015) (stating that a sale order is a final order for the purposes of Bankruptcy Rule 8002); *see also Smith v. Gartley (In re Berman-Smith)*, 737 F.3d 997, 1003 (5th Cir. 2013) (holding that failure to file a notice of appeal within the time limit provided in Bankruptcy Rule 8002 bars the bankruptcy court's jurisdiction over the appeal). The Movants, one of whom made its own unsuccessful bid for the assets contemplated by the Motion, effectively ask the Court to authorize a collateral attack on the Sale Order. In short, the Movants ask the Court to allow them

---

[2] Capitalized terms not defined herein are defined in the Debtors' Objection.

2

to initiate a proceeding against the Debtors in which the Movants will seek an injunction barring the Debtors from closing the sale the Court authorized in the Sale Order. Motion ¶ 23; Complaint ¶ 150(b).

3. If the Movants believe that their rights, if any, afforded under the Clayton Act, were stripped or modified by the Sale Order, they should have appealed the Sale Order. They did not and, as a result, while the Movants are free to exercise whatever rights they believe exist under the Clayton Act, they must do so without enjoining Debtors' performance under the Sale Order.

4. If the Movants wish to prevent the Debtors from closing the sale to DFA authorized in the Sale Order, their relief will have to come not from relief from the automatic stay, but rather under Bankruptcy Rule 9024, which makes applicable Rule 60 of the Federal Rules of Civil Procedure. Fed. R. Bankr. P. 9024. Moreover, the Movants could only seek relief under Rule 60(b)(6), which requires that the Movants demonstrate "extraordinary circumstances" justifying their appeal—a standard the Movants have not pleaded and cannot meet. *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."); *Tow v. Water Quality Ins. Synd. (In re Oil & Gas Corp.)*, 544 B.R. 607, 611 (Bankr. S.D. Tex. 2016) ("relief only under Rule 60(b)(6)—as opposed to Rule 60(b) generally—must only be granted in "extraordinary circumstances""); *see also In re Rapraeger*, 534 B.R. 778, 782 (Bankr. W.D. Wis. 2015) ("The setting aside of an order confirming a sale involves different concerns and less discretion on the bankruptcy judge's part than the denial of confirmation of a sale in the first instance.") (internal quotes omitted).

### B. The Movants' Antitrust Complaint is Meritless

5. In addition to the Motion being procedurally improper, the stay should not be lifted because the substance of the Movants' antitrust complaint is without merit and the Complaint is not likely to succeed if the stay is lifted. For instance, the Complaint recycles allegations from a completely unrelated antitrust litigation, and though it alleges "bad acts," they are alleged to have occurred years or decades ago, without any connection to the DFA Sale. Even taking these allegations at face value, the Complaint does not support a merger-specific theory of harm.

6. As an initial matter, there is no way the DFA sale could raise "horizontal" merger concerns, i.e., concerns involving the merger of competitors, as there is no overlap between DFA and the Debtors in either of the Complaint's alleged relevant markets. Without any overlap, there would be no elimination of competition in the alleged relevant markets. With respect to "vertical" merger concerns, i.e., those relating to the merger of companies at different levels in a distribution chain, the Complaint's vertical "foreclosure" theories are unsupported by both law and fact.

7. As a matter of law, vertical integration is typically viewed as procompetitive because "vertical mergers create vertical integration efficiencies between purchasers and sellers." *United States v. AT&T, Inc.*, 310 F. Supp. 3d 161, 193 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019); *see also* Makan Delrahim, Asst. Attn'y Gen., Dep't of Justice, Antitrust Div., Remarks at The Deal's Third Annual Corporate Governance Conference: Merger Enforcement Decisions Under Uncertainty and Imperfect Information (June 7, 2018) ("[The Antitrust Division] ha[s] long recognized that vertical integration can and does generate valuable efficiencies that

benefit consumers. Indeed, most vertical mergers are pro-competitive or competitively neutral.").[3]

8. Because of this beneficial outcome, the antitrust agencies very infrequently litigate vertical merger cases, and when they do, the agencies typically lose. The only vertical merger case to be litigated to an outcome by the U.S. antitrust agencies in the past 40 years was *AT&T/Time Warner* in 2018—which the government lost—and before that it was the 1979 *Fruehauf/Kelsey-Hayes* merger—which the government also lost. *See Fruehauf Corp. v. FTC*, 603 F.2d 345, 348 (2d Cir. 1979). The "vertical integration efficiencies between purchasers and sellers" that existed in *AT&T/Time Warner* and led the court to find in favor of the merging parties also exist here, as the proposed DFA transaction would combine entities that operate at wholly distinct levels of the supply chain.[4]

9. The alleged facts also do not support the Movants' vertical "foreclosure" theory. First, the proposed acquisition of the Carolina Plants cannot result in any significant "foreclosure" of MDVA, let alone anticompetitive foreclosure, since MDVA does not today depend on the Debtors as a purchaser of its raw milk. The Complaint notes that the Debtors already source almost all of their milk from DFA in the Carolinas; MDVA is not supplying any raw milk to the Debtors' facilities in the Carolinas. *See* Complaint ¶ 59. Second, the Complaint suggests that post-acquisition DFA would undermine its own business by choosing to stop selling raw milk to non-Debtor milk processing facilities in the region not currently owned by

---

[3] *See* https://www.justice.gov/opa/speech/assistant-attorney-general-makan-delrahim-delivers-remarks-deal-s-third-annual-corporate.

[4] Private parties have been no more successful, in the very few private cases that have been brought. See, e.g., *HTI Health Services, Inc. v. Quorum Health Group, Inc.*, 960 F. Supp. 1104 (S.D. Miss. 1997); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217 (N.D. Ill. 1987); *cf. Steven C. Salop, Invigorating Vertical Merger Enforcement*, 127 Yale L.J. 1962, 1964 (2018) ("There has been very little private litigation.").

the Debtors. Even if DFA were to do this, the Complaint does not explain why MDVA and other non-DFA milk suppliers cannot fill any alleged deficiency. Indeed, under the Movants' first theory, if the Carolinas Plants purchased only raw milk from DFA and, under the Movants' second theory, if DFA refused to sell raw milk to non-Debtor processing facilities, then there would be substantial market opportunity for non-DFA raw milk (such as at the multiple non-Debtor processing plants in the Carolinas) and sufficient volume of non-DFA milk to supply these non-Debtor facilities.

10. Given all of the above, there is little likelihood that the Movants would be successful on the merits of their antitrust complaint. Certainly, the Movants' likelihood of success is so low that there is no justifiable basis for the requested emergency relief.

### Statement Replying to Noteholders' Response

11. The Noteholders' Response should be disregarded. As an initial matter, the Noteholders do not either support or object to the Motion to which they are ostensibly responding. *See generally* Response. Instead, the purpose of the Response seems to be to shoehorn in a request for the Court to order various steps perhaps prefatory to the Noteholders' alternative transaction. The Noteholders have not filed a motion for entry of an order directing the Debtors to file reports, hold a status conference, or make information available to the Noteholders' designees. The Response and the relief sought therein are irrelevant to the Movants' lift stay motion, and should not be given any consideration by the Court. Beyond its procedural infirmities, the Noteholders' Response continues the Noteholders' pattern of making misleading statements to the Court and other parties in these cases.

12. On November 13, 2019, the Noteholders informed the Court they would have the capital to buy the Debtors' assets. *See* Nov. 13, 2019 Hr'g Tr. At 23:19-24:4. Over four months later when the March 30, 2020 bid deadline arrived, there was no bid or proposal for an

alternative transaction from the Noteholders. On April 1, 2020, the Noteholders filed with the Court their Limited Objection [Docket No. 1439] to entry of the Sale Order, in which they claimed they were in discussions with the USDA for financing of an alternative transaction. Very shortly after the Noteholders filed this pleading, the United States on behalf of the USDA filed a reply stating that it "does not intend to provide any financing or loan guaranty to the [Noteholders] in support of any bid or proposal the group may make in this case." Docket No. 1455. The Noteholders then withdrew their Limited Objection. *See* Docket No. 1459.

13. The Response continues this pattern. In paragraph 5 of the Response, the Noteholders state they "have already obtained commitments in excess of $1 billion in capital in the form of equity and debt financing." Response at 3, ¶ 5. Exhibit E to the Response is a letter from Wingspire Capital LLC, the entity the Noteholders state will provide $600 million of the "commitments in excess of $1 billion in capital" for their transaction. The letter from Wingspire, states that it "does not constitute a commitment of Wingspire."

14. Even without committed financing in place for an alternative transaction, the Noteholders postulate that the Court should require the Debtors' estates and other key parties in interest to spend time and money preparing status reports, preparing for and attending a status conference, and granting parties access to the Debtors' data room. They insinuate that such measures are necessary due to the risk associated with not obtaining antitrust approval for the DFA Sale or the Prairie Farm transaction. However, the Noteholders had the opportunity to express their concern with the risk of the DFA Sale not receiving antitrust approval – and missed this window of opportunity when they filed their Limited Objection without addressing this issue, and subsequently withdrew their objection.

15. The Response is inapposite to the Movants' lift stay motion. It seeks relief that should only follow motion and notice. The Response rests on financing that does not exist. The Noteholders are wasting the Court's time and should not be allowed to waste any more of the estates' resources or the money of other parties in these cases. The Noteholders should not receive any relief described in the Response.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the reasons stated herein, DFA respectfully requests that the Court sustain the Debtors' Objection, deny the Motion, deny the relief requested in the Noteholders' Response, and grant DFA such other relief as it deems just and proper.

Dated:  April 27, 2020
        Houston, Texas

Respectfully submitted,

*/s/ John F. Higgins*

Mitchell A. Seider (TX Bar No. 18000550)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  mitchell.seider@lw.com

John F. Higgins  (TX Bar No. 09597500)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone:  (713) 226-6000
Facsimile:  (713) 228-1331
Email:  jhiggins@porterhedges.com

– and –

James Ktsanes (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile:  (312) 993-9667
Email:  james.ktsanes@lw.com

– and –

Laurence M. Frazen (admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1200 Main Street, Suite 3800
Kansas City, MO 64105
Telephone:  (816) 374-3200
Email:  lfrazen@bpclaw.com

*Counsel for Dairy Farmers of America, Inc.*